**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CARL CHATMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **14 C 2945** |
| | ) | |
| **CITY OF CHICAGO, CHICAGO POLICE** | ) | **Judge John Z. Lee** |
| **DETECTIVES JOHN ROBERTS, THOMAS** | ) | |
| **MCGREAL, MARIA PENA, JACK BOOCK, RITA** | ) | |
| **MISCHKA, and BARBARA MIDONA, CHICAGO** | ) | |
| **POLICE SERGEANTS DENNIS WALSH and** | ) | |
| **BRYAN HOLY, CHICAGO POLICE OFFICERS** | ) | |
| **MICHAEL KARCZEWSKI and RICHARD GRIFFIN,** | ) | |
| **CHICAGO POLICE LIEUTENANT JOSEPH JORIA,** | ) | |
| **COOK COUNTY SHERIFF'S DEPUTIES MICHAEL** | ) | |
| **COKELEY and JOSEPH PRINCE, COOK COUNTY** | ) | |
| **SHERIFF'S DEPUTY SERGEANT MARIA** | ) | |
| **MOKSTAD, COOK COUNTY SHERIFF'S DEPUTY** | ) | |
| **LIEUTENANT BURROUGH CARTRETTE,** | ) | |
| **ASSISTANT STATE'S ATTORNEY BRIAN** | ) | |
| **HOLMES and UNKNOWN CHICAGO POLICE** | ) | |
| **OFFICERS and UNKNOWN COOK COUNTY** | ) | |
| **SHERIFF'S DEPUTIES, THE COUNTY OF COOK,** | ) | |
| **THOMAS DART, IN HIS OFFICIAL CAPACITY AS** | ) | |
| **SHERIFF OF COOK COUNTY, and ANITA** | ) | |
| **ALVAREZ, IN HER OFFICIAL CAPACITY AS** | ) | |
| **COOK COUNTY STATE'S ATTORNEY, and** | ) | |
| **SUSAN RIGGIO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Carl Chatman has sued the City of Chicago (the "City"); Chicago Police Detectives John

Roberts, Thomas McGreal, Maria Pena, Jack Boock, Rita Mischka, and Barbara Midona;

Chicago Police Sergeants Dennis Walsh and Bryan Holy; Chicago Police Officers Michael

Karczewski and Richard Griffin; Chicago Police Lieutenant Joseph Joria (collectively, the "CPD

Defendants"); Cook County Sheriff's Deputies Michael Cokeley and Joseph Prince; Cook

County Sheriff's Deputy Sergeant Maria Mokstad; Cook County Sheriff's Deputy Lieutenant Burrough Cartrette (collectively, the "Sheriff's Office Defendants"); Assistant State's Attorney Brian Holmes ("ASA Holmes"); as yet unknown Chicago Police Officers; as yet unknown Cook County Sheriff's Deputies; the County of Cook; Thomas Dart in his official capacity as Sheriff of Cook County; Anita Alvarez in her official capacity as Cook County State's Attorney; and Susan Riggio all pursuant to 42 U.S.C. § 1983. In short, Plaintiff alleges that the various Defendants violated his constitutional rights under the Fifth and Fourteenth Amendment to the United States Constitution, and also brings claims for malicious prosecution, intentional infliction of emotional distress, and conspiracy under Illinois law. Defendants have now moved to dismiss Plaintiff's complaint in its entirety. For the reasons provided herein, the Court grants in part and denies in part Defendants' various motions.

## **Factual Background**

The facts in the background section are taken from Plaintiff's complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL–CIO v. Exelon Corp.,* 495 F.3d 779, 782 (7th Cir. 2007).

## I. **The Rape Allegation and Plaintiff's Arrest**

During the week of May 20, 2002, Carl Chatman went to the Daley Center to investigate how to file a small claims suit. *Id.* ¶ 25. Chatman entered Judge Bartkowicz's courtroom looking for assistance. *Id.* ¶¶ 26, 28. There, Chatman encountered Susan Riggio, who at the time was working as a scheduling clerk for Judge Bartkowicz, and had a brief, uncontroversial interaction. *Id.* ¶¶ 27-29. Chatman was wearing a jacket with a Chicago Blackhawks logo. *Id.*

On Friday, May 24, 2002, Riggio went to work at 7:00 a.m., although she was not scheduled to be in until 8:30 a.m. *Id.* ¶ 36. It was the day before Memorial Day weekend, and the judge for whom she worked was out of town while her co-workers were not scheduled to arrive until the normal start time of 8:30 a.m. *Id.* Riggio claimed that at approximately 7:20 a.m., while she was alone in her office behind the judge's courtroom, a man attacked her, beat her head against a table, and raped her, holding scissors to her throat. *Id.* ¶¶ 37-38. Riggio said she screamed for help at least three times for a deputy during the attack. *Id.* ¶ 104. When one of Riggio's co-workers arrived for work, Riggio told her about the alleged attack, and her co-worker called the police. *Id.* ¶ 39.

When the police officers arrived, Riggio identified Chatman as her assailant, providing the responding officers with a description of the African-American man, who had been on her floor earlier in the week wearing a Blackhawks jacket. *Id.* ¶ 40. Chicago Police Department officers were alerted to look for a suspect in the Chicago Loop area described as an African-American male with salt-and-pepper hair wearing a Blackhawks jacket. *Id.* ¶ 41. Before long, Chatman was located walking around the Loop wearing a Blackhawks jacket. *Id.* ¶ 42. Officers arrested Chatman at approximately 8:30 a.m. *Id.* ¶ 43. At the time, Defendant Officers Griffin and Karczewski claimed that Chatman said he was coming from the Daley Center, but this was not the case. *Id.* ¶ 44.

## II. Plaintiff's Mental Vulnerabilities and False Confession

When not properly medicated, Chatman allegedly suffers from a mental illness that interferes with his ability to function properly. *Id.* ¶ 45. He often experiences disorganized thoughts, pressured speech, and an inability to think in a linear or logical manner. *Id.* At the time of his arrest and throughout his various interrogation sessions with Defendants, Chatman

was having difficulty communicating due to his mental condition. *Id.* ¶ 46. According to Chatman, his inability to communicate in a normal manner would have rendered it immediately obvious to any person who questioned him on May 24 or 25, 2002, that he suffered from cognitive deficiencies and mental illness.[1] *Id.* ¶ 47.

Following his arrest at 8:30 a.m., Chatman was brought to Area 4 Detective Headquarters and questioned by Detectives Mischka and Boock. *Id.* ¶ 48. Prior to this arrest, Chatman had never committed nor been accused of a crime involving violence. *Id.* ¶ 49. During his interrogation by Mischka and Boock, Chatman initially maintained his innocence and did not implicate himself. *Id.* ¶ 50. At approximately 10:30 p.m., fourteen hours after his arrest, Detective Roberts began interrogating Chatman. *Id.* ¶¶ 48, 51. When Roberts began his interrogation, the pressure to obtain a confession from Chatman was mounting because Riggio had publicized her accusations, which by then had generated a tremendous amount of media attention. *Id.* ¶ 52.

During the interrogation, Detective Roberts allegedly used force and threats of force to coerce Chatman to confess. *Id.* ¶ 53. By that time, Defendants ASA Holmes, Detective Midona, and Sergeant Walsh had joined Detective Roberts in the interrogation. *Id.* ¶ 54. These Defendants allegedly took advantage of Chatman's diminished capacity to force him to falsely confess. *Id.* ¶¶ 55-56. Because Chatman had no personal knowledge of the facts and circumstances surrounding the alleged rape, Defendants fed him details of the crime during the course of his interrogation and walked him through the crime scene to ensure that he could recite details of the incident, thereby bolstering his confession. *Id.* ¶¶ 58–59. As a result, the false

---

[1]     In fact, upon being admitted to the Cook County Jail, Chatman was given a five-minute health screening, after which intake personnel promptly admitted him to the acute care unit of the jail. *Id.* ¶ 102. Detainees are placed in the acute care unit only if they are expressing mental health symptoms that require twenty-four-hour psychiatric care. *Id.*

confession included various factual details that could only have been known by someone who committed the crime or by someone with access to the police reports describing the alleged crime. *Id.* ¶ 57.

## III.    The Forensic Evidence

There was no physical evidence to corroborate Chatman's confession or the rape itself. *Id.* ¶ 60.    For example, Riggio claimed to have been badly beaten by Chatman during the purported rape.    *Id.* ¶ 61.    However, a medical examination of Riggio immediately after the incident revealed no injuries commensurate with the crime.    *Id.*    In addition, swabs from Riggio's body and her clothing were subjected to clinical analysis, including DNA testing, but no genetic material from Chatman (nor anyone else) was found.    *Id.* ¶ 62.

Riggio also claimed to have urinated on Chatman and bit him on the left shoulder of his coat.    *Id.* ¶ 64.    Chatman's clothing also was collected shortly after the alleged assault and analyzed by forensic scientists.    *Id.* ¶ 63.    But neither the search nor DNA testing revealed Riggio's genetic material anywhere on Chatman's body or clothing.    *Id.* ¶¶ 63-64.    What is more, Chatman's fingerprints were nowhere to be found at the crime scene.    *Id.* ¶ 65.

## IV.    Exiting from the Daley Center Post-Assault

The Daley Center was closed to the public before 8:00 a.m.; and at the time of the alleged attack, only authorized personnel were allowed in the building.    *Id.* ¶ 72.    Riggio claimed that her sexual assault occurred at approximately 7:20 a.m. and lasted approximately seven minutes.    *Id.* ¶ 67.    Riggio's co-worker, who reported the alleged attack to the authorities at 7:37 a.m., some ten minutes after it supposedly occurred, admitted that she did not see anyone else that morning. *Id.* ¶ 68.    By 7:41 a.m., the Sheriff's Department had locked down the entire building and notified all security posts to prevent anyone from entering or exiting the building.    *Id.* ¶ 69.    Any

person attempting to enter or leave the Daley Center at that point would have been observed by Sheriff's deputies and video cameras stationed to record the exits. *Id.* ¶ 73. The Sheriff's Department and a private security company then conducted a floor-by-floor search for the alleged attacker to no avail. *Id.* ¶¶ 70–71. Neither Chatman nor anyone fitting his description appeared on the security videos, and none of the deputies stationed at the lobby doors saw Chatman leave the building. *Id.* ¶ 74.

## V. Withholding of Exculpatory Evidence

Riggio claimed that she fought for her life and screamed at least three times for assistance. *Id.* ¶ 104. When responding officers, including Defendants Mokstad, Prince, and Cokeley, arrived at the crime scene, they discovered that a building employee, Cook County Sheriff's Deputy Michael Copeland, had been sleeping in the room immediately adjacent to the crime scene. *Id.* ¶¶ 105, 107. Despite having been next door, Copeland told the responding officers that he had heard no sounds of a struggle. *Id.* ¶ 106. The first indication Copeland had that something was amiss was when he heard the radios of other officers responding to Riggio's 911 call. *Id.* Defendant Cartrette had Copeland write a statement acknowledging that he had been sleeping in room 2103A, next door to the crime scene, and that he had heard nothing until officers arrived to respond to the assault allegation. *Id.* ¶ 108.

On May 24, 2002, Defendant Detectives McGreal and Pena interviewed Cokeley, Prince, Mokstad, and Cartrette. *Id.* ¶ 109. Although each of these Defendants learned that Copeland had provided this exculpatory information, they hid that information from the criminal justice system and, as a result, from Chatman. *Id.* ¶¶ 109, 111, 113, 115. None of the police reports disclosed to Chatman and his defense counsel as part of the criminal proceeding mentioned Copeland. *Id.* ¶ 110.

As a result of these events, Chatman was convicted and imprisoned for more than ten years. *Id.* ¶ 117. In September 2013, the State's Attorney's Office voluntarily dismissed all charges against Chatman, and he was granted a Certificate of Innocence. *Id.* ¶ 6.

## Pending Motions

Defendants have moved to dismiss the complaint in its entirety. The CPD Defendants move to dismiss Counts I and II (coerced confession), and IX (intentional infliction of emotional distress) as being time barred; Count III (federal malicious prosecution) on the grounds that such a claim is not actionable; Count IV (due process) for failure to raise a viable due process violation; and Counts V (conspiracy), VI (failure to intervene), and VII (supervisory liability), arguing that these claims lack a viable constitutional basis.

The City adopts and incorporates by reference the arguments included in the CPD Defendants' motion to dismiss. Additionally, it argues that Count V should be dismissed because it fails to state a § 1983 claim; Plaintiff's *Monell* claims against the City should be dismissed because Counts I through VI fail to state causes of action under § 1983; and Plaintiff's supervisory liability claim in Count VII should be dismissed because it contains no facts connecting the three supervisory Defendants with any misconduct.

For their part, the Sheriff's Office Defendants adopt the arguments in the Defendant City's motion as to Counts III, VIII, XII, and VIII. They also seek to dismiss Counts IV, V, VI, and X on the grounds that Plaintiff failed to allege any specific actions by these Defendants upon which to base his due process, failure to intervene, or conspiracy claims.

On a separate note, Defendant ASA Holmes moves to dismiss, contending that he is protected by the doctrines of absolute prosecutorial immunity, qualified immunity, and sovereign immunity. In addition to adopting all of the arguments raised by the CPD Defendants,

Defendant Riggio moves to dismiss Count V as being inapplicable to her. Finally, assuming dismissal of the federal claims, all of the Defendants ask the Court to decline supplemental jurisdiction over any remaining state law claims (Counts VIII through XIII).

### Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but also must be facially plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

### Analysis

### I. Plaintiff Has Pleaded His Claims with Adequate Specificity as to Each Defendant

To begin with, all of the motions generally argue that Plaintiff has not pleaded his claims with specificity because he has not correlated each alleged misdeed with each particular Defendant. This argument lacks merit. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal quotation and citation omitted). In order to prevail on the merits, Plaintiff will ultimately have to show that each Defendant was responsible for his

injuries.  *See, e.g., Grieveson v. Anderson,* 538 F.3d 763, 777 (7th Cir. 2008) (explaining that, at the summary judgment stage, a plaintiff was required to "tie actions of the named defendants to the injuries he allegedly suffered").  But it is not impermissible at the pleading stage to direct an allegation against multiple defendants.  *See Brooks v. Ross,* 578 F.3d 574, 582 (7th Cir. 2009).  The key to satisfying Rule 8 is that Plaintiff "put the defendants on notice of what exactly they might have done to violate [his] rights."  *Brooks,* 578 F.3d at 582.  Here, the complaint is coherent, and the basis of Plaintiff's claims is easily understood.  *See Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) (noting that "[r]eading the allegations sensibly as a whole, there is no genuine uncertainty regarding who is responsible for what").  Furthermore, Plaintiff may require discovery before identifying precisely which individual Defendant committed which alleged actions.  Given the details alleged in the two-hundred and seven paragraphs in the complaint, Plaintiff's inability to specifically attribute a particular act to a particular individual Defendant does not doom the case at the pleading stage.  *See Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 821 (7th Cir. 2009) ("We do not think that the children's game of pin the tail on the donkey is a proper model for constitutional tort law." (quotation omitted).

## II.     Coerced Confession (Counts I and II)

Counts I and II of the complaint assert claims under 42 U.S.C. § 1983 against the CPD Defendants for violations of the Fifth and Fourteenth Amendments stemming from Plaintiff's coerced and false confession.  The CPD Defendants, the City, and ASA Holmes move to dismiss both counts, arguing that they are time barred.  CPD Defs.' Mot. at 4; City Defs.' Mot. at 4.

Because § 1983 does not contain an express statute of limitations, federal courts adjudicating § 1983 claims adopt the forum state's statute of limitations for personal injury

claims. *Ashafa v. City of Chi.,* 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, the statute of limitations is two years. *Dominguez v. Hendley,* 545 F.3d 585, 588 (7th Cir. 2008).

Although the limitations period for § 1983 claims is based upon state law, it is federal law that determines when such claims begin to accrue. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). Generally, a § 1983 claim begins to accrue—and the clock on the statute of limitations begins to run—"when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citation and quotation omitted). Here, Plaintiff argues that these claims did not accrue until his conviction was set aside in September 2013, because he was precluded from filing them any earlier under *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994).

This Court has previously held that, where a plaintiff brings a Fifth Amendment claim, which alleges a coerced false confession and the subsequent use of any resulting incriminating statements in the criminal proceeding, the *Heck* accrual rule applies, and the claim will not be deemed to have accrued until the underlying conviction is invalidated or otherwise nullified. *See Taylor v. City of Chi..,* --- F. Supp. 3d ---, No. 14 C 737, 2015 WL 739414, at *6 (N.D. Ill. Feb. 19, 2015). The crux of the inquiry is whether the civil claim based upon a coerced confession necessarily impugns the validity of the conviction. *Id.* (citations omitted).

Here, Plaintiff has alleged that Defendants violated his Fifth and Fourteenth Amendment right to be free from compulsory self-incrimination by using mental abuse to extract an inculpatory statement from him, which was later introduced at trial. *See* Compl. ¶¶ 45–59, 149. Furthermore, the complaint alleges that because there was no forensic evidence tying Plaintiff to the alleged crime, Plaintiff's conviction rested largely on his incriminating statements. *Id.* ¶¶ 60–66, 149. Because Plaintiff's success on his § 1983 coerced confession claims would have

implied the invalidity of his conviction, he could not have brought this claim while his conviction was still valid.

Thus, under *Heck* and its progeny, Plaintiff did not have a "complete and present cause of action" until his conviction was set aside in September 2013. *See* Compl. ¶ 6. Plaintiff filed his complaint in April 2014, well within the two-year statute of limitations. [Doc. 1] Accordingly, Plaintiff's coerced confession claims are not time barred, and the motions to dismiss as to Counts I and II are denied.

## III. Federal Malicious Prosecution (Count III)

As Plaintiff acknowledges in his complaint, he is alleging a malicious prosecution claim under 42 U.S.C. § 1983 in Count III to preserve this claim for appeal in the event that the U.S. Court of Appeals for the Seventh Circuit overturns its ruling in *Newsome v. McCabe,* 256 F.3d 747, 751 (7th Cir. 2001). *Newsome* holds "that a federal suit for malicious prosecution by state officers is permissible only if the state in which the plaintiff had been prosecuted does not provide an adequate remedy, which [ ] Illinois does." *Llovet v. City of Chi.,* 761 F.3d 759, 760 (7th Cir. 2014). In *Llovet,* the Seventh Circuit reiterated that *Newsome* remains controlling authority in this Circuit, and thus, the Court is bound by its holding. *Id.* Therefore, the Court grants the motions to dismiss Count III and dismisses the claim with prejudice.

## IV. Due Process: Fabrication of Evidence & Suppression of *Brady* Material (Count IV)

Count IV asserts a due process claim on two separate grounds. First, Chatman claims that the CPD Defendants, Sheriff's Office Defendants, and ASA Holmes, acting as investigators, violated his due process rights by fabricating evidence. Compl. ¶ 149. Second, he alleges that they also violated his due process rights by withholding exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* ¶ 148. The Court addresses each claim in turn.

A fabrication-of-evidence due process violation occurs when the criminal defendant is harmed by "the police or prosecutor [who] manufactures evidence that he knows to be false." *Petty v. City of Chi.*, 754 F.3d 416, 422 (7th Cir. 2014); *see Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("*Fields II*"); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959). In contrast, where a plaintiff attempts to assert a due process claim based upon allegations that police officers coerced statements from co-defendants or witnesses, he or she does not state a due process claim, but rather, a malicious prosecution claim. *See Petty*, 754 F.3d at 421. This is because an officer "fabricating evidence that she knows to be false is different than getting 'a reluctant witness to say what may be true.'" *Id.* at 422 (quoting *Fields II*, 740 F.3d at 1112). "Fabricated testimony is testimony that is made up; it is invariably false. False testimony is the equivalent; it is testimony known to be untrue by the witness and by whoever cajoled or coerced the witness to give it." *Fields II*, 740 F.3d at 1110.

Chatman alleges that Defendants Griffin and Karczewski fabricated a report stating that Chatman had said he was coming from the Daley Center at the time of his arrest. Compl. ¶ 44. In addition, Chatman accuses Defendants Roberts and ASA Holmes of fabricating a police report indicating that Plaintiff had absolutely no difficulty communicating, when the opposite was true due to his impairment. *Id.* ¶ 101. Finally, Chatman alleges that ASA Holmes, Detectives Roberts and Midona, and Sergeant Walsh knew that Plaintiff had not committed the crime, fed Plaintiff all of the details of the crime, and fabricated his confession. *Id.* ¶¶ 54, 55–59. Chatman further asserts that the lack of any eyewitnesses or physical evidence tying him to the crime magnified the importance of the fabricated reports and confession. At least at this stage of the litigation, it is reasonable to infer that this fabricated evidence impacted the fairness of his trial. Interpreting these allegations in the light most favorable to Plaintiff, they are sufficient for

Plaintiff's fabrication-of-evidence claim to survive Defendants' motion to dismiss. *See Saunders v. City of Chi.*, Nos. 12 C 9158, 12 C 9170, 12 C 9184, 2014 WL 3359363, at *4 (N.D. Ill. July 11, 2014).

Plaintiff also seeks to state a claim under *Brady*, alleging that Defendants withheld a Sheriff's Office report, which indicated that a Sheriff's deputy in the adjoining room did not hear any noise at the time of the purported rape. Under *Brady,* the government violates the Due Process Clause of the Fourteenth Amendment when it "fails to disclose evidence materially favorable to the accused." *Mosley v. City of Chi.*, 614 F.3d 391, 397 (7th Cir. 2010) (citing *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006)). The duty to disclose "extends to the police and requires that they similarly turn over exculpatory . . . evidence to the prosecutor." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008) (citing *Youngblood*, 547 U.S. at 870). The elements of a *Brady* violation are: "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued—in other words, 'materiality.'" *Id.* at 566–67 (quotations omitted). Evidence is "suppressed" where it is not disclosed "in time for the defendant to make use of it," and it "was not otherwise available to the defendant through the exercise of reasonable diligence." *Id.* at 567. "[F]avorable evidence is material . . . if there is a 'reasonable probability' that, had the evidence been disclosed . . . the result of the proceeding would have been different." *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 643–44 (7th Cir. 2008) (quotations omitted).

Defendants argue that Plaintiff's *Brady* claim should fail because Plaintiff's criminal defense attorney could have discovered the report through use of reasonable diligence and the Sheriff's Office report does not qualify as exculpatory under *Brady*. *See* CPD Defs.' Br. at 15-

16; Sheriff's Office Defs.' Br. at 6. But the Seventh Circuit has held that reasonable diligence does not require defense attorneys to seek evidence they "had no reason to believe existed." *Boss v. Pierce*, 263 F.3d 734, 743 (7th Cir. 2001). Here, if Plaintiff's allegations are taken as true, no amount of reasonable diligence on the part of defense counsel would have lead to the discovery of this information, because none of the other reports mentioned Copeland at all.

Furthermore, the Court holds that the information contained in the Sheriff's Office report was exculpatory in that it supports the proposition that the attack did not occur and is impeaching of Riggio's testimony. "The question [under *Brady*] is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict of worthy confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). All Plaintiff need show is that the withholding or suppression of the evidence "undermines confidence in the outcome of the trial." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). This is not a "sufficiency of the evidence" test, especially at this early stage in litigation, because "[a] defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Id.* at 434–35. Plaintiff's allegations are sufficient to state a *Brady* claim.

Finally, in a last-ditch effort, the Sheriff's Office Defendants attempt to separate themselves from the CPD Defendants by arguing that they were not part of the "prosecution team" and thus had no duty to disclose in the criminal case and cannot be deemed to have suppressed any evidence in Plaintiff's criminal proceeding. *See* Sheriff's Office Defs.' Mot. at 3. But "[t]he government's duty to disclose favorable evidence extends beyond evidence in its immediate possession *to evidence in the possession of other actors assisting the government in*

*its investigation.*" *United States v. Walker*, 746 F.3d 300, 306 (7th Cir. 2014) (citation omitted) (emphasis added). When construed in Plaintiff's favor, his allegations create a reasonable inference that the Sheriff's Office Defendants and CDP Defendants were working together to investigate the incident. Compl. ¶¶ 105-16, 147–48. This is sufficient to withstand a motion to dismiss. For these reasons, Defendants' motions to dismiss are denied as to Count IV.

## V.  Other Federal Claims

The CPD Defendants, the Sheriff's Office Defendants, and the City also move to dismiss Plaintiff's remaining federal claims of conspiracy, failure to intervene, supervisory liability, and claims brought pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 (1978). The Court addresses each in turn.

### A.  Conspiracy (Count V)

The City moves to dismiss the conspiracy claim because "Plaintiff's speculative pleading of his conspiracy claim consists of nothing more than labels and conclusions, which are insufficient to survive a motion to dismiss." CPD Defs.' Mot. 9. As Judge Holderman explained in *Orange v. Burge,* "traditional notice pleading rules apply" to conspiracy claims. No. 04 C 0168, 2005 WL 742641, at *14 (N.D. Ill. Mar. 30, 2005) (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993)). Indeed, the Seventh Circuit has explained that "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir. 2002).

Plaintiff's conspiracy allegations meet this standard. Plaintiff identifies each Defendant that was part of the purported conspiracy and the approximate time period each Defendant participated in the conspiracy. Compl. ¶¶ 13–21, 31–74, 97–118, 120–26, 129–35, 147–55, 158–

61. Plaintiff alleges that the general purpose of the conspiracy was "to frame Plaintiff for a crime he did not commit and thereby deprive him of his constitutional rights." *Id.* ¶ 158. Plaintiff also specifies that actions undertaken by Defendants in furtherance of the conspiracy, including, among other things, coercing a confession, testifying falsely, and suppressing and fabricating evidence. *Id.* ¶¶ 44–74, 97–118, 120–26, 129–35, 147–55, 158–61. Accordingly, Plaintiff's allegations are sufficient to "enable [the Defendants] to prepare [their] defense or for the district court to determine whether the claim was within the ballpark of possibly valid conspiracy claims." *Walker,* 288 F.3d at 1008.

### B. Failure to Intervene (Count VI)

The CPD Defendants, the Sheriff's Office Defendants, and the City seek to dismiss Count VI, arguing that Plaintiff has not pleaded an underlying constitutional violation and that his claims are time barred. To recover on a failure to intervene claim, a plaintiff must plead an underlying violation of his constitutional rights. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Here, the complaint sufficiently alleges deprivations of Plaintiff's constitutional rights that can form the basis of a failure to intervene claim. Plaintiff has stated a plausible claim for violations of Plaintiff's rights under the Fifth and Fourteenth Amendments in Counts I, II, and IV. This is sufficient to state a failure to intervene claim. *See Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994) (stating that an officer who "fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that . . . any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.").

The Sheriff's Office Defendants further argue that the complaint does not indicate the manner in which they could have intervened. Sheriff's Office Defs.' Mot. at 9. But again the complaint alleges that these Defendants worked together with the investigation team, knew that the team was withholding exculpatory evidence, and did nothing to stop it. *See* Compl. ¶¶ 103–16, 147, 158–159.

Because Plaintiff has stated a cognizable due process claim and the Court already has rejected the statute of limitations defense at this juncture, Defendants' motions to dismiss Count VI also are denied.[2]

### C.     Supervisory Liability (Count VII)

The City argues that Count VII should be dismissed because it "broadly attempts to impose supervisory liability based on three general claims:  use of coercive tactics; withholding exculpatory evidence; and fabrication of evidence," but "[t]here are no facts connecting the three supervisory defendants with these conclusory allegations." City's Mot. 11. Moreover, the City argues that Plaintiff's claim is deficient because "[s]upervisory officials who are simply negligent in failing to detect and prevent a subordinate's misconduct are not culpable under § 1983 because they are not personally involved." *Id.* (citing *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997).

The City's recitation of the law is correct. For supervisors to be personally liable under § 1983, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012) (citation omitted). That is, a supervisor must be personally responsible for the deprivation of a constitutional right. *See Vance v. Peters,* 97 F.3d 987, 991 (7th Cir.

---

[2]     Defendant ASA Holmes also seeks to dismiss Count VI based upon the doctrine of prosecutorial immunity. Those arguments are addressed in Section VII, *supra.*

1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (citation omitted).

But nothing prohibits Plaintiff from bringing a claim against Defendants Walsh, Holy, and Joria for direct liability and, in the alternative, for supervisory liability. *See Mathews*, 675 F.3d at 706. Here, Plaintiff has alleged that these supervising Defendants were aware of, facilitated, condoned, and oversaw specific unconstitutional activities by their subordinates, including the coercing of a false confession and the withholding of exculpatory evidence. *See* Compl. ¶¶ 172–75. Accepting the well-pleaded facts as true and drawing all reasonable inferences in Plaintiff's favor, the motion to dismiss Count VII is denied as against Defendants Walsh, Holy, and Joria.

### D.    *Monell*

The City also moves to dismiss Plaintiff's "policy and practice" claims alleged in Counts I through VI on the sole basis that Plaintiff has not pleaded an underlying constitutional violation. Because the Court has held that Plaintiff has stated cognizable federal claims, the City's motion to dismiss is denied with respect to these counts.

## VI.    State Law Intentional Infliction of Emotional Distress (Count IX)

All Defendants move to dismiss Plaintiff's intentional infliction of emotional distress ("IIED") claim, contending that it is untimely. CPD Defs.' Mot. at 9; Sheriff's Office Defs.' Mot. at 10; City's Mot. at 12; ASA Holmes' Mot. at 13. In Illinois, the Tort Immunity Act places a one-year limitations period on IIED claims like Plaintiff's. *See* 745 Ill. Comp. Stat. 10/8-1. The determining question at this stage is whether the limitations period began to run on the date of Plaintiff's arrest in 2002, or when his conviction was finally vacated in 2013.

In *Bridewell v. Eberle*, the Seventh Circuit made clear that "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." 730 F.3d 672, 678 (7th Cir. 2013); *see, e.g., Barrow v. City of Chi.*, No. 13 C 8779, 2014 WL 1612712, at *6 (N.D. Ill. Apr. 21, 2014) (St. Eve, J.); *Cairel v. Alderden,* No. 09 C 1878, 2014 WL 916364, at *10 (N.D. Ill. Mar. 6, 2014) (Grady, J.). *Bridewell* also forecloses any argument that the IIED claim constitutes either a continuing tort or violation. *See* 730 F.3d at 678 ("[t]he idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either."). As such, the Court holds that Plaintiff's IIED claim is untimely. Plaintiff himself does not provide any argument warranting a different conclusion, restricting his analysis to one sentence and citing only two district court cases decided prior to *Bridewell*. Plaintiff's IIED claim therefore is dismissed.

## VII. Immunity

Separately, Defendant ASA Holmes insists that he is entitled to absolute prosecutorial immunity.[3] In the alternative, ASA Holmes argues that he is entitled to qualified immunity as to Counts III (malicious prosecution under § 1983), IV (due process), and VI (failure to intervene) because these counts fail to state a violation of Chatman's constitutional rights. ASA Holmes also contends that sovereign immunity precludes his liability as to the state law claims. For their part, the Sheriff's Office Defendants aver that they are entitled to qualified immunity because Chatman has failed to allege that they violated his constitutional rights in Counts IV (due process) and VI (failure to intervene).

---

[3] Illinois appears to follow the federal law on absolute immunity. *See Frank v. Garnati*, 989 N.E.2d 319 (Ill. App. Ct. 2013); *White v. City of Chi.*, 861 N.E.2d 1083, 1088–94 (Ill. App. Ct. 2006). Accordingly, the Court's analysis of whether ASA Holmes should be afforded absolute immunity as to the federal claims is equally applicable to whether he should be granted such immunity under state law with regard to the state law claims.

Absolute immunity would shield ASA Holmes from liability if his alleged conduct was "intimately associated with the judicial phase of the criminal process." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (quotation omitted). However, absolute immunity would not apply if Holmes' "acts [were] investigative and unrelated to the preparation and initiation of judicial proceedings." *Id.*; *see Whitlock v. Brueggemann,* 682 F.3d 567, 580 (7th Cir. 2012) (stating that the "focus of [the] case, as we have narrowed it, is exclusively on the period before probable cause supported the prosecution, when a prosecutor is unquestionably acting in an investigative role"); *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993) ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.")

ASA Holmes claims that he did not participate in the investigation of Plaintiff. Plaintiff, however, contends that ASA Holmes was not the prosecutor in the criminal case against Plaintiff and alleges that ASA Holmes acted solely as an investigator when he and the officers used force and threats of force to obtain Plaintiff's false confession, fabricated police reports, and withheld exculpatory evidence. Compl. ¶¶ 48-74, 149; *see* Pl.'s Resp. 22. Chatman further argues that ASA Holmes knew at all times that there was no probable cause to initiate criminal proceedings against Plaintiff. *Id.* ¶¶ 179-80. These factual allegations are sufficient to defeat ASA Holmes' reliance on absolute immunity.

With respect to qualified immunity, the Court agrees that ASA Holmes and the Sheriff's Office Defendants enjoy qualified immunity with regard to Chatman's federal malicious prosecution claim alleged in Count III. As discussed above, that constitutional tort is scotched by *Newsome,* 256 F.3d at 751.

However, the Court concludes that, at this nascent stage of litigation, it would be inappropriate to afford ASA Holmes or the Sheriff's Office Defendants qualified immunity as to

Plaintiff's due process claim and failure-to-intervene claim. First, these constitutional rights were clearly established as of 2002. *See Brady*, 373 U.S. at 87 (due process right to a fair trial requires that government turn over to the defense potentially exculpatory evidence); *Pyle v. Kansas*, 317 U.S. 213, 216 (1942) (knowing use of fabricated evidence to secure a criminal conviction violates due process); *Jones v. City of Chi.*, 856 F.2d 985, 993 (7th Cir. 1988) (fabricating evidence violates constitutional rights); *see Yang v. Hardin*, 37 F.3d at 285-86 (each officer present has an independent duty to intervene to prevent other officers from infringing the constitutional rights of citizens); *see also Whitlock*, 682 F.3d at 583 (stating that "a prosecutor whose investigatory conduct is the proximate cause of the due process violation that occurs when the false evidence is introduced at trial is held to the same standard of liability as a police officer who does the same thing."). *Cf. Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013) (denying motion to dismiss failure-to-intervene claim against prosecutors who acted as police officers by participating in an interrogation because they had a realistic opportunity to prevent the other officers from violating plaintiff's rights).

Second, Plaintiff alleges that ASA Holmes, the CPD Defendants, and the Sheriff's Office Defendants acted together as investigators when they fabricated Chatman's confession, fabricated police reports, and deliberately withheld exculpatory evidence from Plaintiff and the prosecutors. Compl. ¶¶ 148–49. These allegations are sufficient to assert that ASA Holmes and the Sheriff's Office Defendants had a reasonable opportunity to prevent the other Defendants from violating Plaintiff's constitutional rights. The Court thus denies the motions to dismiss based upon the doctrine of qualified immunity.

Finally, ASA Holmes argues that sovereign immunity bars Plaintiff's state law claims against him in federal court.

> Sovereign immunity precludes a lawsuit anywhere but in the Illinois Court of Claims when (1) there are no allegations that an employee of the state acted beyond the scope of his authority through wrongful acts, (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment, and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the state.

*Saunders*, 2013 WL 6009933, at *12 (N.D. Ill. Nov. 13, 2013) (citing *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)). "Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority . . . ." *Healy*, 549 N.E.2d at 1247. Because Chatman alleges that ASA Holmes violated state law and the Constitution, he is not entitled to sovereign immunity with regard to the state law claims.

## VIII. Remaining State Law Claims (Counts VIII, X, XI)

Lastly, Defendants did not move to dismiss Plaintiff's state law malicious prosecution, conspiracy, and defamation claims on the merits. Rather, Defendants argued that, in the event that the Court grants Defendants' motion to dismiss the federal claims, it should decline to exercise supplemental jurisdiction over the remaining state law claims. Because the Court denies Defendants' motion as to the federal claims, it declines to relinquish supplemental jurisdiction as to the state law claims.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss [docs. 62, 66, 68, 70, 73] are granted in part and denied in part. As to the federal claim of malicious prosecution (Count III) and the state law claim of intentional infliction of emotional distress (Count IX), the motions to dismiss are granted as to all Defendants. In all other respects, the motions to dismiss are denied.

**SO ORDERED**

**ENTERED    3/10/15**

_____
**John Z. Lee**
**United States District Judge**