IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Carl Chatman, | ) | |
| | ) | |
| Plaintiff | ) | No. 14 CV 2945 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| City of Chicago, *et al.*, | ) | Magistrate Judge Maria Valdez |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT KATO'S MOTION FOR PROTECTIVE ORDER**

Arthur Loevy
Jon Loevy
Russell Ainsworth
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607
(312) 243-5900
*Counsel for Plaintiff*

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
(720) 328-5642

EXHIBIT AA

**Table of Contents**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.     LR 37.2 Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.    The Independent Corroboration of Plaintiff's Central Allegation in This Case
       Contained in CR # 296034 Should Not Be Kept Secret. . . . . . . . . . . . . . . . . . . . . . . 10

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## Table of Authorities

*Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . 12

*Bond v. Utreras*, 2007 WL 2003085 (N.D. Ill. July 2, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cent. States, Se. & Sw. Areas Pension Fund v. Nat'l Lumber Co.*, 2012 WL 2863478 (N.D. Ill. July 11, 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gekas v. Williamson*, 912 N.E.2d 347 (Ill. App. Ct. 2009). . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . 16

*Henry v. Centeno*, 2011 WL 3796749 (N.D. Ill. Aug. 23, 2011).. . . . . . . . . . . . . . . . . . . 14, 16

*In re Specht*, 622 F.3d 697 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jacobs v. City of Chicago*, 2015 WL 231792 (N.D. Ill. Jan. 16, 2015).. . . . . . . . . . . . . . . . . . 15

*Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854 (7th Cir. 1994). . . . . . . . . . . . . . . . . 11, 12

*Kalven v. City of Chicago*, 2014 IL App (1st) 121846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Martinez v. City of Chicago*, 2012 WL 1655953 (N.D. Ill. May 10, 2012).. . . . . . . . . . . . . 11, 13

*Padilla v. City of Chicago*, 2009 WL 25011393 (N.D. Ill. Aug. 14, 2009).. . . . . . . . . . . . . . . . 15

*People v. Harvey*, 813 N.E.2d 181 (Ill. App. Ct. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*People v. Johnson*, 803 N.E.2d 405 (Ill. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*People v. McDaniel*, 762 N.E.2d 1086 (2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*People v. Murray*, 626 N.E.2d 1140 (Ill. App. Ct. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*People v. Prince*, 681 N.E.2d 948 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*People v. Shelton*, 636 N.E.2d 675 (Ill. App. Ct. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*People v. Wallace*, 701 N.E.2d 87 (Ill. App. Ct. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*People v. West*, 636 N.E.2d 948 (Ill. App. Ct. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*People v. Wright*, 2013 IL App (1st) 103052-U.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 3d 758 (N.D. Ill. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rangel v. City of Chicago*, 2010 WL 369991 (N.D. Ill. Sept. 13, 2010). . . . . . . . . . . . . . . . . . . 14

*Seaton v. Kato*, 1995 WL 88956 (N.D. Ill. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Stern v. Wheaton-Warrenville Community Unit Sch. Dist. 200*, 233 Ill.2d 396 (2009). . . . . . . . . 13

*Steward v. Summerville*, 1992 WL 300986 (N.D. Ill. 1992). . . . . . . . . . . . . . . . . . . . . . . 7, 8, 12

*Union Oil Co. of California v. Leavell*, 220 F.3d 562 (7th Cir. 2000). . . . . . . . . . . . . . . . 12, 16

*United States v. Foster*, 564 F.3d 852 (7th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wiggins v. Burge*, 173 F.R.D. 226 (N.D. Ill. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## INTRODUCTION

One week ago, the City dropped a bombshell: in 2002, an anonymous Chicago police detective complained to the City that Defendant Kato beat Mr. Chatman and coerced him to falsely confess to raping Susan Riggio. Exhibit 1 (City Def CC 012448).[1] The allegations included this quote: "Kato stated that 'they wanted someone to be accountable, so I gave them someone. He's homeless anyway, at least now (laughingly) he'll get three meals a day. That's my contribution to help feed the homeless.'" *Id.* The complaint was lodged with the City's Office of Professional Standards ("OPS"), which sat on the complaint for two years while Mr. Chatman's criminal trial was pending, and after his conviction, proceeded to conduct a sham investigation. Then, when Mr. Chatman confirmed that Defendant Kato had beaten him into confessing, the City simply dismissed the complaint without interviewing Kato or taking any step to try to identify the anonymous detective.[2] Mr. Chatman never learned that there was a contemporaneous outcry that corroborated his claims until thirteen years later, after he had spent eleven and a half of those years wrongfully incarcerated.

This is a huge factual development that fundamentally changes the course of this litigation. So many questions are raised by this belated production that it is difficult to know where even to begin, starting with: why are these documents—which clearly constitute *Brady*

---

[1] The exhibits have been filed with Plaintiff's Motion for Extension of Discovery, Expedited Discovery Responses Relating to Late-Disclosed *Brady* Material, and Removal of Confidentiality Designation on CR # 296034, which has been noticed before Judge Lee. Rather than cluttering the docket by filing the same exhibits twice, Plaintiff incorporates them by reference herein and will submit a separate courtesy copy of all the exhibits to Magistrate Judge Valdez.

[2] Tellingly, Mr. Chatman and the anonymous complainant both named Defendant Kato as the abuser, despite the fact that Kato's name does not appear on Mr. Chatman's police reports. There is no explanation for why Mr. Chatman and the anonymous abuser would both point the finger at someone not on the paperwork unless Defendant Kato was indeed the detective who abused Plaintiff.

1

material—only being produced now, years after Mr. Chatman's criminal trial and at the close of fact discovery in this case?[3]

## FACTUAL BACKGROUND

Just two days after Plaintiff's confession was fabricated by Defendant Kato and other Defendant Officers, a Chicago police detective tried to blow the whistle on Defendant Kato's successful effort to get Plaintiff to falsely confess. The detective submitted a complaint via interdepartmental mail to OPS, the Department's then-existing division in charge of investigating complaints of excessive force against police officers. The entire complaint is reproduced here verbatim:

TO:        Internal Affairs
           Office of Professional Standards/Melissa Willis

FROM:      Anonymous Officer/Detective

RE:        Misconduct

DATE:      May 27, 2002

I would like to remain anonymous. I too am an officer/detective at the 11th District Harrison/Kedzie Station, so it would not be in my best interests to reveal my identity. Majority of the officers and detectives are knowledgeable about Detective Kato's brutality towards suspects held in custody. The complaints alleged against Kato are numerous, however, what I am about to tell you is not a district norm.

On or about May 25, 2002, Detective Kato beat a suspect into signing a confession. The suspect is homeless and was apprehended for the assault/rape of a woman in the Daley Center. The suspect denied the rape and said he was no way near the Daley Center. Detective Kato hit the suspect and shouted "tell me you did it!" The homeless suspect said one last time "did what? I didn't do nothing. I don't, don't, don't know what you are talking about." Detective Kato hit the suspect with such a blow that last time that the suspect groaned from sheer pain and doubled over grasping for air. That blow I thought would kill him for sure.

---

[3] Notably, Defendants strenuously fought the addition of Kato as a defendant in this case, *see* Dkt. 193 (Response in Opposition to Plaintiff's Motion for Leave to File His Amended Complaint) at 4, claiming that there was no evidence that Kato was involved in abusing Mr. Chatman, even though the City had in its possession *this entire time* this memo from the anonymous detective showing Kato's involvement.

The suspect then said "what—what—what—what do you want me to say? Kato said "I want you to say you raped that woman." By this time, Kato had the assault/rape victim's total account of the assault. Kato took the victims account of the assault, word for word and laid it out for the homeless suspect to sign. The suspect didn't even read it and didn't know what he was signing. The suspect was denied a phone call, instead Kato told the suspect "you are homeless. Who are you going to call, the other homeless people at the Gardens?

**It is a well known fact from questioning and the suspects condition that he did not commit this assault. However Kato stated that "they wanted someone to be accountable, so I gave them someone. He's homeless anyway, at least now (laughingly) he'll get three meals a day. That's my contribution to help feed the homeless."**

Exhibit 1 (emphasis added).[4] Notably, even though Defendant Kato's name does not appear on any of the police reports written by the other Defendant Officers, both Mr. Chatman and the anonymous detective levelled identical allegations that Kato coerced Mr. Chatman into falsely confessing.

Although the complaint was submitted on May 27, 2002, two days after Plaintiff's false confession, the complaint was never produced to Mr. Chatman or his defense attorney. Mr. Chatman was convicted on January 29, 2004. Following his conviction, the anonymous detective re-submitted the complaint via U.S. mail, postmarked February 19, 2004, including a copy of the original envelope used to submit the complaint via interdepartmental mail, with a one sentence cover letter:

As you can see, I initially sent the report via interoffice mail, but to no avail.

Exhibit 2 at City Def CC 012450-51.

By all appearances, the City initially buried the complaint and conducted no investigation until the anonymous detective re-submitted the complaint immediately after Mr. Chatman was convicted. The City's 2004 investigation of the anonymous detective's complaint was a shameful farce. The investigation consisted of interviewing Mr. Chatman and no one else (not even

---

[4] The entire CR file is attached as Exhibit 2.

Defendant Kato, the accused officer) before denying the complaint as unfounded. *See id.* at City Def CC 012442-44, 012531. No recorded effort was made to identify the anonymous complainant.[5]

The City did question Mr. Chatman, who spoke to an investigator freely and willingly without his attorney present. *See id.* at City Def CC 012461-64. Mr. Chatman told the investigator that "a Chinese looking officer" interrogated him, and that "I think they called him Officer Kato. I think it was a nickname. I don't know his name." *Id.* at City Def CC 012463. Mr. Chatman went on to report that "[t]he Chinese Officer said I know you are the one, I am going to beat your butt. Then he hit me on my left side of my temple. … He only hit me once and I told him that I did it because I thought he would keep hitting me if I did not tell him I did it." *Id.* at City Def CC 012463-64. Mr. Chatman maintained that the Chinese-looking officer fed him details of the crime and that he was innocent of the offense.[6] *Id.* at City Def C 012464.

Armed with Mr. Chatman's corroboration of the anonymous detective's allegations, the City stalled the investigation. Rather than try to find the anonymous detective, the City thrice sought more time to investigate in order to "positively" identify the accused officer (although Defendant Kato was already identified by name) and sought two more extensions to question Defendant Kato. *See id.* at City Def CC 012512, 012530.

Nevertheless, inexplicably, and without any documented explanation, the City never questioned Defendant Kato about the allegations. *See id.* at City Def CC 012531. Not a single

---

[5] Mr. Chatman's interrogation lasted over 24 hours, spanning all three shifts of detectives assigned to Area 4. The attendance and assignment sheets that were obtained (which the City previously represented were destroyed in response to Mr. Chatman's specific discovery request), confirm that Defendant Kato was present for duty the night of Plaintiff's interrogation. *See* Exhibit 2 at City Def CC 012514.

[6] Mr. Chatman's account is consistent with his account that he reported to a psychiatrist who performed a fitness examination on him prior to trial. *See* Exhibit 3 (Dr. Pan's report dated January 16, 2003) at Plaintiff 022332.

other potential witness was interviewed, including any other detectives who investigated the case or any of the detectives who were on duty. *See* Exhibit 2.

Rather, the City deemed the complaint "unfounded" based on the following reasoning:

Other than a letter from an anonymous person and Chatman's statement, there is no evidence to support the allegation. Whereas the letter states that the homeless man endured a "beating," Chatman himself stated that he was struck one time on the head and did not sustain any injuries. There are no medical records or photographs that support an allegation that Chatman was "beaten." Furthermore, the alleged incident occurred on 25 MAY 02 and this complaint was not initiated until 23 FEB 04. Until the OPS questioned Chatman about his arrest, no allegation of excessive force had surfaced. Most important, Det. Kato's name does not appear in any of the Department reports relative to Chatman's arrest. Based on this evidence, the allegation against Detective Kato is UNFOUNDED and no further Department reports are required in accordance with General Order 93-3-3.

Exhibit 2 at City Def CC 012444.[7]

There are numerous problems with the City's conclusion. To begin, the City claimed "no allegation of excessive force had surfaced" before questioning Mr. Chatman, but Plaintiff had long alleged that his confession was the product of physical abuse. He reported his allegations to the psychiatrist who performed his fitness evaluation on January 16, 2003, *see* Exhibit 3, and filed a motion to suppress his confession on that basis. Group Exhibit 4 (Chatman's motion to suppress confession, Plaintiff 005487-88; Tr. of May 2, 2003 hearing reflecting filing of motion to suppress, Plaintiff 008690-94). Rather than use these prior reports as further corroboration, the City falsely claimed that Mr. Chatman had never claimed physical abuse before his conviction.

Next, the City relied on the fact that Defendant Kato's name did not appear on the paperwork as a basis to conclude he committed no wrongdoing. But the City fails to explain why

---

[7] According to OPS, "an allegation is determined to be 'unfounded' if a preponderance of the evidence shows that the alleged misconduct did not occur." *See* Chicago Police Department's 2004 annual report at 43, available at https://portal.chicagopolice.org/portal/page/portal/ClearPath/News/Statistical%20Reports/Annual%20Reports/04AR.pdf, last visited on June 14, 2015.

two independent people would both accuse a detective whose name does not appear on the police reports of misconduct. If a false allegation was made, it stands to reason that the complaint would be lodged against one of the detectives whose name is listed on the reports, so as to deprive the accused officer of being able to claim that he did not even work on the case. Indeed, there is no incentive to falsely accuse a random detective unconnected to the investigation of excessive force. The City never took this reasoning into account.

The City also denied the complaint based in part on the fact that the anonymous complaint was supposedly made almost two years after the abuse occurred. Bizarrely, the City does not mention the fact that the complaint was first raised via interdepartmental mail *two days* after Mr. Chatman's false confession. There is no reference to any investigation conducted to learn why the initial complaint was ignored, whether Melissa Willis (the addressee of the interdepartmental envelope used to first lodge the complaint, *see* Exhibit 2 at City Def CC 012451) indeed received the anonymous memo, or any of the circumstances surrounding the May 27, 2002 submission. Rather, the City pretended the initial complaint was never made and used this fabrication as a further basis to deny the complaint.

Curiously, the City claimed that additional evidence (apart from Mr. Chatman's statement and the anonymous detective's memo) was required before any additional investigation was necessary. In support, the City alleged that Mr. Chatman and the anonymous detective gave conflicting accounts. But their accounts are strikingly similar. Mr. Chatman said he was hit by Defendant Kato so hard he "went numb for about a minute." *See id.* at City Def CC 012463. The detective claimed that "Detective Kato hit the suspect with such a blow [the] last time that the suspect groaned from sheer pain and doubled over [gasping] for air." Exhibit 1. They both alleged that Kato coached Mr. Chatman on what to say in his confession and that Mr.

Chatman was innocent. *Id.*; Exhibit 2 at City Def CC 012464. Any objective viewer of the evidence would conclude that the two statements are describing the same exact event.

Even more egregious is the fact that the City ignored Defendant Kato's long and well-documented history of committing the exact same type of misconduct. By 2004, the City had "investigated" twenty-three (23) prior allegations that Defendant Kato had physically abused suspects during interrogations. Every single allegation against Defendant Kato was denied by the City. *See* Appendix A, listing each of these allegations.

Indeed, every single one of the 54 complaints in total lodged with the City concerning Defendant Kato's malfeasance was denied, including all of the total 40 complaints alleging that Defendant Kato used excessive force.

Furthermore, prior to 2004, Defendant Kato had been the subject of numerous media reports regarding his reputation for using violence in interrogations. *See* Exhibit 5 (Steve Bogira, *Good Cop, Bad Cop: What is it about Detective Kriston Kato that makes murder suspects so eager to confess?*, CHICAGO READER, Dec. 12, 1991); Exhibit 6 (Anne Keegan, *Under Siege: Kris Kato Gets Results As A Homicide Detective, And Murder Suspects Say It's Because He Brutalizes Them But Is He Getting A Bum Rap?*, CHICAGO TRIBUNE, Feb. 4, 1993); Exhibit 7 (David Jackson, *Fine Line Between Tough Police Work, Brutality*, CHICAGO TRIBUNE, July 14, 1991); Exhibit 8 (Maurice Possley, *Murder conviction of teen overturned*, CHICAGO TRIBUNE, May 31, 2001); Exhibit 9 (Ken Armstrong, Maurice Possley, and Steve Mills, *Officers ignore laws set up to guard kids*, CHICAGO TRIBUNE, Dec. 18, 2001); Exhibit 10 (Joseph Omoremi, *Law school champions clemency plea for inmate*, CHICAGO DEFENDER, Apr. 8, 2002).

Numerous published court opinions documented additional allegations against Defendant Kato. *See Steward v. Summerville*, 1992 WL 300986 (N.D. Ill. 1992); *People v. Murray*, 626

N.E.2d 1140 (Ill. App. Ct. 1993); *People v. Shelton*, 636 N.E.2d 675 (Ill. App. Ct. 1993); *People v. West*, 636 N.E.2d 948 (Ill. App. Ct. 1994); *People v. Prince*, 681 N.E.2d 948 (1994); *Seaton v. Kato*, 1995 WL 88956 (N.D. Ill. 1995); *People v. Wallace*, 701 N.E.2d 87 (Ill. App. Ct. 1998); *People v. McDaniel*, 762 N.E.2d 1086 (2001); *People v. Harvey*, 813 N.E.2d 181 (Ill. App. Ct. 2004); *People v. Johnson*, 803 N.E.2d 405 (Ill. 2004); *People v. Wright*, 2013 IL App (1st) 103052-U.

Many of these cases involved individuals who were juveniles or suffered from cognitive difficulties, like Mr. Chatman. *See, e.g., Wright*, 2013 IL App (1st) 103052-U, ¶ 45; *McDaniel*, 762 N.E.2d. at 1087; *Wallace*, 701 N.E.2d at 90-91. And, in several cases—as in this case—there was no other evidence besides a confession tying the criminal defendant to the crime. Importantly, despite existing confessions obtained by Kato, at least five different men were either acquitted at trial or had their convictions later overturned. *See Seaton*, 1995 WL 88956, *2; *Wallace v. City of Chicago*, 440 F.3d 421, 422 (7th Cir. 2006); *Steward*, 1992 WL 300986, at *1; Exhibit 5 at 23-24, 29 (describing cases of Angelo Rogers and Michael Waslewski, respectively). These included the case of Michael Waslewski, whom Defendant Kato was somehow able to convince to confess to committing a crime with another man—despite the fact that the other man turned out to have been incarcerated at the time of the confession.[8] Exhibit 5

---

[8] Mr. Waslewski complained to the City about his mistreatment at the hands of Defendant Kato. Although a media report documents that Mr. Waslewski's father made a complaint to OPS the next day, *see* Exhibit 5 at 29, the City has not produced that complaint in this litigation, although the City agreed to produce all of the complaints lodged against Kato. Accordingly, Plaintiff does not yet know the full extent of Defendant Kato's history of misconduct.

at 29. None of these prior allegations were referenced by the City in its dismissal of the

complaint against Defendant Kato.[9]

No mention of the anonymous detective or his or her complaint was made to Mr.

Chatman until June 4, 2015, thirteen years after the complaint was lodged.

## ARGUMENT

### I.    LR 37.2 Compliance

When it produced CR # 296034 on June 4, 2015, the Defendant City designated all of the

documents in it confidential. On June 8, 2015, counsel for Plaintiff sent counsel for Defendants a

letter challenging the confidentiality designation, proposing to extend discovery, and seeking

expedited responses to Plaintiff's discovery requests relating to the late-disclosed documents. *See*

Exhibit 13 (Ainsworth letter dated June 8, 2015). Given the time-sensitive nature of these issues

and the fast-approaching discovery deadline, Plaintiff asked for a response by June 9, 2015. *Id.*

Defendants did not respond. Plaintiff sent a follow-up e-mail on June 9, 2015. Exhibit 14

(Ainsworth e-mail dated June 9, 2015). Defendant Kato's counsel responded that she did not

"see what the urgency is with respect to this issue," and refused to provide specific bases for

keeping CR # 296034 confidential, as required by the Agreed Confidentiality Order. Exhibit 15

(Stalf e-mail dated June 10, 2015); Dkt. 118 ¶ 9(a). In compliance with the meet-and-confer

provisions of the Agreed Confidentiality Order, Plaintiff set forth (again) his specific reasons

why CR # 296034 should not be confidential and (again) asked Defendant Kato for his bases for

confidentiality. Exhibit 16 (Ainsworth e-mail dated June 10, 2015).

---

[9] The City's failure to consider past allegations when considering whether disciplinary action is warranted remains a problem to this day. *See* Exhibit 11 at 2 (Jeremy Gorner and Geoffrey Hing, *Tribune analysis: Cops who pile up complaints routinely escape discipline*, CHICAGO TRIBUNE, June 13, 2015) ("Spokesmen for the Police Department and the Independent Police Review Authority both … defended not considering an officer's complaint history when investigating a new complaint, saying it would be unfair to take into account past accusations in which officers had been cleared of wrongdoing.").

Instead of responding, Defendant Kato asked for an extension until June 12 to determine why the file should be confidential. *See* Exhibit 17 (Stalf's second e-mail dated June 10, 2015). This was a ruse. Rather than respond to Plaintiff's request, Defendant Kato instead used the additional time to draft a motion for protective order which he sought leave to file under seal on June 12 seeking to have CR # 296034 remain confidential, knowing that Plaintiff could not file his own motion until Defendant responded. *See* Dkt. No. 223.

Despite Plaintiff's attempts to confer, none of the other Defendants[10] have responded to Plaintiff's proposal to extend discovery for the purpose of investigating CR # 296034, his request for expedited responses to written discovery on CR # 296034, or his request to remove the confidentiality designation on the CR.

## II.     The Independent Corroboration of Plaintiff's Central Allegation in This Case Contained in CR # 296034 Should Not Be Kept Secret

The agreed confidentiality order in this case provides that a party may designate as confidential information that falls into certain specified categories. *See* Dkt. 118 (Agreed Confidentiality Order) at ¶ 2. The CR file at issue here does not fall into any of these categories, including "(a) information prohibited from disclosure by statute." *Id.* Furthermore, the protective order provides that "[i]nformation or documents that are available to the public may not be designated as Confidential Information." *Id.* Defendant Kato has made no attempt to justify a confidential designation for the entire CR file with reference to any of the categories listed in the Agreed Confidentiality Order.[11]

---

[10] The State's Attorney Office Defendants have indicated that they take no position either way on whether CR # 296034 should be confidential.

[11] Defendant Kato has suggested that he intends to rely heavily on keeping the source of the memo unidentified, and that he will use that as a basis for pressing the court to bar this evidence. Obviously, Plaintiff—and anyone seeking to find out the truth in this matter—has the opposite motivation, but Plaintiff will explain at the appropriate time why the evidence in CR # 296034 is admissible even if the source of the memo remains unidentified.

As the party who asserts that the CR file should be confidential, Defendant Kato has the burden of persuasion. *See id.* ¶ 9(b). And, under Rule 26(c), Defendants must show "good cause" for keeping CR # 296034 confidential. Fed. R. Civ. P. 26(c)(1); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Nat'l Lumber Co.*, 2012 WL 2863478, at *2 (N.D. Ill. July 11, 2012) (the moving party bears the burden of showing good cause for a protective order) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)); *accord Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 3d 758, 762 (N.D. Ill. 2010). In deciding whether good cause exists to keep the entire CR file at issue here confidential, the court must "balance the interests involved: the harm to the party seeking the protective order and the importance of the disclosure to the public." *Martinez v. City of Chicago*, 2012 WL 1655953, at *1 (N.D. Ill. May 10, 2012) (quoting *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (internal quotation marks omitted)). The only harm that Defendant Kato has asserted as justification for keeping CR # 296034 secret is potential damage to his reputation.

But this potential harm could hardly be a justification for keeping CR # 296034 confidential for several reasons: First, this CR concerns the very same allegation of use of force to coerce a false confession that Mr. Chatman has already publicly alleged in this lawsuit against Defendant Kato. Mr. Chatman's public allegation against Kato and the allegation of the anonymous detective are the same. There could be no reputational harm to Defendant Kato from public revelation of a CR concerning a complaint that Mr. Chatman has already himself alleged publicly. Thus, disclosure of this CR to persons outside of this litigation is entirely different from disclosure of unrelated CRs concerning other individuals who have accused Kato of excessive

force during interrogations, when those CRs were not publicly aired.[12] The only reason that Kato does not want this CR disclosed is because it provides independent corroboration of Mr. Chatman's allegation, and because it is embarrassing that the City hid this material, exculpatory evidence until 11 years after Mr. Chatman's conviction.

Second, there is already a long history of very public allegations against Defendant Kato of use of force to coerce confessions from suspects. *See* Exhibits 5-11; Appendix A; *Steward*, 1992 WL 300986; *Murray*, 626 N.E.2d 1140; *Shelton*, 636 N.E.2d 675; *West*, 636 N.E.2d 948; *Prince*, 681 N.E.2d 948; *Seaton*, 1995 WL 88956; *Wallace*, 701 N.E.2d 87; *McDaniel*, 762 N.E.2d 1086; *Harvey*, 813 N.E.2d 181; *Johnson*, 803 N.E.2d 405; *Wright*, 2013 IL App (1st) 103052-U. Defendant Kato has publicly denied these allegations.

Thus, Defendant Kato cannot meet his burden of showing "good cause" here. There is no statutory or other basis for keeping the CR file confidential, and "[a]bsent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." *Jepson, Inc.*, 30 F.3d at 858; *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (portions of discovery that are filed with the court must eventually be released). It is well-established that "[j]udicial proceedings are public rather than private property, and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible." *Leavell*, 220 F.3d at 568; *see also Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546-47 (7th Cir. 2002). As the Seventh Circuit stated in *United States v. Foster*, 564 F.3d 852, 854 (7th Cir. 2009):

> Information that affects the disposition of litigation belongs in the public records unless a statute of privilege justifies nondisclosure. … both *Baxter International* and *Union Oil*

---

[12] In any event, Defendant Kato has explicitly stated in his motion for protective order that he *is not* seeking confidentiality for any of his other CR files. However, given that the City designated them confidential and has not agreed to lift that designation, Plaintiff has filed those CRs as exhibits under seal, pending resolution of the confidentiality issue.

disapproved any general 'privacy' rationale for keeping documents confidential. Statutes, yes; privileges, yes; trade secrets, yes; risk that disclosure would lead to retaliation against an informant, yes; trade secrets, yes; a witness's or litigant's preference for secrecy, no. The law could not be clearer.

In analyzing whether Kato has demonstrated "good cause" for keeping CR # 296034 confidential, the availability of the CR to the public under Illinois FOIA ("IFOIA") is a relevant factor. Under Illinois law, CR files are not exempt from disclosure under IFOIA, and thus there is no statutory prohibition on disclosure that would otherwise apply. *Kalven v. City of Chicago*, 2014 IL App (1st) 121846 at ¶¶ 14, 22 (citing 5 ILCS 140/7(1)(n) and holding that 7(1)(n) does not exempt CR files). *Kalven* definitively held that CR files are subject to public inspection, and the Agreed Confidentiality Order provides that information available to the public cannot be deemed confidential. Dkt. 118 ¶ 2.

Although IFOIA does not control this Court's determination of whether "good cause" for keeping CR files confidential has been shown under Rule 26(c), "district courts have looked to IFOIA for guidance when determining whether a party has demonstrated good cause to issue a protective order." *Martinez*, 2012 WL 1655953, at *1. Moreover, the guidance that IFOIA provides is that "[t]he disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy." 5 ILCS § 140/7(c); *see also Gekas v. Williamson*, 912 N.E.2d 347, 356 (Ill. App. Ct. 2009) ("What [an officer] does in his capacity as a deputy sheriff is not his private business. Whether he used excessive force or otherwise committed misconduct during an investigation or arrest is not his private business. Internal-affairs files that scrutinize what a police officer did by the authority of his or her badge do not have the personal connotations of an employment application, a tax form, or a request for medical leave."); *Stern v. Wheaton-Warrenville Community Unit Sch. Dist. 200*, 233 Ill.2d 396 (2009) (holding that "the disclosure of information that bears on the public duties

13

of public employees shall *not* be considered an invasion of personal privacy"). Defendant Kato simply has no privacy interest in the way that he carried out his official duties as a police officer when he used force to coerce Mr. Chatman into falsely confessing to a crime that he did not commit.

In *Henry v. Centeno*, 2011 WL 3796749 (N.D. Ill. Aug. 23, 2011), the court found this reasoning clear and persuasive in holding that the public's interest in transparency outweighs the officers' privacy interest: "Where the information at issue relates solely to the public duties of a public employee … the claim to that privacy interest is far more tenuous." *Id.* at *5; *see also Rangel v. City of Chicago*, 2010 WL 369991, at *4 (N.D. Ill. Sept. 13, 2010) ("[p]olice officers are public employees, paid by the taxpayers. … Information contained in CR complaints and disciplinary histories, though personal, has a distinct public character, as it relates to the defendant officers' performance of their official duties. Without such information, the public would be unable to supervise the individuals and institutions it has entrusted with the extraordinary authority to arrest and detain persons against their will. With so much at stake, defendants simply cannot be permitted to operate in secrecy.").

Not only does the public have a right to know about the anonymous detective's memo concerning Kato's on-duty conduct, but it has a right to know about the shoddy nature of the City's investigation of this allegation. The reasoning of the Illinois appellate court in *Gekas* bears heavily on the facts surrounding the City's complete failure to investigate CR # 296034:

> [C]itizens might want to see whether the Division is performing a fair and objective investigation of complaints. They might want to see whether complaints that the Division determined to be unfounded are really unfounded. Obviously, citizens cannot perform this critique (which section 1 [of IFOIA] calls nothing less than the people's "duty") if so-called "unfounded" complaints are exempt from disclosure for the tautological reason that the public body decided they were unfounded.

14

*Gekas*, 912 N.E.2d at 357-58. Here, the taxpayers have a right to know whether the City performed a fair and objective investigation of a detective's complaint that Detective Kato beat Carl Chatman into falsely confessing to the alleged rape of Susan Riggio.

Numerous courts in this district (both before and after *Kalven*) have held that entire CR files should not be deemed confidential. *Jacobs v. City of Chicago*, 2015 WL 231792, *2 (N.D. Ill. Jan. 16, 2015);[13] Exhibit 18, *Anderson v. Ward*, No. 13 CV 9056, Dkt. No. 47 (July 10, 2014) (holding that defendant officers could not show good cause for entry of a confidentiality order protecting the CR files because the files are subject to public inspection by any member of the public); Exhibit 19, *Kuri v. Szwedo, et al.*, No. 13 CV 1653, Dkt. No. 77 at 3-4 (June 11, 2014) (same); *Rangel*, 2010 WL 369991, at *3-4 (N.D. Ill. Sept. 13, 2010); *Padilla v. City of Chicago*, 2009 WL 25011393, at *1 (N.D. Ill. Aug. 14, 2009); *see also Bond v. Utreras*, 2007 WL 2003085, at *3 (N.D. Ill. July 2, 2007) (observing that the general public is "sophisticated enough" to understand that allegations of abuse do not constitute actual proof of abuse), rev'd on other grounds, 585 F.3d 1061 (7th Cir. 2009). The cases cited by Defendant Kato holding otherwise were decided prior to *Kalven*.

Defendant Kato argues that the complaint should not be believed, and that this somehow provides a basis for keeping it a secret. He cites no case law, rule or statute for this proposition, however, and for the reasons discussed above, Mr. Chatman's account of Kato's use

---

[13] Defendant Kato cites to *Jacobs*, but this case specifically rejected the argument that entire CR files may be deemed confidential, especially after *Kalven*. *Jacobs* entered a protective order which allowed for public release of redacted CR documents. The redactions permitted had to do with the identities of third-party witnesses whose statements were included in the CR files and personal, private information. *See Jacobs*, 2015 WL 231792, at *2-3. Here, there is no issue with the redaction of the identity of a complaining witness because the complainant's identity is anonymous to begin with. Plaintiff has no objection to redactions of Social Security numbers, dates of birth, phone numbers, and similar private information.

of force on him and the anonymous detective's account are very similar. *Compare* Exhibit 1 *with* Exhibit 2 at City Def CC 012462-64.

And finally, Plaintiff has a First Amendment right to disseminate the CR file at issue here. In *Henry*, the court explained that "when considering whether it is appropriate to enter a protective order preventing the public disclosure of information obtained through the course of discovery, the interest at issue is the litigant's First Amendment right to disseminate that information and under what circumstances that right may be restrained." 2011 WL 3796749, at *2 (internal citations omitted). The court framed the question this way:

> The question before the court in ruling on this proposed protective order, then, is not the FOIA-conferred right of 'merely curious members of the public' to access certain information, but rather a litigant's (albeit limited) First Amendment right to disseminate information properly obtained through pre-trial discovery. The court must take care not to conflate rules regarding a universal 'public right to know' with rules regarding a litigant's right to disseminate. … That a FOIA exemption may curtail the general right of access to information that FOIA otherwise bestows upon the public does not necessarily restrain an individual's right to share the same information obtained by other means.

*Id.* at *3.[14] The court held that the litigant's First Amendment right to disseminate CR files obtained in discovery outweighed any privacy interest the defendant officers had in the CR files, insofar as the files contained information relating only to their public duties. *Id.* at *6. Absent

---

[14] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), is not to the contrary. In that case, the party seeking to disseminate discovery materials was able to obtain them only due to discovery in that litigation. *Id.* at 32. Here, the CRs are not exempt from disclosure under IFOIA. Furthermore, unlike the scenario over which the Court expressed concern in *Seattle Times*, the information here is not "unrelated, or only tangentially related, to the underlying cause of action," *id.* at 33. The complaint in CR # 296034 is directly related to Plaintiff's central claim of being physically coerced by Defendant Kato into giving a false confession in this case. And finally, the anonymous detective's memo and the CR file are the basis of this motion for extension of discovery, expedited discovery responses, and leave to identify additional Defendants. Plaintiff seeks to file CR # 296034 publicly, without redaction, and they would form the basis of the Court's decision on whether the motion for extension and other relief should be granted. Thus, it is not "unfiled discovery," but documents that form part of the basis of judicial decisionmaking in this case. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("[d]ocuments that affect the disposition of federal litigation are presumptively open to public view … unless a statute, rule, or privilege justifies confidentiality."); *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (this transparency "enable[s] interested members of the public … to know who's using the courts, to understand judicial decisions, and to monitor the judiciary's performance of its duties."); *see also Leavell*, 220 F.3d at 568.

16

action by this Court, Mr. Chatman would be prohibited from publicly discussing the revelation

that the City knew about his wrongful conviction but stood idly by and let it occur. Such a result

would be unjust.

In sum, the balance of interests clearly weighs in favor of openness. Defendant Kato has

no privacy interest in the way that he performs his official duties; he already has a reputation for

brutality that has been made public in numerous media reports and published court opinions; the

public has a right to know how the City investigated (or didn't investigate) the anonymous

detective's complaint against Kato and the fact that the City withheld material, exculpatory

evidence until long after Mr. Chatman's conviction; the public has a right to know that, despite

23 complaints of Kato using excessive force during interrogations against suspects over a period

of 15 years, the City did not sustain a single one of them and hid the complaint from one of its

own officers about Kato's use of force on Mr. Chatman in this case; and Mr. Chatman has a First

Amendment right to disseminate CR # 296034.

**CONCLUSION**

For the reasons explained above, Plaintiff requests that the confidentiality designation on

CR # 296034 be removed.

Respectfully submitted,

/s/ Elizabeth Wang

Arthur Loevy                              Elizabeth Wang
Jon Loevy                                  LOEVY & LOEVY
Russell Ainsworth                   2060 Broadway, Ste. 460
LOEVY & LOEVY                 Boulder, CO 80302
312 N. May St., Ste. 100         (720) 328-5642
Chicago, IL 60607
(312) 243-5900
*Counsel for Plaintiff*

17
