CONFIDENTIAL

# FORENSIC CLINICAL SERVICES
## PSYCHIATRIC SUMMARY

NAME  Carl Chatman          DATE  1-16-03          CHART NO. 0201274

<u>IDENTIFYING INFORMATION</u>:  Mr. Carl Chatman is a forty-seven year old, African-American male, who is charged with aggravated criminal sexual assault.  He was referred to Forensic Clinical Services for evaluation of his fitness to stand trial, mental state at the time of the alleged offense, and ability to understand his rights under Miranda.  The defendant is currently in custody at the Cook County Jail.

<u>RECORDS REVIEWED</u>:

1.  In his psychiatric summary (9-19-02), Haidari Shikari, M.D., diagnosed the defendant with Alcohol Dependence (in remission in a controlled environment), and rule out Schizophrenia.  Dr. Shikari opined that the defendant was fit to stand trial with medication.  He deferred his opinions regarding the two latter issues, pending the receipt of additional collateral information.

2.  Treatment records from Chicago Read Mental Health Center were reviewed:

    Discharge/Transfer Summary indicates the defendant was admitted 1-4-86, and discharged 1-8-86.  The client signed himself in voluntarily.  "According to him, he was 'raping women and the police had not caught him—says he feels like killing because they wont have sex with him.'  He says he is Superman…When he talked to the doctor on the unit, he was 'playing with some women, he grabbed her hands, and told them to bring him to the hospital.'  He denied raping them."  Appropriate appearance, auditory hallucinations, and suspiciousness were noted upon admission. Psychiatric Examination and Preliminary Treatment Plan (1-4-86) by Dr. Justiniano noted that the defendant was inebriated upon admission.  Discharge diagnosis was of subchronic undifferentiated schizophrenia.

    Discharge/Transfer Summary indicates the defendant was admitted 11-5-83 and discharged 11-10-83.  The defendant was described as follows: "He has a long history of psychiatric admissions.  Client was hostile at intake, uncooperative, and incoherent.  His answers were illogical to all questions and irrelevant to his admission.  On the unit, he was verbally abusive, agitated and confused.  He was also delusional."  Mother reported the defendant had a drug and alcohol problem.  Final diagnoses were of alcohol hallucinosis, and residual schizophrenia.

    Discharge/Transfer Summary indicates the defendant was admitted 10-27-83 and discharged 10-28-83.  Defendant presented upon transfer from Loretto Hospital, "stating someone was after him, and, talking of killing other people.  He is actively hallucinating at intake."  Defendant was described as intoxicated upon admission.  Final diagnoses were of alcohol hallucinoses and residual schizophrenia.  Psychiatric evaluation by Claudio Castro, M.D. (10-23-83) noted the defendant's blood alcohol level was 296 upon admission.

    Discharge summary indicates the defendant was readmitted 6-18-81 and discharged 6-20-81, after a complaint "that someone was chasing someone with an automobile



EXHIBIT
4
4-1-15

EXHIBIT 3          Plaintiff 022326

CONFIDENTIAL

## FORENSIC CLINICAL SERVICES
### PSYCHIATRIC SUMMARY

NAME Carl Chatman      DATE 1-16-03      CHART NO. 0201274

jack." Defendant was " in a highly intoxicated state" and the final diagnosis was of acute alcohol intoxication.

Discharge summary indicates defendant was admitted 5-31-81 and discharged 6-15-81, secondary to a suicide attempt via overdose of valium. Final diagnoses was of alcohol abuse, mixed substance abuse, and paranoid schizophrenia.

Discharge summary indicates the defendant was admitted 11-14-74 and discharged 2-10-75. Final diagnoses were of "drug dependence, cocaine, with inadequate personality."

Discharge summary indicates the defendant was admitted 10-10-74 and discharged 10-31-74. "He was brought because of drug abuse and exposing himself in public and threatening family members." Final diagnoses was of alcohol and drug addiction with sociopathic tendencies.

Defendant was admitted 10-9-74 and discharged 10-10-74, "after he had 'threatened to kill family members, exposing himself in public and attempting to molest his fourteen year old sister.'" Final diagnosis was of alcohol and drug addiction, with sociopathic tendencies.

3.  In a Clinical Social Work Evaluation (8-21-02) by Janine Bostick, LCSW, the defendant's mother, Mamie Jackson, and defendant's sister, Teressa Chatman, provided information. Informants were felt to be "superficially cooperative, angry, hostile, and guarded. Coupled with that, they both presented with an agenda to present the defendant as innocent of the charge." "Mother readily noted the defendant may have 'slight problems,' but would never rape a woman. She proceeded to note, 'it's very unlikely a man turns into a rapist at his age.' If the defendant were arrested for beating an individual mother noted she would believe he committed the crime but not for sexually assaulting a woman." Defendant had been living on and off at Pacific Garden Mission for approximately three months prior to the offense. Sister stated that the defendant "was homeless by choice." The defendant was likely prescribed Depakote around the time of the offense incident, but they were uncertain if he was medication compliant. Mother cited that Dr. Doshi at Loretto Hospital was defendant's treating psychiatrist around that time. The informants were uncertain if the defendant was using alcohol or any street drugs prior to his arrest.

Mother was in contact with the defendant the Wednesday prior to his arrest (on Saturday, 5-25-02). At that time, mother had "no concerns about the defendant's level of functioning during that time and denied anything unusual or bizarre about his presentation." Informants opined that the defendant would have understood his rights under Miranda, if he were read them. "According to what the defendant

CONFIDENTIAL

# FORENSIC CLINICAL SERVICES
### PSYCHIATRIC SUMMARY

NAME Carl Chatman        DATE 1-16-03        CHART NO. 0201274

allegedly disclosed to mother, he would rather kill someone than rape a woman." Mother was aware of various psychiatric hospitalizations at Chicago Read and Loretto, but was unable to provide details regarding precipitants for admission. Mother reported observing the defendant "talking at random," but denied paranoia, hallucinations, inappropriate laughter, or depression.

The defendant sustained a head injury in the 1980's. Mother reported the defendant was suspected of having a seizure in the past. Defendant graduated from high school, attended junior college for two years, and served in the Army for three years.

4. Police investigation reports were reviewed. The alleged offense occurred 5-24-02. The victim reported that the defendant "smelt badly of body odor and unwashed clothing, and also smelled of alcoholic beverages." The victim recognized the defendant "as the same person who had been in her office on Monday May 20, 2002, and inquiring about psychiatric treatment and social security."

When first approached by the police (8:30 A.M.), defendant reported "he was coming from Daley Center to get a Rules of the Road Book because he was in court for DUI two days ago and wanted to get his license back." When defendant was interviewed at 1:30 P.M., defendant "denied being in the Daley Center on this date. However, he admitted that he was at the Daley Center on Monday, May 20 and Thursday, 23 May 2002." He reported he had been at the Daley Center to get his drivers license renewed. Later, defendant told the detective," 'I'm guilty if the lady says so.' Further, he advised the detectives and ASA Holmes that he did not mind going back to jail." Mark Pharr, Director of Security at Pacific Garden Mission, told the police that he had not seen the defendant for several months, and that he did not sign in on 5-23-02, "but it does not mean that he was not there."

The defendant's handwritten statement (5-25-02, 10:25 A.M.) was reviewed.

5. Treatment records from Loretto Hospital were reviewed:

Outpatient Medical Health Center Progress notes from August 2000 until 4-20-02, are largely indecipherable by this writer. However, it is clear that defendant was homeless, presented infrequently, and was usually prescribed Depakote and Seroquel. Mental Health Assessment (7-25-00) notes a diagnosis of paranoid schizophrenia.

Clinical Resume (5-26-99) by V. Yu, M.D., noted defendant was admitted 2-5-99 for an apparent, unwitnessed seizure. Defendant was discharged 5-26-99. Discharge diagnoses include alcohol abuse and schizoaffective disorder.

CONFIDENTIAL

## FORENSIC CLINICAL SERVICES
### PSYCHIATRIC SUMMARY

NAME Carl Chatman    DATE 1-16-03    CHART NO. 0201274

Clinical Resume (1-14-99) by V. Yu, M.D., noted the defendant was admitted 1-8-99 and discharged 1-14-99. Defendant was admitted due to altered mental status and possible seizure.

Psychiatric Evaluation and Comprehensive Treatment Plan (1-8-99) by R. Doshi, M.D., includes diagnoses of chronic undifferentiated schizophrenia and alcohol abuse. Five previous hospitalizations are reported, and "history of hallucinations, paranoid thoughts and agitation." Typical alcohol intake was "an average of a half pint to a pint of hard liquor three or four times a week."

6. Defendant's academic records indicates that he graduated 6-13-73 from John Marshall High School. He graduated 272nd in a class of 410. His grades ranges widely.

7. Treatment records from St. Elizabeth Hospital were reviewed:

Discharge summary by E. Dizon, M.D., indicated the defendant was admitted 7-15-99 and discharged 7-23-99. He was "admitted to the hospital for burn treatment. At his nursing home, he was found to be aggressive and fighting with other residents. He took another resident's cigarettes and bit her." Discharge diagnoses were of schizoaffective disorder and alcohol abuse.

Patient's history and physical examination (7-16-99): "A forty-four year old black male transferred from nursing home for violent behavior, he slapped one female resident as per transferred documents. He says that he was angry because she stole his cigarettes which she always does and nobody could fix that."

8. Treatment records from Cermak Health Services were reviewed:

Brief Primary Psychological Screening Tool (5-26-02) indicates the defendant reports that he had a "nervous breakdown" in the 1980's and was subsequently hospitalized at Chicago Read Mental Health Center. He had been prescribed Seroquel and Depakote, by Dr. Rucci at Loretto Hospital Outpatient Clinic. He last saw Dr.Rucci in April 2002. He admitted to use of alcohol, but not street drugs. His behavior was felt to be appropriate in the RCDC area.

Admission/Evaluation Form (5-26-02) noted the following on the defendant's mental status examination: "Alert, cooperative, oriented times three, hygiene-poor, eye contact---fair, speech---normal, mood---depressed. Affect---appropriate. No suicidal/homicidal ideation. No auditory/visual hallucinations. Positive looseness of associations. Positive flight of ideas. Judgment, impulse control and insight, all appear poor." Diagnostic impression was of rule out undifferentiated schizophrenia.

Progress notes on 5-26-02 noted the defendant denied hallucinations or suicidal/homicidal ideation. He was generally cooperative.

Plaintiff 022329

CONFIDENTIAL

## FORENSIC CLINICAL SERVICES
### PSYCHIATRIC SUMMARY

NAME Carl Chatman  DATE 1-16-03  CHART NO. 0201274

Incomplete psychiatric note (5-27-02) described defendant as "internally preoccupied" and, "patient is on 23/1 per security. Patient is a misogynistic—women/female staff should be cautious—male therapist." Diagnostic impression was of undifferentiated schizophrenia, alcohol dependence, and cocaine abuse. Defendant was started on Zyprexa 15 mg. at night.

Psychiatrist note (5-30-02) indicated the defendant had no complaints. He was reportedly guarded during the evaluation process, and "Staff report that patient can be heard talking to self frequently in his room. Patient denied this." On mental status examination: "Guarded (positive). No eye contact (avoids eye contact). Speech—normal rate, (illegible). Mildly increased psychomotor activity/rocking back and forth in bed. Thought processes/positive loosened of associations, positive tangential. Thought content-paranoid/persecutory ideas-(illegible) but appears internally preoccupied. No responses to questions regarding suicide and homicide. Insight/limited. Alert, but questionable orientation." The defendant's medication was increased.

Psychiatric note (5-31-02) noted the defendant "continues to be paranoid, refusing to engage in the interview process 'you're wasting my time, I don't have time for these mind games. I'm just going to sit here and say nothing, that lady is also playing mind games.' Prefers to keep to self." On mental status examination, defendant continues to be reported as "internally preoccupied," guarded, "positive persecutory ideas," with mildly hostile affect, and tangentiality.

Psychiatric note (6-5-02) described the defendant as "significantly improved from his admission-less paranoid, less guarded. Mood/effect euthymic." Defendant denied any active psychotic symptoms.

Mental Health Services Admission Assess Treatment/ Discharge Plan (5-26-02 admission date) was reviewed. Per Unit Psychologist/Intern Admission Review and Assessment (5-28-02) the defendant was living on the El and various parks prior to his arrest. He is described a poor historian. Defendant endorsed "occasional cocaine once a month 'to sterilize my body, I ain't looking for no woman, or men neither'". On mental status examination: "Patient is alert, cooperative, off by one month on orientation. He denied suicidal/homicidal ideation. He denies a history of perceptual disturbances. Speech is disjointed and illogical. Positive looseness of associations. Positive confusion, agitation at times. Patient reports he just like to 'be alone. People can't see me. I just like to enjoy the breeze.'" Psychiatrist Transcript/Transfer Summary (noting discharge 7-2-02) indicated the defendant was "paranoid, responding to internal stimuli" upon admission.

9. The defendant's criminal history report was reviewed. In addition to the instant

Plaintiff 022330

CONFIDENTIAL

# FORENSIC CLINICAL SERVICES
## PSYCHIATRIC SUMMARY

NAME Carl Chatman        DATE 1-16-03        CHART NO. 0201274

    offense, defendant has been arrested for criminal trespass to land, three counts of battery, violation of an order to protection, domestic battery, theft, criminal damage to property, possession of cannabis, and disorderly conduct.

10.    Medication profile from Cermak Health Services (1-16-03) indicates active prescriptions for Zyprexa (an antipsychotic and mood stabilizer) 20 mg. at night, and Cogentin (for side effects of antipsychotic medications) 1 mg. if needed up to twice a day.

11.    Various court documents and correspondence.

**WAIVER OF CONFIDENTIALITY:**  At the beginning of the clinical interview, I reviewed the purpose of the evaluation with the defendant. I then gave Mr. Chatman my usual advisory regarding the nontherapeutic and nonconfidential nature of the evaluation. Mr. Chatman indicated that he understood, and agreed to proceed with the interview under these conditions.

**DEFENDANT'S ACCOUNT OF THE ALLEGED OFFENSE:**  Regarding the charge against him, Mr. Chatman said "I think it was assault and rape." His recollection was this occurred, "they (the police) said on Thursday." When presented with the reported arrest date of 5-24-02, Mr. Chatman agreed that this was probably correct. Mr. Chatman denied any specific knowledge of the identity of the alleged victim. He understood that the police "claimed it (the offense) was at the Mayor Daley Center."

Mr. Chatman reported that he slept the night before his arrest at Pacific Gardens Mission. He left in the morning. He had $2 in his pocket, and bought a half pint of Seagram's Gin at Cal's Liquors. He was "standing up on Wells and Van Buren," "drinking his gin," and "talking to a black guy." He had never met this individual before, but apparently this person was also homeless, and the two were talking about Pacific Gardens Mission. At that point, the defendant was arrested. This occurred at approximately 7:30 to 8:00 A.M.

Mr. Chatman was homeless at the time of the offense incident, although sometimes living at Pacific Gardens Mission. He thought there was a staff member named "Red," who might be able to comment upon his mental state around this time. However, he could not recall any more details about this person, and thought that "Red" might not be able to provide much information, because Mr. Chatman tends to stay to himself. He last saw his psychiatrist, approximately two months before his arrest. He was prescribed Depakote and ibuprofen. He reported that he was still taking his Depakote up until the time of his arrest, and took his morning dose prior to being arrested. He denied the use of any street drugs.

Regarding his mental state, defendant reported that he was "a little depressed," because he wanted to "get back with my wife and child," and had no money. However, he denied that he was suicidal. He denied any active psychotic symptoms around the time of his arrest,

CONFIDENTIAL

## FORENSIC CLINICAL SERVICES
### PSYCHIATRIC SUMMARY

NAME Carl Chatman          DATE 1-16-03          CHART NO. 0201274

such as: hallucinations, paranoia, thought control/insertion/withdrawal, delusional or referential thinking.

ISSUES RELATED TO COMPREHENSION OF MIRANDA: Mr. Chatman recalled giving a statement. He said that "at first, I told them that I didn't do it." However, "they only believed me when I said I did it." Mr. Chatman reported that he admitted to the offense incident, because the police would not let him go and "police brutality." He complained that a "Chinese-looking" officer at the Kedzie-Harrison Station, "slapped me on the back of the head a couple of times." He denied that he was otherwise mistreated. He reported that he was allowed to use the bathroom, and given food.

Mr. Chatman's mental state at the time of his statement, was as previously described. He denied that he was drunk at that time, noting, "I was just high...I was just feeling good."

Mr. Chatman remembered he signed a written statement the day after his arrest. Although he denied that the police promised him anything if he signed the statement, he was "afraid of being beaten half to death."

Mr. Chatman was read his rights "after they carried me to the station," but not when he was taken into custody on the street. He denied that he had been arrested before, but admitted that he had been after being confronted with his rap sheet. He reported that he had never been read his rights before. However, he has seen other people being placed under arrest being advised of their rights, or such activity on television.

Off the top of his head, Mr. Chatman indicated that the police are "supposed to tell me what I'm arrested for, and you have the right to remain silent...anything you say can be used against you in a court of law." He described his right to remain silent as meaning "I could just stay quiet; I don't have to answer." Mr. Chatman denied much knowledge of what the police would do with any information given to them. When I asked him what the police were likely do with a person who admitted to committing a crime, he said, "I guess he'd arrest me then." When I asked him if the police would then tell the judge, he said, "probably," but also commented that the "police would lie a bit."

I then reviewed the Miranda Warning with the defendant, as it appears on his handwritten statement to the police. He described that his right to an attorney meant "to go to court on me on judgment day." When I asked him if a person could have a lawyer while at the police station during any questioning, he said, "Yeah, I could have ask for a lawyer." When I asked why he did not do so, he said that he did not have any money and "because I was never really no jailbird." When I asked him if a person without any money could get a lawyer, he said, "a P.D." When I asked him if someone could even retain the services of a public defender at the police station, he said, "I think you can."

Plaintiff 022332

CONFIDENTIAL

# FORENSIC CLINICAL SERVICES
### PSYCHIATRIC SUMMARY

NAME Carl Chatman      DATE 1-16-03      CHART NO. 0201274

He was not sure, but did not think that the police ever asked him if he wanted a lawyer. He also said that he did not ask for an attorney, as he "didn't have a chance," because the police kept bothering and questioning him.

Regarding the accuracy of his alleged statement, Mr. Chatman said that he did not know what was included. I then briefly paraphrased the statement to him. Mr. Chatman agreed that he had gone to the Daley Center several days prior to his arrest, "on business" to "sue J.C. Cleaners." He did not recall meeting any female employees other than the police officer stationed in the main lobby. He reported that he talked to a male employee, regarding his legal action. He denied that he slept at the Daley Center the night prior to his arrest. He categorically denied participating in the offense incident.

**ISSUES RELATED TO FITNESS TO STAND TRIAL:** As the defendant reported that he had not had a fitness hearing, I reviewed these issues with him.

Mr. Chatman reported that if found guilty of aggravated criminal sexual assault, he could receive "sixty years" in "Read Hospital" or prison. At trial, a determination would be made "is I am guilty or not guilty." If found fit to stand trial, "I just go to trial."

A defendant entering a plea of guilty is saying "that they did it." A defendant entering a plea of not guilty is saying "they didn't do it." If found not guilty, "I go home." Despite education, he never demonstrated a complete understanding of not guilty by reason of insanity, but did claim such a person would most likely be sent "to a mental hospital."

He knew that the judge would decide the verdict of guilty or innocent in a bench trial. He knew that twelve people on a jury would so in a jury trial. He described that "my lawyer" would choose between a bench and jury trial. He identified himself as the defendant in the current matter before the court. He described that the role of the state's attorney was "she proving that I'm guilty." He described that the public defender or defense attorney is "supposed to protect me." He recalled that he had a private attorney, but could not remember this individual's name. He endorsed that the judge was in charge of the courtroom and the trial proceedings, and was ultimately responsible for ensuring that he received a fair trial. He endorsed that his lawyer was responsible for making sure that the rules of law were followed during trial. With education, he understood that the judge would determine his sentence if he were found guilty.

He described that a witness was "somebody that saw you." With education, he described that in court, a witness would "point you out," but also could tell the court that a defendant had not committed a crime. He understood that he was not required to testify at his own trial. With education, he understood that a person agreeing to a plea bargain would ultimately plead guilty to something, would have a conference instead of a trial, and would receive a lighter sentence than if found guilty of the originally charges at trial.

Plaintiff 022333

CONFIDENTIAL

# FORENSIC CLINICAL SERVICES
## PSYCHIATRIC SUMMARY

NAME Carl Chatman        DATE 1-16-03        CHART NO. 0201274

**PSYCHIATRIC HISTORY:** Mr. Chatman was first referred for psychiatric treatment in approximately 1974, due to "loss of memory," "depression," and a suicide attempt via overdose. He described his psychiatric diagnosis as "schizophrenic." He has been psychiatrically hospitalized approximately half a dozen times. He recalled being medication with Depakote and Prolixin in the past.

Regarding his current medication regimen, Mr. Chatman denied any problems. He specifically denied any issues with movement disorders, over-sedation, or decreased attention/concentration. During the courts of the clinical interview, there was no evidence to suggest the defendant was suffering from any adverse side effects of his current medication regimen which would negatively impact his ability to stand trial.

Mr. Chatman began drinking alcohol at age fourteen. Just prior to his arrest, he would drink perhaps a half pint of hard liquor a week. He denied a history of blackouts or delirium tremens, but reported having an alcohol-induced seizure five to seven years ago. He has been in an alcohol rehabilitation program at St. Elizabeth Hospital. He reported that he smoked marijuana in high school.

**MEDICAL HISTORY:** Mr. Chatman endorsed some problems with his heart. He also reported a bad back, for which he takes ibuprofen. He denied any other significant physical health issues. He has no allergies.

**PSYCHOSOCIAL HISTORY:** Mr. Chatman grew in Chicago. He graduated from Marshall High School. He was never in special education programming. He also has a year of janitorial or building services training. He has been on Social Security since approximately 1974. He has been homeless for approximately twenty years, after his wife threw him out of the house. He is currently housed in Division 8 of the Cook County Jail.

**MENTAL STATUS EXAMINATION:** Mr. Chatman is a middle-aged, African-American male, who appeared his stated age. He had poor dentition, and a scar between his eye brows. His grooming and hygiene were adequate. There was no prominent psychomotor agitation or retardation. He was cooperative with the clinical interview. He was alert and oriented. His speech was fluent and non-pressured. His affect was pleasant. He described his mood as, "I feel pretty good," but "anxious to get out of here." He endorsed anhedonia, and irritability when he is rushed. He denied any disturbance of sleep, appetite, or crying spells. He denied hopelessness, racing thoughts, or hyperactivity. He denied suicidal or homicidal ideation. His answers to questions were responsive and goal-directed. He denied any active psychotic symptoms, such as: hallucinations, paranoia, thought control/insertion/ withdrawal, delusional or referential thinking.

**DIAGNOSIS:**  Axis I   Schizophrenia.                                    295.90
                        Alcohol Dependence.                              303.90

              Axis II  DEFERRED.

Plaintiff 022334

CONFIDENTIAL

# FORENSIC CLINICAL SERVICES
### PSYCHIATRIC SUMMARY

NAME Carl Chatman      DATE 1-16-03      CHART NO. 0201274

<u>CONCLUSIONS:</u>  Mr. Carl Chatman is a forty-eight year old, African-American male, who is charged with aggravated criminal sexual assault.  He was referred to Forensic Clinical Services for evaluation of his fitness to stand trial, mental state at the time of the alleged offense, and ability to understand his rights under Miranda. Mr. Chatman remains in custody at the Cook County Jail.

My opinions, to a reasonable degree of forensic psychiatric certainty, are as follows:

1.  My psychiatric diagnoses of the defendant are of Schizophrenia, and Alcohol Dependence.

2.  Mr. Chatman is **CURRENTLY FIT TO STAND TRIAL WITH MEDICATION.** He understands the nature of the charge against him, and the possible consequences if found guilty.  He demonstrates an adequate understanding of basic court procedure, and the roles of the various members of the court. He is alert, oriented, and able to assist counsel in his own defense.

    Mr. Chatman is currently medicated with Zyprexa (an antipsychotic) 20 mg. at night, and Cogentin (for side effects of antipsychotics) 1 mg. if needed, up to twice a day.  Mr. Chatman denied any problems with his current medication regimen. He specifically denied any issues with movement disorders, oversedation, or decreased attention/concentration.  During the course of the clinical interview, there was no evidence to suggest that he was suffering from any side effects of his medications which would adversely influence his ability to stand trial.

3.  Mr. Chatman was <u>LEGALLY SANE</u> at the time of the alleged offense.  The available data does not support that as a result of a mental disease or defect, that he lacked substantial capacity to appreciate the criminality of his conduct at that time.

4.  Mr. Chatman currently demonstrates an adequate understanding of an arrestee's rights under Miranda. His report and the available collateral information does not present compelling evidence that he would have been unable to appreciate those rights at the time of his arrest and questioning. Mr. Chatman currently reports that he implicated himself, as he was fearful that he would continue to be abused by the police.  However, whether such threats or actions took place is a matter of fact for the court to determine.

In addition to interviewing the defendant, I reviewed a previous psychiatric summary, psychosocial history, medication profile from Cermak Health Services, police investigation reports, defendant's handwritten statement to the police, the defendant's criminal record, various past treatment records, various court documents and correspondence.

Philip Pan, M.D.
Staff Psychiatrist

PP/mew

Plaintiff 022335