**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARL CHATMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 14 C 2945 |
| | ) | |
| CITY OF CHICAGO, et al | ) | Honorable John Z. Lee |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWERS TO**
**PLAINTIFF'S SECOND AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendants, Assistant State's Attorney Brian Holmes ("ASA Holmes"), Anita Alvarez, in her official capacity as State's Attorney of Cook County, and Cook County by their attorney, Anita Alvarez, State's Attorney of Cook County, through Lisa M. Meador and Thomas E. Nowinski, Assistant State's Attorneys, answer Plaintiffs' Second Amended Complaint as follows:

**Introduction**

1.      Carl Chatman spent more than eleven years in prison for a rape he did not commit.

**ANSWER:**      Defendants admit that Carl Chatman was incarcerated for more than eleven years but deny the remainder of the allegations in paragraph 1.

2.      Not only did Mr. Chatman not commit the rape for which he was wrongfully convicted, but the rape never even occurred at all. The purported victim made up an account of having been raped in Chicago's Daley Center so that she could bring a law suit for money damage against the company responsible for the building's security.

**ANSWER:**      Defendants deny the allegations in paragraph 2.

3.      This marked the second time this same woman had fabricated rape charges in

order to bring a legal action against a building security company for illicit financial gain.

**ANSWER:**     Defendants deny the allegations in paragraph 3.

4.      After the purported rape victim made up the story of having been attacked in the Daley Center, the Defendants proceeded to "solve" the crime. Specifically, in their zealousness to obtain a swift conviction in a high-profile case, the Defendant Chicago Police Officers took advantage of Mr. Chatman's mental instability and coerced him to falsely confess to a crime that never actually happened.

**ANSWER:**     Defendants deny the allegations in paragraph 4.

5.      In this way, and based on the resulting false "confession," these Defendants caused Mr. Chatman to be wrongfully convicted to a crime that never even occurred.

**ANSWER:**     Defendants deny the allegations in paragraph 5.

6.      The State of Illinois eventually came to recognize that Mr. Chatman's confession was false, and that his conviction was wrongful. In September 2013, the Cook County State's Attorney's Office voluntarily dismissed all charges against Mr. Chatman, and the State of Illinois granted Mr. Chatman a Certificate of Innocence.

**ANSWER:**     Defendants admit that the Cook County State's Attorney dismissed all charges against Plaintiff in 2013 and that Plaintiff was granted a Certificate of Innocence. Defendants deny the remainder of paragraph 6.

7.      Mr. Chatman's exoneration came after he spent over eleven years as an innocent man in prison. Given his mental state, Mr. Chatman was particularly vulnerable to the worst elements of prison, and his experience there was devastating to his emotional health.

**ANSWER:**     Defendants deny the allegations in paragraph 7.

8.      Through this lawsuit, Mr. Chatman seeks accountability and compensation for

losing more than a decade of his life due to Defendants' misconduct.

**ANSWER:** Defendants deny the allegations in paragraph 8.

## Jurisdiction and Venue

9. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

**ANSWER:** Defendants admit that Plaintiff is bringing this action pursuant to 42 U.S.C § 1983 but deny liability for such claims.

10. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. 1331 and state law claims pursuant to 28 U.S.C. 1367.

**ANSWER:** Defendants admit that this Court has jurisdiction.

11. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district and Defendant City of Chicago is a municipal corporation located here. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**ANSWER:** Defendants admit that venue is proper in the United States District Court, Northern District of Illinois, but deny the allegations and events asserted by Plaintiff.

## The Parties

12. Plaintiff Carl Chatman is 59 years old. He is a veteran of the United States Army.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 12, and thus deny same.

13. Defendant Susan Riggio is a resident of Illinois.

**ANSWER:** Upon information and belief, Defendants admit that Defendant Riggio is a resident of Illinois.

14. At all relevant times, Defendants John Roberts, Thomas McGreal, Maria Pena,

Jack Boock, Rita Mischka, Barbara Midona, Michael Karczewski, Richard Griffin, Kriston Kato, Dennis Walsh, Bryan Holy, and unknown Chicago police officers were Chicago police officers employed by the City of Chicago and acting within the scope of their employment and under color of law. They are sued in their individual capacities.

**ANSWER:** Upon information and belief, Defendants John Roberts, Thomas McGreal, Maria Pena, Jack Boock, Rita Mischka, Barbara Midona, Michael Karczewski, Richard Griffin, Kriston Kato, Dennis Walsh, Bryan Holy, were Chicago Police Officers employed by the City of Chicago. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 14, and thus deny same.

15. At all relevant times, Defendants Michael Cokeley, Sergeant Maria Mokstad, Lt. Burrough Cartrette, and unknown Deputies of the Cook County Sheriff's Department were Deputies employed by the Cook County Sheriff and acting within the scope of their employment and under color of law. They are sued in their individual capacities.

**ANSWER:** Upon information and belief, Defendants Michael Cokeley, Sergeant Maria Mokstad, Lt. Burrough Cartrette were Deputies employed by the Cook County Sheriff. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 15, and thus deny same.

16. At all relevant times, Defendant Brian Holmes was an Assistant State's Attorney employed by the Cook County State's Attorney's Office and acting within the scope of his employment and under color of law. He is sued in his individual capacity.

**ANSWER:** Defendants admit that on or around May 24, 2002, Brian Holmes was an Assistant State's Attorney employed by the Cook County State's Attorney's Office and acting within the scope of his employment and under color of law.

17.     Defendants John Roberts, Thomas McGreal, Maria Pena, Jack Boock, Rita Mischka, Barbara Midona, Michael Karczewski, Richard Griffin, Kriston Kato, Sergeant Dennis Walsh, Sergeant Bryan Holy, Michael Cokeley, Sergeant Maria Mokstad, Lt. Burrough Cartrette, unknown Chicago police officers and unknown Deputies of the Cook County Sheriff's Department are referred to collectively as the "Law Enforcement Defendants." They are sued in their individual capacities.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 17, and thus deny same.

18.     Defendant Karen Wojtczak was an investigator for the Office of Professional Standards, including from February 2004 to October 2004.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 18, and thus deny same.

19.     Defendant Millicent Willis was the Acting Chief Administrator of the Office of Professional Standards from January 2002 through July 2002. She is sued in her individual capacity.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 19, and thus deny same.

20.     Defendant Lori Lightfoot was the Chief Administrator of the Office of Professional Standards from August 1, 2002 until July 2004. She is sued in her individual capacity.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 20, and thus deny same.

21.     Defendant Tisa Morris was Chief Administrator of the Office of Professional Standards from August 2004 until 2006. She is sued in her individual capacity. Wojczak, Willis, Lightfoot, and Morris are henceforth collectively referred to as the "O.P.S. Defendants."

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 21, and thus deny same.

22.     The Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois. The City operates the Chicago Police Department ("CPD"), and it operated the Office of Professional Standards ("O.P.S."). The City is responsible for the policies and practices of the City, the CPD, and O.P.S.

**ANSWER:**     Defendants admit the allegations in paragraph 22.

23.     Defendant Thomas Dart is the current Sheriff of Cook County, Illinois. He is sued in his official capacity.

**ANSWER:**     Defendants admit that Thomas Dart is currently the Sheriff of Cook County and that Plaintiff has purportedly brought suit against Thomas Dart in his official capacity.

24.     Defendant Anita Alvarez is the current State's Attorney for Cook County, Illinois. She is sued in her official capacity.

**ANSWER:**     Defendants admit that Anita Alvarez is currently the State's Attorney for Cook County, Illinois and that Plaintiff has purportedly brought suit against Anita Alvarez in her official capacity. Defendants deny liability by Anita Alvarez.

25.     Defendant Cook County is a county of the State of Illinois. Cook County is obligated by Illinois statute to pay any judgment entered against Defendant Dart or Defendant Alvarez in their official capacities.

**ANSWER:**     Defendants admit that Cook County is a county of the State of Illinois and

is without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 25, and thus deny same.

## Factual Background

26.     Carl Chatman was born in 1954 and grew up in Chicago with his two sisters and brother.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 26, and thus deny same.

27.     At the age of 20, Mr. Chatman married and enlisted in the military. At the conclusion of his military service, Mr. Chatman returned to Chicago, where he and his wife had a son.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 27, and thus deny same.

28.     By the turn of the new millennium, Mr. Chatman had fallen on hard times. He was an easily confused and extremely vulnerable man.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 28, and thus deny same.

## Defendant Riggio Targets Mr. Chatman

29.     During the week of May 20, 2002, Mr. Chatman went to the Daley Center to investigate how to file a small claims suit.

**ANSWER:**     Upon information and belief, Defendants admit that Chatman went to the Daley Center during the week of May 20, 2002. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 29, and thus deny same.

30.    At the time, Defendant Susan Riggio, age 50 at the time, worked as a scheduling clerk for Judge Bartkowicz, who sat in courtroom 2101 at the Daley Center.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 30, and thus deny same.

31.    Defendant Riggio claims that, while Mr. Chatman was at the Daley Center early in the week of May 20, 2002, she encountered Mr. Chatman.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 31, and thus deny same.

32.    At the time, Mr. Chatman was wearing a Blackhawks jacket and street clothes.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 32, and thus deny same.

33.    Based on this encounter, Defendant Riggio knew what Mr. Chatman looked like, and also knew that he was a defenseless and guileless individual, who would not fare well if falsely accused. He was, in short, the perfect target for her plan.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 33, and thus deny same.

**Riggio's Plan**

34.    Shortly before May 20, 2002, Defendant Riggio had received notice from the IRS that she was to be audited for her prior tax filings.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 34, and thus deny same.

35.    At the time, Defendant Riggio was also under severe financial pressures. She and her husband had been gambling heavily, and had experienced over $500,000 in losses in the year

2000 alone. Defendant Riggio was also intent on divorcing her husband.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 35, and thus deny same.

36.     Faced with these financial pressures, Defendant Riggio concocted a plan to falsely claim that she had been raped inside the Daley Center, thereby enabling her to sue various entities responsible for the Daley Center's security.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 36, and thus deny same.

37.     Defendant Riggio had engaged in the exact same scheme some 20 years earlier. In 1979, facing different financial pressures, Defendant Riggio falsely claimed that she was raped inside a downtown office building in the early morning hours, before anyone else had arrived to work. Defendant Riggio then sued the building's management and received a cash settlement.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 37, and thus deny same.

38.     Having succeeded in the 1970s with a bogus civil suit against a building manager based on a false accusation of rape, Defendant Riggio decided to pull the same scam all over again. This time, Mr. Chatman was her victim.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 38, and thus deny same.

**The False Allegation**

39.     On May 24, 2002, Defendant Riggio went to work very early. Although not scheduled to work until 8:30 a.m., she arrived at the Daley Center at 7 a.m., long before any of her co-workers arrived. She did so notwithstanding that it was the Friday before the Memorial

Day weekend holiday, and the judge for whom she worked was out of town.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 39, and thus deny same.

40. Defendant Riggio claimed that at approximately 7:20 a.m., while she was alone in her office behind courtroom 2101, Mr. Chatman appeared with his penis exposed and said words to the effect of, "the judge fucked me and now I'm going to fuck you, bitch."

**ANSWER:** Defendants admit that Defendant Riggio made the claims attributed to her in paragraph 40. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 40, and thus deny same.

41. According to Defendant Riggio, she fought with her attacker, screaming for help, and was then raped in her vagina and anus. She claimed that during the altercation, she fought for her life with her attacker and had her head beaten against a table and scissors held to her throat.

**ANSWER:** Defendants admit that Defendant Riggio made the claims attributed to her in paragraph 41. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 41, and thus deny same.

42. When one of Defendant Riggio's co-workers, Jeannette Neibauer, arrived for work, Riggio told her about the alleged attack, whereupon Neibauer called the police.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief of the truth of the allegations of paragraph 42, and thus deny same.

43. When the police officers arrived, Defendant Riggio falsely claimed that Mr. Chatman was the man who raped her, and provided the responding officers with a description of an African American man in the Blackhawks jacket (Mr. Chatman) who she claimed to have

seen on her floor earlier in the week.

**ANSWER:** Upon information and belief, Defendants admit that when police officers responded, Defendant Riggio provided the officers with a description of an African American man in a Blackhawks jacket who she had seen on the floor earlier in the week. Defendants are without knowledge or information sufficient to form a belief of the truth of the remaining allegations in paragraph 43.

## Mr. Chatman's Arrest

44. Shortly after Defendant Riggio reported the crime, a flash message went out to members of the police department, alerting them to look for a potential suspect in the Loop area described as a black male with salt and pepper hair wearing a Blackhawks jacket.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 44, and thus deny same.

45. Before long, Mr. Chatman was located walking around the downtown area wearing his Blackhawks jacket. He is African American and had salt and pepper hair.

**ANSWER:** Defendants admit that Chatman was located in the area of Clark and Van Buren while wearing a Blackhawks jacket and that he is African American. Defendants are without knowledge or information sufficient to form a belief of the truth of the remaining allegations in paragraph 45, and thus deny same.

46. After finding him, Defendants Griffin and Karczewski arrested Mr. Chatman at approximately 8:30 a.m.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 46, and thus deny same.

47. At the time he was arrested, Defendant Officers Griffin and Karczewski falsely

claimed that Mr. Chatman said he was coming from the Daley Center. This allegation was false. Mr. Chatman was not at the Daley Center on the morning of the 24th, and he did not claim that he was.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 47, and thus deny same.

### Mr. Chatman's Vulnerabilities

48. When not properly medicated, Mr. Chatman suffers from a mental illness that interferes with his ability to function properly. He experiences disorganized thoughts, pressured speech, and an inability to think in a linear or logical matter at times.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 48, and thus deny same.

49. At the time of his interrogation sessions with the various Defendants, Mr. Chatman was having difficulty communicating in a logical and linear fashion due to his then existing mental condition.

**ANSWER:** Defendants deny the allegations in paragraph 49.

50. As a result of Mr. Chatman's inability to communicate in a normal manner, it was immediately obvious to any person who questioned Mr. Chatman at any point on May 24 or May 25, 2002, that he was suffering from cognitive deficiencies and symptoms of unmedicated mental illness.

**ANSWER:** Defendants deny the allegations in paragraph 50.

### Mr. Chatman's False "Confession"

51. Following his 8:30 a.m. arrest, Mr. Chatman was brought to Area 4 Detective Headquarters and questioned by Defendant Detectives Mischka and Boock.

**ANSWER:** Upon information and belief, Defendants admit that Plaintiff was arrested around 8:34 a.m., transferred to Area 4, and questioned by Detectives Mischka and Boock.

52. Mr. Chatman had never in his life previously been accused of a crime involving sexual violence, and has never committed one.

**ANSWER:** Upon information and belief, Defendants deny the allegations in paragraph 52.

53. During his interrogation by Defendants Mischka and Boock, Mr. Chatman initially maintained his innocence and did not implicate himself.

**ANSWER:** Upon information and belief Defendants admit that Chatman initially denied being at the Daley Center on May 24, 2002 to Detectives Mischka and Boock. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 53, and thus deny same.

54. At approximately 10 p.m., Defendant Detective Kato began interrogating Mr. Chatman.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 54, and thus deny same.

55. When Defendant Kato began his interrogation, the pressure to obtain a confession from Mr. Chatman was mounting. Per her plan, Defendant Riggio publicized the (false) attack. The rape of a woman inside the Daley Center in the heart of the Loop had by then generated a tremendous amount of media attention. There existed a belief among each of Defendants Roberts, Holmes, Mischka, Boock, Midona, Kato, and Walsh that getting Mr. Chatman to confess was the surest way to obtain a speedy resolution.

**ANSWER:** Defendants deny the allegations in paragraph 55.

56.     During his interrogation, Defendant Kato used force and threats of force to coerce Mr. Chatman to confess.

**ANSWER:**     Defendants deny the allegations in paragraph 56.

57.     Before Mr. Chatman confessed, Defendants Kato, Roberts, ASA Holmes, Detective Midona, and Sergeant Walsh also interrogated Mr. Chatman.

**ANSWER:**     Defendants deny the allegations in paragraph 57.

58.      Defendants Kato, Roberts, Holmes, Midona, and Walsh observed Mr. Chatman's obvious cognitive deficiencies and symptoms of mental illness. Rather than take steps to ensure Mr. Chatman was truly and freely agreeing to confess, these Defendants took advantage of his diminished capacity and mental vulnerabilities, and continued their interrogation in a manner intended to force Mr. Chatman to falsely confess.

**ANSWER:**     Defendants deny the allegations in paragraph 58.

59.     Eventually, Defendants Kato, Roberts, Holmes, Mischka, Boock, Midona, and Walsh overcame Mr. Chatman's will through improper means, and thereby succeeded in coercing him to sign a false confession to the alleged rape.

**ANSWER:**     Defendants deny the allegations in paragraph 59.

60.     Mr. Chatman's resulting confession included various factual details that could only have been known by someone who committed the crime, had it actually occurred, or by someone with access to the police reports describing the alleged crime.

**ANSWER:**     Defendants admit that Chatman's confession included details that could only have been known by the person who committed the crime. Defendants deny the remainder of the allegations in paragraph 60.

61.     Mr. Chatman had no personal knowledge of the facts and circumstances

surrounding the alleged rape contained in his confession. Instead, Mr. Chatman was fed details of the crime by Defendants Kato, Roberts, Holmes, Mischka, Boock, Midona, and Walsh. Being totally innocent, and having no knowledge of Defendant Riggio's allegations, Mr. Chatman could not have provided the information contained in his confession without those Defendants having provided this information to him during the course of his interrogation.

**ANSWER:** Defendants deny the allegations in paragraph 61.

62. Not only did the Defendants feed Mr. Chatman all of the details of the alleged crime, but Defendants Holmes, Roberts, Midona, and Walsh walked Mr. Chatman through the crime scene to ensure that he had first-hand knowledge of the crime scene. These Defendants were subjectively aware that Mr. Chatman had no information about the alleged rape, and they walked him through the crime scene in order to provide him with the relevant facts and circumstances to bolster his "confession."

**ANSWER:** Defendants deny the allegations in paragraph 62.

### The Forensic Evidence

63. Not only did Mr. Chatman not commit the crime to which he "confessed," but there is no physical evidence to corroborate his supposed confession, or even the rape itself.

**ANSWER:** Defendants deny the allegations in paragraph 63.

64. For example, Defendant Riggio claimed to have been badly beaten by Mr. Chatman during what she claimed was a vaginal and anal rape. However, the thorough medical examination that Defendant Riggio underwent immediately after the alleged assault revealed no tears, scrapes, bleeding, bruises, cuts, lacerations, abrasions, or other injuries to her body, genitals, or rectum.

**ANSWER:** Upon information and belief, Defendants admit that Defendant Riggio

claimed to have been hit by Chatman and that she was raped vaginally and anally. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 64, and thus deny same.

65.     Defendant Riggio's clothing and swabs taken from her body were subjected to clinical scrutiny, including DNA testing. Neither Mr. Chatman's semen, hair, nor any other genetic material from Mr. Chatman (nor anyone else, for that matter) was found on Defendant Riggio's vagina, rectum, other body parts, or clothing.

**ANSWER:**     Upon information and belief, Defendants admit that clothing and swabs taken from Defendant Riggio were tested by the Illinois State Police. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 65, and thus deny same.

66.     Mr. Chatman's clothing was also collected shortly after the alleged assault and analyzed by forensic scientists, including by subjecting it to DNA testing. Despite an exhaustive search, Defendant Riggio's genetic material was not found anywhere on Mr. Chatman's body or clothing.

**ANSWER:**     Upon information and belief, Defendants admit that Chatman's clothing was collected after the assault and analyzed by the Illinois State Police. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 66, and thus deny same.

67.     Defendant Riggio also claimed to have urinated on Mr. Chatman and bit him on the left shoulder of his coat, and a pool of urine was discovered at the crime scene. Extensive DNA testing revealed that none of Defendant Riggio's urine or saliva appeared anywhere on Mr. Chatman's clothing.

**ANSWER:** Upon information and belief, Defendants admit that Defendant Riggio claimed to have urinated on Chatman and bit him on his coat, and that urine was discovered at the scene. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 67, and thus deny same.

68. Mr. Chatman's fingerprints were not found anywhere at the scene, even on the items the attacker allegedly touched, such as the scissors allegedly held to Riggio's neck.

**ANSWER:** Upon information and belief, Defendants admit that Chatman's fingerprints were not found on the items tested by police personnel. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 68, and thus deny same.

69. In sum, none of the forensic testing linked Mr. Chatman to the alleged sexual assault. None of the forensic testing suggested that a sexual assault occurred at all.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 69, and thus deny same.

### Mr. Chatman's Impossible "Escape"

70. Defendant Riggio claimed that her sexual assault occurred at approximately 7:20 a.m. According to Riggio, the entire incident, beginning when Chatman appeared at her office door, lasted seven minutes.

**ANSWER:** Upon information and belief, Defendants admit that Defendant Riggio claimed the assault began around 7:20 a.m. when Chatman appeared at her office door. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 70, and thus deny same.

71. As stated above, Defendant Riggio told one of her coworkers, Jeannette Neibauer,

about the alleged attack when Neibauer arrived at work. Neibauer, who did not see Mr. Chatman, reported Defendant Riggio's purported attack to the authorities at 7:37 a.m., some ten minutes after it supposedly ended.

**ANSWER:** Upon information and belief, Defendants admit that Neibauer arrived at work, saw Defendant Riggio laying on a desk, and called 911. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 71, and thus deny same.

72. By 7:41 a.m., the Sheriff's Department locked down the entire building, notifying all security posts to close the building and prevent anyone from entering or exiting.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 72, and thus deny same.

73. The Sheriff's Department and a private security company then conducted a floor-by-floor search for Defendant Riggio's alleged attacker.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 73, and thus deny same.

74. The search failed to locate anyone. More specifically, Mr. Chatman was not seen anywhere inside the building, nor leaving it.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 74, and thus deny same.

75. The fact that Mr. Chatman was never found in or leaving the building is particularly noteworthy. The Daley Center was closed to the public before 8 a.m. At the time Defendant Riggio claimed to be attacked, only authorized court personnel were allowed in the building. Moreover, there were very few people using the entrances or exits early that morning,

which was the Friday before Memorial Day weekend.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 75, and thus deny same.

76. Any person attempting to enter or leave the Daley Center during this time period would have been observed. Between 7 a.m. and 8 a.m., every exit from the Daley Center was guarded by at least one Sheriff's deputy, and video cameras were stationed to record the exits.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 76, and thus deny same.

77. Neither Mr. Chatman nor anyone fitting his description appeared on security video taken of the Daley Center exits between 6:30 and 8:20 a.m. on May 24, 2002. Not one of the ten deputy sheriffs at the six doors exiting the Daley Center between 7:00 and 8:00 a.m. saw Mr. Chatman leaving the building or anywhere near the building.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 77, and thus deny same.

**Riggio's 1979 Allegations Against Edward Szymczak**

78. As previously stated, Mr. Chatman's case was not the first time that Defendant Riggio claimed that she had been raped early in the morning in a large office building. Unbeknownst to investigators on May 24, 2002, Defendant Riggio had made identical allegations against another innocent man 20 years before.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 78, and thus deny same.

79. On October 23, 1979, Defendant Riggio claimed that she was raped at her workplace.

**ANSWER:**     Upon information and belief, Defendants admit the allegations in paragraph 79.

80.     In that alleged 1979 attack, as in the new one, Defendant Riggio claimed that she arrived to work in the early morning hours when none of her co-workers were present to witness the events at a downtown office building. In the 1979 version, Defendant Riggio said she arrived between 6:45 and 7:00 a.m., whereupon one of the building's janitors, Edward Szymczak, supposedly showed her a knife, pushed her into the bathroom, and attacked her.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 80, and thus deny same.

81.     Defendant Riggio claimed that Szymczak repeatedly asked her name and told her to look at him, told her to remove her clothing, and eventually sexually assaulted her. Defendant Riggio said that she and Szymczak struggled before the rape. Defendant Riggio further claimed that Szymczak kept asking her name and told her to be quiet as he raped her. When the assault ended, Defendant Riggio claimed that Szymczak told her to stay in the bathroom, and he left, presumably to go back to work.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 81, and thus deny same.

82.     Defendant Riggio claimed her alleged attacker spoke to her in English, and she did not recall him having an accent.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 82, and thus deny same.

83.     Unbeknownst to Defendant Riggio, however, Szymczak was a Polish immigrant who spoke no English and needed a Polish translator for police interviews and later court

proceedings.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 83, and thus deny same.

84.     Based on Defendant Riggio's allegations, Szymczak was charged with rape and unlawful restraint. He maintained his innocence, insisting that he had nothing to do with Defendant Riggio, and had raped no one.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 84, and thus deny same.

85.     Defendant Riggio retained legal counsel by November 6, 1979, less than two weeks after accusing Szymczak. She proceeded to file a civil suit based on her allegations against Szymczak, seeking in excess of four million dollars in damages. Her lawsuit named as defendants the office building owners, the building management company, the contracted janitorial service, the contracted security company, and others.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 85, and thus deny same.

86.     In connection with the civil lawsuit Defendant Riggio filed against the building and its security company arising out of her allegations about the purported Szymczak rape, Defendant Riggio ultimately settled her case and received a cash payment.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 86, and thus deny same.

87. Due to the false accusations against him, Szymczak fled to Poland and was never tried. After Defendant Riggio filed her high-profile law suit, Szymczak sent a letter to the court proclaiming his innocence. The English translation of the letter reads:

To the Court of the State of Illinois:

> I have been charged with raping citizen Susan, without any
> evidence or basis for such accusation. I did not even know
> her. Because I have been in the United States for only a
> short period of time and do not have money for an attorney,
> I am forced to leave the country. I am very sorry to do
> that. Please forward this letter to citizen Susan, so she
> may once more think about what she is doing. If someone did
> rape her, they should be convicted and sentenced. However,
> if she has only made this whole thing up to make some
> money, she should earn money honestly and not like this.
> She should know that she will answer to God for her
> actions. I also ask that this Court not let this incident
> constitute a black mark on the record of my stay in the
> United States and on my life.

Sincerely,
Edward Szymczak

**ANSWER:**    Defendants are without knowledge or information sufficient to form a

belief as to the truth of paragraph 87, and thus deny same.

88.    People who knew and worked with Szymczak were shocked by the allegations

against him; by all accounts, he was an excellent employee who worked well with others and had

no reputation for behaving violently, abusively, or inappropriately toward women or other

people. Indeed, Szymczak's employer, Millard Maintenance, sent the following letter to the

Polish Consulate and the ACLU asking for assistance with exonerating Szymczak:

> Can you be of assistance to a[n] employee of ours, who is
> [a] Polish immigrant, limited English, excellent work
> record, was switched to a different location, 625 N.
> Michigan, and is being accused of rape. He cannot shoulder
> the financial payment of $6000 legal. The company is not in
> a position to defend him. We feel it is a bum rap. What
> are his alternatives.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a

belief as to the truth of paragraph 88, and thus deny same.

89.    Like Mr. Chatman, Szymczak's life has been devastated by Defendant Riggio's

false accusation of rape. Not only was he forced to abandon his dream of working hard to make a life for himself and his family in the United States, but he lives the rest of his days under a cloud of Defendant Riggio's false accusations.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 89, and thus deny same.

### Riggio's Financial Motivations in 2002

90. Before Defendant Riggio made her allegations against Mr. Chatman, she had again begun experiencing serious financial problems.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 90, and thus deny same.

91. Specifically, on April 29, 2002, less than one month before her allegations against Mr. Chatman, Defendant Riggio and her husband received a letter from the United States Internal Revenue Service ("IRS"), notifying them that their tax return for tax year 2000 was being audited.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 91, and thus deny same.

92. The IRS audit frightened Defendant Riggio and her husband; together, they had nearly $550,000 in gambling winnings in 2000, which they had failed to report on their tax return (and which they subsequently lost through even more gambling).

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 92, and thus deny same.

93. Less than one month after Defendant Riggio received notification that the IRS would audit her tax return, Defendant Riggio claimed that she was attacked in the Daley Center.

In her lawsuit filed just after the claimed attack, Defendant Riggio falsely inflated her damages.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 93, and thus deny same.

94. When Defendant Riggio was examined by a doctor on May 24, 2002, she had no evidence of injury anywhere on her body.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 94, and thus deny same.

95. Four years later, however, at a deposition in the civil litigation, Defendant Riggio claimed to have sustained serious injuries as a result of Chatman's alleged sexual assault, including permanent damage to her internal and external genitalia, which caused her genitals to hurt and to feel "dead" and numb.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 95, and thus deny same.

96. Defendant Riggio further claimed she suffered ongoing damage to her groin muscle, broken teeth, and scarring to her hip. None of these alleged injuries were noted in any of Defendant Riggio's medical visits in the months following the alleged assault.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 96, and thus deny same.

97. As of 2006, Defendant Riggio claimed that she was no longer able to work for a living because she was unable to perform any job as a result of her claimed sexual assault.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 97, and thus deny same.

98. This was not the first time that Defendant Riggio exaggerated her injuries in a

lawsuit, just as this was not the first time that Defendant Riggio had falsely claimed rape and sued. In 1989, Defendant Riggio was in a car accident. In the subsequent legal action, she claimed that she contracted Parkinson's disease as a result of the impact.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 98, and thus deny same.

99.     Miraculously, Defendant Riggio's Parkinson's disease somehow cured itself in the intervening years, to the point where she no longer requires any treatment for it.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 99, and thus deny same.

### Defendants' Additional Misconduct

100.     Although Defendant Riggio set the ball in motion, Mr. Chatman's wrongful conviction could not have occurred without the other Defendants' malfeasance.

**ANSWER:** Defendants deny the allegations in paragraph 100.

101.     The Law Enforcement Defendants committed one or more of the following types of misconduct: coercing a false confession from Mr. Chatman; withholding material exculpatory evidence from Mr. Chatman; destroying exculpatory evidence; and fabricating inculpatory evidence that was used to help convict Mr. Chatman.

**ANSWER:** Defendants deny the allegations in paragraph 101.

102.     As stated above, Mr. Chatman was coerced to falsely confess to a crime he did not commit by Defendants Kato, Holmes, Walsh, Boock, Roberts, Mischka, and Midona. According to these Defendants, Mr. Chatman freely confessed in detail to a violent rape that he did not commit.

**ANSWER:** Defendants deny the allegations in paragraph 102.

103.     What makes these Defendants' misconduct even more egregious is that they took advantage of a mentally-compromised and damaged individual in the process. Although civilian witnesses who interacted with Mr. Chatman even for brief periods of time during the week of May 20, 2002, described him as "incoherent," the Law Enforcement Defendants concealed any suggestion of Mr. Chatman's cognitive deficits from their reports.

**ANSWER:**     Defendants deny the allegations in paragraph 103.

104.     Rather, Defendants Roberts and Holmes both maintained that they had absolutely no difficulty in understanding Mr. Chatman and that he had no problems communicating with them. These representations were totally false.

**ANSWER:**     Defendants admit that Roberts and Holmes both maintained that they had no difficulty in understanding Chatman and that he had no problems communicating with them. Defendants deny the remaining allegations in paragraph 104.

105.     Upon being admitted to the Cook County Jail, Mr. Chatman was given a five-minute screening of his physical and mental health, during which intake personnel immediately perceived that something was seriously wrong with Mr. Chatman, who was promptly admitted to the acute care unit of the Jail. Detainees are placed in the acute care unit only if they are expressing mental health symptoms that require 24-hour psychiatric care.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 105, and thus deny same.

**Further Withholding Of Exculpatory Evidence**

106.     Due to Defendants' misconduct, Mr. Chatman was deprived of crucial evidence that could have avoided his wrongful conviction, including but not limited to the existence of a witness who could testify the rape never occurred, and certainly not in the manner

Defendant Riggio claimed.

**ANSWER:** Defendants deny the allegations directed at them in paragraph 106. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 106, and thus deny same.

107. In particular Defendant Riggio claimed that she engaged in an all-out fight for her life, screaming at least three times for a deputy to come to her assistance.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 107, and thus deny same.

108. When responding officers, including Defendants Deputy Sergeant Maria Mokstad and Deputy Michael Cokeley, arrived at the crime scene, it turned out by chance that a building employee, Cook County Sheriff's Deputy Michael Copeland, was fast asleep in the room across the hall from the crime scene with his shirt off.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 108, and thus deny same.

109. Despite having been in the room across the hall from the alleged attack, Copeland told the responding officers that he heard no sign of any struggle whatsoever. In fact, the first indication Deputy Copeland had that something was amiss was when he heard the radios of other officers responding to a 911 call about the supposed attack, well after the "attack" ended.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 109, and thus deny same.

110. On the morning of May 24, 2002, Defendants Cokeley, Mokstad, and Deputy Lieutenant Cartrette all knew that Deputy Copeland had been sleeping across the hall from where Defendant Riggio claimed to have been attacked.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 110, and thus deny same.

111. Indeed, that same morning, Defendant Cartrette had Deputy Copeland handwrite a statement acknowledging that he was sleeping in room 2103A, across the hall from room 2101A, and that he heard nothing until officers began responding to the allegation that Defendant Riggio had been assaulted.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 111, and thus deny same.

112. Defendant Detectives McGreal and Pena interviewed Defendants Cokeley, Mokstad, and Cartrette on May 24, 2002. Although each of these Defendants learned that Deputy Copeland knew information that would exculpate Mr. Chatman, these Defendants hid that information from the criminal justice system and, as a result, from Mr. Chatman.

**ANSWER:** Upon information and belief, Defendants admit the allegations in the first sentence of paragraph 112. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 112, and thus deny same.

113. In particular, there is no mention of Deputy Copeland's existence, let alone his nearby presence at the time of the alleged attack, in any of the police reports tendered to Mr. Chatman or his criminal defense counsel. Nor was there any way for Mr. Chatman to discover this information once it was hidden from him by these Defendants.

**ANSWER:** Upon information and belief, Defendants admit that Deputy Copeland is not mentioned in any of the Chicago Police reports of the assault. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of paragraph 113, and thus deny same.

114.     Specifically, Defendant Cokeley communicated to Defendant McGreal that he had seen Deputy Copeland sleeping near to where the crime alleged took place, and Defendant McGreal proceeded to withhold that information from the criminal prosecutors and Mr. Chatman's defense.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 114, and thus deny same.

115.     Pleading in the alternative, Defendant Cokeley did not tell Defendant McGreal the information referenced in the preceding paragraph, and instead suppressed it.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 115, and thus deny same.

116.     Defendant Mokstad communicated to Defendant Pena that he had seen Deputy Copeland sleeping near to where the crime alleged took place, and Defendant Pena proceeded to withhold that information from the criminal prosecutors and Mr. Chatman's defense.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 116, and thus deny same.

117.     Pleading in the alternative, Defendant Mokstad did not tell Defendant Pena the information referenced in the preceding paragraph, and instead suppressed it.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 117, and thus deny same.

118.     Defendant Cartrette communicated to Defendant McGreal that he had seen Deputy Copeland sleeping near to where the crime alleged took place, and Defendant McGreal proceeded to withhold that information from the criminal prosecutors and Mr. Chatman's defense.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 118, and thus deny same.

119. Pleading in the alternative, Defendant Cartrette did not tell Defendant McGreal the information referenced in the preceding paragraph, and instead suppressed it.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 119, and thus deny same.

**Withholding of Exculpatory Evidence by OPS Defendants and Defendant City**

120. On May 27, 2002, just two days after Defendant Kato used physical force to coerce Mr. Chatman into falsely confessing to a crime that he did not commit, a Chicago police detective submitted an anonymous memo to the Defendant City corroborating Mr. Chatman's account of being physically forced into a false confession.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 120, and thus deny same.

121. In his/her memo, the anonymous Chicago police detective stated in part:

On or about May 25, 2002, Detective Kato beat a suspect into signing a confession. The suspect is homeless and was apprehended for the assault/rape of a woman in the Daley Center. The suspect denied the rape and said he was no way near the Daley Center. Detective Kato hit the suspect and shouted "tell me you did it!" The homeless suspect said one last time "did what? I didn't do nothing. I don't, don't, don't know what you are talking about." Detective Kato hit the suspect with such a blow that last time that the suspect groaned from sheer pain and doubled over gasping for air. That blow I thought would kill him for sure. The suspect then said "what-what-what-what do you want me to say? Kato said "I want you to say you raped that woman." By this time, Kato had the assault/rape victim's total account of the assault. Kato took the victims account of the assault, word for word and laid it out for the homeless suspect to sign. The suspect didn't even read it and didn't know what he was signing. The suspect was denied a phone call, instead Kato told the suspect "you are homeless. Who are you going to call, the other homeless people at the Gardens?
It is a well known fact from questioning and the suspects condition that he did not commit this assault. However Kato stated that "they wanted someone to be accountable, so I gave them someone. He's homeless anyway, at least now

(laughingly) he'll get three meals a day. That's my contribution to help feed the homeless."

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 121, and thus deny same.

122.     This Chicago police detective, who maintained anonymity out of fear of reprisal from his/her fellow officers, sent a memo through inter-departmental mail to Millicent Willis, who was then the Acting Chief Administrator of the Defendant City's Office of Professional Standards ("O.P.S.").

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 122, and thus deny same.

123.     Upon receiving this memo on or about May 27, 2002, Defendant Willis took no action. Defendant Willis did not open or initiate a Complaint Register, begin or assign anyone to begin an investigation, or disclose the memo corroborating Mr. Chatman's account to any prosecutors, Mr. Chatman's defense, or any competent authority.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 123, and thus deny same.

124.     The anonymous memo constituted material, exculpatory evidence.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 124, and thus deny same.

125.     Defendant Willis withheld this material, exculpatory evidence as a result of policies and widespread practices of O.P.S. and the Defendant City, including policies and widespread practices instituted, maintained, and continued by Defendants Willis, Lightfoot, and Morris.

**ANSWER:** Defendants are without knowledge or information sufficient to form a

belief as to the truth of paragraph 125, and thus deny same.

126.     Among other things, O.P.S. and Defendant City had a policy or widespread practice of not disclosing allegations or complaints of officer misconduct to criminal defendants, their defense attorneys, prosecutors, or any competent authority.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 126, and thus deny same.

127.     The Defendants' suppression of the anonymous memo continued even after Mr. Chatman's conviction and through the time that his direct appeal and post-conviction proceedings were pending.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 127, and thus deny same.

128.     Nearly two years later, in February 2004, after Mr. Chatman was convicted at his criminal trial but during the time that his direct appeal was pending, the anonymous Chicago police detective re-submitted his/her memo to the Defendant City because no action had been taken on the complaint when it was originally submitted in 2002. This time, the anonymous detective sent the memo to Karen Rowan, who was an assistant deputy superintendent with Internal Affairs.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 128, and thus deny same.

129.     Internal Affairs forwarded the complaint to O.P.S., and O.P.S. initiated an investigation into the anonymous complaint.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 129, and thus deny same.

130.    Defendant Karen Wojtczak was the O.P.S. investigator in charge of investigating the anonymous Chicago police detective's complaint against Kato concerning Mr. Chatman. The Complaint Register investigation was open from February 2004 until October 2004.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 130, and thus deny same.

131.    Defendant Wojtczak, O.P.S. and Defendant City took no action to investigate the identity of the anonymous Chicago police detective.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 131, and thus deny same.

132.    Defendant Wojtczak, O.P.S. and Defendant city did not interview Defendant Kato concerning the anonymous complaint, even though O.P.S. had determined from the Attendance and Assignment sheets that Defendant Kato was, in fact, on duty at Area 4 at the time of the alleged events, as the anonymous Chicago police detective stated in his/her memo.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 132, and thus deny same.

133.    Besides interviewing Mr. Chatman, whose account of his interrogation was largely corroborated by the anonymous detective's, Defendant Wojtczak, O.P.S. and Defendant City did not interview a single other witness before they summarily determined that the anonymous complaint was unfounded.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 133, and thus deny same.

134.    Despite the clearly material and exculpatory nature of the anonymous memo, no one at O.P.S. or at the Defendant City disclosed the anonymous memo to Mr. Chatman, his

defense counsel, prosecutors, or any competent authority.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 134, and thus deny same.

135. Defendant Lightfoot was the O.P.S. Administrator at the time the OP.S. investigation was initiated in February 2004 and investigated. Lightfoot facilitated, approved, condoned or deliberately ignored the actions of Defendant Wojtczak and other City employees, who knew of and withheld the anonymous detective's complaint.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 135, and thus deny same.

136. Defendant Morris was the O.P.S. Administrator during the time the O.P.S. investigation was conducted and through the time it was closed in October 2004. Morris facilitated, approved, condoned or deliberately ignored the actions of Defendant Wojtczak and other City employees, who knew of and withheld the anonymous detective's complaint.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 136, and thus deny same.

## Defendant Kato's History of Abuse

137. Unfortunately, Mr. Chatman is not the only victim of Defendant Kato's misconduct.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 137, and thus deny same.

138. Over many years prior to the anonymous detective's complaint against Defendant Kato in May 2002, Defendant Kato has perpetrated abuses on several unrelated victims. Kato had racked up nearly two dozen other complaints from other individuals who alleged that he had

used excessive force on them while they were being interrogated by him or in his custody.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 138, and thus deny same.

139.    Despite being on notice of these abuses, the City and O.P.S. never took any action to discipline Kato.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 139, and thus deny same.

140.    Pursuant to their policy and widespread practices, the City and O.P.S. did not consider any of these other complaints against Defendant Kato in determining whether the anonymous complaint in Mr. Chatman's case had merit.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 140, and thus deny same.

141.    As discussed above, the anonymous detective's complaint in Mr. Chatman's case was summarily dismissed.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 141, and thus deny same.

**City of Chicago and O.P.S.'s Inadequate Policies, Practices, Training, and Discipline**

142.    The City's inaction regarding Defendant Kato is just one example of the City's widespread failure to control its officers. The City maintains a de facto policy, practice, and custom of failing to train, supervise, discipline and control its police officers.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 142, and thus deny same.

143.    For some time prior to the misconduct alleged herein, municipal policymakers

had long been aware of the City's policy and practice of failing to properly train, monitor, and discipline its police officers:

    a.    In January 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

    b.    A study performed a year later by the Justice Coalition of Grater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed that resolution. Specifically, the JCGC study concluded that the Chicago Police Department lacked many of the basic tools necessary to identify, monitor, punish and prevent police misconduct and brutality. The JCGC findings were presented to the City's policymakers.

    c.    Two years later, in *Garcia v. City of Chicago*, 2003 WL 22175618, at *2 (N.D. Ill. Sept. 19, 2003), affirmed that the City's police misconduct investigations were systematically "incomplete, inconsistent, delayed, and slanted in favor of the officers" and as a result, fostered a culture of impunity within the Chicago Police Department.

    d.    Indeed, by its own accounting, in 2004 the City sustained only four percent of the complaints brought against police officers for use of excessive force. An even smaller percentage of officers were actually disciplined for such conduct.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a

belief as to the truth of paragraph 143 and all of its subparts, and thus deny same.

144.    Although the City had long been aware that its policies, practices, supervision, training and discipline of police officers was entirely inadequate, it did not enact any measures to address that failure, at any time relevant to the events alleged herein. Indeed, the O.P.S. Defendants and the City failed to reform the broken system in any meaningful way.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 144, and thus deny same.

145. In 1996, the City of Chicago intentionally abandoned a program designed to track police officers repeatedly acting in an abuse manner because of opposition by the Police Union. The City promptly deleted all data contained in the program, including the list of problem officers.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 145, and thus deny same.

146.    In 2000 and 2001, the City continued to refuse to implement a system allowing for detection of repeat police officer-offenders, despite the fact that the Commission on Accreditation for Law Enforcement Agencies adopted a standard mandating such a detection system for large agencies such as Chicago.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 146, and thus deny same.

147.    In 2003, although the City and the Police Union negotiated a new contract allowing the Chicago Police Department to use unsustained O.P.S. cases "to identify patterns of suspected misconduct about which the public and regulatory agencies are so intensely and legitimately concerned," no such pattern analysis was ever implemented.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 147, and thus deny same.

### Damages

148.     Mr. Chatman lost over a decade of his life before he was finally exonerated. During that time, his wife divorced him, family members died, and Mr. Chatman was falsely branded a rapist and incarcerated alongside some of the most dangerous prisoners in our penal system.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of paragraph 148, and thus deny same.

149.     Mr. Chatman now seeks to vindicate his rights by holding those responsible for his injuries accountable for their actions.

**ANSWER:** Defendants admit that Chatman seeks damages in his complaint. Defendants deny any liability and allegations directed at them.

### COUNT I
### 42 U.S.C. § 1983 – Coerced and False Confession
### (Fifth Amendment)

150.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendants adopt and restate their answers and responses to each paragraph of this Complaint as and for their answers and responses to paragraph 150 as though fully stated herein.

151.     In the manner described more fully above, Defendants Kato, Holmes, Roberts, Walsh, Boock, Mischka, and Midona, acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, forced Plaintiff to incriminate himself falsely and against his will, in violation of his rights secured by the Fifth and Fourteenth Amendments.

**ANSWER:** Defendants deny the allegations against them in paragraph 151. Defendants make no answer to paragraph 151 to the extent that it is directed at other defendants.

152. The false statements drafted by the Defendants and attributed to Plaintiff were used against Plaintiff to his detriment in a criminal case.

**ANSWER:** Defendants deny the allegations against them in paragraph 152. Defendants make no answer to paragraph 152 to the extent that it is directed at other defendants.

153. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:** Defendants deny the allegations against them in paragraph 153. Defendants make no answer to paragraph 153 to the extent that it is directed at other defendants.

154. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendants deny the allegations against them in paragraph 154. Defendants make no answer to paragraph 154 to the extent that it is directed at other defendants.

155. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in that Chicago Police officers regularly used coercive measures to obtain inculpatory statements from criminal suspects.

**ANSWER:** Defendants deny the allegations against them in paragraph 155. Defendants make no answer to paragraph 155 to the extent that it is directed at other defendants.

156. This widespread practice of obtaining statements in violation of the Fifth Amendment was so well-settled as to constitute de facto policy in the Chicago Police

Department, and was allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:** Defendants deny the allegations against them in paragraph 156. Defendants make no answer to paragraph 156 to the extent that it is directed at other defendants.

157. Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the City of Chicago declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment, thereby leading officers to believe that they could violate citizens' constitutional rights with impunity.

**ANSWER:** Defendants deny the allegations against them in paragraph 157. Defendants make no answer to paragraph 157 to the extent that it is directed at other defendants.

158. As a direct and proximate result of the City's actions, Plaintiff's constitutional rights were violated and he suffered injuries and damages, as set forth in this Complaint.

**ANSWER:** Defendants make no answer to paragraph 158 to the extent that it is directed at the City of Chicago. Defendants deny the remainder of paragraph 158.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## COUNT II
### 42 U.S.C. § 1983 – Coerced and False Confession
### (Fourteenth Amendment)

159. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendants adopt and restate their answers and responses to each paragraph of this Complaint as and for their answers and responses to paragraph 159 as though fully stated herein.

160. In the manner described more fully above, Defendants Kato, Holmes, Roberts,

Walsh, Boock, Mischka, and Midona, acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, forced Plaintiff to incriminate himself falsely and against his will, in violation of his right to due process secured by the Fourteenth Amendment.

**ANSWER:** Defendants deny the allegations against them in paragraph 160. Defendants make no answer to paragraph 160 to the extent that it is directed at other defendants.

161. As described in detail above, the misconduct described in this Count consisted of physical and psychological coercion. This misconduct to cause an obviously mentally-disabled individual to falsely implicate himself in a vicious rape that never occurred, was so severe as to shock the conscience, it was designed to injure Plaintiff, and it was not supported by any conceivable governmental interest.

**ANSWER:** Defendants deny the allegations against them in paragraph 161. Defendants make no answer to paragraph 161 to the extent that it is directed at other defendants.

162. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** Defendants deny the allegations against them in paragraph 162. Defendants make no answer to paragraph 162 to the extent that it is directed at other defendants.

163. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendants deny the allegations against them in paragraph 163. Defendants make no answer to paragraph 163 to the extent that it is directed at other defendants.

164.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in that Chicago Police Department officers regularly used coercive measures to obtain inculpatory statements from criminal suspects.

**ANSWER:**    Defendants deny the allegations against them in paragraph 164. Defendants make no answer to paragraph 164 to the extent that it is directed at other defendants.

165.    This widespread practice of obtaining statements in violation of the Fourteenth Amendment was so well-settled as to constitute de facto policy in the Chicago Police Department, and was allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:**    Defendants deny the allegations against them in paragraph 165. Defendants make no answer to paragraph 165 to the extent that it is directed at other defendants.

166.    Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the City of Chicago declined to implement sufficient training, discipline, and/or any legitimate mechanism for oversight or punishment, thereby leading officers to believe that they could violate citizens' constitutional rights with impunity.

**ANSWER:**    Defendants deny the allegations against them in paragraph 166. Defendants make no answer to paragraph 166 to the extent that it is directed at other defendants.

167.    As a direct and proximate result of the City's actions, Plaintiff's constitutional rights were violated and he suffered injuries and damages, as set forth in this Complaint.

**ANSWER:**    Defendants make no answer to paragraph 167 to the extent that it is directed at the City of Chicago. Defendants deny the remainder of paragraph 167.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed

against Plaintiff.

## COUNT III
### 42 U.S.C. § 1983 – Federal Malicious Prosecution

168.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Count III of Plaintiff's Complaint, including this paragraph, was dismissed by court order entered March 10, 2015.

169.    In the manner described above, Defendant Holmes and the Law Enforcement Defendants, acting as investigators, individually, jointly, and in conspiracy with one another, falsely accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

**ANSWER:**    Count III of Plaintiff's Complaint, including this paragraph, was dismissed by court order entered March 10, 2015.

170.     In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:**    Count III of Plaintiff's Complaint, including this paragraph, was dismissed by court order entered March 10, 2015.

171.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:**    Count III of Plaintiff's Complaint, including this paragraph, was dismissed by court order entered March 10, 2015.

172.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**     Count III of Plaintiff's Complaint, including this paragraph, was dismissed by court order entered March 10, 2015.

173.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in that Chicago Police Department officers regularly used unconstitutional measures to falsely implicate criminal suspects, including by coercing false confessions, withholding exculpatory evidence, fabricating inculpatory evidence, and otherwise instituting and continuing prosecutions maliciously and without probable cause.

**ANSWER:**     Count III of Plaintiff's Complaint, including this paragraph, was dismissed by court order entered March 10, 2015.

174.     This widespread practice of instituting and continuing prosecutions maliciously and without probable cause through the use of false confessions, fabrication of inculpatory evidence, and withholding of exculpatory evidence was so well-settled as to constitute de facto policy in the Chicago Police Department, and was allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:**     Count III of Plaintiff's Complaint, including this paragraph, was dismissed by court order entered March 10, 2015.

175.     Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the City of Chicago declined to implement sufficient training, discipline, and/or any legitimate mechanism for oversight or punishment, thereby leading

officers to believe that they could violate citizens' constitutional rights with impunity.

**ANSWER:**    Count III of Plaintiff's Complaint, including this paragraph, was dismissed by court order entered March 10, 2015.

176.    As a direct and proximate result of the City's actions, Plaintiff's constitutional rights were violated and he suffered injuries and damages, as set forth in this Complaint.

**ANSWER:**    Count III of Plaintiff's Complaint, including this paragraph, was dismissed by court order entered March 10, 2015.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

**COUNT IV**
**42 U.S.C. § 1983 – Due Process**

177.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Defendants adopt and restate their answers and responses to each paragraph of this Complaint as and for their answers and responses to paragraph 177 as though fully stated herein.

178.    As described in detail above, the Law Enforcement Defendants, Defendant Holmes, and the O.P.S. Defendants while acting individually, jointly, and in conspiracy with one another, as well as under

color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

**ANSWER:**    Defendants deny the allegations against them in paragraph 178. Defendants make no answer to paragraph 178 to the extent that it is directed at other defendants.

179.    In the manner described more fully above, the Law Enforcement Defendants,

Defendant Holmes, and the O.P.S. Defendants, deliberately withheld exculpatory evidence from Plaintiff and from the prosecutors, among others.

**ANSWER:** Defendants deny the allegations against them in paragraph 179. Defendants make no answer to paragraph 179 to the extent that it is directed at other defendants.

180. In addition, the Law Enforcement Defendants and Defendant Holmes, acting as investigators, fabricated evidence and solicited false evidence, including testimony that they knew to be false and perjured, and fabricated reports implicating Plaintiff in the crime, obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial.

**ANSWER:** Defendants deny the allegations against them in paragraph 180. Defendants make no answer to paragraph 180 to the extent that it is directed at other defendants.

181. The Law Enforcement Defendants, Defendant Holmes's, and Defendant Willis's misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying his constitutional right to a fair trial guaranteed by the Fifth and Fourteenth Amendments. Absent this misconduct, the prosecution of Plaintiff could not have and would not have been pursued.

**ANSWER:** Defendants deny the allegations against them in paragraph 181. Defendants make no answer to paragraph 181 to the extent that it is directed at other defendants.

182. The misconduct of Defendants Wojtczak, Lightfoot, and Morris directly resulted in the continued withholding of material, exculpatory evidence during the pendency of Plaintiff's criminal appeal, thereby denying his constitutional right to due process guaranteed by the Fourth, Fifth, and Fourteenth Amendments.

**ANSWER:** Defendants deny the allegations against them in paragraph 182. Defendants make no answer to paragraph 182 to the extent that it is directed at other defendants.

183. The O.P.S. Defendants' misconduct denied Plaintiff his constitutional right to due process.

**ANSWER:** Defendants deny the allegations against them in paragraph 183. Defendants make no answer to paragraph 183 to the extent that it is directed at other defendants.

184. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** Defendants deny the allegations against them in paragraph 184. Defendants make no answer to paragraph 184 to the extent that it is directed at other defendants.

185. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendants deny the allegations against them in paragraph 185. Defendants make no answer to paragraph 185 to the extent that it is directed at other defendants.

186. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in that Chicago Police Department officers regularly used unconstitutional measures to falsely implicate criminal suspects, including by coercing false confessions, withholding exculpatory evidence, and fabricating inculpatory evidence.

**ANSWER:** Defendants deny the allegations against them in paragraph 186. Defendants make no answer to paragraph 186 to the extent that it is directed at other defendants.

187. Furthermore, the misconduct described in this Count was undertaken pursuant to the policy and practices of the City of Chicago in that O.P.S. investigators regularly withheld exculpatory evidence such as allegations or complaints of officer misconduct.

**ANSWER:** Defendants deny the allegations against them in paragraph 187. Defendants make no answer to paragraph 187 to the extent that it is directed at other defendants.

188. These widespread practices were so well-settled as to constitute de facto policy in the Chicago Police Department and O.P.S, and were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:** Defendants deny the allegations against them in paragraph 188. Defendants make no answer to paragraph 188 to the extent that it is directed at other defendants.

189. Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the City of Chicago and O.P.S. declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment, thereby leading officers to believe that they could violate citizens' constitutional rights with impunity.

**ANSWER:** Defendants deny the allegations against them in paragraph 189. Defendants make no answer to paragraph 189 to the extent that it is directed at other defendants.

190. As a direct and proximate result of the City's actions, Plaintiff's constitutional rights were violated and he suffered injuries and damages, as set forth in this Complaint.

**ANSWER:** Defendants make no answer to paragraph 190 to the extent that it is directed at the City of Chicago. Defendants deny the remainder of paragraph 190.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## COUNT V
### 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights

191. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendants adopt and restate their answers and responses to each paragraph of this Complaint as and for their answers and responses to paragraph 191 as though fully stated herein.

192. Prior to Plaintiff's conviction, all of the individual Defendants, excepting those sued in their official capacity, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Complaint.

**ANSWER:** Defendants deny the allegations against them in paragraph 192. Defendants make no answer to paragraph 192 to the extent that it is directed at other defendants.

193. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER:** Defendants deny the allegations against them in paragraph 193. Defendants make no answer to paragraph 193 to the extent that it is directed at other defendants.

194. In furtherance of their conspiracy, each of these coconspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER:** Defendants deny the allegations against them in paragraph 194. Defendants make no answer to paragraph 194 to the extent that it is directed at other defendants.

195. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:** Defendants deny the allegations against them in paragraph 195. Defendants

make no answer to paragraph 195 to the extent that it is directed at other defendants.

196.    As a result of these Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**    Defendants deny the allegations against them in paragraph 196. Defendants make no answer to paragraph 196 to the extent that it is directed at other defendants.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## COUNT VI
### 42 U.S.C. § 1983 – Failure to Intervene

197.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Defendants adopt and restate their answers and responses to each paragraph of this Complaint as and for their answers and responses to paragraph 197 as though fully stated herein.

198.    In the manner described above, during the constitutional violations described herein, one or more of the Law Enforcement Defendants, Defendant Holmes, and the O.P.S. Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

**ANSWER:**    Defendants deny the allegations against them in paragraph 198. Defendants make no answer to paragraph 198 to the extent that it is directed at other defendants.

199.    As a result of these Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendants deny the allegations against them in paragraph 199. Defendants make no answer to paragraph 199 to the extent that it is directed at other defendants.

200. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:** Defendants deny the allegations against them in paragraph 200. Defendants make no answer to paragraph 200 to the extent that it is directed at other defendants.

201. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in that Chicago Police Department officers regularly failed to intervene to prevent the violation of suspects' constitutional rights.

**ANSWER:** Defendants deny the allegations against them in paragraph 201. Defendants make no answer to paragraph 201 to the extent that it is directed at other defendants.

202. Furthermore, the misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago in that O.P.S. investigators and other City employees involved in reviewing O.P.S. investigations regularly failed to intervene to prevent the violation of persons' constitutional rights.

**ANSWER:** Defendants deny the allegations against them in paragraph 202. Defendants make no answer to paragraph 202 to the extent that it is directed at other defendants.

203. These widespread practices of failing to intervene to prevent the violation of suspects' constitutional rights was so well-settled as to constitute de facto policy in the Chicago Police Department and O.P.S., and were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:** Defendants deny the allegations against them in paragraph 203. Defendants make no answer to paragraph 203 to the extent that it is directed at other defendants.

204. Furthermore, the widespread practices described in the preceding paragraphs were allowed to flourish because the City of Chicago declined to implement sufficient training, discipline, and/or any legitimate mechanism for oversight or punishment, thereby leading officers to believe that they ignore the violation of citizens' constitutional rights with impunity.

**ANSWER:** Defendants deny the allegations against them in paragraph 204. Defendants make no answer to paragraph 204 to the extent that it is directed at other defendants.

205. As a direct and proximate result of the City's actions, Plaintiff's constitutional rights were violated and he suffered injuries and damages, as set forth in this Complaint.

**ANSWER:** Defendants deny the allegations against them in paragraph 168. Defendants make no answer to paragraph 205 to the extent that it is directed at other defendants.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

**Count VII – 42 U.S.C. § 1983**
**Supervisory Liability**

206. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendants adopt and restate their answers and responses to each paragraph of this Complaint as and for their answers and responses to paragraph 206 as though fully stated herein.

207. Plaintiff's malicious prosecution and wrongful conviction were caused by the intentional misconduct by the supervisory defendants, including Defendants Walsh and Holy, Lightfoot, Willis, and Morris, or when they were deliberately, recklessly indifferent to their

subordinates' misconduct, knowing that turning a blind eye to that misconduct would necessarily violate Mr. Chatman's constitutional rights.

**ANSWER:** Count VII, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

208. Specifically, the supervisory defendants, including Defendants Walsh and Holy were aware of and facilitated, condoned, and oversaw the coercive tactics used by some of the Defendants to obtain Plaintiff's false confession, or were deliberately, recklessly indifferent to their subordinates' unconstitutional tactics.

**ANSWER:** Count VII, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

209. Moreover, the supervisory Defendants, including Defendants Walsh and Holy were aware of and facilitated, condoned, and oversaw the withholding of exculpatory evidence, including but not limited to the existence of the sleeping deputy referenced above, but failed to disclose that information, or were deliberately, recklessly indifferent to their subordinates' unconstitutional actions in withholding exculpatory evidence.

**ANSWER:** Count VII, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

210. Defendants Lightfoot and Morris were aware of and facilitated, condoned, and oversaw the withholding of exculpatory evidence, including but not limited to the anonymous Chicago detective's memo referenced above, but failed to disclose that information, or were deliberately, recklessly indifferent to their subordinates' unconstitutional actions in withholding exculpatory evidence.

**ANSWER:** Count VII, which includes this paragraph, is not directed at Defendants and

seeks no relief from Defendants. Accordingly, Defendants make no answer.

211.     In addition, the supervisory Defendants, including Defendants Walsh and Holy were aware of and facilitated, condoned, and oversaw the fabrication of inculpatory evidence, or were deliberately, recklessly indifferent to their subordinates' unconstitutional actions in fabricating exculpatory evidence.

**ANSWER:**     Count VII, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

212.     The personal involvement of the defendant supervisors, through their actions and omissions, proximately and directly caused the constitutional deprivations and grievous personal injuries suffered by Plaintiff, including the above-mentioned injuries and damages.

**ANSWER:**     Count VII, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

213.     The misconduct described in this Count was objectively unreasonable, and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Plaintiff's clearly established constitutional rights.

**ANSWER:**     Count VII, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

## COUNT VIII
### State Law Claim – Malicious Prosecution

214.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**     Defendants adopt and restate their answers and responses to each paragraph of this Complaint as and for their answers and responses to paragraph 214 as though fully stated herein.

215.     In the manner described above, the individual Defendants, excepting Defendant

Kato, the O.P.S. Defendants, and those sued in their official capacity, acting as investigators, individually, jointly, or in conspiracy with one another, as well as within the scope of their employment, falsely accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

**ANSWER:** Defendants deny the allegations against them in paragraph 215. Defendants make no answer to paragraph 215 to the extent that it is directed at other defendants.

216. In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:** Defendants deny the allegations against them in paragraph 216. Defendants make no answer to paragraph 216 to the extent that it is directed at other defendants.

217. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:** Defendants deny the allegations against them in paragraph 217. Defendants make no answer to paragraph 217 to the extent that it is directed at other defendants.

218. As a result of these Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Defendants deny the allegations against them in paragraph 218. Defendants make no answer to paragraph 218 to the extent that it is directed at other defendants.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their

favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## COUNT IX

### State Law Claim – Intentional Infliction of Emotional Distress

219.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Count IX of Plaintiff's Complaint was dismissed by court order of March 10, 2015.

220.    The actions, omissions, and conduct of the individual Defendants, excepting Defendant Kato and those sued in their official capacity, as set forth above were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER:**    Count IX of Plaintiff's Complaint was dismissed by court order of March 10, 2015.

221.    As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer emotional distress and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**    Count IX of Plaintiff's Complaint was dismissed by court order of March 10, 2015.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## COUNT X
## State Law Claim – Civil Conspiracy

222. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendants adopt and restate their answers and responses to each paragraph of this Complaint as and for their answers and responses to paragraph 222 as though fully stated herein.

223. As described more fully in the preceding paragraphs, the individual Defendants, excepting Defendant Kato and those sued in their official capacities, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER:** Defendants deny the allegations against them in paragraph 223. Defendants make no answer to paragraph 223 to the extent that it is directed at other defendants.

224. In furtherance of their conspiracy, each of these coconspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER:** Defendants deny the allegations against them in paragraph 224. Defendants make no answer to paragraph 224 to the extent that it is directed at other defendants.

225. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:** Defendants deny the allegations against them in paragraph 225. Defendants make no answer to paragraph 225 to the extent that it is directed at other defendants.

226. As a result of these Defendants' misconduct described in this Count, Plaintiff

suffered loss of liberty, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**    Defendants deny the allegations against them in paragraph 226. Defendants make no answer to paragraph 226 to the extent that it is directed at other defendants.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

**COUNT XI**
**State Law Claim – Defamation**

227.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Count XI, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

228.    Defendant Riggio published and caused to be published intentionally false statements about or concerning Plaintiff that she knew to be false, including repeatedly falsely accusing Plaintiff of rape, and in so doing committed defamation per se.

**ANSWER:**    Count XI, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

229.    By engaging in the misconduct described in this Count, Defendant Riggio made demonstrably false statements about and concerning Plaintiff to third parties, and she caused those statements to be widely published in major public newspapers distributed throughout the entire world. The things Defendant Riggio said about or concerning Plaintiff were malicious, shocking, outrageous, and offensive, and Defendant Riggio made these statements knowing that they were entirely false.

**ANSWER:**    Count XI, which includes this paragraph, is not directed at Defendants and

seeks no relief from Defendants. Accordingly, Defendants make no answer.

230.    The statements made by Defendant Riggio described above are wholly untrue accusations of rape, which is a crime that constitutes defamation per se in Illinois.

**ANSWER:**    Count XI, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

231. Defendant Riggio acted with actual malice, reckless intent and gross indifference to the false and misleading nature of her statements about and concerning Plaintiff when she made them to third parties.

**ANSWER:**    Count XI, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

232.    These defamatory falsehoods were made with actual malice by Defendant Riggio inasmuch as she knew of their falsity or recklessly disregarded their truth or falsity.

**ANSWER:**    Count XI, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

233.    As a result of Defendant Riggio's misconduct described in this Count, Plaintiff suffered injuries, including but not limited to reputational damages, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:**    Count XI, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

234.    In particular, Defendant Riggio's defamatory publications have injured and continue to injure Plaintiff in the following ways, among others: (a) by impugning Plaintiff's personal reputation in the community such that individuals who Plaintiff interacts with question

whether he is a rapist; (b) by limiting Plaintiff's employment options and his future career prospects; (c) by causing Plaintiff to be prosecuted and convicted for a crime he did not commit and spend over 11 years wrongfully imprisoned; and (d) by subjecting Plaintiff to harassment and additional persecution for a crime he did not commit.

**ANSWER:** Count XI, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

235. The actions and omissions of Defendant Riggio set forth in this Count demonstrate malice, egregious defamation, and insult. Defendant Riggio's actions and omissions were undertaken either with malice, spite, ill will, vengeance, or deliberate intent to harm Plaintiff, or with reckless disregard to the falsity of the speech and its effect on Plaintiff. Accordingly, Plaintiff is entitled to punitive damages and attorneys' fees beyond those damages, described above, that will compensate Plaintiff for injuries resulting from Defendant Riggio's conduct.

**ANSWER:** Count XI, which includes this paragraph, is not directed at Defendants and seeks no relief from Defendants. Accordingly, Defendants make no answer.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## COUNT XII
## State Law Claim – Respondeat Superior

236. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendants adopt and restate their answers and responses to each paragraph of this Complaint as and for their answers and responses to paragraph 236 as though fully stated herein.

237.     While committing the misconduct alleged in the preceding paragraphs, Defendant Holmes and the Law Enforcement Defendants were employees, members, and agents of the City of Chicago, the Cook County Sheriff's Department, and the Cook County State's Attorney's Office, acting at all relevant times within the scope of their employment.

**ANSWER:**     Defendant Holmes makes no answer to paragraph 237 as it is directed at other defendants. State's Attorney Alvarez admits that Defendant Holmes was employed by the Cook County State's Attorney's Office and acted within the scope of his employment in 2002. State's Attorney Alvarez makes no answer to paragraph 237 to the extent that it is directed against any of the other individual defendants, City of Chicago, or Thomas Dart.

238.     Defendants City of Chicago, Sheriff Dart, State's Attorney Alvarez, are liable as principals for all torts committed by their agents.

**ANSWER:**     Defendant Holmes makes no answer to paragraph 238 as it is directed at other defendants. State's Attorney Alvarez denies the allegations against her in paragraph 238. State's Attorney Alvarez makes no answer to paragraph 238 to the extent that it is directed against the City of Chicago and Sheriff Dart.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## COUNT XIII
## State Law Claim – Indemnification

239.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**     Defendants adopt and restate their answers and responses to each paragraph of this Complaint as and for their answers and responses to paragraph 239 as though fully stated herein.

240.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment.

**ANSWER:**     Defendants admit the existence of 745 ILCS 10/9-102, but deny any liability to Plaintiff pursuant to that statute.

241.     Defendant Holmes and the Law Enforcement Defendants were employees, members, and agents of the City of Chicago, the Cook County Sheriff's Department, and/or the Cook County State's Attorney's Office, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

**ANSWER:**     Defendant Holmes makes no answer to paragraph 241 as it is directed at other defendants. State's Attorney Alvarez admits that Defendant Holmes was employed by the Cook County State's Attorney's Office and acted within the scope of his employment in 2002. State's Attorney Alvarez makes no answer to paragraph 241 to the extent that it is directed against any of the other individual defendants, City of Chicago, or Thomas Dart.

242.     Cook County is obligated by Illinois statute to pay any judgment entered against the Sheriff of Cook County in his official capacity.

**ANSWER:**     Defendants deny the allegations in paragraph 242.

243.     Cook County is obligated by Illinois statute to pay any judgment entered against Defendants Holmes or Alvarez.

**ANSWER:**     Defendants deny the allegations in paragraph 243.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### Absolute Prosecutorial Immunity

At all relevant times, Defendant Holmes was an Assistant State's Attorney working for the Cook County State's Attorneys' Office, and in this capacity, he performed acts toward initiating a prosecution and presenting the State's case. Because the conduct complained of on the part of Defendant Holmes arises out of the initiation and prosecution of criminal charges, Plaintiff's claims are barred on the basis of absolute prosecutorial immunity.

### SECOND AFFIRMATIVE DEFENSE
### Qualified Immunity

At all relevant times, Defendant Holmes was an Assistant State's Attorney working for the Cook County State's Attorney's Office. To the extent any of his actions are not protected by absolute prosecutorial immunity, they are protected by qualified immunity as his actions were at all times proper in light of clearly established law.

### THIRD AFFIRMATIVE DEFENSE
### Sovereign Immunity

Plaintiff's claims against Defendant Holmes and State's Attorney Alvarez are really claims against a State official based upon his actions as an Assistant State's Attorney, functions that fall within the scope of his employment, and authority as an Assistant State's Attorney.

Plaintiff's claims against Defendant Holmes relate to the initiation of charges against and the criminal prosecution of Plaintiff for the rape of Susan Riggio. The State's Attorney is the constitutional officer vested with exclusive discretion in the initiation and management of a criminal prosecution. The prosecution of Plaintiff's case is, therefore, well within the scope of the State's Attorney's authority. The Illinois Court of Claims has sole and exclusive jurisdiction over Plaintiff's state law claims against Defendant Holmes and State's Attorney Alvarez.

63

## FOURTH AFFIRMATIVE DEFENSE
### Statute of Limitations – Federal Claims

To the extent that any of Plaintiff's claims pursuant to §1983 accrued more than two

years prior to the filing of Plaintiff's Complaint, these claims are time barred.

## FIFTH AFFIRMATIVE DEFENSE
### Failure to Mitigate Damages

Plaintiff has failed to mitigate the damages he claims to have sustained.

## SIXTH AFFIRMATIVE DEFENSE
### Statute of Limitations – State Law Claims

To the extent that any of Plaintiff's claims pursuant to Illinois State law accrued more

than one year prior to the filing of Plaintiff's Complaint, these claims are time barred pursuant to

745 ILCS 10/8-101(a).

## SEVENTH AFFIRMATIVE DEFENSE
### 745 ILCS 10/2-202

Defendant Holmes' acts or omissions at issue were taken by a public employee in the

execution or enforcement of a law and did not constitute willful or wanton conduct. Accordingly,

Defendant Holmes is immune from suit pursuant to 745 ILCS 10/2-202.

## EIGHTH AFFIRMATIVE DEFENSE
### 745 ILCS 10/2-204

Defendant Holmes is immune from suit pursuant to 745 ILCS 10/2-204 for any injury

caused by the act or omission of another person.

## NINTH AFFIRMATIVE DEFENSE

Cook County is immune from the imposition of punitive damages under both state and

federal law. Punitive damages cannot be imposed against a municipality in a §1983 action. *City

of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Cook County cannot be required to

indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages

on behalf of an employee. 745 ILCS 10/2-102.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims in the complaint are barred by the doctrines of *res judicata* and collateral estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by the negligent, willful, wanton and/or other wrongful conduct on the part of the Plaintiff, any verdict or judgment obtained by Plaintiff must be reduced by application of the principles of comparative fault, by an amount commensurate with the degree of fault attributed to Plaintiff by the jury in this cause.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent that Defendant Holmes is not liable as alleged in the Compliant, State's Attorney Alvarez is not liable.

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendant Holmes had no duty to intervene as alleged in the Complaint.

WHEREFORE, Defendants respectfully requests that this Court enter judgment in their favor and against Plaintiff, that the action be dismissed with prejudice, and that costs be assessed against Plaintiff.

## JURY DEMAND

Defendants hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By:    /s/ Lisa M. Meador
       Lisa M. Meador
       Thomas E. Nowinski
       Assistant State's Attorney
       500 Richard J. Daley Center
       Chicago, IL 60602
       (312) 603-3369