**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARL CHATMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 2945 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Judge John Z. Lee |
| | ) | |
| Defendants. | ) | Magistrate Judge Maria Valdez |

**OPS DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT**

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois  60606
312.876.1700
312.627.2302 (facsimile)

## TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 2

STANDARD FOR SUMMARY JUDGMENT .................................................................. 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................. 5

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................. 5

*Samuels v. Wilder*,
    871 F.2d 1346 (7th Cir. 1989) ................................................................................ 5

*Hedberg v. Indiana Bell Telephone Co.*,
    47 F.3d 928 (7th Cir. 1995) .................................................................................... 5

*Brown v. Advocate South Suburban Hosp.*,
    700 F.3d 1101 (7th Cir. 2012) ................................................................................ 5

*United States v. 5443 Suffield Terrace*,
    607 F.3d 504 (7th Cir. 2010) .................................................................................. 6

DISCUSSION ..................................................................................................................... 6

I.     **SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF THE OPS DEFENDANTS ON PLAINTIFF'S UNTIMELY STATE LAW CLAIMS** ............... 6

*Evans v. City of Chicago*,
    434 F.3d 916 (7th Cir. 2006) .................................................................................. 6

*Knox College v. Celotex Corp.*,
    88 Ill. 2d 407 (1981) ............................................................................................... 7

*Nolan v. Johns-Manville Asbestos*,
    85 Ill. 2d 161 (1981) ............................................................................................... 7

*Davis v. Frapolly*,
    742 F. Supp. 971 (N.D. Ill. 1990) ...................................................................... 7, 14

*Witherell v. Weimer*,
    85 Ill. 2d 146 (1981) ............................................................................................... 7

*Jackson Jordan, Inc. v. Leydig, Voit & Mayer,*
    158 Ill. 2d 240 (1994) ............................................................................................8

*KDC Foods, Inc. v. Gray, Plant, Mooty & Bennett, P.A.,*
    2013 U.S. Dist. LEXIS 153393 (W.D. Wisc. 2013) ..................................................9

*Betts v. Manville Personal Injury Settlement Trust,*
    225 Ill. App. 3d 882 (4th Dist. 1992) .....................................................................10

**II.     THE OPS DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
         COUNT IX AS PLAINTIFF CANNOT PRESENT SUFFICIENT EVIDENCE
         TO ESTABLISH AN IIED CLAIM** ............................................................ 11

*Doe v. Calumet City,*
    161 Ill. 2d 374 (1994) ............................................................................................11

*Public Finance Corp. v. Davis,*
    66 Ill. 2d 85 (1976) ................................................................................................11

*Estate of Wells v. Bureau County,*
    723 F. Supp. 2d 1061 (C.D. Ill. 2010) ...................................................................12

*Moore v. Abernathy,*
    2015 U.S. Dist. LEXIS 4741 (N.D. Ill. 2015) ........................................................12

*Trujillo v. Simer,*
    934 F. Supp. 1217 (D. Colo. 1996) ........................................................................12

*Garrison v. Burke,*
    1993 U.S. Dist. LEXIS 1318 (N.D. Ill. 1993) ........................................................12

*Sadrud-Din v. City of Chicago,*
    883 F. Supp. 270 (N.D. Ill. 1995) ..........................................................................14

*People v. Levine,*
    99 Ill. App. 3d 141 (5th Dist. 1981) .......................................................................14

*McAnulty v. American Nat'l Bank & Trust Co.,*
    1996 U.S. Dist. LEXIS 4184 (N.D. Ill. 1996) ........................................................14

**III.    THE OPS DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
         COUNT X AS PLAINTIFF CANNOT PRESENT SUFFICIENT EVIDENCE
         TO ESTABLISH A STATE LAW CONSPIRACY CLAIM** ..................................... 20

*Reuter v. MasterCard Int'l, Inc.,*
    397 Ill. App. 3d 915 (5th Dist. 2010).....................................................................20

*McClure v. Owens Corning Fiberglas Corp.*,
    188 Ill. 2d 102 (1999). Civil .........................................................................20

*Indeck North American Power Fund, L.P. v. Norweb PLC*,
    316 Ill. App. 3d 416 (1st Dist. 2000) ............................................................21

*Adcock v. Brakegate, Ltd.*,
    164 Ill. 2d 54 (1994) ....................................................................................21

CONCLUSION ...................................................................................................... 22

**STATEMENT OF THE CASE**

On November 25, 2015, plaintiff filed his "Corrected" Second Amended Complaint ("SAC"), which asserted federal and state law claims against newly added defendants Lori Lightfoot, Tisa Morris, Millicent Willis, and Karen Wojtczak (jointly, the "OPS Defendants"). (Dkt. #324). According to the SAC, the OPS Defendants allegedly withheld and suppressed from plaintiff, plaintiff's criminal defense attorneys, and prosecutors from the Cook County State's Attorney's Office ("CCSAO") an exculpatory anonymous letter that had been sent to the Chicago Police Department's Office of Professional Standards ("OPS") for investigation. (SAC, ¶¶ 127, 134). The OPS Defendants moved to dismiss the federal and state law claims on both substantive and procedural grounds. In a Memorandum Opinion and Order dated September 12, 2016, this Court granted in part the OPS Defendants' motion to dismiss. (Dkt. #399). Specifically, the Court dismissed all of the federal law claims against the OPS Defendants. The Court indicated plaintiff's federal law claims sought to extend a constitutional duty to disclose *Brady* material on government employees who were responsible for investigating police officers, but had no part in investigating or prosecuting a criminal defendant. (*Id.*, at 9). The Court concluded that the duty plaintiff sought to impose (assuming it even existed) was not clearly established at the time of plaintiff's criminal proceedings. (*Id.*, at 9-10). Accordingly, the Court dismissed the *Brady* claim against the OPS Defendants as well as all remaining constitutional claims against them, which were derivative of the *Brady* claim. (*Id.*, at 10).

The Court declined to dismiss at the pleadings stage the state law claims against the OPS Defendants. The Court denied the motion to dismiss the state law claims as time-barred based upon plaintiff's stated intent to "rely on the discovery rule to show that his state law claims against the OPS Defendants were timely." (*Id.*, at 11). The Court further suggested plaintiff

1

might be able to establish the elements of an intentional infliction of emotional distress ("IIED") claim "so long as he can show that the OPS Defendants acted in an extreme and outrageous manner by knowingly withholding exculpatory information, even though they were aware that there was a high likelihood that disclosure of information would impact Chatman's trial and appeal." (*Id*., at 12).

No longer restricted to the four corners of the SAC, the OPS Defendants now move for summary judgment on plaintiff's state law claims. As set forth below, the evidence shows that the discovery rule cannot save plaintiff's untimely state law claims against the OPS Defendants. In addition, plaintiff has failed to present sufficient evidence to establish an IIED claim against any of the OPS Defendants. Finally, there is no evidence to establish any of the OPS Defendants entered into any agreement among themselves (or with anyone else) to conceal the anonymous letter from Carl Chatman, his attorneys, or CCSAO prosecutors that would support the state law conspiracy claim. Summary judgment should be entered in favor of the OPS Defendants and against plaintiff as to the two remaining claims against them.

## STATEMENT OF FACTS

This case arises out of an incident that occurred on the morning of May 24, 2002, at the Richard J. Daley Center. At 7:45 a.m. that day, CPD officers were called to the scene to investigate the possible rape of Susan Riggio, who worked as a clerk on the 21st floor of the Daley Center. (OPS Defendants' Rule 56.1 Statement of Facts in Support of Their Motion for Summary Judgment (hereinafter, "SOF"), at ¶10). Responding police officers issued a flash message to all department members to look for a potential suspect in the Loop area described as a male black with salt and pepper hair wearing a Blackhawks jacket. (*Id*.) At approximately 8:30 a.m. that same morning, Chicago police officers stopped and arrested plaintiff in the

downtown area. (SOF, ¶11). Plaintiff was an African American male with salt and pepper hair, wearing a red Blackhawks jacket. (*Id.*)

Plaintiff was taken to CPD Detective Division Area 4. At approximately noon on May 24, 2002, Ms. Riggio viewed a line-up at Area 4 and identified plaintiff as her assailant. (SOF, ¶12). At approximately 10:30 p.m. that evening, Area 4 Detective John Roberts was assigned to interview plaintiff. According to police department reports, plaintiff provided a statement to Detective Roberts in which he implicated himself in the sexual assault of Ms. Riggio. (SOF, ¶13). The next morning, on May 25, 2002, Cook County Assistant State's Attorney ("ASA") Brian Holmes wrote out the handwritten confession of plaintiff, which plaintiff initialed and signed. (SOF, ¶14). On January 29, 2004, a jury found plaintiff guilty of aggravated sexual assault, and he was subsequently sentenced to 30 years' imprisonment. (SOF, ¶16).

In February 2004, the CPD's Internal Affairs Division ("IAD") received correspondence through the United States mail addressed to "Internal Affairs Attn: Karen Rowan." (SOF, ¶23). The envelope was postmarked February 2004. (SOF, ¶24). IAD Administrative Sergeant Matthew Brown opened the envelope on the morning of February 23, 2004. (SOF, ¶¶ 22, 23). The envelope contained three documents: a single page, three paragraph letter from an anonymous source addressed to "Internal Affairs" and "Office of Professional Standards/Melissa Willis;" a single page with a single sentence stating, "As you can see, I initially sent this report via inter-office mail, but to no avail;" and, a photocopy of the front of an envelope marked "Inter-Departmental Correspondence" addressed to "OPS Unit 113/Melissa Willis" from "Anonymous." (SOF, ¶¶ 24-25). The anonymous letter, which complained of police officer misconduct against Area 4 Detective Kriston Kato, bore a date of May 27, 2002. (SOF, ¶¶ 25,

27). The page with the single sentence was unsigned and undated. (SOF, ¶25). The photocopy of the front of the inter-departmental correspondence envelope similarly was undated. (*Id*.)

After opening the envelope containing the anonymous letter and other items, Sergeant Brown initiated a Complaint Register investigation with OPS at 10:54 a.m. that morning. (SOF, ¶26). Sergeant Brown called OPS, obtained a Complaint Register ("CR") number (#296034), typed up an initiation report, attached the envelope and its contents to the report, and sent them to intake at OPS. (SOF, ¶26). OPS was a civilian investigative unit of the CPD created to investigate certain kinds of police officer misconduct: allegations of excessive force; allegations of domestic violence; police-involved shootings; and, deaths of individuals in police custody. (SOF, ¶18). OPS investigated allegations of misconduct by police officers; it did not investigate the crimes being investigated by the police officers accused of misconduct. (SOF, ¶20).

On April 16, 2004, OPS Investigator Karen Wojtczak was assigned to the investigation of CR #296034. (SOF, ¶36). As of October 1, 2004, Ms. Wojtczak reached a conclusion that the allegations against Detective Kato in the anonymous complaint were unfounded. (SOF, ¶¶ 49-50, 52). According to CPD general orders, a complaint that is classified as "unfounded" means that the allegation is false or not factual. (SOF, ¶19). Because of the determination that the allegations against Detective Kato were unfounded, the investigation was terminated. (SOF, ¶50). When a Complaint Register investigation is completed, it is submitted for "Command Channel Review." Command Channel Review is a process in which the Complaint Register file is sent to a CPD chain of command for review of the investigation to determine if the OPS findings supported the classification. (SOF, ¶53). CR #296034 went through the normal Command Channel Review process. (SOF, ¶54).

## STANDARD FOR SUMMARY JUDGMENT

A court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Fed. R. Civ. P. 56(a)). The burden is on the moving party to identify those portions of the pleadings, depositions, and other discovery-related materials that demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must set forth specific facts, through affidavits or other materials, that demonstrate disputed material facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Merely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "Conclusory allegations by the party opposing the motion cannot defeat the motion[;]" rather, "[t]he party opposing the motion must come forward with evidence of a genuine factual dispute." *Hedberg v. Indiana Bell Telephone Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

A scintilla of evidence in support of the non-moving party's position is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 251. Further, reliance on unsupported speculation does not meet a non-moving party's burden of providing sufficient defense to a summary judgment motion. *Hedberg*, 47 F.3d at 931-32 ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is the primary goal of summary judgment") (emphasis in original); *see also Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (Viewing evidence in the light most favorable to the non-moving party "does not extend to drawing inferences that are supported by only speculation or conjecture"). At the summary judgment stage, "saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that

creates a genuine issue of material fact[.]" *United States v. 5443 Suffield Terrace,* 607 F.3d 504, 510 (7th Cir. 2010).

## DISCUSSION

The OPS Defendants are entitled to summary judgment on both procedural and substantive grounds. As set forth below, plaintiff's state law claims against the OPS Defendants are untimely. In addition, plaintiff cannot present competent evidence sufficient to create a genuine issue of material fact as to the required legal elements of his state law claims against the OPS Defendants. Because plaintiff's claims are time-barred, and because he lacks the evidence needed to prove those claims, the OPS Defendants are entitled to summary judgment.

## I.   SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF THE OPS DEFENDANTS ON PLAINTIFF'S UNTIMELY STATE LAW CLAIMS

Plaintiff's IIED and state law conspiracy claims against the OPS Defendants are time-barred. Under the Illinois Tort Immunity Act, the applicable statute of limitations for plaintiff's state law claims is one year. 745 ILCS 10/8-101; *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006) ("The limitations period for tort claims, such as intentional infliction of emotional distress, against governmental entities and their employees * * * is only one year"). At the pleadings stage, this Court declined to dismiss as untimely the state law claims against the OPS Defendants because plaintiff suggested his intention to rely on the "discovery rule."[1] (Mem. Op. & Order, Dkt. #399, at 10-11). Plaintiff argued the state law claims did not accrue until June 2015, when he became aware of the anonymous letter in this litigation. (*Id.*, at 11). Forced to now rely on the actual evidence, plaintiff cannot plausibly contend the discovery rule saves either of his untimely state law claims against the OPS Defendants. Plaintiff clearly was on notice of the OPS investigation as of March 2004, and a modicum of reasonable diligence on his

---

[1] In an earlier ruling, this Court had dismissed as untimely the IIED claims against the other named defendants in this action. (*See* Mem. Op. & Order, Dkt. #175, at 18-19).

part during the pendency of his criminal proceedings would have led him to discover the anonymous letter in the OPS file for CR #296034 long before 2015.

The effect of the discovery rule is to postpone the commencement of the relevant statute of limitations until a plaintiff knows or should know, through the exercise of reasonable diligence, that he has been injured and that his injury was wrongfully caused. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414 (1981); *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981). As the Illinois Supreme Court explained:

> [T]he event which triggers the running of the statutory period is not the first knowledge the injured person has of his injury, and, at the other extreme, we have also held that it is not the acquisition of knowledge that one has a cause of action against another for an injury he has suffered. Rather, we have held in *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981) and *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981), that the statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.

*Knox College*, 88 Ill. 2d at 415. A plaintiff need not know that an actionable wrong has been committed before the statutory period commences. *Id*. at 415-16. The discovery rule does not apply "where the undetermined fact is not the existence of the injury, but rather the identity of the tortfeasor." *Davis v. Frapolly*, 742 F. Supp. 971, 973 (N.D. Ill. 1990), quoting *Jackson v. Village of Rosemont*, 180 Ill. App. 3d 932 (1st Dist. 1988).

In evaluating application of the discovery rule, the exercise of reasonable diligence by the injured party is a critical factor. The statute begins to run when the person "knows or reasonably should know of his injury, and also knows or reasonably should know that it was wrongfully caused. *At that point the burden is upon the injured person to inquire further as to the existence of a cause of action.*" *Witherell*, 85 Ill. 2d at 156 (emphasis added). Once it reasonably appears that an injury was wrongfully caused, the plaintiff "may not slumber on his rights." *Nolan*, 85

Ill. 2d at 171 ("[T]he statute begins to run and the *party is under an obligation to inquire further to determine whether an actionable wrong was committed*") (emphasis added).

The accrual of a cause of action under the discovery rule is ordinarily a question of fact, unless the undisputed facts allow for only one conclusion. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 250 (1994). Here, the undisputed evidence allows for only one plausible conclusion: the statute of limitations for plaintiff's state law claims against the OPS Defendants was triggered in 2004, long before the June 2015 date urged by plaintiff. The linchpin of plaintiff's claim against the OPS Defendants is the anonymous letter. The "act" forming the basis of plaintiff's state law claims against the OPS Defendants is their alleged knowing failure to disclose the anonymous letter to plaintiff during his criminal proceedings. (Mem. Op. & Order, Dkt. #399, at 11). But, the undisputed evidence shows plaintiff knew of the OPS investigation and its purpose in 2004. Basic diligence on plaintiff's part would have led him to obtain the anonymous letter while his criminal proceedings were still pending.

As part of the OPS investigation into CR #296034, Investigator Nichelle Fraction personally interviewed plaintiff at Cook County Jail on March 16, 2004. (SOF, ¶28). Plaintiff consented to be interviewed by Ms. Fraction without his attorney being present. (*Id*.) At the start of the interview, Ms. Fraction introduced herself to plaintiff, told him she was an investigator from OPS, and that she was there to investigate a complaint filed on his behalf. (SOF, ¶29). During the interview, plaintiff provided Ms. Fraction with a statement about the circumstances of his confession to police on May 24-25, 2002. (SOF, ¶30). Ms. Fraction wrote down what plaintiff told her during the interview and created a three-page document on a form entitled "Citizen Interview Report." (SOF, ¶31). Ms. Fraction gave plaintiff the opportunity to review the three-page statement following the interview. Plaintiff reviewed the statement,

initialed some changes, and asked Ms. Fraction to add an additional sentence at the end of the statement, which was done. Plaintiff placed his initials at the bottom of each of the first two pages of the three-page statement, and signed the third page at the bottom, and then again after the sentence he asked to be added. (SOF, ¶¶ 32-33). Based on this evidence alone, plaintiff cannot plausibly contend he was unaware of the OPS investigation as of March 2004.

And there is more. During the March 16, 2004 interview at Cook County Jail, Investigator Fraction gave plaintiff her business card from OPS, which contained her printed name along with the address and telephone number of OPS. (SOF, ¶35). Plaintiff obviously believed the business card was important enough that he forwarded it to his ex-wife, Versie Chatman. (SOF, ¶71). Further evidence of plaintiff's personal knowledge of the OPS investigation and its relationship to his 2002 confession is demonstrated by correspondence he sent from prison to Versie Chatman, in which he described his March 2004 interview with Investigator Fraction and acknowledged the subject of the interview was his claimed abuse by police. (SOF, ¶¶ 72-73). Notwithstanding this knowledge, there is no evidence plaintiff ever acted on this information to follow up with OPS regarding the investigation.

"Plaintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars which may be inferred to be within their reach." *KDC Foods, Inc. v. Gray, Plant, Mooty & Bennett, P.A.*, 2013 U.S. Dist. LEXIS 153393, at *21 (W.D. Wisc. 2013), quoting *Spitler v. Dean*, 148 Wisc. 630, 638 (1989). In this case, the file materials from CR #296034, including the anonymous letter, were reasonably accessible to plaintiff during his criminal proceedings with the exercise of basic diligence. During the time period in question, OPS would comply with subpoenas issued by criminal defense attorneys and would produce the contents of Complaint Register files in

9

response to subpoenas. (SOF, ¶76). The anonymous letter was contained in the file for CR #296034. (SOF, ¶78). Yet, none of plaintiff's appellate or post-conviction counsel ever issued a subpoena to OPS for any records pertaining to plaintiff, Detective Kato, Investigator Fraction, or the March 2004 interview and statement of plaintiff (SOF, ¶77), despite plaintiff's certain knowledge of those individuals and events. In sum, the premise underlying plaintiff's reliance on the discovery rule (*i.e.*, plaintiff did not know nor should have known about the anonymous letter until 2015) has no support in the evidence.[2]

As is discussed below, there is no evidence to prove the state law claims against the OPS Defendants. But even if plaintiff had evidence to support a viable claim against any OPS Defendant, which he does not, plaintiff was on notice of the OPS investigation when interviewed by Investigator Fraction in March 2004. At that point, the burden was on plaintiff to inquire further as to the possible existence of a cause of action. *See, e.g.*, *Betts v. Manville Personal Injury Settlement Trust*, 225 Ill. App. 3d 882, 897 (4th Dist. 1992) (The plaintiff was put on notice of the fact of injury and the possibility of its wrongful causation by a doctor's tentative diagnosis, such that had he pursued the recommended treatment, he would have discovered the fact that his lung injury was wrongfully caused more than two years before filing suit). Had plaintiff acted on that knowledge and pursued a reasonable course of action, such as simply issuing a subpoena to OPS, he could have discovered the anonymous letter long before June 2015. Accordingly, the discovery rule does not save plaintiff's untimely state law claims.

---

[2] Plaintiff's lack of diligence regarding the circumstances of his allegedly coerced confession preceded the failure to reasonably or diligently inquire about the 2004 OPS investigation. Attorney Thomas Brandstrader represented plaintiff during the initial criminal proceedings, including the 2004 trial. (SOF, ¶67). Mr. Brandstrader filed a pretrial motion to suppress plaintiff's statement to ASA Holmes based, in part, on an allegation of physical coercion by an "officer unknown." (SOF, ¶68). Mr. Brandstrader testified he suspected Detective Kato was the police officer who plaintiff was claiming had struck him. Despite this suspicion, Mr. Brandstrader never filed a complaint with OPS about the allegation. Moreover, Mr. Brandstrader acknowledged that he never conducted further investigation into Detective Kato's possible involvement with his client. (SOF, ¶¶ 67-70).

Plaintiff's IIED claim (count IX) and state law conspiracy claim (count X) are time-barred, and this Court should grant summary judgment in favor of the OPS Defendants and against plaintiff on those counts.

## II. THE OPS DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT IX AS PLAINTIFF CANNOT PRESENT SUFFICIENT EVIDENCE TO ESTABLISH AN IIED CLAIM

In count IX of the SAC, plaintiff alleges a state law IIED claim against the OPS Defendants. As set forth in the previous section, count IX is time-barred, justifying entry of summary judgment in favor of the OPS Defendants. As an independent basis for entry of summary judgment, there is insufficient evidence to establish the requisite elements of an IIED claim against the OPS Defendants.

The elements of an IIED claim under Illinois law are: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that her conduct should inflict severe emotional distress, or knew that there was a high probability that her conduct would cause severe emotional distress; (3) the defendant's conduct in fact caused severe emotional distress. *Doe v. Calumet City*, 161 Ill. 2d 374, 392 (1994). For a defendant's conduct to rise to the level of extreme and outrageous, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976), quoting Restatement (Second) of Torts, §46, comment d (1965). "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case." *Doe v. Calumet City*, 161 Ill. 2d at 392. In order to meet the element of intent, the evidence must establish that a defendant intended her conduct to inflict severe emotional distress, or knew there was a high probability that her conduct would inflict such severe distress. *Id.*, at 395-96. As set forth below, plaintiff is unable to present evidence to satisfy the elements of extreme and outrageous conduct or intent as against the OPS Defendants.

11

To reiterate, the specific conduct on which the IIED claim is based is that the OPS Defendants "knowingly withheld" the anonymous letter. As a preliminary matter, this Court already has determined there was no clearly established law imposing a legal duty on the OPS Defendants, who investigated police officers but had no part in investigating or prosecuting criminal defendants, to disclose putative *Brady* material. (Mem. Op. & Order, Dkt. #399, at 9). Restated, there was no basis in the law for imposing a duty on the OPS Defendants to disclose the anonymous letter to plaintiff. If there was no clearly established duty imposed on the OPS Defendants to disclose the anonymous letter to plaintiff, then their failure to do so cannot plausibly be said to rise to the level of extreme and outrageous conduct that "goes beyond all possible bounds of decency." *Cf. Estate of Wells v. Bureau County*, 723 F. Supp. 2d 1061, 1089 (C.D. Ill. 2010) ("Plaintiffs' failure to establish an adequate factual basis to support a finding of deliberate indifference or willful and wanton conduct on their §1983 claim necessarily precludes them from making an adequate showing of extreme and outrageous conduct"); *Moore v. Abernathy*, 2015 U.S. Dist. LEXIS 4741, at *12 (N.D. Ill. 2015) (same); *Trujillo v. Simer*, 934 F. Supp. 1217, 1225-26 (D. Colo. 1996) (a finding that defendants were entitled to qualified immunity on a Fourth Amendment claim meant there was no evidence the defendants' actions were willful and wanton to support the state law tort of "outrageous conduct").[3]

Beyond this relatively straightforward legal analysis, there is an absence of evidence that any OPS Defendant engaged in the purported extreme and outrageous conduct alleged against

---

[3] In denying the OPS Defendants' motion to dismiss, this Court suggested it was unnecessary for plaintiff "to prove a *Brady* violation (or even the existence of a constitutional duty to disclose under *Brady*) in order to meet the elements of an IIED claim." (Mem. Op. & Order, Dkt. #399, at 12, *citing Garrison v. Burke*, 1993 U.S. Dist. LEXIS 1318 (N.D. Ill. 1993). Unlike *Garrison*, in which the IIED claim was based on sexually harassing conduct that also supported a state law assault and battery count, there is no cognizable non-constitutional basis on which to base the IIED claim here. Plaintiff's entire claim against the OPS Defendants arises from their alleged failure to disclose the anonymous letter. As this Court previously concluded, there was no clearly established duty to do what plaintiff alleges the OPS Defendants failed to do.

them, *i.e.*, the suppression or withholding of the anonymous letter. As discussed in section I, *supra*, plaintiff's failure to discover the anonymous letter until this civil litigation was the result of his lack of reasonable diligence rather than any act of concealment by an OPS Defendant. As of 2004, plaintiff would have known of Detective Kato, his claimed interactions with Kato, and that OPS was investigating that claimed interaction. Plaintiff knew of the OPS investigation and in the exercise of fundamental diligence would have discovered the details of the OPS investigation, including the anonymous letter. The alleged failure by the OPS Defendants to disclose to plaintiff what he already knew or should have known cannot be deemed extreme and outrageous conduct that "goes beyond all possible bounds of decency."

Plaintiff cannot present evidence that anyone from OPS affirmatively acted to conceal the investigation of CR #296034. There is no evidence the investigation was conducted in secret. There is no evidence OPS tried to hide its investigation from plaintiff. To the contrary, Investigator Fraction, prior to her interview of plaintiff, introduced herself and told plaintiff who she was and why she was there. She allowed plaintiff to review, edit, and sign the summary of the statement he provided to her. She provided plaintiff with her business card reflecting her name, affiliation, and the address and phone number of OPS. There is no evidence OPS failed to or refused to comply with a request or subpoena to OPS seeking any information or the CR file at any time during plaintiff's criminal proceedings. And, this is not a case where plaintiff claims OPS produced part of its file from CR #296034, but withheld the anonymous letter. The entire premise underlying plaintiff's IIED claim, that the anonymous letter was "knowingly withheld," finds no support in the evidence.

### Millicent Willis

Plaintiff's IIED claim against Ms. Willis is based solely on her alleged nondisclosure of the anonymous letter, which the SAC alleges she received in 2002. As a preliminary matter,

plaintiff's assertion that Ms. Willis received the anonymous letter in 2002 is pure speculation unsupported by any admissible evidence. Other than the date affixed to the anonymous letter by its anonymous author, there is nothing to suggest it was sent to OPS or anyone in 2002. (SOF, ¶64). Plaintiff cannot rely solely on the date itself as evidence the letter was sent in 2002; as such, it would be inadmissible hearsay being introduced to prove the truth of matter asserted. *See Davis*, 756 F. Supp. at 1070 (determining that a dated letter, standing alone, was inadmissible hearsay which could not be considered an opposition to a motion for summary judgment). More problematic, the anonymous letter cannot be authenticated and is inadmissible for foundational reasons. *See Sadrud-Din v. City of Chicago*, 883 F. Supp. 270, 273 (N.D. Ill. 1995) (finding an anonymous letter was inadmissible because the police officer who wrote the letter had not come forward to authenticate it); *People v. Levine*, 99 Ill. App. 3d 141, 164 (5th Dist. 1981) (no *Brady* violation where the evidence in question was "nothing more than an anonymous letter"). "To ward off a motion for summary judgment, a party must submit evidence to the Court consisting of admissible documents or sworn testimony, such as that found in depositions or in affidavits, to demonstrate that there is a genuine issue of material fact." *McAnulty v. American Nat'l Bank & Trust Co.*, 1996 U.S. Dist. LEXIS 4184, at *31 (N.D. Ill. 1996). The unauthenticated anonymous letter fails to meet that criteria.

There is no other evidence suggesting the letter was sent to or received by OPS in 2002. When the anonymous letter was received by IAD via regular mail in February 2004, there were two items included with the anonymous letter. Although the separate sheet of paper suggested the anonymous letter "initially" had been sent via inter-office mail, it does not indicate when that supposedly occurred. (SOF, ¶¶ 24-25). It would be pure speculation to conclude this vague reference to "inter-office mail" is evidence that the anonymous letter was sent to and/or received

14

by Ms. Willis or OPS in May 2002. The other item in the envelope, a single page photocopy of the front of an envelope marked "inter-departmental correspondence," is addressed to Melissa Willis (not Millicent Willis) and is also undated. (*Id*.) The photocopy similarly does not provide any evidence that the anonymous letter was sent in May 2002 or more importantly, that Ms. Willis received it in 2002.

In any event, there is no need to speculate. Ms. Willis has affirmatively denied receiving the anonymous letter in May 2002. (SOF, ¶58). Ms. Willis testified she would have remembered seeing the anonymous letter if she had received it because it was odd and very bizarre. (*Id*.) If Ms. Willis had received the anonymous letter in May 2002, she would have forwarded the document so that a Complaint Register investigation could be opened, and OPS would have investigated the allegation. (SOF, ¶¶ 60-61). As plaintiff's IIED claim against Ms. Willis is based solely on her alleged nondisclosure of the anonymous letter, and there is no admissible evidence that she ever received it, the IIED claim against her necessarily fails.

Although plaintiff further alleges Ms. Willis withheld and suppressed the anonymous letter (SAC, ¶¶ 123, 127), there is no evidence to support those allegations, either. Ms. Willis testified that she never withheld or suppressed the anonymous letter, and she did not direct anyone at OPS to suppress or withhold the anonymous letter. (SOF, ¶65). Moreover, Ms. Willis had no knowledge of anyone at OPS who suppressed or withheld the anonymous letter. (*Id*.) Based on the evidence, plaintiff cannot present evidence any extreme or outrageous conduct on the part of Ms. Willis that would support the IIED claim.

There likewise is no evidence Ms. Willis ever took any action or engaged in any conduct with the intent to inflict emotional distress on plaintiff. In May 2002, Ms. Willis did not even know of plaintiff or Detective Kato. (SOF, ¶57). Ms. Willis had no role in the criminal

investigation or prosection of plaintiff. (SOF, ¶66). And as established above, Ms. Willis had no knowledge of the anonymous letter in 2002. Based on all of the foregoing, this Court should enter summary judgment in favor of Ms. Willis on plaintiff's IIED claim in count IX.

**Lori Lightfoot**

The only allegations in the SAC against Ms. Lightfoot are that she was the Chief Administrator of OPS when CR #296034 was initiated in February 2004, and that she "facilitated, approved, condoned, or deliberately ignored the actions" of Investigator Wojtczak and other employees who knew of and withheld the anonymous letter. (SAC, ¶135). Plaintiff, however, has failed to bring forth any evidence to support that allegation. Indeed, the basis for plaintiff's claim against Ms. Lightfoot is somewhat puzzling, as the investigation of CR #296034 was initiated when Ms. Lightfoot was the Chief Administrator, and she left that position in July 2004, before the OPS investigation was completed. (SOF, ¶¶ 3, 26, 37). More importantly, there is no evidence Ms. Lightfoot ever had any knowledge of the anonymous letter that triggered CR #296034, or that she condoned the actions of any OPS employee, including Ms. Wojtczak, for withholding the anonymous letter from plaintiff.

The circumstances pertaining to Ms. Lightfoot can be summarized as follows. There is no evidence that, as of the time she left OPS in July 2004, Ms. Lightfoot knew of plaintiff, his criminal proceedings, the anonymous letter or its allegations, or the investigation of CR #296034. (SOF, ¶37). As Chief Administrator of OPS, Ms. Lightfoot did not conceal or withhold from plaintiff or anyone else the existence of CR #296034, the OPS investigation of CR #296034, or the anonymous letter that triggered the investigation of CR #296034. (SOF, ¶38). In direct contrast to the allegations in the SAC, the evidence is that Ms. Lightfoot did not direct, approve, or deliberately ignore the actions of any subordinate who withheld or concealed the anonymous letter from plaintiff. She had no knowledge of any subordinate or OPS investigator

16

who concealed or withheld from plaintiff the existence of CR #296034, the OPS investigation pertaining to that file, or the anonymous letter. (SOF, ¶39). Finally, it is unrebutted that Ms. Lightfoot has never taken any action or engaged in any conduct with the intent to inflict emotional distress on plaintiff, and she has never taken any actions or engaged in any conduct in which she knew there was a high probability that emotional distress would be inflicted on plaintiff. (SOF, 41).

Based on the foregoing, there is no evidence to establish any extreme and outrageous conduct on the part of Ms. Lightfoot with respect to plaintiff. Similarly, there is no evidence Ms. Lightfoot acted in any way intended to inflict emotional distress on plaintiff. Ms. Lightfoot is entitled to summary judgment on plaintiff's IIED claim in count IX.

**Tisa Morris**

The only allegations against Ms. Morris in the SAC are that she was Chief Administrator of OPS when the investigation of CR #296034 was completed in October 2004, and that she "facilitated, approved, condoned or deliberately ignored" the actions of Investigator Wojtczak and other employees who knew of and withheld the anonymous letter. (SAC, ¶136). The analysis of the IIED claim against Ms. Morris is similar to the analysis of the claim against Ms. Lightfoot. For starters, the underlying premise that the anonymous letter was "knowingly withheld" is unsupported by the evidence. There is no evidence to establish Ms. Morris ever became aware of the anonymous letter or the OPS investigation of CR #296034. Ms. Morris affirmatively testified that she never saw CR #296034 or the anonymous letter prior to being named as a defendant in this lawsuit. (SOF, ¶42). If she had become aware of the OPS investigation of CR #296034 when she was the Chief Administrator, she would have referred the entire investigation to IAD. (SOF, ¶43). She was one of the prosecutors at plaintiff's criminal trial, so she would have viewed it as a conflict for OPS to continue the investigation while she

was the Chief Administrator. (*Id.*) Precisely because she prosecuted the criminal case, Ms. Morris would have wanted to avoid the appearance of impropriety or the possibility that someone could suggest she somehow influenced or directed the OPS investigation of CR #296034. (SOF, ¶44). Since there is no evidence that Ms. Morris knew of the OPS investigation or of the anonymous letter, there is no basis to conclude that she somehow facilitated, approved, condoned, or deliberately ignored the suppression of the anonymous letter.

Nor is it reasonable to infer Ms. Morris had knowledge of CR #296034 and/or the anonymous letter. As Chief Administrator, Ms. Morris did not review every allegation assigned to OPS for investigation. (SOF, ¶48). While she would review all cases in which an investigator recommended a finding of "sustained," she would perform only random reviews of cases in which an investigator recommended a finding of "unfounded" or "not sustained." (SOF, ¶48).

Based on the foregoing, the evidence fails to establish any conduct on the part of Ms. Morris that amounted to extreme and outrageous conduct with respect to plaintiff or the OPS investigation of CR #296034. Similarly, there is no evidence that any conduct on the part of Ms. Morris as Chief Administrator of OPS was intended to inflict severe emotional distress on plaintiff. Accordingly, Ms. Morris is entitled to summary judgment on the IIED claim.

### Karen Wojtczak

Plaintiff's SAC contains a number of paragraphs complaining about the alleged inadequacy of the OPS investigation conducted by Ms. Wojtczak. (*See, e.g.*, SAC, ¶¶ 131-133). While plaintiff believes the investigation was insufficient, that perception does not form the basis for his IIED claim against Ms. Wojtczak. As with the other OPS Defendants, the IIED claim is based on Ms. Wojtczak's alleged withholding of the anonymous letter. The evidence, however, establishes Ms. Wojtczak did not "withhold" or suppress any aspect of her investigation of CR #296034. The evidence shows Ms. Wojtczak performed the investigation and forwarded her

report and the related file materials in the same manner as other Complaint Register investigations.

Ms. Wojtczak was assigned to the investigation of CR #296034 on April 16, 2004. (SOF, ¶36). After reviewing the file materials in their entirety, Ms. Wojtczak reached a conclusion that the allegations against Detective Kato in the anonymous complaint were unfounded. (SOF, ¶¶ 50, 52). Ms. Wojtczak prepared a formal OPS report that summarized her investigation and conclusions. (SOF, ¶50). Ms. Wojtczak then submitted the summary report to her supervisor, Elizabeth Carmody, for review and approval. (SOF, ¶51). Ms. Carmody signed off on her approval of the investigation. (*Id.*) Ms. Wojtczak's summary report was completed on October 1, 2004, after which she initiated the Command Channel review for CR #296034. (SOF, ¶52). In the Command Channel review process, the CPD chain of command reviewed the file in CR #296034 to determine if Ms. Wojtczak's investigation and findings supported her conclusion. (SOF, ¶¶ 52-53).

The foregoing evidence establishes that Ms. Wojtczak conducted the investigation, completed her reports, and turned everything in to the file in CR #296034, including the anonymous letter. All of the materials were made available to her supervisor for review and approval. In accordance with the CPD General Order, the file materials were then provided to the CPD chain of command for Command Channel review. Ms. Wojtczak's report, the anonymous complaint, and plaintiff's signed statement to Investigator Fraction were all available and included in the file. There is no evidence, direct or circumstantial, that Ms. Wojtczak concealed or suppressed any aspect of her investigation. There is no evidence Ms. Wojtczak attempted to hide the file or any specific documents related to that file, such as the anonymous letter. There is no evidence suggesting CR #296034 was not maintained by OPS in the same

19

manner as all other Complaint Register files. Like other files, CR #296034 was subject to subpoena. To conclude, there is no evidence Ms. Wojtczak acted in some way to "knowingly withhold" the anonymous letter that would suggest extreme and outrageous conduct.

There also is no evidence Ms. Wojtczak took any action or engaged in any conduct with the specific intent to inflict emotional distress on plaintiff. At the time she was assigned to the investigation of CR #296034, Ms. Wojtczak was unaware of plaintiff or the allegations concerning the Daley Center rape. (SOF, ¶36). There is no evidence Ms. Wojtczak had any role in the criminal investigation or prosecution of plaintiff. She simply conducted the investigation of Detective Kato and filed her report. Plaintiff has failed to present any evidence to establish extreme or outrageous conduct on the part of Ms. Wojtczak with respect to the investigation of CR #296034. Plaintiff similarly has failed to present any evidence to establish any conduct by Ms. Wojtczak that would reflect an intent to inflict severe emotional distress on plaintiff. Ms. Wojtczak is entitled to summary judgment on the IIED claim.

III.    **THE OPS DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT X AS PLAINTIFF CANNOT PRESENT SUFFICIENT EVIDENCE TO ESTABLISH A STATE LAW CONSPIRACY CLAIM**

To state a claim for civil conspiracy under Illinois state law, a plaintiff must allege facts establishing: (1) an agreement to accomplish by concerted action either an unlawful purpose or a lawful purpose by unlawful means; (2) a tortious act committed in furtherance of that agreement; and (3) an injury caused by the defendant. *Reuter v. MasterCard Int'l, Inc.*, 397 Ill. App. 3d 915, 927 (5th Dist. 2010). A plaintiff must allege both an agreement and a tortious act committed in furtherance of that agreement. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999). Civil conspiracy is an intentional tort, which requires proof that a defendant knowingly and voluntarily participated in a common scheme. *McClure*, 188 Ill. 2d at 133-134. Because conspiracy is not an independent tort, if "a plaintiff fails to state an independent cause of action

20

underlying [the] conspiracy allegations, the claim for conspiracy also fails." *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (1st Dist. 2000).

As established in the preceding section, the OPS Defendants are entitled to summary judgment on plaintiff's IIED claim. As a result, plaintiff has failed to establish an independent cause of action that would support his conspiracy allegations, such that the conspiracy claim also fails. *Indeck North American Power Fund, supra*. For this reason alone, the OPS Defendants are entitled to summary judgment on the state law conspiracy claim asserted in count X.

Further supporting the OPS Defendants' request for summary judgment, plaintiff can present no evidence of any tortious act committed by the OPS Defendants in furtherance of any conspiratorial agreement. *See Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63 (1994) ("A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort"). To clarify, the "tortious conduct" alleged against the OPS Defendants was their alleged withholding or suppression of the anonymous letter from plaintiff. As set forth above, there is no evidence Ms. Wojtczak withheld or suppressed any aspect of her investigation into the anonymous complaint. As for OPS Defendants Lightfoot, Willis, or Morris, there is no evidence they even knew of the anonymous letter or the OPS investigation of CR #296034. Ms. Willis denied any knowledge of the anonymous letter when she was acting Chief Administrator of OPS in 2002, and there is no admissible evidence to suggest the anonymous letter was sent to or received by Ms. Willis (or anyone else at OPS) in 2002. Ms. Morris denied knowledge of the anonymous letter when she was Chief Administrator of OPS, which she would have remembered because she prosecuted plaintiff. There is no evidence Ms. Lightfoot had knowledge of the anonymous letter while she was Chief Administrator of OPS, or that she knew of any agreement with or among OPS

personnel or anyone else to conceal the anonymous letter from plaintiff, his attorneys, or the Cook County prosecutors. (SOF, ¶40).

Finally, the record lacks any direct or circumstantial evidence that the OPS Defendants entered into a conspiratorial agreement among themselves or with anyone else to deprive plaintiff of his rights, or more specifically, to suppress from him the anonymous letter. As established above, plaintiff's failure to obtain the anonymous letter (and all other documentation related to CR #296034) was the direct result of his failure to exercise minimal diligence rather than any conspiratorial agreement or conduct on the part of the OPS Defendants. They are entitled to summary judgment on the state law conspiracy claim.

## CONCLUSION

For the foregoing reasons, Defendants Lori Lightfoot, Tisa Morris, Millicent Willis, and Karen Wojtczak respectfully request that this Court grant their motion for summary judgment in its entirety and for any other relief this Court deems proper. Defendant City of Chicago also requests that the Court grant it summary judgment to the extent based on plaintiff's claims in the SAC against the OPS Defendants.

Date: March 3, 2017

Respectfully submitted,

s/ Paul A. Michalik

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606
312.876.1700
312.876.1155 (facsimile)

One of the Attorneys for Defendants,
Lori Lightfoot, Tisa Morris, Millicent
Willis, and Karen Wojtczak

22

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2017, I electronically filed the foregoing **OPS Defendants' Memorandum of Law in Support of Motion for Summary Judgment** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

Arthur Loevy
Jon Loevy
Russell Ainsworth
Loevy & Loevy
312 North May St., Suite 100
Chicago, IL 60607
jon@loevy.com
russell@loevy.com

and

Elizabeth Wang
Loevy & Loevy
2060 Broadway, Suite 460
Boulder, CO 80302
elizabethw@loevy.com

Steven B. Borkan
Timothy P. Scahill
Graham P. Miller
Misha Itchhaporia
Krista E. Stalf
Borkan & Scahill, Ltd.
20 S. Clark St., Suite 1700
Chicago, IL 60603

Virginia B. Bensinger
Robert T. Shannon
James M. Lydon
Gretchen H. Sperry
Hinshaw & Culbertson LLP
222 N. LaSalle St., Suite 300
Chicago, IL 60601

Jeremiah L. Connolly
Rachel D. Kiley
Bollinger Connolly Krause LLC
500 W. Madison St., Suite 2430
Chicago, IL 60661

Anna O'Connor
Thomas E. Nowinski
Donald J. Pechous
James E. Hanlon, Jr.
Cook County State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602

s/ Paul A. Michalik