**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARL CHATMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 2945 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Judge John Z. Lee |
| | ) | |
| Defendants. | ) | Magistrate Judge Maria Valdez |

**OPS DEFENDANTS' RULE 56.1(A)(3) STATEMENT OF FACTS IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, Lori Lightfoot, Tisa Morris, Millicent Willis, and Karen Wojtczak (jointly, the "OPS Defendants") and Defendant City of Chicago ("City"), submit this statement of facts in support of ther motion for summary judgment, pursuant to Local Rule 56.1(a)(3) of the U.S.D.C. for the Northern District of Illinois:

**I.    Parties, Venue, Jurisdiction**

1.    Plaintiff Carl Chatman is a United States citizen who resides in the Northern District of Illinois.  (Exh. 1, Plaintiff's Second Amended Complaint (Corrected), Dkt. #324, at ¶¶ 11-12).

2.    Defendant City is a municipal corporation duly incorporated under the laws of the State of Illinois.  (Exh. 1, Plaintiff's Second Amended Complaint (Corrected), at ¶22).

3.    Defendant Lori Lightfoot served as Chief Administrator of the Chicago Police Department's Office of Professional Standards ("OPS") from July 2002 through July 2004. (Exh. 2, Lightfoot Affidavit, at ¶1).

4.    Defendant Tisa Morris served as Chief Administrator of OPS from July 2004 to December 2007.  (Exh. 3, Morris Dep Transcript, at 8).

5.      Defendant Millicent Willis served as General Counsel of OPS from December 1998 through December 2002, and as Acting Chief Administrator of OPS from late 2001 through July 2002.  (Exh. 4, Willis Dep Transcript, at 20-23; Exh. 1, Second Amended Complaint (Corrected), at ¶19).  Ms. Willis has never gone by the first name "Melissa."  (Exh. 4, Willis Dep Transcript, at 57-58).

6.      Defendant Karen Wojtczak joined OPS as a civilian investigator in August 2001. Ms. Wojtczak left her employment with OPS in December 2004.  (Exh. 5, Wojtczak Deposition Transcript, at 11, 27-28).

7.      Venue is proper in the Northern District of Illinois because the City is located within this judicial district and the events underlying this action occurred within this judicial district.  (Exh. 1, Plaintiff's Second Amended Complaint (Corrected), at ¶11).

8.      Plaintiff has alleged several pending federal law claims against numerous co-defendants under 42 U.S.C. §1983, as well as Illinois state law claims.  (Exh. 1, Plaintiff's Second Amended Complaint (Corrected)).  As against the OPS Defendants, two Illinois state law claims remain pending: intentional infliction of emotional distress ("IIED") (count IX) and state law civil conspiracy (count X).  (Mem. Op. & Order, Sept. 12, 2016, Dkt. #399, at 10-12).

9.      This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331 and 1367.  (Exh. 1, Plaintiff's Second Amended Complaint (Corrected), at ¶10).

**II.     Plaintiff's Arrest and Prosecution**

10.     On May 24, 2002, at approximately 7:45 a.m., Chicago police were summoned to the 21st floor of the Richard J. Daley Center to investigate the possible criminal sexual assault of courtroom worker Susan Riggio.  The Chicago Police Department ("CPD") issued a flash message to police department members alerting them to look for a potential suspect in the Loop area, described as a male black with salt and pepper hair wearing a Blackhawks jacket.  (Exh. 6,

Koziel Dep. Transcript, at 38-41; Exh. 1, Plaintiff's Second Amended Complaint (Corrected), at ¶¶ 30, 44).

11.      At approximately 8:30 a.m. that same morning, Chicago police officers stopped and arrested plaintiff in the downtown area.  Plaintiff was an African American male with salt and pepper hair, wearing a Blackhawks jacket.  (Exh. 1, Plaintiff's Second Amended Complaint (Corrected), at ¶¶ 45-46).

12.      At or around noon on May 24, 2002, Susan Riggio viewed a line-up at CPD Detective Division Area 4 and identified Carl Chatman as her assailant.  (Exh. 7, Midona Dep Transcript, at 170-71; Exh. 13, CR #296034, at City Def CC 012480-83).

13.      At or around 10:30 p.m. on the night of May 24, 2002, plaintiff was interviewed at Area 4 by Detective John Roberts.  According to police department reports, plaintiff provided a statement to Roberts in which he implicated himself in the sexual assault of Susan Riggio. (Exh. 19, Roberts Dep. Transcript, at 69-70, 149-50; Exh. 8, Holmes Dep Transcript, at 277; Exh. 13, CR #296034, at City Def CC 012506-112511).

14.      On the morning of May 25, 2002, Cook County Assistant State's Attorney ("ASA") Brian Holmes wrote out a handwritten confession of plaintiff, which plaintiff initialed and signed.  (Exh. 8, Holmes Dep Transcript, at 71-72, 335, 341-46, and "Holmes Deposition Exhibit 6" attached thereto).

15.      Plaintiff alleges in his operative complaint that Area 4 Detective Kriston Kato used force and threats of force to coerce plaintiff to falsely confess to the sexual assault of Susan Riggio.  (Exh. 1, Plaintiff's Second Amended Complaint (Corrected), at ¶¶ 4, 54-56, 59).  None of the CPD police reports from May 24-25, 2002, pertaining to the investigation of Carl Chatman, Susan Riggio, and the Daley Center incident reflect any involvement by Detective

Kato in that investigation. (Exh. 5, Wojtczak Dep Transcript, at 185-86; Exh. 13, CR #296034, at City Def CC 012453-60, 012473 – 511, 012525-29).

16.     On January 29, 2004, a jury found plaintiff guilty of aggravated sexual assault, and on March 4, 2004, he was sentenced to 30 years imprisonment. (Exh. 9, 1/29/04 Report of Proceedings, *People v. Chatman*, at AA-222; Exh. 10, Post-Conviction Ruling by Judge Toomin in *People v. Chatman*, May 6, 2008, at 1).

17.     Plaintiff's conviction and sentence were affirmed by the Illinois Appellate Court on March 23, 2006 (*People v. Chatman*, No. 1-04-0949), and the Illinois Supreme Court denied plaintiff's petition for leave to appeal on September 27, 2006, *People v. Chatman*, 221 Ill.2d 648 (2006). (Exh. 10, Post-Conviction Ruling, at 6).

## III.     OPS

18.     OPS is a civilian investigative unit of the CPD created to investigate specific kinds of police officer misconduct: allegations of excessive force; police-involved shootings; allegations of domestic violence; and, deaths of individuals in police custody. (Exh. 3, Morris Dep Transcript, at 30, 43, 82-83; Exh. 5, Wojtczak Dep Transcript, at 11, 32-34).

19.     Upon completion of an OPS investigation of alleged police officer misconduct, the complaint should be classified in one of four ways:

      a.    "Unfounded" – when the allegation is false or not factual.

      b.    "Exonerated" – when the incident occurred but the actions of the accused were lawful and proper.

      c.    "Not Sustained" – when there is insufficient evidence either to prove or disprove the allegation.

      d.    "Sustained" – when the allegation is supported by substantial evidence to justify disciplinary action.

(Exh. 11, CPD General Order 93-3-3(II)(C)(12).

20.     OPS investigated allegations of misconduct by police officers.  OPS did not investigate the crimes being investigated by those police officers accused of misconduct.  (Exh. 3, Morris Dep. Transcript, at 134-35).

**IV.     OPS Investigation of Complaint Register No. 296034**

21.     In February 2004, Lori Lightfoot was serving as the Chief Administrator of OPS. In that position, she would not have knowledge of every complaint investigated by OPS.  (Exh. 2, Lightfoot Affidavit, at ¶¶ 1, 2).

22.     In February 2004, Sergeant Matthew Brown was serving as the Administrative Sergeant for the CPD's Internal Affairs Division ("IAD").  In that position, he reported directly to his commanding officer at IAD, Assistant Deputy Superintendent Karen Rowan.  (Exh. 12, Brown Dep Transcript, at 10, 12-15, 24).

23.     On the morning of February 23, 2004, IAD received an envelope through the United States mail addressed to "Internal Affairs, Attn: Karen Rowan."  Sgt. Brown opened the envelope that morning.  (Exh. 12, Brown Dep Transcript, at 30, 32, 55; Exh. 13, CR #296034, at City Def CC 012449).

24.     The envelope was post-marked February 2004 and contained three documents:  a single page, three paragraph letter from an anonymous source addressed to "Internal Affairs" and "Office of Professional Standards/Melissa Willis;" a page with a single sentence stating, "As you can see, I initially sent this report via inter-office mail, but to no avail;" and, a photocopy of the front of an envelope marked "Inter-Departmental Correspondence."  (Exh. 5, Wojtczak Dep Transcript, at 67-68, 73-74; Exh. 13, CR #296034, at City Def CC 012448-51).

25.     The one-page anonymous letter reflects a date of May 27, 2002.  The photocopy of the front of the inter-departmental correspondence envelope is addressed to "OPS Unit

113/Melissa Willis," from "Anonymous," and does not reflect a date.  The page with the single sentence is unsigned and undated.  (Exh. 13, CR #296034, at City Def CC 012448, 012450-51).

26.    After opening the envelope containing the anonymous letter on the morning of February 23, 2004, Sgt. Brown initiated a Complaint Register investigation with OPS at 10:54 a.m. that same morning.  To initiate the investigation, Sgt. Brown called OPS, got a Complaint Register number (#296034), typed up an initiation report, attached the envelope and its contents to the initiation report, and sent them to intake at OPS.  (Exh. 12, Brown Dep Transcript, at 32-33, 55).

27.    The anonymous letter alleges that on May 25, 2002, Detective Kriston Kato beat a homeless suspect into signing a confession "for the assault/rape of a woman in the Daley Center."  The anonymous author describes himself or herself as "anonymous officer/detective."  According to the anonymous letter, Detective Kato hit the suspect, then laid out "word for word" the victim's account of the assault for the homeless suspect to sign, and the suspect "didn't even read it and didn't know what he was signing."  (Exh. 13, CR #296034, at City Def CC 012448).

28.    On March 16, 2004, as part of the investigation of CR #296034, OPS Investigator Nichelle Fraction conducted an interview of plaintiff at Cook County Jail.  Plaintiff agreed to be interviewed by Investigator Fraction without his attorney being present.  (Exh. 14, Fraction Dep Transcript, at 42, 45-47; Exh. 15, Plaintiff's Amended Responses to City's Request to Admit, at ¶¶ 5, 26).

29.    At the start of interview, Investigator Fraction introduced herself, told plaintiff she was an investigator from OPS, and that she was there to investigate a complaint filed on his behalf.  (Exh. 14, Fraction Dep Transcript, at 64-66).

30.     During the interview of plaintiff on March 16, 2004, plaintiff provided Investigator Fraction with a statement about the circumstances of his confession to police on May 24-25, 2002.  (Exh. 14, Fraction Dep Transcript, at 46-52).

31.     Investigator Fraction wrote down what plaintiff told her during the March 16, 2004 interview, creating a three-page document on a form entitled "Citizen Interview Report." The three-page statement is written in Investigator Fraction's handwriting.  (Exh. 14, Fraction Dep Transcript, at 42, 45, 47, 59; Exh. 13, CR #296034, at City Def CC 012462-64).

32.     Investigator Fraction gave plaintiff the opportunity to review the statement after she finished writing it up.  After reading the three-page statement and being provided with an opportunity to make corrections, plaintiff signed the statement.   (Exh. 14, Fraction Dep Transcript, at 45, 57-58).

33.     After reviewing the statement, plaintiff initialed some changes that were made, and he requested an additional sentence be added to the end of the statement, which was added. Plaintiff placed his initials at the bottom of each of the first two pages of the statement, and signed the third page at the bottom, and then again after the line he asked to be added.  (Exh. 14, Fraction Dep Transcript, at 58-59; Exh. 15, Plaintiff's Amended Responses to City's Request to Admit, ¶¶ 27-34, 38-39; Exh. 13, CR #296034, at City Def CC 012462-64).

34.     The three-page statement is a true and accurate summary of what plaintiff told Investigator Fraction during the interview on Mach 16, 204.  (Exh. 15, Plaintiff's Amended Responses to City's Request to Admit, ¶44).

35.     Investigator Fraction gave plaintiff her business card from OPS when she interviewed him at Cook County Jail on March 16, 2004.  Investigator Fraction's business card contained her printed name, as well as the business address and telephone number of OPS.  (Exh.

15, Plaintiff's Amended Responses to City's Request to Admit, at ¶133 and Exhibit C attached thereto).

36.     On April 16, 2004, OPS Investigator Karen Wojtczak was assigned to the investigation of CR #296034.  Investigator Wojtczak had been unaware of the Daley Center rape allegations prior to her assignment to the investigation of CR #296034.  (Exh. 5, Wojtczak Dep Transcript, at 45-46, 148).

37.     Ms. Lightfoot does not recall having any knowledge of plaintiff, the anonymous letter or its allegations, or the investigation of CR #296034 during the time she served as Chief Administrator of OPS.  She had no knowledge of or participated in the criminal proceedings against plaintiff.  (Exh. 2, Lightfoot Affidavit, at ¶¶ 1-6).

38.     During the time she served as Chief Administrator of OPS, Ms. Lightfoot did not conceal or withhold from plaintiff, his criminal defense attorneys, or Cook County prosecutors the existence of CR #296034, the OPS investigation of CR #296034, or the anonymous letter that triggered the investigation of CR #296034.  (Exh. 2, Lightfoot Affidavit, at ¶7).

39.     As Chief Administrator of OPS, Ms. Lightfoot did not direct, approve, or deliberately ignore the actions of any subordinate who withheld or concealed the anonymous letter from plaintiff, his criminal defense attorneys, or prosecutors.  Ms. Lightfoot had no knowledge of any subordinate or OPS investigator who concealed or withheld from plaintiff, his attorneys, or the prosecutors the existence of CR #296034, the OPS investigation of CR #296034, or the anonymous letter.  (Exh. 2, Lightfoot Affidavit, at ¶¶ 8-9).

40.     During the time she served as Chief Administrator of OPS, Ms. Lightfoot did not enter into an agreement with any OPS personnel or anyone else to conceal CR #296034 or the anonymous letter from plaintiff, his attorneys, or the Cook County prosecutors.  Ms. Lightfoot

8

had no knowledge of any agreement by anyone to conceal CR #296034, the OPS investigation of CR #296034, or the anonymous letter from plaintiff, his attorneys, or the prosecutors. (Exh. 2, Lightfoot Affidavit, at ¶¶ 10, 11).

41.     Ms. Lightfoot has never taken any actions or engaged in any conduct with the intent to inflict emotional distress on plaintiff. Ms. Lightfoot has never taken any actions or engaged in any conduct in which she knew there was a high probability that emotional distress would be inflicted on plaintiff. (Exh. 2, Lightfoot Affidavit, at ¶12).

42.     Tisa Morris served as Chief Administrator of OPS from July 2004 to December 2007. During the time she served as Chief Administrator of OPS, she had no knowledge of the anonymous letter, CR #296034, or the OPS investigation of CR #296034. (Exh. 3, Morris Dep Transcript, at 8, 126).

43.     Ms. Morris never saw CR #296034 prior to being named as a defendant in this lawsuit. If Ms. Morris had become aware of the OPS investigation of CR #296034 when she was the Chief Administrator, she would have referred the investigation to IAD. (Exh. 3, Morris Dep Transcript, at 126-27).

44.     Because she was one of plaintiff's prosecutors at his criminal trial, Ms. Morris would have viewed it as a conflict for OPS to continue the investigation of CR #296034 while she was the Chief Administrator, so she would have referred the investigation out of OPS to avoid any appearance of impropriety. Ms. Morris explained that since she prosecuted the criminal case, she would not want the possibility that someone could suggest she somehow influenced or directed the OPS investigation. (Exh. 3, Morris Dep Transcript, at 127, 133-35).

45.     During an OPS investigation, there were various form documents used by OPS personnel. A number of preprinted forms had the designation "To: Superintendent of Police."

9

Printed underneath that designation was the term "Attention," which was followed by two separate boxes. One box was designated, "Administrator in Charge, Office of Professional Standards." The other box was designated, "Assistant Deputy Superintendent, Internal Affairs Division." (Exh. 3, Morris Dep Transcript, at 128-30; Exh. 13, CR #296034, at City Def CC 012441, 012530).

46.     An "X" in one of the two boxes would indicate whether the form would be directed to OPS or IAD. The purpose served by the boxes was to direct the document to either OPS or IAD. (Exh. 3, Morris Dep Transcript, at 128-30, 132-33).

47.     As Chief Administrator of OPS, Ms. Morris would not see each and every one of the documents marked with an "X" in the box designated as "Administrator in Charge, Office of Professional Standards." (Exh. 3, Morris Dep Transcript, at 130).

48.     During the time she served as Chief Administrator of OPS, Ms. Morris would not review every complaint assigned to OPS for investigation. Ms. Morris would review all cases in which the investigator recommended a finding of "Sustained." She would perform only random reviews of cases in which an investigator recommended a finding of "Unfounded" or "Not Sustained." (Exh. 3, Morris Dep Transcript, at 45-46, 52-53, 55).

49.     Upon being assigned to investigate CR #296034 in April 2004, Investigator Wojtczak reviewed the materials already in the investigative file and obtained police department reports pertaining to the CPD investigation of the Daley Center rape. (Exh. 5, Wojtczak Dep. Transcript, at 45-46, 49).

50.     After reviewing the file materials in CR #296034 in their entirety, Investigator Wojtczak reached a conclusion that the allegations against Detective Kato in the anonymous complaint were unfounded and the investigation should be terminated. She then prepared a

Summary Report Digest summarizing her investigation and conclusions. (Exh. 5, Wojtczak Dep. Transcript, at 22-23, 139, 157; Exh. 13, CR # 296034, at City Def CC 012441-44).

51.     Investigator Wojtczak submitted the summary report of her investigation and conclusions to her supervisor, Elizabeth Carmody, for review and approval. Ms. Carmody signed off on her approval of the investigation. (Exh. 5, Wojtczak Dep. Transcript, at 140; Exh. 13, CR # 296034, at City Def CC 012442).

52.     Investigator Wojtczak's summary report was completed October 1, 2004. She then initiated Command Channel Review of CR # 296034. (Exh. 13, CR # 296034, at City Def CC 012442, 012531; Exh. 5, Wojtczak Dep. Transcript, at 103-04).

53.     When a Complaint Register investigation is concluded, it goes through a process referred to as "Command Channel Review." In this process, the Complaint Register file is sent through a designated CPD chain of command for review of the investigation to determine if the OPS findings support the classification. (Exh. 16, Kobel Dep. Transcript, at 14; Exh. 20, CPD General Order 93-3-4, Sections II (F), (G)).

54.     As part of the Command Channel Review of CR #296034, the file was reviewed by Commander Steve Peterson and Deputy Chief Richard Kobel in October-November, 2004. Exh. 16, Kobel Dep. Transcript, at 32, 35-36; Exh. 13, CR # 296034, at City Def CC 012440).

55.     Millicent Willis served as General Counsel of OPS from December 1998 until December 2002. Ms. Willis also served for a period of time as the Acting Chief Administrator of OPS from late 2001 until July 2002, when Ms. Lightfoot became Chief Administrator. (Exh. 4, Willis Dep. Transcript, at 20-22).

56.     Ms. Willis has never been known by the name "Melissa Willis." (Exh. 4, Willis Dep. Transcript, at 57-58).

11

57.     In May 2002, Ms. Willis did not know of Carl Chatman or Detective Kato.  (Exh. 4, Willis Dep. Transcript, at 117-18).

58.     Ms. Willis never received the anonymous letter in or around May 27, 2002.  The anonymous letter would have stood out in her memory because it was odd and very bizarre. (Exh. 4, Willis Dep. Transcript, at 99-102).

59.     If the anonymous letter had been received and opened by administrative personnel at OPS while Ms. Willis was serving as Acting Chief Administrator, she would have expected the letter would have been brought to her attention.  (Exh. 4, Willis Dep. Transcript, at 116-17, 121-22).

60.     If the anonymous complaint had been received by OPS in May 2002, it would have been investigated by OPS.  (Exh. 4, Willis Dep. Transcript, at 61-62).

61.     If Ms. Willis had received the anonymous letter in May 2002, she would have forwarded the document for a Complaint Register to be opened.  (Exh. 4, Willis Dep. Transcript, at 117-18).

62.     In the OPS intake process, when a complaint was assigned a Complaint Register number, it would be entered into a database.  If there was a duplicative or previous complaint, it would be revealed during this intake process.  (Exh. 4, Willis Dep. Transcript, at 59-60; Exh. 5, Wojtczak Dep. Transcript, at 75-78).

63.     During her investigation of CR #296034, Investigator Wojtczak had no indication of any complaint based on the anonymous letter being registered by OPS in 2002.  (Exh. 5, Wojtczak Dep. Transcript, at 75-78).

64.     According to Ms. Wojtczak, the only evidence in CR #296034 to indicate the anonymous complaint was made in 2002 is the date affixed on the anonymous letter itself. (Exh. 5, Wojtczak Dep. Transcript, at 73-74).

65.     Ms. Willis testified she never withheld or suppressed the anonymous letter, and she did not direct anyone at OPS to suppress or withhold the anonymous letter. Ms. Willis had no knowledge of anyone at OPS who suppressed or withheld the anonymous letter. (Exh. 4, Willis Dep. Transcript, at 117-18).

66.     Ms. Willis had no role in the criminal investigation or prosecution of Carl Chatman. (Exh. 4, Willis Dep. Transcript, at 118-19).

## V.     Plaintiff's Lack of Reasonable Diligence

67.     Attorney Thomas Brandstrader represented plaintiff during plaintiff's criminal proceedings, including the 2004 trial. (Exh. 17, Brandstrader Dep. Transcript, at 13, 18).

68.     Mr. Brandstrader filed a pretrial motion to suppress plaintiff's statement to ASA Holmes based, in part, on an allegation of physical coercion by an "officer unknown." (Exh. 17, Brandstrader Dep. Transcript, at 56, 90-91).

69.     Mr. Brandstrader believed Detective Kato was the officer who plaintiff was claiming had struck him to coerce his statement. However, Mr. Brandstrader made no efforts to conduct any further investigation of Detective Kato's possible involvement. (Exh. 17, Brandstrader Dep. Transcript, at 91-94).

70.     Mr. Brandstrader did not make a complaint to OPS about his suspicions that Detective Kato struck plaintiff. (Exh. 17, Brandstrader Dep. Transcript, at 93-94).

71.     After Investigator Fraction gave plaintiff her OPS business card at the March 16, 2004 interview at Cook County jail, plaintiff forwarded the business card to his ex-wife, Versie Chatman. Plaintiff never gave Investigator Fraction's business card to his appellate or post-

13

conviction attorneys.  (Exh. 15, Plaintiff's Amended Responses to City's Request to Admit, ¶¶ 134, 135).

72.     After Investigator Fraction's interview of plaintiff on March 16, 2004 at Cook County jail, plaintiff wrote a letter to Versie Chatman in which he described being interviewed by a black female investigator about "the abuse of police."  (Exh. 15, Plaintiff's Amended Responses to City's Request to Admit, ¶¶ 137-142, and Exhibit D attached thereto).

73.     In the letter to Versie Chatman, plaintiff was referring to Investigator Fraction and her interview of him at Cook County jail in March 2004, in which plaintiff described the circumstances of his statement to police and prosecutors on May 24-25, 2002.  (Exh. 15, Plaintiff's Amended Responses to City's Request to Admit, ¶¶ 143-145).

74.     Geneva Penson began representing plaintiff in 2005 during his direct appeal, and she continued to represent plaintiff during post-conviction proceedings.  She represented plaintiff until November 2007.  (Exh. 18, Penson Dep. transcript, at 23-25).

75.     At no time during her representation of plaintiff did Ms. Penson come to learn about the 2004 OPS investigation of plaintiff's alleged coercion in 2002, that OPS interviewed plaintiff as part of that investigation in March 2004, or that plaintiff provided a signed statement to OPS as part of that investigation.  (Exh. 18, Penson Dep. transcript, at 29-30).

76.     OPS would comply with a subpoena issued by the CCSAO or a criminal defense attorney seeking a Complaint Register file.  OPS would turn over the contents of the file.  (Exh. 3, Morris Dep. Transcript, at 136).

77.     None of plaintiff's appellate or post-conviction counsel in the criminal proceedings ever issued a subpoena to OPS for any records pertaining to Carl Chatman, Detective Kato, Investigator Fraction, or the March 2004 interview of plaintiff.  (Exh. 15,

14

Plaintiff's Amended Responses to City's Request to Admit, ¶¶ 127-32; Exh. 18, Penson Dep. Transcript, at 30-31).

78.     The anonymous letter is contained in the file for CR #296034.  (Exh. 13, CR #296034, at 012448).


Date:  March 3, 2017                              Respectfully submitted,


                                                  s/ Paul A. Michalik
                                                  One of the Attorneys for Defendants,
                                                  Lori Lightfoot, Tisa Morris, Millicent Willis,
                                                  Karen Wojtczak and City of Chicago

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois  60606
312.876.1700
312.876.1155 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2017, I electronically filed the foregoing **OPS Defendants' Rule 56.1(a)(3) Statement of Facts** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

| | |
|---|---|
| Arthur Loevy | Virginia B. Bensinger |
| Jon Loevy | Robert T. Shannon |
| Russell Ainsworth | James M. Lydon |
| Loevy & Loevy | Gretchen H. Sperry |
| 312 North May St., Suite 100 | Hinshaw & Culbertson LLP |
| Chicago, IL 60607 | 222 N. LaSalle St., Suite 300 |
| jon@loevy.com | Chicago, IL 60601 |
| russell@loevy.com | |
| | |
| and | Jeremiah L. Connolly |
| | Rachel D. Kiley |
| Elizabeth Wang | Bollinger Connolly Krause LLC |
| Loevy & Loevy | 500 W. Madison St., Suite 2430 |
| 2060 Broadway, Suite 460 | Chicago, IL 60661 |
| Boulder, CO 80302 | |
| elizabethw@loevy.com | |
| | |
| Steven B. Borkan | Anna O'Connor |
| Timothy P. Scahill | Thomas E. Nowinski |
| Graham P. Miller | Donald J. Pechous |
| Misha Itchhaporia | James E. Hanlon, Jr. |
| Krista E. Stalf | Cook County State's Attorney |
| Borkan & Scahill, Ltd. | 500 Richard J. Daley Center |
| 20 S. Clark St., Suite 1700 | Chicago, IL 60602 |
| Chicago, IL 60603 | |

s/ Paul A. Michalik