**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARL CHATMAN, | ) | |
| Plaintiff, | ) | |
| | ) | 14 C 2945 |
| vs. | ) | |
| | ) | Honorable Judge |
| CITY OF CHICAGO, et al., | ) | John Z. Lee |
| Defendants. | ) | |

**SAO DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT**

KIMBERLY M. FOXX
State's Attorney of Cook County

By: ___/s/Anna G. O'Connor___
James E. Hanlon, Jr.
Thomas E. Nowinski
Anna G. O'Connor
Assistant State's Attorneys
500 Richard J. Daley Center
Chicago, Illinois 60602
 (312) 603-5440

## <u>TABLE OF CONTENTS AND AUTHORITIES</u>

Page

INTRODUCTION……………………………………………………………………..4

STANDARD OF REVIEW……………………………………………………………4

      Fed. R. Civ. P. 56(c)…………………………………………………………4
      *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)………………………………4
      *Celotex Corp. v. Catrett*, 477 U.S. 317(1986)……………………………………5

STATEMENT OF FACTS…………………………………………………………..5

ARGUMENT………………………………………………………………………...7

I.      COUNTS I AND II – ASA HOLMES DID NOT PARTICIPATE IN ANY ALLEGED
         CONSTITUTIONAL VIOLATION……………………………………………7

      *Kuhn v. Goodlow*, 678 F.3d 552 (7th Cir. 2012)…………………………………7
      *Petty v. City of Chicago*, et al., 754 F. 3d 416, 422 (7th Cir. 2014)………………………..10

II.     PLAINTIFF'S CLAIMS AGAINST ASA HOLMES ARE BARRED BY ABSOLUTE
         PROSECUTORIAL IMMUNITY BECAUSE HOLMES' ACTIONS WERE PURELY
         PROSECUTORIAL IN NATURE……………………………………………11

      *Imbler v. Pachtman*, 424 U.S. 409 (1976)…………………………………………11
      *Smith v. Power*, 346 F.3d 740 (7th Cir. 2003). …………………………………………12
      *Spiegel v. Rabinovitz*, 121 F.3d 251(7th Cir. 1997) …………………………………12
      *People v. Rhodes*, 38 Ill. 2d 389 (1967). ………………………………………..12
      *Hampton v. City of Chicago*, 349 F. Supp. 2d 1075(N.D. Ill. 2004)……………………12
      *Anderson v. Simon*, 217 F.3d 472 (7th Cir. 2000)…………………………………..11
      *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). …………………………………13
      *Mitchell v. Forsyth*, 472 U.S. 511(1985) …………………………………………13
      *Hunt v. Jaglowski*, 926 F.2nd 689 (7th Cir. 1991)…………………………………13
      *Andrews v. Burge*, 660 F. Supp. 2d 868 (N.D. Ill. 2009); …………………….........14
      *Patterson v. Burge*, 2010 U.S. Dist. LEXIS 103966 (N.D. Ill. 2010)(J. Gottshchall)…...14
      *Harris v. City of Chicago*, 2015 U.S. Dist. LEXIS 34835 (N.D. Ill. 2015) (Darrah)……14
      *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012)……………………….…..…15
      *French v. Corrigan*, 432 F.2d 1211 (7th Cir. 1970) ………………………….…………16
      *Elder v. Athens-Clark County*, 54 F.3d 694 (11th Cir. 1995) …………………………...16

III.    COUNT VI – PLAINTIFF'S "FAILURE TO INTERVENE" CLAIM FAILS…………16

      *Rivera v. Lake County*, et al. 974 F. Supp. 2d 1179 (N.D. Ill. 2013) (Leinenweber)……17
      *Harris v. City of Chicago*, et al., 2015 U.S. Dist LEXIS 34835 (N.D. Ill.2015)
      (Darrah)……………………………………………………………………17
      *Saucier v. Katz*, 533 U.S. 194 (2001)…………………………………………..…18

*Akande v. Grounds*, 555 F.3d 586 (7th Cir. 2009)…………………………………………18
*Pearson v. Callahan*, 129 S. Ct. 808 (2009)……………………………………………18
*Gordon v. Devine*, 2008 U.S. Dist. LEXIS 81234 (N.D. Ill. 2008) (Aspen, J.)…………18
*Andrews v. Burge*, 660 F. Supp. 2d 868 (N.D. Ill. 2009)………………………………...18
*Hobbs v. Cappelluti*, 2012 U.S. Dist. LEXIS 139895 (N.D. Ill. 2012 (Lefkow)………...18
*Saunders v. City of Chicago*, et al., 2013 U.S. Dist. LEXIS 161842 (N.D. Ill. 2013)
(Dow)………………………………………………………………………………………18

IV.     COUNT IV – ASA HOLMES IS ENTITLED TO SUMMARY JUDGMENT ON
        PLAINTIFF'S *BRADY* CLAIM…………………………………………………………

        *Saucier v. Katz*, 533 U.S. 194 (2001)……………………………………………………19
        *Akande v. Grounds*, 555 F.3d 586 (7th Cir. 2009)………………………………………19
        *Pearson v. Callahan*, 129 S. Ct. 808 (2009)……………………………………………20
        *Fields v. Wharrie, et al.*, (*Fields I*) 672 F.3d 505 (7th Cir. 2012)………………………20

IV.     COUNT V – PLAINTIFF'S CONSPIRACY CLAIM FAILS……………………………20

        *Smith v. Gomez*, 550 F.3d 613 (7th Cir. 2008)…………………………………………20
        *Drager v. Village of Bellwood*, 969 F. Supp. 2d 971 (N.D. Ill. 2013)……………………..20

VI.     COUNTS IX AND X – PLAINTIFF'S STATE LAW IIED AND CONSPIRACY CLAIMS
        ARE TIME BARRED………………………………………………………………………21

VII.    COUNTS XII AND XIII – PLAINTIFF'S *RESPONDEAT SUPERIOR* AND
        INDEMNIFICATION CLAIMS FAIL…………………………………………………..21

CONCLUSION…………………………………………………………………………………21

Defendants, Assistant State's Attorney Brian Holmes ("ASA Holmes"), Anita Alvarez, in her official capacity as former State's Attorney of Cook County ("State's Attorney Alvarez"), and Cook County ("collectively as "SAO Defendants"), by their attorney Kimberly M. Foxx, State's Attorney of Cook County, through James E. Hanlon, Jr., Thomas Nowinski, and Anna G. O'Connor, Assistant State's Attorneys, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, move this Honorable Court for summary judgment. In support of their motion, the SAO Defendants submit the following memorandum:

## INTRODUCTION

On November 25, 2015, Plaintiff filed a thirteen-count Second Amended Complaint ("the Complaint") against numerous Defendants. (Dkt. 324). With regard to ASA Holmes, Plaintiff attempts to allege nine causes of action for various violations of the United States Constitution and state law stemming from his arrest and prosecution for the rape of Defendant Susan Riggio ("Riggio") on May 24, 2002. Plaintiff further alleges that the former State's Attorney Alvarez is liable under a theory of *respondeat superior* for the actions of ASA Holmes with respect to Plaintiff's state law claims. Cook County is sued in its capacity as an indemnitor for both ASA Holmes and the former State's Attorney Alvarez.

Plaintiff cannot sustain his claims against ASA Holmes or former State's Attorney Alvarez because various immunities bar his claims. Moreover, there is no evidence to support Plaintiff's claims of coercion or fabrication by ASA Holmes, and there was probable cause to arrest and charge Plaintiff for the rape of Riggio. Accordingly, the SAO Defendants ask that this Court grant summary judgment in their favor on all aspects of Plaintiff's Second Amended Complaint.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L.Ed. 2d 202, 106 S.Ct. 2505 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who will bear the burden of

proof on a particular issue at trial may not rest on the pleadings, but must affirmatively demonstrate, by admissible evidence, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

## STATEMENTS OF FACTS

On May 24, 2002, Riggio, who worked as a clerk for a Cook County Circuit Court Judge, claimed she was raped on the 21st floor of the Daley Center at approximately 7:20 a.m., (SOF at ¶ 18-21).[1] Immediately thereafter, Riggio was discovered by a co-worker. (SOF at ¶ 18-20). Approximately an hour later, Defendant Officers located an individual matching the description of the attacker (later learned to be Plaintiff Carl Chatman) walking in the downtown area, and arrested him at 8:34 a.m. (SOF at ¶¶ 21-24; 28-29).

Plaintiff alleges that during his arrest and questioning, Defendants observed Plaintiff's alleged "cognitive deficiencies and symptoms of mental illness". (Complaint at ¶ 50). Plaintiff further alleges that Defendant Officer Kriston Kato ("Kato") used force and threats of force to coerce Plaintiff to confess to raping Riggio. (Complaint at ¶ 56). Plaintiff also alleges that Kato fed Plaintiff the details of the crime. (SOF at ¶38). Plaintiff claims that he confessed to raping Riggio and signed a confession to that effect after Defendant Officers and ASA Holmes "overcame his will" through "improper means" and fed him details of the crime. (Complaint at ¶¶59; 61-62; 102). Plaintiff further claims that "exculpatory evidence" was withheld from him for use at his criminal trial. (Complaint at ¶¶104-116). Specifically, Plaintiff alleges that Defendant Officers and ASA Holmes concealed information about Plaintiff's cognitive deficits

---

[1] "SOF" refers to County Defendants' Rule 56.1 Statement of Material Facts, filed contemporaneously with this Motion and Memorandum.

from their reports. (Complaint at ¶¶103-104). In September 2013, the Cook County State's Attorney's Office ("SAO") voluntarily dismissed charges against Plaintiff and the State of Illinois granted Plaintiff a Certificate of Innocence. (Complaint at ¶ 6).

At the time of the underlying criminal case, ASA Holmes was a Trial Supervisor assigned to the Felony Review Unit of the SAO. (SOF ¶ 35). As an Assistant State's Attorney in Felony Review, ASA Holmes was responsible for responding to requests by law enforcement to review evidence, including police reports if available, and to determine whether to approve felony criminal charges sought by those law enforcement agencies. (SOF ¶ 42). ASA Holmes first became aware of Riggio's rape allegations while working in Felony Review at approximately 11:45 a.m., on May 24, 2002. (SOF ¶43). After receiving the assignment, ASA Holmes proceeded to Area 4 to review the evidence gathered by law enforcement. (SOF ¶44). At that time, Plaintiff was already in police custody. (SOF ¶ 45). After arriving at Area 4, ASA Holmes was advised that Riggio positively identified Plaintiff as the individual who raped her via a lineup. (SOF ¶47). Before leaving Area 4 on May 24, 2002, ASA Holmes spoke with Plaintiff who appeared fine and indicated the same and that he did not need anything (SOF ¶ 48).

Later, in the early morning hours of May 25, 2002, ASA Holmes was advised by a Chicago police detective that Plaintiff had admitted to raping Riggio. (SOF ¶ 49) ASA Holmes then returned to Area 4 and spoke with Plaintiff who agreed to speak with ASA Holmes after ASA Holmes had advised Plaintiff of his Miranda rights. (SOF ¶¶ 50-51). At that time, Plaintiff confessed to ASA Holmes that he sexually assaulted Riggio. (SOF ¶ 53) ASA Holmes did not give or otherwise suggest to Plaintiff information about the crime scene and he did not share any nonpublic details about the crime with Plaintiff. (SOF ¶ 53). ASA Holmes did not have any difficulty understanding or communicating with Plaintiff, and there was nothing about Plaintiff that led

6

ASA Holmes to believe that Plaintiff had a limited intellect or mental illness. (SOF ¶¶ 54-55). Additionally, Plaintiff did not advise ASA Holmes that an officer had hit him or that he had been abused in any way. (SOF ¶¶ 56-57).

ASA Holmes then accompanied Plaintiff and the defendant detectives in walking through the Daley Center where Plaintiff advised ASA Holmes and the others of his actions before he raped Riggio. (SOF ¶¶ 58-62). Following the walk-through, Plaintiff agreed to memorialize his confession in written with ASA Holmes' assistance after Plaintiff once again agreed to waive his Miranda rights. (SOF ¶¶ 64). In memorializing Plaintiff's confession in writing, ASA Holmes had no difficulties communicating with Plaintiff. (SOF ¶65). Additionally, after Plaintiff's written confession was completed, ASA Holmes showed Plaintiff a photo of Riggio whom Plaintiff identified as the woman he raped. (SOF ¶ 67). Plaintiff never told ASA Holmes that he had been mistreated by any Chicago police officer, and ASA Homes did not observe and Chicago police officer hit, threaten, or mistreat Plaintiff. (SOF ¶ 68).

## ARGUMENT

### I. COUNTS I AND II – ASA HOLMES DID NOT PARTICIPATE IN ANY ALLEGED CONSTITUTIONAL VIOLATION.

Liability under Section 1983 is premised on the wrongdoer's personal responsibility. *Kuhn v. Goodlow*, 678 F.3d 552, 555-556 (7th Cir. 2012). An individual cannot be held liable in a §1983 action unless he caused or participated in an alleged constitutional deprivation. *Kuhn*, 678 F.3d at 556. To survive summary judgment, Plaintiff must come forward with admissible evidence reflecting ASA Holmes' direct and personal involvement in the deprivation of Plaintiff's constitutional rights. *See Kuhn*, at 557 (Affirming the granting of summary judgment where there was no evidence of the defendant's personal involvement in the alleged violations.).

### A.  There Is No Evidence That ASA Holmes Coerced Plaintiff's Statement

Plaintiff alleges that ASA Holmes coerced his confession in violation of the Fifth and Fourteenth Amendments.  (Complaint at ¶¶ 150-167).  After several months of discovery, the record is devoid of any evidence of coercion at the hands of ASA Holmes.  To the contrary, the evidence establishes that there was no coercion by ASA Holmes.  ASA Holmes was not present when Plaintiff was questioned by Defendant Officers Boock and Mischka.  (SOF ¶¶ 34-36).  ASA Holmes was not present when Plaintiff initially confessed to Defendant Officer Roberts.  (SOF ¶ 49).  Additionally, ASA Holmes was not present when Plaintiff was allegedly coerced, threatened, and physically abused by Defendant Officer Kato.  (SOF ¶¶ 37-41).  It is undisputed that Plaintiff never told ASA Holmes that he had been mistreated by any Chicago police officer or detective, and ASA Homes did not observe and Chicago police officer or detective hit, threaten, or mistreat Plaintiff in any way. (SOF ¶ 68).

On May 25, 2002, around midnight, ASA Holmes was contacted by Defendant Officer Roberts to return to Area 4 because Plaintiff was confessing his crime in the sexual assault of Riggio.  (SOF ¶ 49).  When ASA Holmes arrived at the police station, he read Plaintiff his Miranda warnings, which Plaintiff initialed after indicating he understood the warnings.   (SOF ¶ 51).  There was nothing about Plaintiff that led ASA Holmes to believe that Plaintiff had a limited intellect or mental illness.  (SOF ¶¶ 54-55).

At approximately 2:00 a.m., ASA Holmes accompanied Defendant Officers Roberts, Midona, Sergeant Walsh and Plaintiff to the Daley Center where Plaintiff corroborated his confession by showing those present how he committed the sexual assault. (SOF ¶ 57).   Plaintiff testified that no one physically threatened him at the Daley Center and ASA Holmes observed no such coercion or abuse.  (SOF ¶¶ 61, 68).

After returning from the Daley Center, Plaintiff agreed to provide ASA Holmes with a written statement, reducing his previous oral confessions to the defendant police officers and to ASA Homes, to writing. (SOF ¶ 62). After the statement was prepared based on what Plaintiff told ASA Holmes had happened, ASA Holmes went through the entire statement with Plaintiff to see if Plaintiff wished wanted to make any corrections, additions, or deletions. (SOF ¶ 64). At that time, ASA Holmes again asked Plaintiff how he had been treated by the police, and Plaintiff responded to ASA Holmes' questions, just as he had previously, by indicating that he had been treated fine, was given food to eat, cigarettes to smoke, and he was allowed to use the washroom whenever he wished while he was at Area 4. (SOF ¶ 67). Plaintiff was not threatened, and no promises were made to him by ASA Holmes when Plaintiff agreed to reduce his previous confessions to writing. (SOF ¶ 66). Plaintiff never told ASA Holmes that the statement was false or that he had only repeated what Defendant Kato or anyone else told him to say. (SOF ¶¶ 68-70).

In sum: (1) ASA Holmes was not present when Plaintiff was questioned by and confessed to any Defendant officers or detectives, including Defendant Kato; (2) ASA Holmes was not present when Plaintiff initially confessed to Defendant Roberts; (3) Plaintiff never told ASA Holmes that he was coerced into making a statement or that the statement was false; (4) ASA Holmes never observed and threats or other mistreatment of Plaintiff by police; (5) Plaintiff provided consistent information to ASA Holmes that Plaintiff was responsible for the sexual assault of Riggio; (6) and ASA Holmes had no difficulty communicating with Plaintiff and had no reason to believe Plaintiff had any cognitive deficiencies. Accordingly, no evidence has been adduced in discovery indicating that ASA Holmes was involved in any alleged coercion of Plaintiff,

or that ASA Holmes was aware of any such coercion by police. ASA Holmes is thus entitled to judgment on Plaintiff's claims of coercion.

### B. Plaintiff's Claims of Fabrication Fail Against ASA Holmes

Plaintiff also alleges that ASA Holmes violated his constitutional rights by fabricating evidence, namely Plaintiff's written confession. In fabrication cases, the plaintiff must establish that the police or the prosecutor manufactured evidence that he knew to be false. *Petty v. City of Chicago*, et al., 754 F. 3d 416, 422 (7th Cir. 2014). It follows then, that if the police or the prosecutor does not know the evidence to be false, there can be no fabrication claim. In this case, assuming *arguendo* that the confession was false, there is no evidence that ASA Holmes knew that Plaintiff's confession was allegedly false, and therefore he is entitled to judgment on that claim.

As discussed above, it is undisputed that ASA Holmes only spoke with Plaintiff after he was informed by Defendant Officer Roberts that Plaintiff orally confessed to police that he sexually assaulted Riggio. (SOF ¶ 49). After Plaintiff's oral confession to police, Plaintiff again orally confessed to the rape to ASA Holmes. (SOF ¶ 53). Plaintiff again gave the same confession to his involvement in the underlying criminal case while at the Daley Center with Defendant officers, detectives, and ASA Holmes. (SOF ¶¶ 58-63). After returning from the Daley Center to Area 4, Plaintiff confessed a third time to ASA Holmes, and Plaintiff then agreed to provide ASA Holmes with a written statement of his confession. (SOF ¶ 64). As a result, ASA Holmes assisted Plaintiff in preparing a handwritten statement of Plaintiff's account of how he sexually assaulted Riggio based upon what Plaintiff told ASA Holmes. (SOF ¶¶ 64-70). Plaintiff admits that he never advised ASA Holmes that his confession was supposedly coerced by Defendant Officer Kato or that he was he was not involved in the crime, that his confession was false, or that he was coerced into confessing. (SOF ¶¶ 64-70).

There is simply no evidence at all (much less enough to create a material issue of fact) that ASA Holmes was told by Plaintiff or anyone that the confession was false or that Plaintiff had been coerced or otherwise mistreated by police. Nor is there any evidence indicating that ASA Holmes had reason to believe that Plaintiff provided ASA Holmes with a false written statement. Therefore, Plaintiff's fabrication claims against ASA Holmes fail as a matter of law and judgment should be entered for ASA Holmes.

II.     **PLAINTIFF'S CLAIMS AGAINST ASA HOLMES ARE BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY BECAUSE HIS ACTIONS WERE PURELY PROSECUTORIAL IN NATURE.**

Plaintiff's claims against ASA Holmes should be dismissed because he is entitled to absolute prosecutorial immunity. To be sure, ASA Holmes is entitled to summary judgment as to all of Plaintiff's claims because the entirety of ASA Holmes' involvement in Plaintiff's criminal case was part of initiating criminal charges against Plaintiff, which is a purely prosecutorial task. Indeed, all of the evidence adduced in discovery demonstrates that ASA Holmes did not conduct any investigation or develop any facts that were not already developed and gathered by members of the Chicago Police Department. (SOF ¶ 46). The facts establish that ASA Holmes did nothing more than (1) listen to Plaintiff's confession at Area 4; (2) observe Plaintiff's further explanation of how he committed the crime, corroborating his oral confession, at the Daley Center; (3) memorialize Plaintiff's confession in writing based solely on what Plaintiff told him had happened; and (4) review the evidence already compiled by police in contemplation of initiating a criminal prosecution against Plaintiff. (SOF ¶¶ 49-72).

A.  **Plaintiff's §1983 claims are barred by absolute prosecutorial immunity.**

It is well settled that prosecutors are absolutely immune from §1983 suits for damages relating to their initiation and presentation of the State's case. *Imbler v. Pachtman*, 424 U.S. 409,

431 (1976). "[A]bsolute immunity shields prosecutors even if they act 'maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.'" *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). Absolute immunity protects ASA Holmes because, under Illinois law, the State's Attorney "is vested with the exclusive discretion in the initiation and management of a criminal prosecution." *Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997)

"The State's Attorney is the representative of the People and has the responsibility of evaluating the evidence and other pertinent factors and determining what offense can properly and should properly be charged." *People v. Rhodes*, 38 Ill. 2d 389, 396 (1967). The duties of an assistant state's attorney assigned to the Felony Review Unit involve interviewing witnesses and suspects, reviewing evidence gathered by the police in their investigation, taking statements from suspects and witnesses, deciding what information is necessary for trial, and approving or declining to approve felony charges. *Anderson v. Simon*, 217 F.3d 472, 473 (7th Cir. 2000); *Hampton v. City of Chicago*, 349 F. Supp. 2d 1075, 1081 (N.D. Ill. 2004).

As the Supreme Court explained in *Imbler*, absolute immunity extends to all prosecutorial actions which are "intimately associated with the judicial phase of the criminal process." 424 U.S. at 430. The *Imbler* court recognized that "the duties of a prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution," and "decisions on a wide variety of sensitive issues" including "questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute . . ." *Id*. at 431 n.33. Furthermore, "[p]reparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." *Id*.

When considering an immunity defense, a court should focus on the conduct for which immunity is claimed, not the harm that the conduct may have caused or the question of whether or not it was lawful. *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993). Immunity is immunity from suit, not merely a defense to liability. *See, e.g, Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (discussing qualified immunity).

In *Hunt v. Jaglowski*, 926 F.2nd 689 (7th Cir. 1991), a prosecutor was called by police to memorialize the statement of a suspect that had confessed after officers allegedly coerced him to do so. *Hunt*, 926 F.2d at 692-93. The plaintiff testified at the trial of his civil lawsuit that, over the course of his detention, he was repeatedly interrogated by rotating teams of the police officers, that he was beaten by officers, that he was given little food or water, that he was chained to a wall, and that he was deprived of sleep. *Hunt*, at 691. Hunt also testified that he told an assistant state's attorney ("ASA") that he had been beaten, that he had not been allowed to see his lawyer, that he had been deprived of food and water, and that his confession had been coerced. *Id.* Hunt also testified that he showed the ASA several bruises on his body and that the ASA responded that there was nothing he could do because he was just there to take Hunt's statement. *Id.* Hunt stated that the ASA left the interrogation room and one of the police officers re-entered the room, and threatened to resume the beatings. *Id.* Reacting to the alleged threat, Hunt agreed to make a confession and the ASA re-entered the room. *Id*. at 691-692. Hunt subsequently testified that a detective read the prepared question and answer confession statement to the court reporter. *Id*. at 692. The ASA testified that, (a) Hunt never made any complaints regarding his treatment by the police, (b) Hunt never requested and was denied counsel, (c) Hunt never made the ASA aware of any injuries he suffered, and (d) that Hunt never

13

told him that his confession had been coerced, and (e) he asked Hunt questions and Hunt responded during the court reported confession. *Id*. at 692 N2.

The district court granted the ASA's motion for directed verdict, and the Seventh Circuit affirmed on the basis of absolute prosecutorial immunity. *Id*. at 694. The Seventh Circuit noted that the ASA was not present at the time Hunt was arrested and taken to the police station, was not present during interactions with the police detectives, was not present when Hunt said that he was beaten, and was not present when Hunt alleged he gave his coerced confession. *Id.* 693 The Court further noted that the ASA only had contact with the plaintiff after he had already confessed to the police and when the police were seeking review of and approval or disapproval of the charges for which they were detaining the plaintiff. *Id.* The Court found that the ASA's actions were prosecutorial and thus the ASA was absolutely immune from the plaintiff's claims. The Plaintiff's allegations that the ASA knew of the coercion were unsupported by admissible evidence and therefore Hunt was entitled to judgment in his favor as a matter of law. *Id.*

Following the reasoning in *Hunt*, courts in this District have consistently held that evaluating evidence to determine whether to file charges, interviewing an accused after he or she has confessed, and recording a confession are part of the prosecutor's role for which absolute immunity applies. *See Andrews v. Burge*, 660 F. Supp. 2d 868, 878 (N.D. Ill. 2009); *Patterson v. Burge*, 2010 U.S. Dist. LEXIS 103966, *28 (N.D. Ill. 2010)(J. Gottshchall); *Harris v. City of Chicago,* 2015 U.S. Dist. LEXIS 34835, *19-20 (N.D. Ill. 2015)(J.Darrah). The facts in the record here establish that the actions taken by ASA Holmes in the review of the charges against Plaintiff were actions that fall squarely within the contours of *Hunt*, *Andrews*, *Patterson*, and *Harris*.

In this case, even accepting Plaintiff's version of events as true, Plaintiff claims that he was physically threatened and coerced by Defendant Officer Kato into confessing the sexual assault of Riggio prior to ASA Holmes arriving at the station for his interview. (SOF ¶¶ 37-41). Plaintiff subsequently testified in this case that he told ASA Holmes what Detective Kato "told him to say." (SOF ¶ 60). There is no admissible evidence that Plaintiff ever told ASA Holmes that he had been coerced, physically abused, or otherwise mistreated by Defendant Kato or any other police officer or detective and that he was, as a result of such mistreatment, providing a false confession. (SOF ¶¶ 48, 56-57, 63, 66, 68-72). Moreover, the Plaintiff has no evidence is clear that ASA Holmes acted as anything other than a prosecutor in determining whether or not to approve charges when ASA Holmes spoke with Plaintiff and received his confession. To be sure ASA Holmes did ask Plaintiff if he had been treated well by police, and that occurred after Plaintiff had already confessed to police that Plaintiff had sexually assaulted Riggio. (SOF ¶¶ 48-49).

Additionally, once Plaintiff confessed to Defendant Officer Roberts, there was probable cause to charge Plaintiff with a crime. Once there is probable cause to arrest, the prosecutor's role is not investigatory, but rather prosecutorial in nature. *See Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). Based on the evidence adduced through discovery and discussed above, there was probable cause to arrest Plaintiff even before Plaintiff orally confessed to ASA Holmes that he had sexually assaulted Riggio.

ASA Holmes' involvement in Plaintiff's case came after Plaintiff was arrested by police, after Riggio had identified Plaintiff as the person who sexually assaulted her, and after Plaintiff orally confessed to the crime to police. (SOF ¶¶ 43-46, 49). The record establishes that ASA Holmes' actions were taken while acting as an advocate for the People of State of Illinois in

initiating a criminal prosecution against Plaintiff. Additionally, just as in *Hunt*, Plaintiff's

allegations in his Complaint that ASA Holmes knew or participated in fabricating or coercing his

confession are unsupported by the facts adduced in discovery and therefore are inadequate to

defeat a motion for summary judgment. (SOF ¶ 68). Therefore, ASA Holmes is absolutely

immune from suit and is entitled to summary judgment.

Similarly, Plaintiff's allegation that ASA Holmes was part of a conspiracy against him

also does not defeat absolute immunity. See *French v. Corrigan*, 432 F.2d 1211 (7th Cir. 1970)

(finding that prosecutors did not lose their immunity by reason of alleged conspiracy). In *Imbler*,

the plaintiff alleged a conspiracy among the prosecutor and police that caused him to be

wrongfully charged and convicted through the knowing use of false testimony and the

suppression of exculpatory evidence. 424 U.S. at 416. In affirming dismissal of the plaintiff's

complaint, the Court found that, despite the nature of the plaintiff's "conspiracy" allegations, the

prosecutor was absolutely immune because his activities were intimately associated with the

judicial phase of the criminal process. *Id*. at 431. Consequently, any claim that ASA Holmes

initiated the prosecution of Plaintiff as part of a conspiracy does not defeat immunity. See, e.g.,

*Elder v. Athens-Clark County*, 54 F.3d 694 (11th Cir. 1995) (prosecutor found to be immune

from suit under §1983, where the prosecutor allegedly conspired to maliciously prosecute

plaintiff for obstruction of justice in an effort to cover up plaintiff's complaints of beating by

jailers). Following the reasoning of *Spiegel*, *Hunt*, and their progeny, ASA Holmes is absolutely

immune from suit, and judgment should be entered in his favor.

## III. COUNT VI – PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS.

In Count VI of his Complaint, Plaintiff attempts to set forth a claim under §1983 for

failure to intervene against ASA Holmes. As an initial matter, ASA Holmes maintains that there

is no duty to intervene on the part of a prosecutor in the actions of a police officer. Even in cases

where the court held that such a duty exists, it only exists if the prosecutor was acting in the same investigatory capacity as the police and had a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights. *See Rivera v. Lake County*, et al. 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013)(Leinenweber, J.); *Harris v. City of Chicago*, et al., 2015 U.S. Dist LEXIS 34835, *20 (N.D. Ill. 2015)(Darrah, J.) In this case, though, even if there was a duty to intervene by a prosecutor, ASA Holmes had no realistic opportunity to prevent the Defendant officers from violating Plaintiff's rights. ASA Holmes was not present during Plaintiff's initial interrogation by Defendant Officers Boock and Mischka or the alleged interrogation of Defendant Kato or the oral confession Plaintiff made to Defendant Robert (SOF ¶¶ 34, 37-41, 49). Plaintiff confessed his involvement in the sexual assaults to ASA Holmes after already having confessed to police. (SOF ¶¶ 49, 62-65). And here, Plaintiff admits that he never told ASA Holmes that the confession was coerced or fabricated by Defendant Kato or the other Defendant Officers. (SOF ¶ 68). Further, Plaintiff testified that he was not made any promises by ASA Holmes in return for his statement nor was he threatened in any way. (SOF ¶ 66). Plaintiff signed and reviewed the handwritten statement prepared by ASA Holmes after his confession. (SOF ¶¶ 64-68). As such, Plaintiff's claim of failure to intervene fails to establish any genuine issue of material fact that could forestall entry of judgment in favor of AS Holmes as a matter of law.

Further, assuming *arguendo*, that ASA Holmes had a duty to intervene and a realistic opportunity to intervene, ASA Holmes is immune from such a claim based on qualified immunity. The Supreme Court has set forth a two-part inquiry to determine whether a government official is entitled to qualified immunity: (1) whether the facts alleged set forth a violation of a constitutional right and (2) whether the right was clearly established at the time of

the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Akande v. Grounds*, 555 F.3d 586, 589-590 (7th Cir. 2009). Courts have discretion to decide which prong should be addressed first "in light of the circumstances in the particular case." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). A prosecutor's duty to intervene in the actions of a police officer is not clearly established and therefore ASA Holmes is entitled to qualified immunity.

There are some courts in this District that have found a duty of prosecutor to intervene in the actions of a police officer, but there are also some courts in this District that have not found that duty to exist. See *Gordon v. Devine*, 2008 U.S. Dist. LEXIS 81234, *56 (N.D. Ill. October 14, 2008) (Aspen, J.) (declining to recognize a "failure to intervene" claim against an assistant state's attorney and dismissing claim pursuant to Fed. R. Civ. P. 12(b)(6)); *Andrews v. Burge*, 660 F. Supp. 2d 868, 876 n. 6 (N.D. Ill. 2009) (following *Gordon* and dismissing failure to intervene claim against the State's Attorney); *Hobbs v. Cappelluti*, 2012 U.S. Dist. LEXIS 139895 **83- 84 (N.D. Ill. September 28, 2012) (Lefkow, J.) (following *Gordon* and *Andrews* and dismissing a claim for failure to intervene against defendant prosecutors); *See also Saunders v. City of Chicago*, et al., 2013 U.S. Dist. LEXIS 161842 (N.D. Ill. 2013)(Dow, J.)(allowing failure to intervene claim to go forward against prosecutor); *Rivera v. Lake County*, et al., 974 F. Supp. 2d 1179 (N.D. Ill. 2013)(Leinenweber, J.). This stark division as to whether a prosecutor has a duty to intervene, even within this District, evidences that any such right was not clearly established.

Moreover, a prosecutor's only real power to intervene in a case where there is police misconduct is to refuse to approve felony charges or bring an indictment against the suspect. However, that decision is inherently prosecutorial in nature and enjoys the protection of absolute immunity. A prosecutor cannot be liable for failure to intervene where the only realistic

intervention involves a prosecutor's absolute discretion to prosecute or not. As such, it would not have been reasonable for ASA Holmes to have known that he had a duty to intervene in the actions of a Chicago Police Officer. Therefore, even if there is a duty for a prosecutor to intervene, it was not a right that a reasonable prosecutor would have known was clearly established. Thus, ASA Holmes is entitled to immunity.

## IV. COUNT IV – ASA HOLMES IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S *BRADY* CLAIM.

In the interest of brevity, ASA Holmes adopts and incorporates the arguments made by the Defendant officers in their Memorandum of Law in Support of their Partial Motion for Summary Judgment that there are no genuine issues of material fact as to whether ASA Holmes observed Plaintiff to have cognitive deficiencies. ASA Holmes is entitled to absolute immunity because Brady involves a uniquely prosecutorial function. Consequently, ASA Holmes is entitled to summary judgment on Plaintiff's *Brady* claim.

Additionally, assuming *arguendo* that Plaintiff's *Brady* claim survives and ASA Holmes is not entitled to absolute immunity, he is entitled to qualified immunity. Plaintiff's allegations fail to state any violation of his constitutional rights. Additionally, there is no clearly established right that a non-trial prosecutor owes a duty under *Brady* or *Giglio* to inform defense counsel of possibly impeaching information.

The Supreme Court has set forth a two-part inquiry to determine whether a government official is entitled to qualified immunity: (1) whether the facts alleged set forth a violation of a constitutional right and (2) whether the right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Akande v. Grounds*, 555 F.3d 586, 589-590 (7th Cir. 2009). Courts have discretion to decide which prong should be

19

addressed first "in light of the circumstances in the particular case." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

As discussed above, Plaintiff has not set forth a violation of a constitutional right against ASA Holmes because there is no clearly established right that a non-trial prosecutor owes a duty under *Brady* or *Giglio* to inform defense counsel of possibly impeaching information. Therefore, the first prong of the analysis is not met. The Brady obligator arises during pre-trial discovery. There are no facts that suggest ASA Holmes had any involvement in that or any aspect of the case beyond the evaluation of probable cause.

Plaintiff cannot meet the second prong of this analysis either. In *Fields I*, the Seventh Circuit noted that the Supreme Court never explicitly stated that colleagues or supervisors of a trial prosecutor had any individual *Brady* or *Giglo* obligations. *Fields v. Wharrie, et al.*, (*Fields I*) 672 F.3d 505, 513 (7th Cir. 2012). The court went on to state that the Supreme Court did not expressly instruct that every individual prosecutor in an office owes a *Brady* or *Giglio* obligation to a defendant solely due to his employment in the office, regardless of whether or not he is involved in that defendant's prosecution. *Id.* Surely there was no clearly established right requiring ASA Homes inform Plaintiff's defense counsel of information that may impeach a witness. Accordingly, ASA Holmes is entitled to qualified immunity, and judgment should be entered in his favor on Plaintiff's *Brady* claim.

## V. COUNT V – PLAINTIFF'S CONSPIRACY CLAIM FAILS.

"Conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Conspiracy claims are dependent on the underlying constitutional injury. See *Drager v. Village of Bellwood*, 969 F. Supp. 2d 971, 984 (N.D. Ill. 2013). As discussed above, ASA Holmes is absolutely immune from Plaintiff's constitutional violations, or in the

alternative, the underlying claims fail. Accordingly, judgment should be entered in favor of ASA Holmes on Plaintiff's conspiracy claim.

## VI.   COUNTS IX AND X – PLAINTIFF'S STATE LAW IIED AND CONSPIRACY CLAIMS ARE TIME BARRED.

In the interest of brevity, ASA Holmes adopts and incorporates the arguments made by the Defendant officers in their Memorandum of Law in Support of their Motion for Summary Judgment, that all of Plaintiff's state law claims are time barred.

## VII.   COUNTS XII AND XIII – PLAINTIFF'S *RESPONDEAT SUPERIOR* AND INDEMNIFICATION CLAIMS FAIL.

As discussed above, all of Plaintiff's claims against ASA Holmes fail and must be dismissed. Accordingly, the claim of *respondeat superior* against former State's Attorney Alvarez and indemnification against Cook County must also be dismissed.

## CONCLUSION

Absolute immunity bars this action. The facts developed during discovery foreclose the possibility that ASA Holmes acted in anything other than a prosecutor's role and without knowledge of the actions Plaintiff alleges against the Defendant officers. There are no genuine issues of material fact that preclude judgment from being entered as a matter of law in favor of ASA Holmes, former State's Attorney Alvarez and Cook County.

DATED: March 10, 2017

                    Respectfully submitted,
                     KIMBERLY M. FOXX
                     State's Attorney of Cook County
                    By:____/s/Anna G. O'Connor_
                          James E. Hanlon, Jr.
                          Thomas E. Nowinski
                          Anna G. O'Connor
                          Assistant State's Attorneys
                          500 Richard J. Daley Center
                          Chicago, Illinois 60602
                          (312) 603-5440