**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARL CHATMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 1:14-CV-02945 |
| -vs- ) | |
| ) | Honorable Judge John Z. Lee |
| CITY OF CHICAGO, *ET AL.*, ) | |
| ) | Magistrate Judge Maria Valdez |
| Defendants. ) | |

**DEFENDANT SUSAN RIGGIO'S MOTION TO BAR VARIOUS OPINIONS OF DR. MICHAEL WELNER PURSUANT TO *DAUBERT***

Defendant, SUSAN RIGGIO, by her attorneys, BOLLINGER CONNOLLY KRAUSE, LLC, hereby moves this Court, pursuant to *Daubert*, for an order barring opinions of Dr. Welner on DNA evidence and on ultimate issues. In support, Defendant states the following:

**INTRODUCTION**

On November 25, 2015, the Plaintiff filed a Second Amended Complaint (corrected) in this case claiming that Defendant Mrs. Susan Riggio fabricated her rape to maliciously, intentionally, and falsely accuse the Plaintiff of a crime she knew he did not commit. [d/e 324, ¶ 217]. Mrs. Riggio denies these allegations as the rape did, indeed, occur. Currently, the only remaining claim against Defendant Riggio is malicious prosecution under Illinois law. [d/e 525].

The Defendant Chicago Police Officers disclosed Michael Welner, M.D. to offer expert opinions regarding false confessions in rebuttal to Plaintiff's purported false confessions expert, Melissa Russano Rodriguez[1]. [Attached as Exhibit A is Dr. Michael Welner's Expert Report; Exhibit B is his *curriculum vitae*].

---

[1] Co-Defendant Chicago Police Officers filed a *Daubert* motion as to Melissa Russano Rodriguez [d/e 572], which Mrs. Riggio joins [d/e 580].

1

During Dr. Welner's deposition, he opined on DNA evidence at issue in this case despite repeatedly acknowledging that DNA evidence is beyond the scope of his expertise. Any opinions by Dr. Welner regarding the potential import of the DNA evidence is therefore tantamount to improper lay testimony, which in no way assists the trier of fact. He also improperly offers testimony regarding the ultimate issue in this case – whether Chatman is innocent of Mrs. Riggio's rape. Dr. Welner should be barred from testifying to those matters.

## ARGUMENT

To determine admissibility of an expert's opinions, district courts apply the *Daubert* framework using a three-part test. *Meyer v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). First, the Court determines whether the proposed witness is qualified as an expert by knowledge, skill, experience, training, or education. *Id.* If so, then the Court decides whether the reasoning or methodology underlying the expert's testimony is reliable. *Id.* If these two requirements are met, then the Court assesses whether the expert's proposed testimony will assist the trier of fact in understanding the evidence or to determine a factual issue. *Meyer*, 629 F.3d at 644.

Here, Dr. Welner's opinions regarding whether certain DNA evidence establishes or suggests the innocence of the Plaintiff should be barred as he does not possess the skill, experience, training, or education required to offer said opinions. Dr. Welner repeatedly testified that he is not an expert on DNA evidence while simultaneously offering opinions on DNA evidence. Those opinions should be barred. The Court also should bar Dr. Welner from offering opinions on Chatman's innocence as that improperly invades the province of the jury.

**I.     DR. WELNER'S OPINIONS ON DNA EVIDENCE SHOULD BE BARRED WHERE HE DOES NOT POSSESS THE SKILL, EXPERIENCE, TRAINING, OR EDUCATION REQUIRED TO OFFER SAID OPINIONS.**

Dr. Welner, *a forensic psychiatrist*, cannot reliably offer expert testimony on DNA evidence in this case. Due to his admitted lack of expertise in that area, this Court really need not go any further to evaluate this issue. Nevertheless, it is clear from his *curriculum vitae* that he has never worked as a molecular biologist or a biochemist nor has he worked in any laboratory to collect, test, and interpret DNA evidence.  [Ex. B].  To gauge reliability of expert testimony, the Court determines whether the expert employs the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The purpose is to ensure that anything admitted is well-grounded in methods and procedures of science.  *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 536 (7th Cir. 2000).  In doing so, the Court focuses on the methods, not the conclusions.  *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996).  It is unequivocal that Dr. Welner does not practice in the relevant field of DNA.

During his deposition, Dr. Welner begins to opine on several speculative possibilities[2] regarding whether Plaintiff is innocent of raping Mrs. Riggio based on DNA evidence in this case. Plaintiff's counsel provided Dr. Welner with information from various DNA reports that indicate that there were trace amounts of male DNA found on Mrs. Riggio that did not match Plaintiff's DNA. [Attached as Exhibit C is Dr. Welner's deposition testimony, 81;2-9]. Dr. Welner offers several hypothetical opinions when presented with this information without the entire context of reviewing the full reports.

---

[2] Throughout Dr. Welner's deposition, he is asked several misleading and improper hypothetical questions. [Ex B, 180;16-22, 201;17-22, 220;23-221;7, etc.] Defendant Riggio anticipates filing a separate motion *in limine* barring this line of questioning.

3

Specifically, Dr. Welner concludes the DNA evidence suggests Mrs. Riggio lied about having a consensual sexual relationship with another man, that Carl Chatman is innocent, or that there is a possibility of contamination. [Ex. C, 100;5-25]. He testifies that if there was no evidence of consensual contact between Mrs. Riggio and another man, the DNA evidence would be an indication that Plaintiff is innocent. [Ex. C, 64;14-25, 80;19-25]. Dr. Welner continues to opine that, if the DNA originated from another individual, and Mrs. Riggio did not engage in consensual sex, Plaintiff is innocent. [Ex. C, 92;18-93;13].

However, Dr. Welner, by his own repeated assertions, is not a DNA expert and has no expertise in gauging whether an individual is innocent. [Ex. C, 100;20-101;5, 84:16-17, 94;12-17] ("Q. So you have no expertise in determining whether -- you agree you have no expertise in determining whether someone is innocent or guilty? A. That's not a psychiatrist's role." *Id* at 254;1-15.) He is also not an expert in evidence collection. [Ex. C, 92;24-93;12]. Thus, he is not even remotely qualified to offer testimony regarding the circumstances surrounding the DNA evidence in order to draw a conclusion as to whether Plaintiff is innocent. He does not possess any particularized skills or apply a sound methodology to his opinions and never disclosed such opinions in his expert report. [Ex. A].

Dr. Welner's testimony on DNA is no way assists the trier of fact because his testimony on that issue amounts to nothing more than mere lay testimony. *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998). (An expert must "testify to something more than what is 'obvious to a lay person'[.]") Because Dr. Welner does not have expertise in the area of DNA evidence, this Court should bar him from testifying as to whether the DNA evidence in this case translates to Plaintiff's innocence.

4

**II.      THIS COURT SHOULD BAR DR. WELNER FROM OFFERING AN OPINION AS TO WHETHER PLAINTIFF IS INNOCENT OF RAPING SUSAN RIGGIO, BECAUSE SUCH AN OPINION IMPROPERLY INVADES THE PROVINCE OF THE JURY.**

This Court should bar Dr. Welner from rendering opinions on ultimate issues in this matter, so those issues can properly remain in the province of the jury to decide. The ultimate consideration in assessing the admissibility of expert testimony is whether it would assist the jury in understanding the evidence. *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). Expert testimony is inadmissible when it usurps the jury's function by replacing their fact-finding position with the improper influence of expert testimony. *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006) ("Introducing two experts to testify that [Defendant] used excessive force would have induced the jurors to substitute their own independent conclusions for that of the experts.") Simply put, expert testimony is improper if it usurps the jury's function. *Wells v. City of Chicago*, 2012 U.S. Dist. LEXIS 4749, at *28 (N.D. Ill. January 16, 2012), *citing United States v. Farrell,* 563 F.3d 364, 377-78 (8th Cir. 2009).

An example of Dr. Welner testifying on an ultimate issue is demonstrated in the following exchange:

> Q. I'm just trying to find out did you misspeak before?
>
> A. No. You are gaming my answers. Let's be clear about this. My position is if it's obvious who the DNA originated from, whether it originated from some swab or a technique of a discipline that is not my own. You are leading me into evidence collection which I have claimed no expertise for, but I'm answering your questions at face value and good faith with the understanding you are actually interested in an honest answer and you were not gaming my answers that if it's clear that [DNA] originates from another individual, there is only one assailant, and if it's clear there is no consensual sex happened during that period of time, then, of course, **Carl Chatman would be innocent.**

5

[Ex. C, 92;16-93;12] (emphasis added). Whether Plaintiff raped Mrs. Riggio is the very crux of the case and must be decided by a jury.

Further, as stated *supra*, Dr. Welner responds to several hypothetical scenarios wherein he opines that Plaintiff is innocent if particular circumstances are met. [Ex. C, 100;5-25]. He testifies that the presence of another male's DNA, and lack of Plaintiff's DNA, necessarily means that either Mrs. Riggio was having a consensual sexual relationship outside of marriage, there was DNA contamination, or the Plaintiff is innocent. *Id.* The full context of the DNA evidence, however, suggests multiple factors could play a role in why there was no DNA evidence connecting Plaintiff to the victim, (e.g., Plaintiff did not ejaculate; there were no penile swabs taken; not all of the clothing was tested; Mrs. Riggio urinated on herself during the attack, which could wash away evidence, etc.). Indeed, to the extent the jury required edification on the issues surrounding DNA evidence and the various possibilities that exist in light of any DNA findings, the Plaintiff has already retained a DNA expert in this case[3]. If Dr. Welner were to state Plaintiff is innocent, in light of the DNA evidence, it would induce the jury to replace their own independent judgment with that of the expert's opinion, (or rather lack thereof as it pertains to DNA evidence), and overlook the multitude of other explanations that were elicited during the cross-examination of Plaintiff's DNA expert, Dr. Reich.

Dr. Welner also testified that if Plaintiff is innocent, he is entitled to monetary compensation. [Ex. C, 314;16-315;5]. Offering opinion testimony on whether Plaintiff is entitled to damages also invades the province of the jury and should be barred.

---

[3] Plaintiff's DNA expert, Karl Reich, testified extensively regarding the DNA results; issues of contamination; what items were not tested; and what items were incapable of testing.

Finally, Dr. Welner's testimony on DNA issues and ultimate opinions should be barred as said testimony would undoubtedly result in confusion and undue prejudice under Fed.R.Evid. 403. A jury may mistakenly assume that Dr. Welner has specialized expertise in this area and give extra credence to his opinions if this testimony were admissible, thereby confusing the issues and misleading the jury. As Dr. Welner's opinions in that regard will not assist the trier of fact in understanding the evidence or determining a factual issue, his opinions should be barred.

## CONCLUSION

WHEREFORE, Defendant, Susan Riggio, requests this Court enter an Order pursuant to Daubert barring Dr. Michael Welner's opinions on DNA evidence and on ultimate issues and any other relief this Court deems proper.

Respectfully Submitted,

By: /s/ Margaret M. Molloy
One of the Attorneys for the Defendant,
SUSAN RIGGIO

Jeremiah P. Connolly, #03124158
Rachel D. Kiley, #6283247
Margaret M. Molloy, #6317096
BOLLINGER CONNOLLY KRAUSE LLC
500 West Madison Street, Suite 2430
Chicago, Illinois 60661
Tel: (312) 253-6200
Fax: (312) 253-6201

## CERTIFICATE OF SERVICE

I hereby certify that on the 15 day of May, 2018, I electronically filed this Motion with the Clerk of the Court using the CM/ECF electronic system, and all counsel of record were served by CM/ECF – USDC.

**/s/ Margaret M. Molloy**

7