IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARL CHATMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No.: 14 cv 2945 |
| | ) | |
| vs. | ) | Judge John Z. Lee |
| | ) | |
| CITY OF CHICAGO, et. al., | ) | Magistrate Judge Maria Valdez |
| | ) | |
| Defendants. | ) | |

**DEFENDANT OFFICERS' MOTION *IN LIMINE* No. 1
TO BAR REFERENCE TO THE "ANONYMOUS MEMORANDUM" OR ANY
INVESTIGATION/INVESTIGATION FILE RELATED THERETO**
*(The parties have conferred and Plaintiff objects)*

In the course of discovery in this matter Chicago Police Department Complaint Register File no. 296034 ("the CR File") was produced. The CR File was initiated against Defendant Kriston Kato ("Kato") via an "anonymous memo" accusing him, in essence, of beating Plaintiff nearly to death and drafting a confession for Plaintiff to sign admitting his involvement in a rape at the Daley Center. *See* Ex. 1. This anonymous memo purports to have been written by an "Anonymous Officer/Detective" and purports to be dated "May 27, 2002." *Id.* However, according to a letter submitted with the anonymous memo itself, it was not *actually* received until February 23, 2004. *Id.* The allegations contained in the anonymous memo were investigated by the Office of Professional Standards and were determined to be "unfounded." *Id.* Defendant Officers move *in limine* to bar the introduction of any portion of the CR File, including the anonymous memo, and move to bar any inference or argument pertaining to these materials. Specifically, Defendant Officers move to bar Plaintiff's proffered exhibit nos. 73, 123, 141, 142, 143, 144, and witnesses Karen Wojtczak[1], Matthew Brown, Elizabeth Carmody, Nichelle Fraction, Millicent Willis, Steve Peterson, Richard Kobel, and Tisa

---
[1] The grounds for barring Karen Wojtczak as a witness in the case against Defendant Officers is further addressed in Defendant Officers' Motion to Sever.

1

Morris.[2]

First and foremost, the anonymous memo itself is rank hearsay and cannot be authenticated as the identity of its author has never been confirmed. F.R.E. 802. It is an elementary requirement for the admissibility of evidence that an appropriate foundation be laid. F.R.E. 901. Furthermore, admission of the anonymous memo into evidence would violate the Confrontation Clause as Kato is deprived of any opportunity to cross-examine his accuser, who remains anonymous. *See*, *Crawford v. Washington*, 124 S.Ct. 1354 (2004). Allowing into evidence such anonymous accusations of misconduct against Kato without affording him the opportunity to confront his accuser would have an irreparable prejudicial effect. F.R.E. 403. While accusations of misconduct could ordinarily be rebutted by challenging the account and motivations of the accuser, the alleged accuser in this case is unknown. Thus, were introduction of this evidence allowed, Kato would be left little recourse but to fight against the accusations of a (likely fictitious) fellow police officer-accuser who is cloaked in apparent credibility by virtue of his/her own description of his/her own position while, at the same time, being unable to effectively mount an informed defense because of this anonymity. Additionally, the prejudicial effect of admission of this hearsay evidence would have a profound, negative impact on each and every one of the Defendants as it speaks to the key questions at issue: whether Defendant Riggio was truly raped by Plaintiff and whether Plaintiff gave a voluntarily, truthful confession.

Additionally, the contents of the anonymous memo have not only already been deemed to be "unfounded," but are highly and deeply suspicious on their face. For example, the version of the events detailed in the anonymous memo bear little resemblance to Plaintiff's own allegations in the present case. The anonymous memo gives a detailed account of interactions that allegedly took place between Plaintiff and Kato on or about May 25, 2002. *See* Ex. 1. The details provided in the

---

[2] Defendant Officers object to calling Tisa Morris as a witness only to the extent she is called upon to testify about the anonymous memo and/or corresponding investigation.

anonymous memo could only have been provided by someone who was present in the room when Plaintiff allegedly interacted with Kato. The memo provides quoted language that is attributed to both Plaintiff and Kato and alleges that Kato repeatedly struck Plaintiff, to the point where Plaintiff was "grasping for air." *Id.* The anonymous memo alleges that Kato "took the victims (sic) account of the assault, word for word and laid it out for the homeless suspect to sign. The suspect didn't even read it and didn't know what he was signing." *Id.*

However, Plaintiff claimed in his Complaint that Defendant Chicago Police Detective *John Roberts* used force and threats of force to coerce Plaintiff to confess. *See* Dkt. #1 at ¶ 53. There was no mention of Kato and Kato was not even named as a defendant in this suit at that time. To this end, Assistant State's Attorney James Papa gave a deposition in this matter and testified that sometime in 2013 he conducted an interview with Plaintiff in conjunction with an investigation that he was performing for the Conviction Integrity Unit of his office. *See* Ex. 2 at p. 112:12-24. Plaintiff's counsel, Russell Ainsworth, was present during that interview. *Id.* Papa testified that he asked Plaintiff who coached him on what to say in his confession. *Id.* at 202:13-24; 203:1-2. Plaintiff looked to Ainsworth and asked, "Roberts, right?" Ainsworth confirmed that the name was Roberts. *Id.*

Even after Plaintiff settled upon Kato as his alleged abuser, Plaintiff's description of his alleged treatment by Kato is not even close to what is detailed in the anonymous memo. Plaintiff testified at his deposition in this matter that a tall, slender "Chinese-looking" officer struck him on the side of his head when he was in an interview room at Area 4 on May 24, 2005. *See* Ex.3 at 277-78. Plaintiff testified that at the time that he was in the interview room with the "Chinese-looking" officer, it was just Plaintiff and the "Chinese-looking" officer in the room. *Id.* at 278. Plaintiff testified that he was struck one time by the "Chinese-looking" officer. *Id.* at 281-282. Plaintiff provided at his deposition that his statement was taken by [assistant state's attorney] Holmes. *Id.* at 289. Plaintiff testified that Holmes read the confession out loud to him. Ex. 4. at p. 73. Holmes told Plaintiff that he could make

3

corrections to the confession. *Id.*

This is a very different sequence of events than being beaten nearly to death, having Kato preparing the statement, and having no idea what the statement said. Moreover, the account set forth in the anonymous memo purports give a running dialogue of what is being done and said in the interrogation room. However, even under Plaintiff's version of the events, Kato and Plaintiff were alone in the room.

Additionally, the timing and circumstances leading up to the transmittal of the anonymous memo are highly suspicious. The anonymous memo was received on February 23, 2004. This happened to be during the one-month period between Plaintiff's conviction and Plaintiff's sentencing. While the anonymous memo itself claims to have been transmitted on May 27, 2002, there is no evidence in the CR File supporting this contention beyond a dark and apparently altered photocopy of a City of Chicago Inter-Departmental Mail envelope. *See*, Ex. 1. However, this claim of being sent and ignored is suspicious even on its face. Why would the anonymous memo writer preemptively make a copy of the envelope the anonymous memo was sent in? How would the anonymous memo writer know that it had been ignored? Even beyond its content, the anonymous memo itself is highly suspicious. Should the anonymous memo and corresponding CR File be admitted at the time of trial, Defendants will be forced to engage in satellite litigation to explore and explain the suspicious origins of the anonymous memo.

WHEREFORE Defendant Officer pray this Court enter an order *in limine* with respect to the arguments and evidence at trial and for whatever other relief this Court deems fit.

Timothy P. Scahill (6287296)  
Steven B. Borkan (6193463)  
Krista E. Stalf (6287032)  
20 South Clark Street  
Suite 1700  
Chicago, Illinois 60603  
(312) 580-1030  

Respectfully submitted,  
BORKAN & SCAHILL, LTD.  


By: /s/Krista E. Stalf  
     Krista E. Stalf

4