# EXHIBIT 2

```
        IN THE UNITED STATES DISTRICT COURT

      FOR THE NORTHERN DISTRICT OF ILLINOIS

              EASTERN DIVISION
```

CARL CHATMAN,                    )
    Plaintiff,               )
    -vs-                     ) No. 14-CV-02945
CITY OF CHICAGO, et al.,         )
    Defendants.              )

  The video deposition of JAMES PAPA, called For examination pursuant to the Rules of Civil Procedure for the United States District Courts Pertaining to the taking of depositions, taken before Gina M. Callahan, Certified Shorthand Reporter for the State of Illinois, at 500 West Madison Street, Illinois, on June 9, 2015, at the hour of 10:11 a.m.

      (Proceedings concluded at 6:09 p.m.)

Reported by:  Gina Callahan, CSR

License No.:  084-003623

**JAMES PAPA**

### Page 110

1 offenders?
2     MR. NOWINSKI: Objection. Form.
3     THE WITNESS: Not that I'm aware of.
4 BY MR. CONNOLLY:
5     Q. Okay. This particular form contains a
6 number of items relative to waiver, some of
7 which suggests that they're waiving their rights
8 to self-incrimination, any privileges, medical,
9 spousal, attorney, and I'm presuming because
10 that state's attorney wants to get at, you know,
11 the truth is their actual innocence and
12 therefore, as part of that process, wants to
13 talk directly to and obtain information about
14 the convicted offender.
15     Let me ask you in relation to your role
16 as head of the Conviction Integrity Unit for
17 Cook County in 2012 and 2013, did you ever
18 require, as part of your review, that the
19 petitioning convicted offender waive his rights
20 and privileges?
21     MR. NOWINSKI: Objection. Form, incomplete
22 hypothetical.
23     MR. AINSWORTH: I'll object to form and
24 foundation.

### Page 111

1     THE WITNESS: You're talking in the general,
2 the broadest sense?
3 BY MR. CONNOLLY:
4     Q. General, yeah.
5     A. Yes.
6     Q. Okay. Under what circumstances or were
7 there receive circumstances where you would
8 typically request that they waive their rights,
9 their Fifth Amendment rights and others?
10     A. When we want to talk to the inmate, we
11 ask them to talk or if we want them to sign a
12 waiver waiving the attorney-client privilege so
13 that we can talk to their past attorneys in the
14 cases.
15     Q. Okay. And that's because that's a way
16 of getting information -- really getting inside
17 information as to everything they've ever said
18 or done and you having an opportunity to
19 evaluate the witness directly yourself, right?
20     MR. AINSWORTH: Object to the form of the
21 question and compound.
22     MR. NOWINSKI: Join. And foundation.
23     THE WITNESS: It is a way to get as much
24 information as possible.

### Page 112

1 BY MR. CONNOLLY:
2     Q. Okay. And there are probably or were
3 probably circumstances where convicted offenders
4 did not testify at the trial, and this might
5 actually be your singular opportunity to hear
6 from them with regard to their defense; is that
7 true, or no?
8     MR. NOWINSKI: Objection. Form.
9     THE WITNESS: Again in the broadest possible
10 way, yes.
11 BY MR. CONNOLLY:
12     Q. Okay. With regard to Mr. Chatman, did
13 you ever meet with him to discuss his petition
14 for review?
15     A. Did we meet with him, we did.
16     Q. Okay. And when did you meet with him?
17     A. It was June I want to say, I believe,
18 June 13th of 2013.
19     Q. And when you say we, who else was
20 there?
21     A. It was myself; the investigator that
22 was assigned to the case, Joanne Ryan; and then
23 Mr. Ainsworth was there, as well. I believe
24 there was -- I'm sure there was also an Illinois

### Page 113

1 Department of Correction correctional officer
2 who was sitting somewhere inside or in the near
3 vicinity of where we spoke.
4     Q. Okay. Now, you mentioned an
5 investigator Ryan. Was she an attorney?
6     A. No, an investigator.
7     Q. Okay. So as you described earlier,
8 your -- the office's use of McGreal, this Ryan
9 investigator performed the same kind of
10 function, assisting with taking statements or
11 interviews?
12     A. You're saying the same function as?
13     Q. McGreal did for the Conviction
14 Integrity Unit?
15     A. Yeah, she would get assigned the case
16 and then aid in the location of witnesses,
17 transporting of witnesses, interviews
18 themselves.
19     Q. Okay. And how long did that meeting
20 with Mr. Chatman take approximately?
21     A. At least an hour, maybe a little bit
22 longer.
23     Q. Okay. And were there notes taken by
24 either you or Ms. Ryan?

JAMES PAPA

**Page 202**

1  would have happened.
2  BY MR. CONNOLLY:
3  Q.  Okay.
4  A.  They're in a room.  My understanding
5  also is that Detective Roberts was present for
6  that conversation.
7  Q.  That's what I'm trying to figure out.
8  At the time that Chatman was talking to Holmes
9  and Holmes was writing down this nine-page
10  statement, it is your understanding, your belief
11  that Roberts was in the room?
12  A.  Yes.
13  Q.  Okay.  And Chatman had told you that he
14  was coached on what to say, right?
15  A.  Yes.
16  Q.  By one of the detectives or some police
17  officer, or who?
18  A.  I believe he attributed it to Detective
19  Roberts.
20  Q.  Okay.  Did he describe him physically?
21  A.  No, he kept saying -- I believe the
22  exact way he was saying it was Roberts, right,
23  and he would look at Mr. Ainsworth.
24  Q.  He would say Roberts, right, and look

**Page 203**

1  to his attorney?
2  A.  Correct.
3  Q.  Okay.  Is it your understanding that
4  whatever Mr. Chatman claims occurred before he
5  started talking to Brian Holmes that resulted in
6  this nine-page Exhibit 14, that once Mr. Chatman
7  started talking to Brian Holmes, that Chatman
8  admitted to you that he spoke and gave all of
9  this information in Exhibit 14 without any
10  coaching in the interim or in the middle of it
11  or during the time he was sitting with Holmes?
12  MR. AINSWORTH:  Object to the form of the
13  question.
14  THE WITNESS:  I'm not sure I understand
15  exactly what you're asking at that point.
16  BY MR. CONNOLLY:
17  Q.  I'm trying to figure out, you know,
18  there is allegations in the case about Chatman's
19  mental ability.  I couldn't recite nine pages of
20  information if somebody coached me.  So I'm
21  trying to figure out whether it is your
22  understanding while you're evaluating whether
23  Chatman was really coached or not, I need to
24  know whether or not it was your understanding

**Page 204**

1  that Chatman, once he started to give Holmes
2  this statement, ran through it, the nine pages
3  with Holmes without coaching and without
4  interruption.  Is that your understanding?
5  A.  That is.
6  MR. AINSWORTH:  Object to the form of the
7  question.
8  BY MR. CONNOLLY:
9  Q.  Okay.  So from your discussions with
10  Carl Chatman, if there was any such coaching, it
11  would have occurred before he sat down with
12  Brian Holmes?
13  MR. AINSWORTH:  Object to the foundation.
14  THE WITNESS:  I believe that's what he told
15  me, as well.
16  BY MR. CONNOLLY:
17  Q.  Okay.  And then to your understanding,
18  Carl Chatman would have had to have recalled all
19  of the detail contained in Group Exhibit 14
20  throughout the time period that it would have
21  taken to deliver this information and for Mr. or
22  state's attorney Holmes to record it, right?
23  A.  Yes.
24  Q.  Okay.  As part of your investigation,

**Page 205**

1  did you try to determine whether or not there
2  was anybody else who could corroborate an
3  admission of Mr. Chatman other than in this
4  circumstance in the police station to see if
5  Chatman made admissions anywhere else or in
6  front of anybody else?
7  A.  I don't know if I understand what
8  you're saying.
9  Q.  Well, this Exhibit 14 essentially is an
10  admission or a confession.  What I'm trying to
11  figure out is in your investigation, were you
12  interested in determining whether or not there
13  were any other admissions or confessions that
14  Chatman allegedly made in front of or to anyone
15  else?
16  MR. NOWINSKI:  I'm going to object to the
17  form as to what Mr. Papa was interested in,
18  because I think that starts getting to why he
19  was doing certain things which would encroach on
20  the deliberate process.  If it is did he find
21  out other information, I think that's a
22  different question.  But I think that's what you
23  were getting at.  I could be wrong.
24