IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Carl Chatman, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 14 CV 2945 |
| City of Chicago, *et al.*, | ) | |
| | ) | Judge John Z. Lee |
| Defendants | ) | |

**PLAINTIFF'S MOTIONS *IN LIMINE***

Jon Loevy
Russell Ainsworth
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642

## TABLE OF CONTENTS

Motion *in Limine* No. 1 to Bar Other Bad Acts or Character Evidence . . . . . . . . . . . . . . . . . . . . . 1

Motion *in Limine* No. 2 to Bar Questions Asking Witnesses to Opine
    on the Credibility of Other Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Motion *in Limine* No. 3 to Bar Defendants from Introducing Evidence of
    their Financial Inability to Pay Punitive Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Motion *in Limine* No. 4 to Bar Undisclosed Opinion Testimony . . . . . . . . . . . . . . . . . . . . . . . . 9

Motion *in Limine* No. 5 to Bar Testimony about Riggio's Actions or "Symptoms"
    Being Consistent with a Rape Victim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Motion *in Limine* No. 6 to Bar References to Political Conspiracy Resulting in
    Plaintiff's Release from Prison . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Motion *in Limine* No. 7 to Bar Brigham Temple from Providing Irrelevant
    Opinion Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Motion *in Limine* No. 8 to Bar Reference to Dismissed Claims and Defendants . . . . . . . . . . . 22

Motion *in Limine* No. 9 to Bar Improper References to Plaintiff's Counsel . . . . . . . . . . . . . . . 23

Motion *in Limine* No. 10 to Bar Reference to Plaintiff's Guardianship Proceedings . . . . . . . . 24

Motion *in Limine* No. 11 to Bar Kaethe Morris Hoffer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## Cases

*Alvarado v. Shipley Donut Flour & Supply Co., Inc.*,
2007 WL 4480134 (S. D. Tex. Dec. 18 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Alexander v. Mount Sinai Hosp. Med. Ctr. of Chicago*,
2005 WL 3710369 (N.D. Ill. Jan. 14, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

*Anderson v. Sternes*, 243 F.3d 1049 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Archer Daniels Midland Co. v. Hartford Fire Ins. Co.*,
243 F.3d 369 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Barber v. City of Chicago*, 725 F.3d 702 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Beauchamp v. City of Dixon*, 2014 W 901437 (N.D. Ill. Mar. 7, 2014) . . . . . . . . . . . . . . . . . . 10

*Brandon v. Village of Maywood*, 179 F. Supp. 2d 847 (N.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . 4

*Brooks v. Cook*, 938 F.2d 1048 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Buffone v. Rosebud Restaurants, Inc.*, 2006 WL 2425327 (N.D. Ill. Aug. 21, 2006) . . . . . . . . . 6

*Carlson v. Banks*, 2007 WL 5711692 (N.D. Ill. Feb. 2, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Christian World, Inc. v. Philadelphia Indem. Inc. Co.*,
2016 WL 3610861 (N.D. Ind. July 6, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dyson v. Szarzynski*, 2014 WL 7205591 (N.D. Ill. Dec. 18, 2014) . . . . . . . . . . . . . . . . . . . . . . . 4

*Earl v. Denny's, Inc.*, 2002 WL 31819021 (N.D. Ill. Dec. 13, 2002) . . . . . . . . . . . . . . . . . . . . . . 4

*Finwall v. City of Chicago*, 239 F.R.D. 494 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gastineau v. UMLIC VP LLC*, 2008 WL 2498102 (S.D. Ind. June 17, 2008) . . . . . . . . 13, 14, 15

*Geitz v. Lindsey*, 893 F.2d 148 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Goodwin v. MTD Prod., Inc.*, 232 F.3d 600 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

*Graham v. Bennett*, 2007 WL 781763 (C.D. Ill. Mar. 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Gregory v. Oliver*, 2003 WL 1860270 (N.D. Ill. Apr. 8, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Jones v. Scientific Colors, Inc.*, 2001 WL 668943 (N.D. Ill. June 14, 2001) . . . . . . . . . . . . . . . 4

*Kador v. City of New Roads*, 2011 WL 4889102 (M.D. La. Oct. 13, 2011) . . . . . . . . . . . . . . . 16

*Karum Holdings LLC v. Lowe's Companies, Inc.*,
    2017 WL 5593318 (N.D. Ill. Nov. 21, 2017) . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13

*Kunz v. City of Chicago*, 538 F. 3d 667 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mankey v. Bennett*, 38 F.3d 353 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 11, 17

*Ott v. City of Milwaukee*, 2015 WL 1219587 (E.D. Wis. Mar. 17, 2015) . . . . . . . . . . . . . . . . . 3

*SEC v. Nutmeg Group, LLC*, 2017 WL 4925503 (N.D. Ill. Oct. 31, 2017) . . . . . . . . . . 10, 11, 18

*Shock v. Ruan Transport Corp.*, 2013 WL 5460298 (N.D. Ind. Sept. 30, 2013) . . . . . . . . . 13, 14

*Rademaker v. Blair*, 2010 WL 5376263 (C.D. Ill. Dec. 22, 2010) . . . . . . . . . . . . . . . . . . . . . 15

*Rheinfrank v. Abbott Labs, Inc.*, 2015 WL 5258858 (S.D. Ohio Sept. 10, 2015) . . . . . . . . . . . 24

*THK America, Inc. v. NSK, Ltd.*, 917 F. Supp. 563 (N. D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . 4

*Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626 (7th Cir. 2018) . . . . . . . . . . . . . . . . . . 25

*Tribble v. Evangelides*, 670 F.3d 753 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. Cameron*, 814 F.2d 403 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Crosby*, 713 F.2d 1066 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Freitag*, 230 F.3d 1019 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

*United States v. Gallardo*, 497 F.3d 727 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Gochis*, 169 F. Supp. 2d 918 (N.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Hands*, 184 F.3d 1322 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Harris*, 471 F.3d 507 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. LeFevour*, 798 F.2d 977 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Nunez*, 532 F.3d 645 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

*United States v. Robinson*, 956 F.2d 1388 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Schmitz*, 634 F.2d 1247 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Whalen*, 940 F.2d 1027 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Thomas*, 453 F.3d 838 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7. 19

*Zinman v. Black & Decker, Inc.*, 983 F.2d 431 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

**Rules**

Fed. R. Civ. P. 26(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

Fed. R. Civ. P. 26(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 26(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 26(a)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 33(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 34(b)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 37(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 18

Fed. R. Evid. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 401(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 401(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Fed. R. Evid. 405(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Evid. 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Evid. 608(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 702(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Fed. R. Evid. 702(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Fed. R. Evid. 702(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Fed. R. Evid. 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Pursuant to the Court's standing order, Plaintiff certifies that he has conferred with Defendants and has determined that these matters on which a ruling is sought are in dispute.

## MOTION *IN LIMINE* NO. 1 TO BAR OTHER BAD ACTS OR CHARACTER EVIDENCE

The primary issues for trial are whether the Defendants violated Plaintiff's constitutional rights by framing him for an alleged sexual assault. This is hotly contested, and the jury will have to wrestle with an ample body of disputed facts in resolving these issues. The jury should not be sidetracked by whether Plaintiff has made certain unrelated and inconsequential mistakes in his life. During discovery, the Defendants scoured Plaintiff's entire life looking for dirt, and Defendants' deposition questions, exhibits and witnesses suggest that they may try to defend this case by smearing Plaintiff with as much dirty laundry as they can muster—including prior and subsequent arrests as well as statements and delusions that Plaintiff had during various acute psychiatric episodes in hospitals.[1]

That would be improper. Case law in this Circuit and elsewhere is very clear that prior bad acts are generally inadmissible. Fed. R. Evid. 404(a)(1), (b)(1); *Barber v. City of Chicago*, 725 F.3d 702, 709 (7th Cir. 2013) ("The well-established, general rule is that a witness's credibility may not be impeached by evidence of his or her prior arrests, accusations, or charges). This is particularly true in Section 1983 cases, where there is a danger that unsympathetic background facts could make it difficult for civil rights plaintiffs to get a fair hearing on important constitutional claims. *Geitz v. Lindsey*, 893 F.2d 148, 151 (7th Cir. 1990) ("We are mindful of our duty to ensure that this class of civil rights plaintiffs are not unfairly prejudiced by the use of their criminal pasts

---

[1] *See, e.g.*, Defs. Exs. 199, 200, 211, 212, 213, 226, 227, 236, 237, 246, 320, 334, 360, 402 and the following witnesses listed by Defendants: Leon Botha, Michael Koukol, Dr. Kaylan Rao, Dr. Kevin Tao, Vera Sibby.

1

against them"). Applying those principles here, references to the following prior (and/or subsequent) bad acts evidence should be inadmissible at trial.

### A. Allegations of mistreatment of women or ideation about women or allegations of other acts of violence

Defendants asked Plaintiff numerous questions at his deposition about whether he had ever engaged in violence against women, made any statements regarding violence or sexual assault of women, had bad thoughts about women, or ever exposed himself to the public. Ex. 1 (Chatman Dep., pt. 1) at 19:7-8, 23:5-6, 27:16-18, 38:10-39:7, 50:2, 50:14-16, 83:5-6, 99:4, 113:11-12, 118:10-119:7. There was no foundation for most of these questions. Some of Defendants' questions were supposedly based in Plaintiff's hospital records, a few of which reflect statements that Plaintiff allegedly made while in the midst of acute psychiatric episodes occurring decades ago. *See, e.g.*, *id.* at 49:4-8, 55:2-58:23, 61:2-63:7, 76:20-78:24, 83:14-87:2, 92:6-16, 96:12-97:20, 103:10-104:15. Thus, not only are any prior incidents and statements disputed, but there is no basis in reality for them.[2] Moreover, prior arrests are almost always barred; and so a disputed incident that did not even result in an arrest should not be admissible when it would be barred if it had resulted in an arrest.

These topics hold no purpose at trial other than use as propensity evidence; that because Plaintiff delusionally expressed hostility to women at some point in the past, he is more likely to have raped Defendant Riggio. This is not an admissible basis for any of this evidence. Fed. R. Evid. 401, 402. Compounding the lack of an admissible purpose for the evidence is the risk that the jurors' consideration of Plaintiff's constitutional claims would be hijacked by their revulsion to allegations or delusions of violence against women is simply insurmountable. Given the enormous

---

[2] For instance, the three-decade-old January 1986 Chicago Read records reflect that when Plaintiff admitted himself to the hospital, he delusionally said that he was "superman" and that he was "raping women and the police have not caught him. Says he feels like killing women because they won't have sex with him." Ex. 2 (1/4/86 Chicago Read record, Plaintiff 22624). The doctor noted that he "became delusional about killing and raping women." *Id.* at Plaintiff 22626. *See also* Dkt. 636-4 (Dr. Pan Dep.) at 182:1-187:10.

danger of unfair prejudice with respect to the issues on trial, that such evidence should be barred under Rule 403 can hardly be disputed. *See, e.g., United States v. Hands*, 184 F.3d 1322, 1328-29 (11th Cir. 1999); *Ott v. City of Milwaukee*, 2015 WL 1219587, at *2 (E.D. Wis. Mar. 17, 2015). Accordingly, such evidence should be excluded under Rule 403. *Id*. at 1328-29 (finding reversible error where "the domestic violence evidence's prejudicial nature so heavily outweighed its probative value that the district court should have excluded it"); *see also United States v. Gochis*, 169 F. Supp. 2d 918, 920 (N.D. Ill. 2001).

Relatedly, Defendants asked Plaintiff during his depositions numerous deeply harassing, abusive, and irrelevant questions. *See* Ex. 1 at 82:22 ("Why didn't your mom want you?" in follow-up to an answer about his father raising him), 14:22 ("Do you not like women?"), 17:10 ("Do you think you're a sissy, Carl?"), 17:21-22 ("you think … men are in control?"), 19: 22-23 ("Do you try to punish women because you don't like their thoughts?"), 21:2 ("Do women upset you?"), 30:13 ("Do you think all women are evil?"), 31:3 ("Have you ever masturbated, sir?"), 43:24-44:17 ("I saw in your MacNeal records that you used the term west side black bitches. Do you remember saying that? … you call women bitches?"), 48:13-14 ("Do you think women that act like men are the boss?"), 54:7 ("Do women throw themselves at you?"), 65:9-18 (asking if Chatman would "cum" inside of an ex-girlfriend when he had sex with her), 71:18-19 ("Do you get pleasure out of hurting women?"), 80:11-12 ("Are you attracted to women with knowledge?"), 91:8 ("You just threaten other women?"), 91:14-15, 100:5-8 ("Are you a misogynist?"), 106:22-23 ("Do you enjoy sucking your … wife's boobs?"). Any questions along these lines should be barred.

Finally, Defendants should be barred from asking Plaintiff questions about whether he has ever allegedly threatened violence against staff at hospitals, the Pacific Garden Mission, or any other institutions he has ever been in. *See id*. at 29:3-11, 32:20-22, 36:3-6, 101:16-17. Defendants should

be barred generally from asking any questions about whether Plaintiff has ever allegedly threatened violence against anyone. It is inadmissible under Rules 401, 403, and 404.

### B. Prior (and Subsequent) Arrests

It is well-established in civil rights cases that arrests that do not result in convictions are inadmissible. Absent convictions, arrests are just non-proven prior bad acts. The law is uniform on this point, and it is no longer an open question. *See Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001) ("The law is clear that a defendant's prior arrest record is inadmissible, and while the reference to Anderson's past arrest was only indirect, it was still improper"); *Dyson v. Szarzynski*, 2014 WL 7205591, at *6 (N.D. Ill. Dec. 18, 2014); *Gregory v. Oliver*, 2003 WL 1860270, at *1 (N.D. Ill. Apr. 9, 2003); *Jones v. Scientific Colors, Inc*., 2001 WL 668943, at *2 (N.D. Ill. June 14, 2001); *Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 853-55 (N.D. Ill. 2001); *cf. Earl v. Denny's, Inc*., 2002 WL 31819021, at *8 (N.D. Ill. Dec. 13, 2002).

Under this well-settled law, references to arrests should be barred.[3] This includes Defendants' Exhibits 67, 147, 155, 187 and any related testimony from any witnesses.

### C. Plaintiff's Lone Criminal Conviction Should Be Barred

Plaintiff has one prior misdemeanor conviction. In 2001, he was convicted of domestic battery and sentenced to 110 days. Even leaving aside the failure to satisfy Rules 401 and 403, this conviction is plainly inadmissible under Rule 609 because it is a) not a felony, b) not a crime of dishonesty, and c) far more than 10 years old. *See THK America, Inc. v. NSK, Ltd*., 917 F. Supp. 563, 570 (N.D. Ill. 1996) ("Congress intended that convictions over ten years old be admitted very rarely and only in exceptional circumstances") (citing *Zinman v. Black & Decker, Inc*., 983 F.2d

---

[3] Plaintiff does not seek to bar his mistaken arrest for failure to register as a sex offender after his exoneration, because it is relevant to his damages.

431 (2d Cir. 1993)). In fact, the misdemeanor conviction is more than 17 years old and had nothing to do with dishonesty, making this not a close call at all. References thereto must be excluded.

### D. References to Prison Misconduct and Related Discipline

Prison is a difficult place, and sometimes prisoners receive tickets or other disciplinary punishment. Plaintiff moves to bar any evidence Defendants seek to introduce of alleged prior bad acts related to prison misconduct and discipline. (*See* Defs. Ex. 345, 346, 358, 359.)[4] Any allegations of prison misconduct are based upon hearsay and would be disputed and irrelevant. Moreover, the risk of unfair prejudice is overwhelming, and any such claims have insufficient probative value to outweigh the danger of unfair prejudice. *See United States v. Whalen*, 940 F.2d 1027, 1034 (7th Cir. 1991) (barring evidence of a prison report of witness's fight with another inmate as "a classic example of prior acts evidence to show a propensity for violence"). Accordingly, all references to prison misconduct and discipline must be barred.

### E. Military Records

Defendants have listed Plaintiff's military records as an exhibit. (*See* Defs. Ex. 201.) Defendants intend to present evidence that Plaintiff was dishonorably discharged from the military over 40 years ago. There is no relevance to this evidence whatsoever, and it is inadmissible under Rule 403.

### F. Use of Illegal Drugs or Excessive Drinking

This case does not have anything to do with illegal drugs or excessive alcohol use. The fact that Plaintiff may have used drugs or alcohol is not probative to anything at issue and should be barred.

It is well-settled that the subject of illegal drugs is enormously prejudicial and inflammatory, and that testimony on that subject is to be avoided unless absolutely necessary. *See United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007) (discussing the possibility that witness testimony will

---

[4] "Defs.' Ex." refers to the exhibits Defendants have listed on the Final Pretrial Order.

be unduly discounted once jury hears about illegal drugs). Indeed, the Seventh Circuit has been

consistently clear (reaffirmed at least twice in the last two years) about the "considerable danger that

evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively

discount the witness' testimony." *Kunz v. City of Chicago*, 538 F.3d 667, 677 (7th Cir. 2008);

*Gallardo*, 497 F.3d at 733 (citing *United States v. Robinson*, 956 F.2d 1388, 1397 (7th Cir. 1992),

and *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987)); *see also Buffone v. Rosebud*

*Restaurants, Inc.*, 2006 WL 2425327 (N.D. Ill. Aug. 21, 2006) ("Even if relevant, any arguable

probative value of evidence about their drug use is substantially outweighed by the danger of unfair

prejudice") (citing *Mankey v. Bennett,* 38 F.3d 353, 360 (7th Cir. 1994)).

Here, where there is nothing relevant about drug or alcohol use that would add anything at trial,

the danger for unfair prejudice far outweighs any probative value. References to Plaintiff's use of

illegal drugs or drinking excessively should be excluded.

### MOTION *IN LIMINE* NO. 2 TO BAR QUESTIONS ASKING WITNESSES TO OPINE ON THE CREDIBILITY OF OTHER WITNESSES

Besides asking Plaintiff numerous harassing and abusive questions during his deposition,

defense counsel asked him repeatedly to comment on whether other people were lying in their

testimony or whether his hospital records were falsified. *See* Ex. 1 at 29:10-11, 30:3-4, 31:5-12,

32:20-22, 34:16-18, 52:3-5, 55:16-19, 55:24-56:2, 58:16-59:7, 61:8-11, 62:21-23, 77:12-15, 84:10-

13, 85:10-12, 86:11-14, 87:12-16, 94:23-95:1, 146:14-20, 153:22-154:22. Such questions are

irrelevant and improper and should be barred under Rules 401, 402, 403, and 602. *See United States*

*v. Harris*, 471 F.3d 507, 511 (3d Cir. 2006) (such questions "force a witness to testify as to

something he cannot know, i.e., whether another is intentionally seeking to mislead the tribunal").

Such testimony "not only has the potential for extending the length of trials enormously, but asks

the jury to take the witness's testimony on faith; it may therefore reduce the care with which jurors listen for inconsistencies and other signs of falsehood or inaccuracy." *United States v. LeFevour*, 798 F.2d 977, 983 (7th Cir. 1986). In short, the evidence distracts the jury from its task of determining the accuracy of each witness's version of events and judging their credibility, and it should be excluded. *United States v. Schmitz*, 634 F.3d 1247, 1269 (11th Cir. 2011).

Defendants may also attempt to elicit testimony from Riggio's treaters Norma Berlin and Dianella Dizon, ASA Tracey Gleason, ASA Robert Hovey, ASA Brian Holmes, or attorney Kaethe Morris Hoffer that they found Riggio credible or that they believed that Plaintiff was guilty. Such testimony would impermissibly bolster the accusations of Riggio against Plaintiff and should be excluded.

Determining the credibility of witnesses is a task reserved exclusively for the fact-finder. *United States v. Nunez*, 532 F.3d 645, 652 (7th Cir. 2008); *United States v. Freitag*, 230 F.3d 1019, 1024 (7th Cir. 2000); *Goodwin v. MTD Prod., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000). For that reason, asking a witness to comment on the veracity of another witness's testimony or statements impermissibly usurps the jury's role and improperly influences the jury about which evidence to believe and which to disregard. *Id.*; *see also United States v. Thomas*, 453 F.3d 838, 846 (7th Cir. 2006); *Alexander v. Mount Sinai Hosp. Med. Ctr. of Chicago*, 2005 WL 3710369, at *3 (N.D. Ill. Jan. 14, 2005). Such questioning must therefore be disallowed.

In addition, this form of questioning on truthfulness is not permitted by Rule 608 and 405 of the Federal Rules of Evidence. *Schmitz*, 634 F.3d at 1268. Under Rule 608(a), counsel may elicit evidence supporting a witness's character for truthfulness only after that character has been attacked. Fed. R. Evid. 608(a); *LeFevour*, 798 F.2d at 983. Even then, the testimony must arise in the form of opinion or reputation evidence, with inquiry into relevant specific instances of the

7

person's conduct permitted only on cross-examination. Fed. R. Evid. 608(a), 405(a); *Schmitz*,

634 F.3d at 1268 (Rule 608(a) "does not permit a witness to testify that another witness was

truthful or not on a specific occasion"). Thus, this line of questioning falls squarely outside the

scope of Rules 608 and 405.

### MOTION *IN LIMINE* NO. 3 TO BAR DEFENDANTS FROM INTRODUCING EVIDENCE OF THEIR FINANCIAL INABILITY TO PAY PUNITIVE DAMAGES

During discovery, the Defendant Officers negotiated a delay on responding to discovery

regarding their financial ability to pay punitive damages until after summary judgment was

decided. On May 30, 2018, Plaintiff sought this discovery from the Defendant Officers. *See* Ex.

3 (Emails between counsel) at 4. More than 30 days passed, and Defendant Officers did not

respond. Plaintiff wrote to Defendants on July 30, 2018 stating that any objections to the

discovery have been waived because the discovery was not answered within 30 days, as required

by the Federal Rules. *Id.* at 3-4; *see* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely

objection is waived unless the court, for good cause, excuses the failure."); Fed. R. Civ. P.

34(b)(2)(A). Defendants continued to refuse to provide responses. Ex. 3 at 2-3. Plaintiff stated

that if the Defendants did not provide responses by the end of the day on August 6, 2018,

Plaintiff would move to bar Defendants from raising an inability to pay defense to Plaintiff's

assertion of punitive damages. *Id.* at 1-2.

Because Defendants have refused to comply with this discovery, Plaintiff moves to bar

Defendants from presenting evidence of their inability to pay a punitive damages award.[5] *See*

Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information … the party is not allowed to use

---

[5] However, Plaintiff still seeks responses to this discovery from the Defendant Officers, in order to determine whether Plaintiff wishes to affirmatively present evidence of Defendants' financial condition in relation to ability to pay punitive damages. (For example, if the Defendant Officers have significant assets, then Plaintiff may seek to present evidence to the jury of those assets as evidence that they are able to pay a punitive damages award.)

that information … to supply evidence … at a trial, unless the failure was substantially justified or is harmless."). The failure of Defendants to provide this information as requested is not substantially justified or harmless. Thus, the Court should exercise its discretion to bar Defendants from presenting evidence at trial on any inability to pay punitive damages.

### MOTION *IN LIMINE* NO. 4 TO BAR UNDISCLOSED OPINION TESTIMONY

Defendants should be barred from eliciting undisclosed or improperly disclosed opinion testimony from any witness at trial. Specifically, Defendant Riggio provided a "Rule 26(a)(2)(A)" disclosure that purported to disclose all of her Rule 26(a)(1) witnesses as expert witnesses "[t]o the extent" that any of them qualify as experts under Rule 702. Ex. 4 (Riggio's 1st Supp. Rule 26(a)(2)(A) and Rule 26(a)(2)(B) Disclosures) at 1. Defendant Officers also purported to disclose all of their witnesses under both Rule 26(a)(1) and 26(a)(2). Ex. 5 (Def. Ofcs.' 4th Supp. Rule 26 Disclosure). Riggio's disclosure then specifically references all of the defendant officers, ASA Holmes, various treaters, ISP personnel, ASA Tracey Gleason and Robert Hovey, and Riggio's accountant (Glenn Mrjenovich), and states that these witnesses would "testify to the facts and opinions as contained in their prior depositions, criminal testimony, and/or affidavits." *Id.*[6] Neither Riggio nor the Defendant Officers disclosed any witnesses under Rule 26(a)(2)(C) or provided any of the required information under Rule 26(a)(2)(C) anywhere in their disclosures.[7] Exs. 4, 5. Rule 26(a)(2)(C) requires that the disclosure of witnesses not required to provide a report contain:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
(ii) a summary of the facts and opinions to which the witness is expected to testify.

---

[6] The only witness Riggio disclosed under Rule 26(a)(2)(B) was Ann Burgess, who has been withdrawn. *See* Ex. 6 (5/8/18 Email from Connolly).
[7] Nor did Defendant Wojtczak. Ex. 7 (OPS Defs.' Rule 26(a) Disclosures dated 10/21/16).

Fed. R. Civ. P. 26(a)(2)(C); *Karum Holdings LLC v. Lowe's Companies, Inc.*, 2017 WL5593318, at *2 (N.D. Ill. Nov. 21, 2017) (Lee, J.). Defendants did not comply with these detailed requirements. *See* Exs. 3, 4; *SEC v. Nutmeg Group, LLC*, 2017 WL 4925503, at *3-*4 (N.D. Ill. Oct. 31, 2017). Thus, Defendants should not be permitted to elicit any opinion testimony from witnesses they did not properly disclose under Rule 26(a)(2). *Beauchamp v. City of Dixon*, 2014 WL 901437, at *4 (N.D. Ill. Mar. 7, 2014) (holding that disclosure requirements of Rule 26(a)(2)(C) are not satisfied by disclosure under Rule 26(a)(1) or when witnesses reveal their opinions in records or depositions). For instance, Defendants are expected to elicit opinion testimony from Riggio's treaters such as Norma Berlin, Dr. Jacqueline Walker, Dr. Dianella Dizon, and Dr. Suchinta Hakim, about whether Riggio suffered from PTSD or any other purported injury. Defendants are also expected to elicit opinion testimony from ASA Tracey Gleason about whether she found Riggio credible or whether sexual assault victims have memory problems. Defendants are expected to elicit opinion testimony from ASA Robert Hovey about whether he thinks Plaintiff is innocent. The fact that these witnesses were deposed and documents relating to them were produced does not relieve Defendants of their obligation to comply with Rule 26(a)(2)(C). "A party cannot comply with Rule 26(a)(2)(C) by dumping a large volume of documents on an opposing party and leaving it to try to guess what a witness will say about the information contained in the documents." *Nutmeg Group, LLC*, 2017 WL 4925503, at *4; *see Christian World, Inc. v. Philadelphia Indem. Ins. Co.*, 2016 WL 3610861, at *2 (N.D. Ind. July 6, 2016) ("the Rule requires the summary of fact to be in the disclosure, not merely contained within materials turned over in discovery."). "An after-the-fact deposition is not a substitute for what Rule 26(a)(2)(C) requires before-the-fact as far as an expert witness is concerned." *Nutmeg Group, LLC*, 2017 WL 4925503, at *5; *see also Musser v. Gentiva Health*

10

*Servs.*, 356 F.3d 751, 759 (7th Cir. 2004) (finding prejudice where party "had to rely on depositions conducted without the knowledge that … the witnesses would be used as experts"). In *Nutmeg Group*, the court rejected a party's argument that an adequate disclosure could be "inferentially cobbled together" from Rule 26(a)(1) disclosures, written discovery, production of documents, and other discovery:

> That does not work. Even if the Federal Rules of Civil Procedure allowed a party to make an expert witness disclosure in this kind of a Rube Goldberg-like fashion, nowhere does the SEC succinctly identify the discrete opinions Reidy is expected to give or summarize the main facts related to those opinions, as Rule 26(a)(2)(C) requires.

*Id.* at *4.

"The exclusion of non-disclosed evidence, including an expert witness, 'is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.'" *Karum Holdings LLC*, 2017 WL 5593318, at *2 (citing *Musser*, 356 F.3d at 758, among other cases). It is Defendants' burden to prove that the failure to disclose was substantially justified or harmless. *Id.* "Failure to disclose a witness as an expert is usually not harmless because, for example, '[w]ithout proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report." *Id.* at *3 (citations omitted). Although the Court need not make explicit findings regarding substantial justification or harmlessness, the Court may consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012). These factors weigh in favor of exclusion. It would be highly prejudicial to Plaintiff to allow Defendants to present undisclosed opinion testimony. In the absence of a proper disclosure,

11

Plaintiff had no reason to take discovery regarding the potential expertise or qualifications of every one of Defendants' fact witnesses. There is little ability to cure the prejudice at this late stage, with trial just a few months away.[8] Allowing Defendants to provide extremely late expert disclosures would very likely to disrupt the trial date in this four-year-old case. And, Defendants have willfully failed to provide proper Rule 26(a)(2)(C) disclosures of their witnesses from whom they knew they wanted to elicit opinion testimony. *Tribble*, 670 F.3d at 759.

Furthermore, the testimony of Riggio's witnesses do not satisfy the requirements of Rule 702. For instance, Riggio is expected to elicit from Tracey Gleason (a Felony Review ASA who interviewed Riggio on May 24, 2002 at the police station) testimony that when she dealt with victims of sexual assault, "depending on the level of trauma the victim is going through, they're not always going to be remembering exactly what happened … there could be some things that they remember later." Dkt. 636-7 (Gleason Dep.) at 29:17-24; *see also id.* at 110:2-10 (stating that she did not recall Riggio telling her that Plaintiff had penetrated her anally, but claiming that this was "not unusual in interviewing rape victims"). This testimony is obviously geared at attempting to excuse Riggio's inconsistent statements about what occurred during the alleged assault. But Gleason does not have the qualifications to give any opinions about the workings of human memory or how memory works in assault victims.[9] (Nor does Gleason's expected testimony satisfy the other requirements of Rule 702.) It is Defendants' burden, as proponents of expert testimony, to show by a preponderance of the evidence, that it satisfies the requirements

---

[8] Moreover, "even if there were enough time before trial, '[l]ate disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery.'" *Karum Holdings LLC*, 2017 WL 5593318, at *5 (citing *Finwall v. City of Chicago*, 239 F.R.D. 494, 501 (N.D. Ill. 2006)).

[9] During discovery Plaintiff disclosed Dr. Deryn Strange, a professor of psychology with a research focus on memory distortion and tramautic memory, who opined that, "Taken together then, decades of memory research teach us that the most accurate memory report will be what was given immediately after an event, before any deterioration occurs." Ex. 8 (Dr. Strange report) at 2.

of Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). But here, as in

*Karum Holdings LLC*, Defendants' failure to provide an adequate disclosure of Gleason as an

expert witness "materially impedes the Court's ability [to] evaluate whether [Defendants have]

met its burden on these issues." 2017 WL 5593318, at *6. All there is to go on is a few

statements in Gleason's deposition wherein she simply asserts her experience. It is even less than

what the Court had before it in *Karum Holdings. Id.*

Nor should Dr. Jacqueline Walker, Dr. Dianella Dizon, and Norma Berlin or any of Riggio's

other treaters be permitted to opine on whether Riggio had PTSD. Their testimony do not satisfy

the requirements of Rule 702.

**Dr. Dianella Dizon:** Dizon is a psychiatrist who treated Riggio. Her opinion that Riggio had

PTSD after May 24, 2002 does not satisfy Rule 702(b), (c), or (d). The first day that Dizon saw

Riggio was June 7, 2002, just 14 days after the alleged assault on May 24, 2002 (and three days

after Riggio filed her lawsuit against the Daley Center entities). Ex. 9 (Dizon Dep.) at 16:1-5; Ex.

10 (Dizon records). Dizon diagnosed Riggio with PTSD on that day, based solely on Riggio's

self-report of symptoms,[10] even though the DSM-IV required that symptoms have to be present

for at least a month prior to making such a diagnosis. *Id.* at 47:5-48:20. Besides Riggio's self-

report, the only other sources upon which Dizon relied for reaching her diagnosis was Riggio's

husband and Riggio's therapist, Norma Berlin. *Id.* at 48:21-49:5. This does not satisfy Rule 702.

In *Gastineau v. UMLIC VP LLC*, 2008 WL 2498102, at *3 (S.D. Ind. June 17, 2008), the court

barred an opinion witness's testimony that a party had PTSD because the witness relied only on

the party's self-report of symptoms. *See also Shock v. Ruan Transport Corp.*, 2013 WL 5460298,

---

[10] Riggio claimed that she had headaches, nausea, gagged on food, had anxiety attacks, was afraid, had nightmares
and could not sleep. *Id.* at 16:9-18. According to Dr. Patricia Frazier, the professor of psychology retained by
Plaintiff to rebut Riggio's retained (and now withdrawn) expert Ann Burgess, "[t]hese symptoms in and of
themselves would not meet the criteria for a diagnosis of PTSD." Ex. 11 (Dr. Frazier report) at 8.

at *10 (N.D. Ind. Sept. 30, 2013) (barring opinion on PTSD because even "the medical records never identify the methods or principles employed by Ms. Deatrick (other than general observation) to determine Paul Shock had PTSD."). The

> accepted standardized and objective approach for conducting an examination of a person with suspected PTSD are found in the Georgetown Guidelines for Forensic Assessment of PTSD. … The guidelines direct: (a) The forensic examiner should be guided by the … DSM-IV-TR, the published literature, and current research. (b) The stressor should be evaluated. The contribution of multiple stressors to the clinical picture should be evaluated … (c) A credible forensic examination requires review of prior and current medical and psychological history. (d) *Forensic examiners should not rely solely on the self-report of the patient*. The treater and forensic role should not be mixed. (e) Standardized methods, *e.g.*, psychometric testing, should be used to assess functional impairment.

*Gastineau*, 2008 WL 2498102, at *2 (emphasis added); *see also Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 2007 WL 4480134, at *3 (S.D. Tex. Dec. 18, 2007) (describing the generally accepted method for evaluation of PTSD as one that includes "scientifically based psychological tests that include psychometric data or error rates"). The American Academy of Psychiatry and the Law Practice Guideline for the Forensic Assessment contains a specific section on malingered PTSD, which stated that "malingering should be considered in all claimants who re seeking damages after personal injury. … feigning symptoms of PTSD is not difficult." Ex. 11 at 10 (internal quotation marks omitted); *see also id.* at 11; *Shock*, 2013 WL 5460298, at *11 (malingering must be ruled out before PTSD diagnosis can be made).

"[F]orensic experts … recommend using a structured clinical interview to assess PTSD. Both the National Center for PTSD and the International Society for Traumatic Stress Studies describe the Clinician-Administered PTSD Scale for DSM-5 (CAPS) as the 'gold standard' for PTSD assessment." *Id.* at 12.[11] Because Dizon "did not follow the recommended scientific method for making her diagnosis," her testimony is not "based on sufficient facts or data," is not "the

---

[11] Dr. Frazier was referring to the current CAPS scale, but there was an earlier version which corresponded to the DSM-IV in effect in 2002. *See* http://www.istss.org/assessing-trauma/clinician-administered-ptsd-scale-(caps).aspx.

product of reliable principles and methods," and she has not "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b), (c), (d). As the proponent of Dizon's testimony, Defendants have not met their burden of showing that it satisfies the requirements of Rule 702.

**Norma Berlin:** Norma Berlin is a licensed clinical professional counselor, and she saw Riggio for several years beginning in 2002. *See* Ex. 12 (Berlin CV). As an LCPC, Berlin provides therapy to patients for depression, anxiety, marriage counseling, and addiction. Ex. 13 (Berlin Dep.) at 17:6-23. Any testimony from Berlin that Riggio had PTSD should be barred because Berlin is not qualified to opine that Riggio had PTSD, which is a medical diagnosis. *See Carlson v. Banks*, 2007 WL 5711692, at *11 (N.D. Ill. Feb. 2, 2007) (LCPC not qualified to offer medical diagnosis of PTSD); *United States v. Crosby*, 713 F.2d 1066, 1077 (5th Cir. 1983) (counselor not qualified to make medical diagnosis of PTSD); *Rademaker v. Blair*, 2010 WL 5376263, at *3 (C.D. Ill. Dec. 22, 2010) (LCPC not qualified to give medical diagnosis). Furthermore, Berlin's testimony does not satisfy Rule 702. At her deposition, she did not explain how she reached the conclusion that Riggio had PTSD. *See* Ex. 13 at 24:4-27:10. When asked how she reached that conclusion, she described an instance in which Riggio became uncomfortable seeing scissors on her desk and another instance when Riggio became afraid when she saw an African-American man walking by outside the window. *Id.* at 25:20-27:10. This is in no way, shape, or form even close to a methodology for diagnosing PTSD, if Berlin were even qualified to do so. *See Gastineau*, 2008 WL 2498102, at *2. Even when asked more specifically about what Riggio described to her that "met" the qualification for PTSD, Berlin could only provide Riggio's self-report. Ex. 13 at 27:17-31:20. She did not administer any tests (and she could not have, not being a psychologist), *id.* at 157:1-7, she did not conduct a

15

structured interview, and she did not do anything else provided in the Georgetown Guidelines. *See generally*, *id.* at 31:20-92:15. Berlin, like Dizon, "diagnosed" Riggio with PTSD on June 7, 2002, even though the DSM-IV required that symptoms be present for a month. *Id.* at 119:9-16; 190:12-18, 191:16-192:6. Nor did Berlin ever assess Riggio for malingering, *id.* at 208:10-13, because she simply chose to believe what Riggio was telling her, *id.* at 208:14-17. Thus, Berlin's opinion about Riggio's supposed PTSD was not supported by "any authoritative references or teachings" and boiled down to her "personal opinions." *Alvarado*, 1007 WL 4480134, at *5 ("In other words, Plaintiffs want the Court to simply accept Dr. Julian's opinion because she says it is true. This is precisely the type of highly subjective, *ipse dixit*-type expert opinion testimony that *Daubert* and its progeny forbid."); *Kador v. City of New Roads*, 2011 WL 4889102, at *1-*2 (M.D. La. Oct. 13, 2011) (barring mental health professional from giving opinion that party suffers from PTSD because no tests were conducted and the proposed expert relied solely on self-reported history).

**Dr. Jacqueline Walker:** Dr. Walker was Riggio's primary care physician. She did not diagnose Riggio for PTSD and did not treat her for that. Ex. 14 (Walker Dep.) at 89:15-20. Riggio merely reported to her that she believed she had PTSD. *Id.* at 34:15-18, 56:7-11. Thus, Dr. Walker should be barred from offering any testimony about PTSD. *See also* Ex. 11 at 8-9 (symptoms that Walker listed in Riggio's records "would not meet the criteria for a diagnosis of PTSD" "in and of themselves").

**Records of Michael Sullivan:** Defendants have listed a one-page record from Michael Sullivan, a psychotherapist, as an exhibit. *See* Defs.' Ex. 168 (relevant portion attached as Ex. 15). Sullivan saw Riggio one time, on June 3, 2002, and wrote, "clt clearly appeared to be suffering from acute PTSD." Ex. 15 at Plaintiff 14576. The one-page progress note contains

16

Sullivan's observations of Riggio, but there is nothing else in the record that explains how Sullivan arrived at this conclusion or what methodology he employed to arrive at this opinion. Sullivan has not been listed as a witness by Defendants. Not only is there no foundation for this record whatsoever, but it is inadmissible hearsay and should be barred.

## MOTION *IN LIMINE* NO. 5 TO BAR TESTIMONY ABOUT RIGGIO'S ACTIONS OR "SYMPTOMS" BEING CONSISTENT WITH A RAPE VICTIM

Defendants intend to elicit testimony from witnesses, including Norma Berlin and Anne Ream, that Susan Riggio's behavior after May 24, 2002 was consistent with that of a rape victim.[12] Any such testimony should be barred.

**Anne Ream:** Defendant Riggio expressly disclosed Anne Ream to "testify to the effects the 2002 rape has had on Riggio over the years and to any statements regarding the rape or the release of Carl Chatman that Riggio has made to her. She is further expected to testify that Riggio displays symptomatology consistent with that of a rape victim." Ex. 16 (Riggio's 3rd Supp. Rule 26(a)(1) Disclosures) at 6. Ream should be barred from testifying for several reasons.

First, statements to Ream about the alleged rape or the release of Carl Chatman, or her feelings about those topics, would be inadmissible hearsay. Second, assuming that there is such a thing as "display[ing] symptomatology" "consistent[] with that of a rape victim," any opinion testimony from Ream on this topic would require expertise and Ream has not been disclosed as an expert. *See* Ex. 4. Ream has not provided a report under Rule 26(a)(B), and she has not been disclosed under Rule 26(a)(2)(C). *Id. Musser*, 356 F.3d at 757 ("[d]isclosing a person as a witness and disclosing a person as an expert witness are two distinct acts.").

---

[12] Riggio may also attempt to elicit such testimony from Dianella Dizon, but Dizon made clear at her deposition that she could not give any such opinion. Ex. 9 at 98:1-21.

Nor could Ream be an expert in this field (again, assuming it is an actual field of expertise)—she is, according to her website, a writer. Ex. 17 (Ream bio). She is not "qualified as an expert by knowledge, skill, experience, training, or education" to opine on what the "symptomatology" of rape victims is or whether Riggio satisfies any such "symptomatology." Fed. R. Evid. 702. In fact, Riggio originally did disclose a Rule 26(a)(2)(B) expert (Ann Burgess) to opine that Riggio displayed symptoms "consistent" with that of a rape victim, but Riggio withdrew Burgess after her report was utterly discredited by Plaintiff's rebuttal expert, Dr. Patricia Frazier. Ex. 11; Ex. 6. Riggio has not provided any disclosure of Ream under Rule 26(a)(2) and none that qualifies under Rule 26(a)(2)(C). *Nutmeg Group, LLC*, 2017 WL 4925503, at *3-*4.

This failure requires that Ream be barred from providing any opinion testimony because Defendants have no substantial justification for the failure to disclose and such failure is not harmless. Fed. R. Civ. P. 37(c)(1). Allowing Ream to provide opinion testimony at trial would prejudice Plaintiff because the opportunity for Plaintiff to obtain a rebuttal expert to rebut any opinions of Ream has closed, as well as the ability to file a fulsome *Daubert* motion. This prejudice cannot be cured at this point. *See, e.g.*, *Nutmeg Group, LLC*, 2017 WL 4925503, at *8. Furthermore, Defendants acted willfully in not complying with Rule 26(a)(2); they knew that they wanted to elicit this testimony, but they did not comply with their disclosure obligations.

Ream should also be barred under Rule 702. Not only is Ream unqualified, but there is no scientific foundation for any opinions that Ream might have about what symptoms rape victims generally exhibit. *See* Ex. 11 at 7. And since Defendants did not provide any Rule 26(a)(2) disclosure of Ream, there is no way to assess what the basis of her opinions would be, what her methodology is, whether it is based upon sufficient facts or data, and whether it was reliably

18

applied to the facts of this case. Fed. R. Evid. 702. Thus, Defendants have not met their burden under Rule 702.

**Norma Berlin:** Through numerous leading questions, Defendants elicited testimony from Berlin at her deposition about whether Riggio displayed symptoms that were "consistent" or "inconsistent" with that of a rape victim. *See, e.g.*, Ex. 13 at 33:15-22, 40:20-41:1, 44:1-5, 46:20-47:8, 54:15-20, 60:4-15, 64:9-18, 66:19-23. Berlin should be barred from offering any opinions about this because (1) she was not disclosed under Rule 26(a)(2)(C) (or (B)), *see* Mot. 4, above, and (2) Defendants have not met their burden of showing that her testimony satisfies Rule 702. Berlin has provided no explanation of her methodology or reasoning, or the basis of her opinions that rape victims exhibit certain symptoms to the exclusion of others, and there is no scientific foundation for any of this. *See* Ex. 11.

And finally, all testimony that Riggio's actions or behavior were consistent with that of a rape victim should be barred under Rule 403, because such testimony is a thinly veiled, impermissible attempt to bolster the rape accusations of Riggio against Plaintiff. This Court should exclude such evidence, since determining which witness to believe is a task reserved for the jury. *Nunez*, 532 F.3d at 652; *Freitag*, 230 F.3d at 1024; *Goodwin*, 232 F.3d at 609; *Thomas*, 453 F.3d at 846; *Alexander*, 2005 WL 3710369, at *3.

### MOTION *IN LIMINE* NO. 6 TO BAR REFERENCES TO POLITICAL CONSPIRACY RESULTING IN PLAINTIFF'S RELEASE FROM PRISON

Defendants intend to make references to and seek testimony from witnesses (including Susan Riggio or Frank Riggio, through his deposition) implying that the decision of the Cook County State's Attorney to vacate Plaintiff's conviction and dismiss all charges was not based in the merits of Plaintiff's claims of innocence but instead on some vague political machinations or

conspiracy between the State's Attorney's Office and Plaintiff's law firm. *See*, *e.g.,* Dkt. 636-8 (Frank Riggio Dep.) at 136:7-14, 146:5-13, 147:1-23, 187:3-13; Defs. Ex. 354 (Email from Susan Riggio to trial prosecutor Jake Rubenstein dated 9/11/13, attached as Ex. 18). There is no evidence or factual basis for any such testimony or implications. *See* Fed. R. Evid. 602. Defendants should be barred from making any references to a political agenda or political conspiracy or anything of that nature regarding the vacatur of Plaintiff's conviction and his release from prison, whether it is in opening or closing statements, or in witness testimony.

### MOTION *IN LIMINE* NO. 7 TO BAR DR. BRIGHAM TEMPLE FROM PROVIDING IRRELEVANT OPINION TESTIMONY

Defendants wish to call Dr. Brigham Temple to provide two irrelevant opinions: 1) that it is not uncommon for generic sexual assault victims to not show signs of injury; and 2) it is not uncommon for sexual assault victims to not have semen on their vaginal swabs. The first opinion is irrelevant, because what happens to generic sexual assault victims has no bearing as to what happened in this case. The second opinion is equally irrelevant, albeit for a different reason—the factual record now, with powerful DNA evidence, is starkly different from what it was when Dr. Temple first provided these opinions at Plaintiff's criminal trial. Dr. Temple should not be permitted to opine on these irrelevant matters.

Dr. Temple is an emergency room physician. Ex. 19 (Temple Dep.) at 5:14-21. He has examined between 30-40 adult female sexual assault victims, and opines that it's not uncommon for sexual assault victims to experience visible injuries. *Id.* at 10:6-11:3, 36:7-19. Of course, the import of this testimony entirely depends on the circumstances experienced by the sexual assault victim—namely whether the sexual assault is accompanied by violence or not. Testimony that, for example, the overwhelming majority of car accidents do not injure the occupants would not

be admissible to prove that an uninjured plaintiff was in a car accident, particularly if the plaintiff was supposedly in a car going 60 MPH at the time of the alleged impact. In other words, what is relevant here is whether people who have their heads repeatedly slammed against a desk, kicked in the stomach, fallen onto the floor, typically demonstrate visible injuries. What happens to a broad swath of dissimilar sexual assault situations is irrelevant. Dr. Temple should be barred from opining about typicality of injuries to sexual assault victims writ large.

Similarly, Dr. Temple should also be barred from opining that evidence is often not transferred from an assailant to a victim during a sexual assault. At Plaintiff's criminal trial (where he provided this testimony, *see* Ex. 20 (Temple Trial Testimony)), the evidentiary record was starkly different. There was no male DNA found on the victim's rape kit and, therefore, the prosecution elicited testimony from Dr. Temple that it is not uncommon for a physician performing a rape kit to not find semen in the victim's vaginal cavity. Now, however, updated testing has uncovered male DNA on the victim's vaginal swabs, underwear, and vacuumings from her underwear, from which Plaintiff is 100% excluded. Ex. 21 (SERI Fourth Analytical Report). Whereas Dr. Temple's opinion previously was marginally relevant to demonstrate that the absence of physical evidence does not mean that a sexual assault did not occur, his opinion is no longer germane to the facts of this case. It would simply confuse the jury to hear evidence about the prevalence of the lack of evidence transfer in a case where the undisputed record demonstrates that male DNA was found on Riggio's vaginal swab and it is not Plaintiff's. *Id.* at 8. Unless Dr. Temple is prepared to testify about the prevalence of sexual assault victims having male DNA on their vaginal swabs that did not come from their rapist, his opinion in this vein should be barred.

21

Even if such evidence were somehow relevant, any minimal probative value is substantially outweighed by its prejudicial effect, and should likewise be excluded pursuant to Rule 403.

## MOTION *IN LIMINE* NO. 8 TO BAR REFERENCE TO DISMISSED CLAIMS AND DEFENDANTS

Plaintiff moves to bar evidence that individuals and claims were previously a part of this lawsuit. Plaintiff has reached a settlement with Brian Holmes, Burrough Cartrette, Maria Mokstad, Thomas Dart and Anita Alvarez; has voluntarily dismissed Joseph Joria; and some of Plaintiff's claims were dismissed in prior orders of the Court.

It would be prejudicial to Plaintiff if the jury were to hear that any of these individuals had been a defendant to this lawsuit but that the claims against him have now been dismissed, in that it would invite unfounded speculation among the jurors about why those defendants or claims are no longer in the case. It would be still more prejudicial to Plaintiff if the defense were allowed to "try an empty chair" by suggesting to the jury that a dismissed Defendant in fact should now be a party to this action. *See Archer Daniels Midland Co. v. Hartford Fire Ins. Co.*, 243 F.3d 369, 371-72 (7th Cir. 2011) (discussing the problem of parties trying the empty chair in a civil case). Moreover, whether an individual was previously a Defendant, or should be named as a Defendant, or whether a dismissed claim was previously in the lawsuit, has no probative value to the central issue in this lawsuit, which is whether the Defendants' misconduct caused Plaintiff's wrongful conviction. *See* Fed. R. Evid. 401, 402, and 403; *see also, e.g.*, *Graham v. Bennett*, 2007 WL 781763 (C.D. Ill. Mar. 12, 2007) ("This court agrees with Plaintiffs that evidence of these dismissed counts is irrelevant to whether Defendant used excessive force and the prejudice resulting from admission of this evidence outweighs its probative value.").

22

**PLAINTIFF'S MOTION *IN LIMINE* NO. 9 TO BAR IMPROPER
REFERENCES TO PLAINTIFF'S COUNSEL**

Although it is plainly irrelevant to any of the issues the jury will be asked to decide,

Defendants intend to reference the types of cases Plaintiff's counsel's law firm handles or

counsel's fee arrangements, in order to suggest that the exoneration of Plaintiff after his

wrongful conviction and his subsequent civil rights lawsuit seeking reparations for the

deprivation of 11+ years of his life is somehow profit-driven. *See, e.g.*, Ex. 22 (Papa Dep.) at

147:18-148:8 ("Q. Well, you knew that in relation to the Lovey [sic] firm, that they seek—their

history is to seek the release of a convicted offender to then seek a Certificate of Innocence and

then to file a lawsuit to recover money after that, right? … Q. Did you know that? Did you have

that understanding of what that firm's history of process was? A. I don't."). It should go without

saying that Plaintiff and other wrongful convicted persons are permitted by law to pursue post-

conviction relief to free themselves and also bring civil rights cases asserting wrongdoing

associated with their convictions, with or without the assistance of counsel. Any suggestion that

doing so is improper should be barred.  There is no legitimate purpose behind such questioning,

and it would serve only to improperly malign the motives of Plaintiff and/or his counsel.

Evidence or comments about Plaintiff's counsel or the relationship between an attorney and

client are wholly unrelated to any issues in this case and lack any tendency to make the existence

of a material fact more or less probable than it would be without such evidence. Therefore, the

evidence should be barred pursuant to Rules 401 and 402. *See* Group Ex. 23 (MIL and order in

*Ramirez v. Palisades Collection, LLC*, granting plaintiff's motion to exclude as irrelevant "[r]eferences to [Plaintiff's counsel's law practice], how Plaintiffs came to retain their present counsel, and Ramirez's decision to file this lawsuit against Defendant."); *see also Rheinfrank v. Abbott Labs., Inc.*, 2015 WL 5258858, at *11 (S.D. Ohio Sept. 10, 2015) ("Evidence about how Plaintiff retained counsel is irrelevant and therefore inadmissible."); *Brooks v. Cook*, 938 F.2d 1048, 1051 (9th Cir. 1991) (holding that evidence of a "plaintiff's right to seek attorneys' fees … invited the jury to factor in a subsequent step—the court's calculation of the ultimate judgment— that had no relevance to the jury's determination of liability and damages").

Even if such evidence were somehow relevant, any minimal probative value is substantially outweighed by its prejudicial effect, and should likewise be excluded pursuant to Rule 403. The introduction of such evidence would invite the jury to improperly focus on counsel's supposed motives in representing Plaintiff in this case and distract from the actual issues of this case.

### PLAINTIFF'S MOTION *IN LIMINE* NO. 10 TO BAR REFERENCE TO PLAINTIFF'S GUARDIANSHIP PROCEEDINGS

At trial, Defendants intend to introduce evidence of the circumstances of Plaintiff's guardianship or related proceedings, which post-date the conduct at issue in this case by more than a decade. *See* Defs.' Ex. 242-243. In April 2017, the Cook County Public Guardian was appointed the guardian of Plaintiff's estate and Plaintiff's son, Depree Chatman, was appointed the guardian of his person. Ex. 24 (Order appointing Plenary Guardian). Plaintiff's son, Depree Chatman, was appointed the guardian of his person. Plaintiff's guardianship proceedings occurred long after any events at issue in this case and should be excluded pursuant to Rules 401, 402, and 403. First, evidence of a guardianship instituted decades after the conduct alleged in this case does not make any relevant fact more or less likely, and thus must be excluded as irrelevant

24

pursuant to Rules 401 and 402. Even if this Court were to determine that the evidence had some minimal relevance, it should still be excluded under Rule 403. Fed. R. Evid. 403. That rule grants this Court discretion to exclude relevant evidence when its probative value is substantially outweighed by dangers including unfair prejudice, confusion of the issues, and wasted time. *Id.* Unfair prejudice occurs when admission of evidence "induce[s] the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 634 (7th Cir. 2018).

Any possible probative value in evidence of Plaintiff's guardianship is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and wasted time, and should therefore be excluded. The primary purpose for such evidence can only be to unfairly prejudice and malign Plaintiff before the jury. Reacting emotionally, the jury might impermissibly ignore or reduce some of the damages proven by Plaintiff because of the belief that Plaintiff's current mental health status renders him less deserving of compensation. The jury may also resort to baseless emotion in finding that Plaintiff somehow contributed to his own wrongful conviction in 2004 or deserves a criminal conviction because of his mental health issues, despite his innocence. Another risk exists in the jury believing that because Plaintiff has a guardian, that he is incompetent to testify or that his testimony should be given less weight when he testifies. Defense references to the guardianship proceedings may also necessitate rebuttal evidence by Plaintiff, resulting in mini-trials on wholly collateral matters and wasted time. As such, this Court should exclude the evidence pursuant to Rule 403.

## MOTION *IN LIMINE* NO. 11 TO BAR KAETHE MORRIS HOFFER

On their witness list, Defendants have listed Kaethe Morris Hoffer, an attorney, to testify. Defendants intend to have Hoffer testify "regarding her communications with Susan Riggio

25

regarding the Conviction Integrity Unit's investigation of the 2002 rape." Ex. 16 at 19. Any such testimony would be inadmissible hearsay and irrelevant. Hoffer should be barred from testifying under Rules 401, 402, and 802.

RESPECTFULLY SUBMITTED,

/s/ Elizabeth Wang
*One of Plaintiff's Attorneys*

Jon Loevy                                    Elizabeth Wang
Russell Ainsworth                        LOEVY & LOEVY
LOEVY & LOEVY                        2060 Broadway, Ste. 460
311 N. Aberdeen St., 3rd Fl.        Boulder, CO 80302
Chicago, IL 60607                       O: 720.328.5642
O: 312.243.5900

## CERTIFICATE OF SERVICE

I, Elizabeth Wang, an attorney, certify that on August 31, 2018, I filed the foregoing Plaintiff's Motions *in Limine* using the Court's CM/ECF filing system, which effected service on all counsel of record.

/s/ Elizabeth Wang
*One of Plaintiff's Attorneys*

## EXHIBIT LIST TO PLAINTIFF'S MOTIONS *IN LIMINE*

Exhibit 1: Carl Chatman Deposition, part 1 (excerpts)

Exhibit 2: January 1986 Chicago Read Mental Health records (Plaintiff 22624-22626)

Exhibit 3: Emails between counsel regarding punitive damages discovery

Exhibit 4: Riggio's First Supplemental Rule 26(a)(2)(A) and Rule 26(a)(2)(B) Disclosures

Exhibit 5: Defendant Officers' Fourth Supplemental Rule 26 Disclosure

Exhibit 6: 5/8/18 Email from Riggio's counsel, J. Connolly

Exhibit 7: OPS Defendants' Rule 26(a) Disclosures dated 10/21/16

Exhibit 8: Report of Dr. Deryn Strange

Exhibit 9: Dianella Dizon Dep.

Exhibit 10: Records of Dianella Dizon (excerpts) (Plaintiff 27831-27833)

Exhibit 11: Report of Dr. Patricia Frazier

Exhibit 12: Norma Berlin CV

Exhibit 13: Norma Berlin Dep.

Exhibit 14: Jacqueline Walker Dep.

Exhibit 15: Dr. Michael Sullivan records (Plaintiff 14575-14576)

Exhibit 16: Riggio's Third Supplemental Rule 26(a)(1) Disclosure

Exhibit 17: Ream biography from The Voices and Faces Project

Exhibit 18: Email from Riggio to ASA Rubenstein dated 9/11/13

Exhibit 19: Dr. Brigham Temple Dep.

Exhibit 20: Dr. Brigham Temple Trial Testimony

Exhibit 21: SERI Fourth Analytical Report dated 12/9/15

Exhibit 22: James Papa Dep. (excerpts)

Exhibit 23: Dkts. 162, 178 in *Ramirez v. Palisades Collection, LLC*, 1:07-CV-3840 (N.D. Ill.)

Exhibit 24: Order appointing Plenary Guardian (Plaintiff 34252-34354)