# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CARL CHATMAN, | ) | |
| Plaintiff, | ) | |
| -vs- | ) | No.   1:14-CV-02945 |
| CITY OF CHICAGO; *ET AL.,* | ) | Honorable Judge John Z. Lee |
| Defendants. | ) | |

## DEFENDANT SUSAN RIGGIO'S MOTION TO DECLARE 735 ILCS 5/2-702 UNCONSTITUTIONAL PURSUANT TO FED. R. CIV. P. 5.1

Defendant, SUSAN RIGGIO, by her attorneys, BOLLINGER CONNOLLY KRAUSE, LLC, presents this Motion to Declare 735 ILCS 5/2-702, (Certificate of Innocence ("COI") statute), unconstitutional as applied to the unique facts of this case.

## INTRODUCTION

Mrs. Riggio was raped. A jury convicted Chatman of the rape and that conviction was later vacated. Chatman filed a Petition for a COI, attacking Mrs. Riggio's character, claiming that she had fabricated the rape for financial gain. Mrs. Riggio did not receive notice of the COI Petition and had no ability to object to it or later challenge it. *People v. Chatman*, 2016 IL App 152395 (1st Dist. 2016), (holding that Mrs. Riggio did not have standing to challenge the COI or to intervene in the COI 'proceeding'). There was no evidentiary hearing surrounding the issuance of the COI; rather, it merely was rubber-stamped by the Judge. Chatman now sues Mrs. Riggio for malicious prosecution and intends to use the COI as finding of facts against her in the civil lawsuit that: (1) he is innocent, and (2) she fabricated the crime. Chatman seeks compensatory and punitive damages, placing Mrs. Riggio's personal assets at stake as the COI will be essentially incontrovertible evidence on the issues that are dispositive of this case. How can a jury possible

reconcile the fact that it can find Mrs. Riggio not liable of malicious prosecution when, at the same time, it is being told that *another* Court has already declared Chatman innocent based on the premise that Mrs. Riggio staged her own rape?

Mrs. Riggio files a motion *in limine* seeking the exclusion of the COI on various grounds; however, the instant Motion specifically addresses the constitutionality of a statute which places at risk the assets of Mrs. Riggio who had no notice of the proceeding and therefore no opportunity to defend her rights by opposing the issuance of the COI. If the COI is admitted into evidence and a verdict is awarded against Mrs. Riggio, it will be based on the jury's knowledge of the existence of the COI – a judicial determination in a separate cause of action of which Mrs. Riggio was not a party and had no rights. Notice and the right to be heard are "the quintessential hallmarks of procedural due process." *Pugel v. Bd. of Trustees of Univ. of IL*, 378 F.3d 659, 662 (7th Cr. 2004), citing *Mullane v. Cent. Hannover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Mrs. Riggio got neither. This is an egregious violation of her right to due process and 735 ILCS 5/2-702 is unconstitutional as applied to the unique facts of this case - the victimization of this woman needs to end here.

### A. Relevant Procedural Background

Mrs. Riggio has always maintained that she was raped on May 24, 2002 at the Daley Center. She believes she accurately identified Chatman as her rapist. He was arrested just blocks from the Daley Center; told officers he was coming from there; and, subsequently confessed to the crime. In 2004, a jury convicted him and that conviction was upheld on appeal and in all post-conviction proceedings.

During the post-conviction proceedings, Chatman argued his "actual innocence" and attacked Mrs. Riggio's credibility. A central theme was that Mrs. Riggio was raped in 1979,

(apparently if a woman is raped as a young woman and then again 23 years later in her fifties, then she is a liar); filed a lawsuit as a result of the 1979 rape, (in which she recovered less than $5,000); and, allegedly fabricated the 2002 rape for financial gain, (because clearly the nominal settlement from the 1979 rape would incentivize a married woman, mother of two, with no criminal background and a joint income of approximately $250,000 to risk everything).[1] Judge Toomin pointed out in his denial of Chatman's post-conviction petition that the theory that Mrs. Riggio fabricated the rape was "simply implausible." (Ex. 1, Toomin Opin., p. 16). The Appellate Court affirmed the trial court's dismissal of Chatman's petition for post-conviction relief commenting, "…what Chatman actually appears to be challenging in this post-conviction proceeding is the sufficiency of the evidence convicting him. Particularly in his assertions of actual innocence, the evidence he puts forth goes to considerations of credibility of the evidence presented at his criminal trial, which more properly addressed reasonable doubt rather than exoneration. Actual innocence is not within the rubric of whether a defendant has been proved guilty beyond a reasonable doubt." (Ex. 2, App. Ct. p. 17-18).

Under Cook County State's Attorney ("CCSA") Richard Devine's regime, ASA Robert Hovey re-investigated Mrs. Riggio' rape. During that re-investigation, Mrs. Riggio met with ASA Hovey, responded to his inquiries, including those that purportedly related to her credibility. After a thorough re-investigation, he reaffirmed that Chatman raped Mrs. Riggio and thereafter responded to Chatman's post-conviction petition arguing that fact.

The rape was later re-investigated under CCSA Anita Alvarez's regime by ASA James Papa. He requested to speak with Mrs. Riggio regarding the same issues she had previously

---

[1] Riggio brings various motions *in limine* to bar reference to the 1979 rape, and any improper character reputation evidence. Nothing contained herein shall be construed as a waiver to Riggio arguing the inadmissibility of these items.

3

discussed with ASA Hovey. Chatman's counsel argues that Mrs. Riggio refused to speak with ASA Papa; however, Mrs. Riggio had just sustained a heart attack and decided, for health-related reasons, and because the rape is difficult for her to discuss, not to meet with him. On September 10, 2013, the CCSAO motioned to vacate Chatman's conviction for the aggravated criminal sexual assault of Mrs. Riggio, which was subsequently granted and then *nolle prosequied* the charges against him. (See Ex. 3, Motion and Ex. 4, Order). ASA Papa called the Riggio family the night before Chatman's release to advise them of this.

On October 25, 2013, Chatman filed his COI Petition. Mrs. Riggio did not receive notice of the same.[2] Chatman's COI Petition largely repeated the attacks on Mrs. Riggio's credibility advanced during his appeal and post-conviction proceedings in support of his "actual innocence" argument. His COI Petition omitted that he had confessed to the rape and repeated that confession several times to several different people. (Ex. 6, the "COI Petition").

The CCSAO did not file a response or raise any objection to the COI Petition. The so-called 'hearing' on the COI Petition evidences its *ex parte* nature:

> THE COURT: There is a motion for request for Certificate of Innocence. What's the position of the parties, please?
>
> MR. PAPA: Judge, the State will not be objecting to the issuance of the Certificate of Innocence.
>
> THE COURT: I have a lengthy file that's been presented to me today. This is [sic] case, I think, which involves the Daley Center. Is that correct?
>
> MR. PAPA: That's correct.
>
> THE COURT: No objection being heard from the State, the motion for Certificate of Innocence is granted. (Ex. 7, transcript from proceedings of 11/19/13 in the *People of the State of Illinois v. Carl Chatman*, Cir. Ct. of Cook County, Criminal Div.)

---

[2] While the COI statute requires that the Illinois Attorney General receive notice, it appears that this never occurred. (See Ex.5, notice).

4

The COI was granted without any findings on the record as to its satisfaction of the four requirements of §2-702(g), and the record is devoid of any reasoning as to how the COI Petition met the statutory requirements or that there was a finding of "actual innocence." (Ex. 7). Instead, the record suggests that the judge equated the CCSAO's lack of an objection with a finding of actual innocence, since this Court stated, "…no objection being heard from the State, the Motion for Certificate of Innocence is granted." (Ex. 7). Alternatively, the judge granted the COI after reading Chatman's one-sided, unchallenged COI Petition. Either way, Mrs. Riggio had no notice or voice with respect to the COI. Had Mrs. Riggio received notice and a voice, she would have put forth evidence of the "implausibility"[3] that she had fabricated the rape; clarified any supposed credibility issues; and presented the evidence in favor of Chatman's conviction, pointing out that he could not prove by a preponderance of the evidence that he was actually innocent and that his own conduct did not bring about his conviction, (*i.e.* because he confessed to the rape) - two of the necessary elements of the COI statute. 735 ILCS 5/2-702(g)(1)-(4).

Chatman then filed this §1983 civil suit against Mrs. Riggio, and many others, claiming that she fabricated the rape. He intends to use the COI as a weapon in this lawsuit. Mrs. Riggio tried to attack the COI Petition pursuant to 735 ILCS 5/2-1401. The Circuit Court held that Mrs. Riggio did not have standing to challenge the COI, and, thus, did not consider the merits. Mrs. Riggio appealed, and the Appellate Court affirmed, finding that she had no standing and no right to intervene in the COI 'hearing.' (See Ex. 8, *People v. Chatman*, 2016 Il. App. 152395 (1st Dist. 2016)). If the COI is admissible in this matter, (which Riggio argues it should not be),[4] then it is

---

[3] See Ex.1, p. 16
[4] Riggio intends to file a Motion *in Limine* to bar Chatman's COI, which discusses in further detail why the COI is not admissible in this action. That Motion and the arguments contained therein are incorporated herein by reference and nothing in this Memorandum shall act as a waiver of Mrs. Riggio's arguments relative to the COI's inadmissibility.

the equivalent of binding her to the outcome of a proceeding to which she was not a party and findings of fact were made against her, now placing her property interests at stake. Given the blatant violation of her procedural due process rights, the COI statute should be found unconstitutional as applied to the unique facts of this case.

## NOTICE PROVIDED TO ILLINOIS ATTORNEY GENERAL

Riggio has provided notice to the Illinois Attorney General in accordance with Fed. R. Civ. P. 5.1.

## RELEVANT PROVISIONS OF SECTION 2-702

The key terms of §2-702 are summarized as follows (Ex. 9, a copy of 735 ILCS 5/2-702):

1. The purpose of the statute is to allow "wrongly" convicted persons to seek legal redress by obtaining relief through a petition to the Illinois Court of Claims. 735 ILCS 5/2-702(a).

2. Any person convicted and imprisoned for one or more felonies which he did not commit may file a petition requesting a COI finding that the petitioner was innocent of all offenses which resulted in incarceration. 735 ILCS 5/2-702(b).

3. A petitioner seeking a COI must prove each of the following by a preponderance of the evidence, that: (1) he has been convicted and served time; (2) his conviction was reversed or vacated; (3) he is actually innocent of the offenses charged; and (4) his own conduct did not bring about his conviction. 735 ILCS 5/2-702(g)(1)-(4).

4. "A copy of the petition shall be served on the Attorney General and the State's Attorney of the county where the conviction was had. The Attorney General and the State's Attorneys of the county where the conviction was had shall have the right to intervene as parties." §2-702(e).

5. "The decision to grant or deny a certificate of innocence shall be binding only with respect to claims filed in the Court of Claims and shall not have a *res judicata* effect on any other proceedings." 735 ILCS 5/2-702(j).

## PRELIMINARY COMMENTS

Neither the *Younger* Doctrine nor the *Rooker-Feldman* Doctrine applies. The *Younger* doctrine prohibits federal courts from enjoining criminal prosecutions in state court. *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* doctrine has no applicability as the COI proceeding is

a civil proceeding. While Chatman filed his COI Petition in the Criminal Circuit Court and a COI, like a clemency proceeding, is the natural extension of the criminal proceedings, courts have found that a COI proceeding is akin to a civil declaratory judgment action in that both actions are essentially determining the rights of the parties involved. See *Fields v. City of Chi.,* 2014 U.S. Dist. LEXIS 30194, at *4 (N.D. Ill. Mar. 10, 2014). Indeed, the COI statute is contained within the Illinois Code of Civil Procedure.

The *Rooker-Feldman* doctrine similarly has no application. This is the legal principle that a federal court does not have jurisdiction to review decisions of state courts or claims inextricably intertwined with an earlier state-court judgment. The federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. *See* generally, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (U.S. 1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (U.S. 1983).[5] While Mrs. Riggio believes that Chatman was erroneously granted the COI and that she should have had the ability to challenge it, she is not attempting to reverse the COI or the Appellate Court's decision that she had no standing to challenge the COI or right to intervene in the COI 'proceeding.' Rather, it was the granting of the COI and the decision of the Illinois Appellate Court that are the vehicles to this constitutionality challenge. If Mrs. Riggio had notice of the COI proceeding, or the ability to challenge it, then her constitutional rights would not have been violated and she would not be bringing this Motion.

The circumstances before this Court do not invoke principles of abstention, claim preclusion, or *res judicata* as Mrs. Riggio was not a party to the COI 'hearing.'[6] Consequently, she should not be bound by the findings of the court which entered the COI. However, she may very

---

[5] Should the Illinois Attorney General or Plaintiff invoke either doctrine as a defense to this Motion, or if the Court specifically addresses issues regarding *Younger* or *Rooker-Feldman*, then Riggio will respond accordingly.
[6] If admissible, the COI will have a *de facto res judicata* effect, however.

well be faced with having to rebut findings of fact decided by another Judge that directly bear on the issue of liability in this matter and place her property rights in jeopardy should this Court admit the COI into evidence and/or deny that the COI statute is unconstitutional as applied. See *Huon v. Bell*, 657 F.3d 641 (7th Cir. 2011), citing *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290 (1998) and *Downing v. Chicago Transit Authority*, 162 Ill.2d 70 (1994).

## ARGUMENTS

### I. DUE PROCESS REQUIRES THE OPPORTUNITY TO CONTEST FACTS SUPPORTING THE ISSUANCE OF THE COI WHERE MRS. RIGGIO'S PROPERTY RIGHTS ARE AT STAKE.

Reference to the COI in this case would be tantamount to a procedural due process violation, because it would constitute an attempt to impermissibly use a prior judicial finding against a non-party to take that person's property. Chatman did not provide Mrs. Riggio notice of the COI Petition or its so-called "hearing." But, the statute does not specifically require that notice be provided to the victim who may be subjected to civil liability and the payment of compensatory and punitive damages in subsequent litigation: therein lies the problem. Because it has been held that Mrs. Riggio does not have standing to challenge the COI in the court in which it was granted, it is a clear violation of her due process rights for Plaintiff to use the COI against her in this matter as it may very well be decisive of the issues in the case.

The Fifth and Fourteenth Amendments of the United States Constitution prohibit the federal government and the states from taking a person's property without due process of the law. "***A statute that permits a person to take another's property without giving the owner the opportunity to be heard may violate the due process clause***." *People ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1343 (7th Cir. 1989), citing *Fuentes v. Shevin*, 407 U.S. 67 (1971) (emphasis added). In *Fuentes*, the U.S. Supreme Court was called upon to review the decisions of two District

Courts that upheld the constitutionality of Florida and Pennsylvania laws authorizing the summary seizure of goods under a right of replevin. *Fuentes*, 704 U.S. 67, 69. Both statutes provided for the issuance of writs ordering state agents to seize a person's possessions simply upon the *ex parte* application of any other person who claimed a right to them and posted a security bond. *Id.* at 69-70. Neither statute provided for notice to be given to the possessor of the property, and neither gave the possessor an opportunity to challenge the seizure at any prior hearing. *Id.* at 70. The U.S. Supreme Court held that both statutes' prejudgment replevin provisions work a deprivation of property without Due Process of law "insofar as they deny the right to **prior opportunity** to be heard before chattels are taken from their possessor." *Id.* at 97 (emphasis added). The Court held this even though the replevin was not cast as a final judgment; most of the appellants lacked full title to the chattels; their claim to continued possession was a matter in dispute; and the chattels were mere household goods. *Id.* at 84.

In reaching its holding, the Court stated, "the central meaning of procedural due process has been clear" for over a century: "**Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right, they must first be notified.**" (emphasis added). *Id.* at 80 citing *Baldwin v Hale*, 1 Wall.223, 233. See, *Windsor v. McVeigh*, 93 U.S. 274; *Hovey v. Elliott*, 167 U.S. 409; *Grannis v. Ordean*, 234 U.S. 385. Notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Id*. citing *Armstrong v. Manzo*, 380 U.S. 545, 552. The constitutional right to be heard ensures the duty of government to follow a fair process of decision making **before** depriving a person of her property. *Id.* at 80-81. (emphasis added). The Court explained that a fair process occurs when the affected individual has a voice before a decision is made:

> **…when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say,**

9

> **substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that 'fairness' can rarely be obtained by secret, one-sided determination of facts decisive of rights…[and n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.** *Id.* at 81 citing *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-172. (emphasis added).

The U.S. Supreme Court found that a prior hearing is necessary **"because of the understandable, self-interested solubility of litigants, a court does not decide a dispute until it has had an opportunity to hear both sides – and does not generally take even tentative action until it has itself examined the support for the plaintiff's position"** and neither statute required that. *Id.* at 83 (emphasis added). "…a prior hearing…is the only truly effective safeguard against arbitrary deprivation of property." *Id.* These rights attach when there is any "significant taking of property." *Id.* at 86.

Here, Mrs. Riggio was deprived of the fundamental principles of due process; notice and the right to be heard. She could not point out the "self-interested solubility" of Chatman, who failed to mention that his own conduct brought about the conviction (his confession), which should have precluded the grant of the COI altogether. Her property rights are at stake, and a verdict would undoubtedly be based on the COI, potentially putting her in financial ruin – much more is certainly at stake than the loss of household goods as was the case in *Fuentes*. Admission or reference to the COI issued by the former Chief Judge of the Criminal Division of Cook County Courts places Mrs. Riggio in the unfair position of then having to rebut a previous judicial determination that Chatman is innocent and that Mrs. Riggio framed him, which bears directly on liability, essentially shifts the burden of proof in this case, and may be unassailable evidence against her in the mind of the jurors. While Mrs. Riggio can put forth her defenses at trial, this is

10

not the type of meaningful notice and meaningful opportunity to be heard that the due process clause is intended to safeguard. The COI was already issued and that harm cannot be undone, unless the COI statute is ruled unconstitutional as applied to Mrs. Riggio.

In *Fuentes*, the U.S. Supreme Court commented that the statutes were problematic as neither required the applicant to show before the seizure that the goods were wrongfully obtained. Rather, the laws only required that a complaint be filed reciting in conclusory fashion that the applicant is "lawfully entitled to possession and file a security bond." *Fuentes,* 407 U.S. at 89. Similar to the statutes in *Fuentes*, the Illinois Appellate Court recently stated the COI statute "…does not contain well-defined procedural instructions on how to proceed in a case where the State, although it intervenes, does not object to the proceedings and does not present any evidence to rebut petitioner's claim for Certificate of Innocence." *People v. Simon*, 2017 Ill.App.(1st) 152173 at ¶24, 83 N.E.3d 90 (1st Dist. 2017).

Like *Fuentes*, the COI statute provides for an arbitrary, *ex parte* proceeding in circumstances where the State does not object, and this flies in the face of the due process clause. The fact that the COI hearing is not adversarial and is *ex parte*, is the exact reason why, under the circumstances where Chatman claims that Mrs. Riggio fabricated the rape and intends to use the COI as unconstitutional evidence against her to obtain a punitive damages award, she was entitled to notice and the right to be heard. Otherwise, §2-702, as applied, is a blatant violation of her due process rights.

II. **SECTION 5/2-702 IS UNCONSTITUTIONAL AS APPLIED IF THE COI IS REFERENCED IN THIS MATTER**

The Illinois General Assembly intended to limit the admissibility of COIs granted and/*or denied* under §2-702 in subsequent litigation. If §2-702 is interpreted as allowing COIs to be admitted into evidence at subsequent civil proceedings against victims who never received notice

of or an opportunity to challenge the findings supporting the COIs, then §2-702 is unconstitutional as applied to those circumstances. Federal courts may enjoin enforcement of a portion of a state statute which is unconstitutional as applied and may invalidate those portions of a state statute which they deem unconstitutional while allowing the remainder of the statute to remain in effect. *Ayotte v. PPH of N. N.E Eng.*, 546 U.S. 320, 322 (2006); *U.S. v. Booker*, 543 U.S. 220, 258 (2005). If a statute has two possible meanings, one of which violates the Constitution, then courts should adopt the meaning that does not violate the Constitution. *Nat'l Fed. of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2593 (2012). The court's "plain duty is to adopt that which will save the Act." *Blodgett v. Holden*, 275 U.S. 142, 148 (1927). Therefore, to "save the Act" this Court should interpret §2-702(j) as prohibiting the COI from being admitted into evidence in this proceeding where the victim is sued as doing so would violate Mrs. Riggio's due process rights, or the Court must hold the COI statute unconstitutional as applied.

> **A.** **The facts of this case are unique**

Movant ventures to guess that there is not any other case in Illinois where a COI was granted alleging that the victim fabricated the crime. After an extensive search of the case law in the Seventh Circuit, Mrs. Riggio's counsel is not aware of any cases where the plaintiff attempted to use a COI in a §1983 action against a victim. In the Northern District of Illinois, the Honorable Joan Lefkow entered an order denying a motion brought by the defendant, City of Chicago, to bar reference by the plaintiff to a COI. *Kluppelberg v. Burge, et al.*, 13 C. 3963. When considering the due process argument, the judge found that the COI's admission into evidence did not deprive defendants of their due process rights because, "the COI makes no finding as to any act of any police officer involved in the case that would put them in a position of having to rebut a finding made in a proceeding to which they were not a party." The same cannot be said as to Mrs. Riggio,

because the premise of Chatman's COI petition was her supposed fabrication of the rape and Chatman's complaint mirrors the outlandish allegations contained in his COI Petition. (Compare Docket #324 to Ex. 5).

Given the unique facts of this case where a rapist is released from prison and claims that his victim fabricated the crime, it was essential that Mrs. Riggio had notice and the opportunity to tell her side of the story before a court declared him innocent and that order is waved around in a courtroom to try to take her property.

B.     **The circumstances under which the COI was granted are unique**

The circumstances under which the COI was granted similarly demonstrate that §2-702 is unconstitutional as applied. The CCSAO did not file a response brief or object to the COI and the transcript from the hearing suggests that the judge granted the COI, because it was unopposed. Had the COI Petition been challenged by Mrs. Riggio, then she would have pointed out the one-sided nature of the COI Petition and the misrepresentations contained therein. More importantly, she would have brought to the judge's attention that Chatman could not satisfy the elements necessary to obtain a COI. The entire premise of the COI Petition rested on issues of credibility, which, at best, reflect on issues of reasonable doubt, not actual innocence. He also confessed and, thus, acted in a manner that brought about his confession. 735 ILCS 5/2-702(g)(1)-(4).

## **CONCLUSION**

As more fully explained in Mrs. Riggio's Motion *in limine* to bar reference to the COI, there are several reasons why the COI should not be admissible in this lawsuit, including that the plain language of 5/2-702(j) precludes the admission of COIs into proceedings outside the Court of Claims. However, if this Honorable Court is inclined to deny Riggio's Motion *in limine* to bar reference or evidence of the COI, then Mrs. Riggio requests that this Court declare 735 ILCS 5/2-

702 unconstitutional as applied to the unique facts of this case due to the absence of a provision requiring notice to victims. Otherwise, if the jury here is told that *another* judge held that Chatman is innocent based on Mrs. Riggio's supposed fabrication of the rape, it may very well create an insurmountable hurdle for her here, likely leading to a taking of her property when she received no notice, no voice and no ability to later challenge the COI in the Court in which it was issued.

                                            Respectfully submitted,
                                            SUSAN RIGGIO

                                            /s/Jeremiah P. Connolly
                                            _____
                                            One of the Attorneys for SUSAN RIGGIO

Jeremiah P. Connolly/#03124158
Rachel D. Kiley/#6283247
BOLLINGER CONNOLLY KRAUSE, LLC
500 West Madison Street – Suite 2430
Chicago, Illinois 60661
(312) 253-6200 #48352

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 4th day of September, 2018, I electronically filed this document with the Clerk of the Court using the CM/ECF electronic system, and all counsel of record were served by CM/ECF – USDC.

      /s/ Jeremiah P., Connolly