IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CARL CHATMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 CV 2945 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING PROPOSED 404(B) WITNESSES**

Plaintiff has proposed to help the jury understand Defendant Kato's *modus operandi*, intent, and identity by calling three 404(b) witnesses to testify about their nearly identical experiences with Defendant Kato. Defendants moved *in limine* to bar these witnesses. ECF No. 640. Plaintiff responded, ECF No. 699, and at the final pretrial conference on October 30, 2018, this Court requested additional briefing on the incidents about which the proposed witnesses will testify.

**Introduction**

When Mr. Chatman moved to suppress his confession in his criminal case, it was his word against that of the Detectives; of course, Mr. Chatman lost. But now, Mr. Chatman has important, corroborating evidence from three other witnesses who experienced similar mistreatment at the hands of Defendant Kato: Daniel Gasca, Frederick Seaton, and Michael Waslewski. Their experiences are probative of Kato's intent to secure convictions through false confessions, and go directly to Kato's defense that he was not involved in Mr. Chatman's interrogation.

These witnesses' testimony is relevant for three independent reasons. One, Kato claimed in both Plaintiff's case and Seaton's case that not only did he not abuse either of them, he played

no role in getting them to confess and is absent from the paperwork for each. Seaton's testimony is highly relevant to Kato's *modus operandi*, plan, intent, and opportunity to cover up his abuse of suspects by hiding his involvement in procuring the confessions. Two, these witnesses all establish Kato's *modus operandi* and plan to obtain confessions through force and threats of violence. Three, the witnesses' testimony, even if barred under Rule 404(b), is admissible under Rule 608 to impeach Kato's testimony at trial. They should each be allowed to testify.

## I. Kato Uses Physical Violence Against Suspects in Custody to Obtain Confessions

Defendant Kato used physical violence with his bare hands against each of Mr. Chatman, Mr. Seaton, Mr. Waslewski, and Mr. Gasca.

### a. Kato Beats a False Confession Out of Carl Chatman

According to Plaintiff's evidence that he will present at trial, Mr. Chatman was arrested for allegedly raping a woman and taken to Area Four. He was locked in an interrogation room and handcuffed to the wall. Ex. A (Chatman Dep. pt. 1) at 278:12-18. Mr. Chatman, who had nothing to do with the rape and no idea why he was in custody, denied any knowledge or involvement. *Id.* at 278:19-279:7. Mr. Chatman was in the interrogation room alone when Kato, who knew Mr. Chatman was innocent, entered told Mr. Chatman that he knew he was the one who had raped the woman, and then threatened to beat him until he confessed. Ex. B (Chatman Dep. pt. 2) at 13:11-15. Mr. Chatman repeatedly told Kato he hadn't done anything, and in response Kato hit him in the temple with his hand so hard that Mr. Chatman went numb and slumped over. Ex. A at 282:4-283:4; Ex. B at 20:17-22. Overnight during the 24 hours Mr. Chatman was in the interrogation room, Kato came in and out, hurling physical and verbal abuse at Mr. Chatman. Ex. B at 14:4-10; 17:13-18. Eventually, when Defendant Kato reared up to punch Mr. Chatman again, Mr. Chatman succumbed. *Id.* at 17:1-9. Believing that Kato would

keep hitting him until he told him what he wanted to hear, he asked what Kato wanted him to say. Kato told Mr. Chatman he should say that he had raped the woman, and then Kato fed Mr. Chatman details of the rape and coached him through the story. *Id.* at 13:16-24; 47:23-48:2.

For his part, Kato denied having anything to do with Mr. Chatman's confession, and the paperwork on Mr. Chatman's case indicates that it was Detective Roberts, not Kato, who obtained the confession. Ex. C (Chatman Closing Rep't). Mr. Chatman was eventually convicted of the rape based on this false confession, and spent over 11 years in prison before being exonerated.

### b. Kato Beats a False Confession Out of Frederick Seaton

According to Frederick Seaton, he was beaten by Kato while in custody in 1988. Kato and other officers arrested Mr. Seaton without probable cause and took him to Area Four, placed him in an interrogation room and handcuffed him to the wall. Ex. D (Seaton Testimony) at 12:19-13:6. Seaton had never met Kato before that night, and Kato knew Seaton had not been involved in the murder. Ex. E (Seaton Dep.) at 28:21-29:3. Mr. Seaton was left chained to the wall all night, and Kato came in the next day asking for information on the crime. *Id.* at 30:9-20. Seaton truthfully told Kato that he hadn't been involved and knew nothing about it, and Kato struck him in the head, neck, and groin in a manner that would not leave visible marks. *Id.* at 30:9-31:17, 32:9-10; 36:21-37:10. Mr. Seaton eventually succumbed and agreed to confess to the crime. *Id.* at 30:9-31:17, 32:9-10. Kato fed him details of the crime and told him what to include in his confession, and then sat with him while he gave his statement. *Id.* at 43:2-44:6.

At the subsequent motion to suppress hearing, Kato claimed that his involvement with Mr. Seaton ended the day before his confession, when Seaton agreed to take a polygraph exam. *See* Ex. F (Seaton Supp. Hr'g Tr.) at City Def CC 11351-55. The paperwork submitted to

document Seaton's confession indicates that it was Detectives Summerville and Lewis, and not Kato, who obtained Seaton's confession. Ex. G (Seaton Supp. Rep't). Mr. Seaton was eventually convicted of the murder and spent a decade in prison before his conviction was vacated and he was released. Ex. E at 20:14-22.

### c.   Kato Beats a False Confession Out of Michael Waslewski

Kato arrested Michael Waslewski in 1990 without a warrant or probable cause and brought him to Area Four. Ex. H (Waslewski Dep.) at 13:22-14:10. Waslewski had never encountered Kato before, and had no idea why he was being taken into custody. *Id*. at 13:6-17. He was locked in an interrogation room and handcuffed to the wall. *Id*. at 14:7-15:1. During the 24 hours Mr. Waslewski was locked in that room alone, Defendant Kato came in several times and asked him why he had committed a murder, even though he knew Mr. Waslewski had not participated in the crime. *Id*. at 24:12-25:6. He ignored Mr. Waslewski's insistence that he had not done it, and Kato told him they would get him for the case regardless. *Id*. With just the two of them in the room, Kato slapped Mr. Waslewski in the face and chopped him in the neck with his hand. *Id*. at 25:18-26:25. Eventually, as a result of the physical violence, Mr. Wasilewski succumbed. *Id*. at 31:3-10. Weak and tired, he agreed to sign a confession. *Id*. Kato gave him the details of what he would say in his confession, and Mr. Waslewski then regurgitated that information to the state's attorney. *Id*. at 26:4-14; 31:14-19. Mr. Waslewski spent 18 months in jail before he was acquitted. *Id*. at 42:3-43:14.

### d.   Kato Attempts to Beat a False Confession Out of Daniel Gasca

According to Daniel Gasca, Kato pulled up to Gasca's house in 1994 and took him into custody without probable cause. Ex. I (Gasca Dep.) at 24:13-23. Mr. Gasca had never met Kato before and had no idea what was happening. *Id*. at 21:19-21, 57:12-15. He was nevertheless

taken to an interrogation room at Area Four and handcuffed to the wall. *Id*. at 26:1-27:2. Over

the course of the 15 hours Mr. Gasca was locked there, Kato physically and verbally abused him,

including by punching him in the temple in a manner that would not leave a mark, all with the

intent of getting to confess to a crime Kato knew he had not committed. *Id*. at 41:2-9, 42:2-43:1,

72:1-74:6. After Kato learned that Mr. Gasca had been in custody at the time of the crime, he

abandoned his efforts to secure a false confession. *Id*. at 68:20-69:21.

## II. Seaton Provides a Starkly Similar Account to Establish Kato's *Modus Operandi* of Hiding His Use of Violence By Omitting his Name from Paperwork

In both Mr. Chatman's and Mr. Seaton's cases, Kato claimed that he did not abuse either

man because he had no involvement in obtaining either confession. To buttress his testimony, he

was able to point to the contemporaneous police reports which documented that a different

detective procured the confessions, thus casting serious doubt on his accusers. Each incident in

isolation cleared Kato of wrongdoing: Mr. Chatman's and Mr. Seaton's credibility took severe

hits because they were accusing a detective of misconduct who, on paper, had not even been

present for their confessions. But viewed together, as they must, Mr. Chatman and Mr. Seaton

present strong evidence of Defendant Kato's *modus operandi*, plan, intent, and opportunity to

abuse both of them without being discovered, because he used the same idiosyncratic method of

ensuring his name did not appear on the paperwork. *See United States v. Shackleford*, 738 F.2d

776, 783 (7th Cir. 1984) (other-acts evidence admissible where it is "sufficiently idiosyncratic to

permit an inference of pattern for purposes of proof").

If Mr. Seaton's testimony is barred, then once again it would be Mr. Chatman's word

standing alone against Kato's. This is exactly the situation where Rule 404(b) testimony is

admissible: Kato's identity is at issue. Kato used the same idiosyncratic means of covering up his misconduct in two unrelated cases. Mr. Seaton must be allowed to testify.

### III. Seaton, Waslewski, and Gasca Should be Allowed to Testify Under Rule 404(b)

These four incidents are strikingly similar. Kato's *modus operandi* involved walking into the interrogation rooms of suspects whom he had never met, accusing them of committing crimes despite knowing they were innocent, and hitting them in a manner that would not leave a mark while they were handcuffed, all as part of a plan to extract false confessions. Kato left them in interrogation rooms for upward of 20 hours or more, and wandered in and out, using physical violence until they agreed to confess. Once they succumbed, he fed them information about the crimes to which they would be confessing.

This is the exact type of evidence that serves a non-propensity purpose. *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014). As the Seventh Circuit explained in *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993), evidence that a police detective physically abused suspects until they confessed is admissible, even though the exact details of their abuse were different. Evidence that the detective had physically abused suspects until they confessed is evidence of "intent, opportunity, preparation, and plan." *Id.*; *see also Davies v. Benbenek*, 2014 WL 12660537, at *3 (N.D. Ill. May 28, 2014) (recognizing that the other acts in *Wilson* were probative of the defendant police officers "having the means, intent, and ability to use force against suspects during their interrogation at a police station"); *Hill v. City of Chicago*, 2011 WL 3840336 (N.D. Ill. Aug. 30, 2011).

Because Kato's name is not on any of the paperwork regarding Mr. Chatman's arrest or legal proceedings, his identity is a critical issue in this case. Where Defendants strenuously deny that Kato abused Mr. Chatman, or even interacted with him, the law permits the use of other

highly similar and distinctive acts to show that it was indeed Kato who was present at the interrogation. *See Gomez*, 763 F.3d at 861; *Shields v. United States*, 2017 WL 1196830 (N.D. Ill. Mar. 31, 2017); *United States v. Robinson*, 161 F.3d 463, 467 (7th Cir. 1998). Here, Kato's other acts of physically abusing innocent people in custody are similar enough that they should be admitted in order to undermine Kato's defense that he did not abuse Mr. Chatman.

### IV.     Impeachment of Kato

Even if this testimony cannot come in as substantive evidence, it is admissible to impeach Kato's credibility. In this case there is little evidence supporting Defendants' version of events other than Kato's own statements about his participation in Mr. Chatman's interrogation. His credibility is paramount to his case. Federal Rule of Evidence 608(b) allows impeachment by prior acts if they are probative of the witness's bias or character for truthfulness or untruthfulness. *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 800 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 637, 196 L. Ed. 2d 520 (2017) (Rule 608(b) also "expressly affords the trial judge broad discretion to allow . . . questioning regarding prior instances of conduct if they are probative of the character for truthfulness or untruthfulness of the witness."); *United States v. Smith*, 80 F.3d 1188, 1193 (7th Cir. 1996) (prior acts showing untrustworthiness are admissible to impeach witness's credibility); *United States v. McGee*, 408 F.3d 966, 982 (7th Cir. 2005) (extrinsic evidence admissible for impeachment purposes to show bias); *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (prior acts involving deceit are admissible to impeach witness's credibility); *Wrice v. Burge*, 2016 WL 6962838, at *6 (N.D. Ill. Nov. 29, 2016) (allowing evidence of other bad acts to attack witness's credibility); *Holmes v. Godinez*, 2016 WL 4091625, at *5 (N.D. Ill. Aug. 2, 2016) ("Defendant will be barred from

offering bad act propensity evidence, but will be permitted to inquire into specific incidents of conduct on cross-examination to establish bias or the witnesses' character for truthfulness.").

## Conclusion

Given the idiosyncratic similarities between Kato's abuse of Mr. Chatman and each of these three witnesses, this Court should allow them to testify to show Kato's identity and *modus operandi*, or alternatively for impeachment purposes to show Kato's bias or character for untruthfulness.

RESPECTFULLY SUBMITTED,

/s/ Rachel Brady
*One of Plaintiff's Attorneys*

Jon Loevy                                      Elizabeth Wang
Russell Ainsworth                              LOEVY & LOEVY
Rachel Brady                                   2060 Broadway, Ste. 460
LOEVY & LOEVY                                  Boulder, CO 80302
311 N. Aberdeen St., 3rd Fl.                   O: 720.328.5642
Chicago, IL 60607
O: 312.243.5900

## CERTIFICATE OF SERVICE

I, Rachel Brady, an attorney, certify that on November 2, 2018, I filed the foregoing Plaintiff's Supplemental Brief Regarding Proposed 404(b) Witnesses using the Court's CM/ECF filing system, which effected service on all counsel of record.

/s/ Rachel Brady_____
*One of Plaintiff's Attorneys*