IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Carl Chatman, | ) | |
| | ) | |
| Plaintiff | ) | No. 14 CV 2945 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| City of Chicago, *et al.*, | ) | Magistrate Judge Maria Valdez |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO AMEND
PROVISIONAL EVIDENTIARY RULING**

Now comes Plaintiff, Carl Chatman, by and through his attorneys, Loevy & Loevy, and hereby respectfully submits this Response in Opposition to Defendants' Motion to Amend Provisional Evidentiary Ruling. Plaintiff states as follows:

**Introduction**

Backed against their end zone, Defendants attempt the proverbial Hail Mary. For their motion to succeed, Defendants have to hope both that this Court forgets it has already denied the same motion previously and that the Court errs by admitting clear propensity evidence. Simply making their motion *in limine* longer (using 15 pages, the full allotment this Court permits for *all* of a party's motions *in limine*) does not make it better. This Court can simply deny the Motion on grounds that nothing has changed since its denial of Defendants' prior motion on the same topic and stop reading any further.

On the merits, Defendants' Motion fares no better. Defendants seek to admit cherry-picked statements from Mr. Chatman's mental health records as relevant evidence of his state of mind. But Defendants are not admitting the evidence to make it more or less likely that Mr.

Chatman was susceptible to police coercion (which is the reason Plaintiff's mental health history is relevant in the first place); rather, they wish to show that Mr. Chatman acted in conformity with past statements *during the crime*, not during his interrogation. Moreover, Defendants' shotgun approach here is particularly ill-advised when the Court has plenty of work to do without having to address frivolous arguments (such as the argument at page 6 of their Motion that the content of Plaintiff's decades-old delusions are admissible because they might somehow prove that Plaintiff's nine-page confession that matches the crime scene facts is a delusion).

As to Defendants' theory that drugs and alcohol are relevant to damages, this new argument is forfeited for not having been raised before. Regardless, Defendants' reliance on case law in wrongful death cases, which ask juries to specifically address loss of society in awarding damages, are not persuasive here. Plaintiff will not paint an inaccurate picture of his relationship with his family members and thus allegations regarding his alcohol and drug use are irrelevant here, particularly where the jury will undeniably hear that Mr. Chatman purchased and consumed a half pint of gin the morning of his arrest (as that fact is contained in the confession). Defendants' Motion should be denied in its entirety.

## Argument

Defendants' motion is plainly a motion to reconsider, and thus Defendants face a significant uphill battle. "Motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling," *IMI Norgren, Inc. v. D&D Tooling & Mfg., Inc.*, 2003 WL 40499, at *2 (N.D. Ill. 2003) (St. Eve, J.) (citations omitted), and they are viewed unfavorably, *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) ("This Court's opinions are not intended as mere first

drafts, subject to revision and reconsideration at a litigant's pleasure.") (Shadur, J.). "The Seventh Circuit has repeatedly cautioned that 'motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'" *Zurich Capital Markets Inc.*, 383 F. Supp. 2d at 1045 (citations omitted).

A court may grant a motion to reconsider only if: "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191; *see also Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817, 108 S. Ct. 2166 (1988) ("A court should only revisit prior decisions in extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice") (citation and internal quotation marks omitted). In order to be "clearly erroneous," the challenged decision must not just be wrong, but "wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

Defendants' arguments here are neither new nor meritorious, and this Court's prior ruling was correct, and certainly not so incorrect as to strike one with the "force of a five-week-old unrefrigerated dead fish." *Id*. Defendants' Motion must be denied.

I. **Mr. Chatman's Thoughts and Statements About Women Are Not an Element of His Coerced Confession Claim**

Defendants' first argument contains a recitation of the law that is scurrilously close to misrepresentation. Defendants start with the non-controversial proposition that the voluntariness of a confession must be judged by the "'totality of the surrounding circumstances,'" including

3

the suspect's mental health. Motion at 5. From there, Defendants leap to the contention that "when evidence of character is at issue as an element of a claim, Rule 404(b) does not apply." *Id*. But the cases say no such thing; they simply proclaim that if the government in a criminal case has the right to prove, for example, the existence of a conspiracy with evidence of acts taken in furtherance of that conspiracy. *See, e.g., United States v. Bradford*, 905 F.3d 497, 506 (7th Cir. 2018) ("Evidence that Bradford gave Harris the Mossberg rifle to use in a show of force to preserve authority in his assigned drug territory is just this sort of direct evidence of a conspiracy."). None of the Seventh Circuit cases cited by Defendants discuss admitting evidence of character. Knowing this, Defendants pivot seven hundred miles south to the Southern District of Mississippi to claim that "Rule 404(b) 'does not apply when character is at issue in the case, which occurs when possession of a particular character trait is an operative fact in determining the legal rights and liabilities of a party.'" Motion at 5, quoting *Koch Foods, Inc. v. Pate Dawson Co., Inc.*, No. 3:16-CV-355-DCB-MTP, 2018 WL 651371, at *5 (S.D. Miss. Jan. 31, 2018) (internal quotations omitted). The problem is that Defendants falsely claim that *Koch Foods* addressed FRE 404(b), when the court was actually referencing character evidence under FRE 404(a). *Id*. The same is true for the other case cited by Defendants, and relied upon by *Koch Foods*, *Crumpton v. Confederation Life Ins. Co.*, 672 F.2d 1248, 1251-52 (5th Cir. 1982) (explicitly analyzing character evidence under Rule 404(a)). In sum, no case has held that Rule 404(b) is inapplicable to the type of evidence Defendants seek to admit here.

Based on this flawed recitation of the case law, Defendants conclude that they are "permitted by rule to introduce evidence regarding Plaintiff's past mental health episodes." Motion at 5-6.[1] But Defendants' reasoning is as spurious as their reading of the law. Plaintiff's mental health history is relevant to his emotional state because it bears on the effect of

---

[1] Defendants repeat this error at page nine of their Motion.

Defendants' actions toward him during his interrogation; but Defendants fail to explain why cherry-picked statements in his mental health record are relevant. The only possible reason these particular statements (statements about women, sex, or sexual assault) relate is because Defendants wish to argue that because he made these past statements, he acted in conformity with those statements *not during the interrogation* but while supposedly committing the crime for which Plaintiff has been exonerated of even before the existence of the powerful DNA evidence. In other words, Defendants are baldly trying to prove that he committed the crime, rather than admit evidence that might bear on the "totality of the circumstances" surrounding his interrogation. Neither the law nor logic permit Defendants' gambit.

Showing the tenacity of a badly beaten boxer who just will not give up, Defendants then claim that "any delusional character of such admissions would *increase* the probative value and relevance of this evidence under Supreme Court precedent." Motion at 6 (emphasis in original). This is so, say Defendants, because delusional confessions are not *per se* involuntary. *Id*. The problem for Defendants is that while the fact that Mr. Chatman has expressed delusional ideation in the past is relevant – but the content of those delusions is not. Defendants are free to argue to the jury that the nine page confession, which happens to match the crime scene facts (such as the courtroom where the sexual assault supposedly occurred, that scissors were used, that Riggio urinated) is simply a delusion. But Defendants are not allowed to admit the content of past delusional statements to demonstrate that Plaintiff was delusional during his interrogation.

> II. **Cherry-Picked Statements from Mr. Chatman's Mental Health Records are Not Relevant to His State of Mind During the Interrogation and Cannot Be Used to "Corroborate" Defendants' Version**

Defendants set up their next argument by portraying Mr. Chatman as a lifelong sex offender, fixated "on fantasies of sexual violence and overt hostility and violence toward women

5

in particular." Motion at 7. As an initial matter, Defendants' contention (once again) is a stretch. Defendants' primary evidence that Mr. Chatman is fixated "on fantasies of sexual violence" is delusion comments made thirty years ago. The fact is that Mr. Chatman's long-standing mental health issues mean that the parties have reams and reams of mental health records, and thus any number of opportunities to lift one or another interaction to the fore among the hundreds of entries over the decades. The point remains that there are no documented instances of Mr. Chatman actually committing a sexual assault anywhere. Defendants' lack of proof aside, Plaintiff will respond to Defendants' argument, which is frivolous.

Defendants set up a red herring. Defendants rely on *Estate of Escobedo v. Martin*, 702 F.3d 388 (7th Cir. 2012) and other cases to say that evidence establishing a party's "state of mind is routinely admitted to support a defendant's asserted version of the events." Motion at 8. But the relevant state of mind – Mr. Chatman's state of mind during his interrogation – has nothing to do with his supposed sexually violent ideation. The relevant feature of Mr. Chatman's mental status during his interrogation is his thought disorder, namely, schizophrenia. Even if Mr. Chatman was a misogynist or a sexually violent person, which he is not, that fact would not make him more or less likely to confess.

What Defendants are really saying is that it is more likely that Mr. Chatman voluntarily confessed if he in fact raped Riggio, and his supposed sexually violent ideation makes it more likely that he raped Riggio. This is a naked attempt to introduce propensity evidence, and it must be denied.[2] *See, e.g.*, Motion at 9 (claiming that Mr. Chatman's purported history of sexually violent ideation "corroborates" his confession).

---

[2] Moreover, *Escobar* permitted evidence of the decedent's diagnoses – similar to Mr. Chatman's schizophrenia diagnosis. But none of the cases relied upon by Defendants admit the kind of evidence Defendants seek here, such as a notation referencing misogyny in Mr. Chatman's mental health records a

### III. Defendants Are Attempting to use Mr. Chatman's Mental Health Records as Propensity Evidence, not as Evidence of Motive, Intent, or Plan

Next, Defendants retreat to familiar acceptable uses of Rule 404(b) evidence, namely, intent, motive, and plan. Motion at 9-10. First Defendants confuse Rule 404(b) and Rule 413. They cite *United States v. Rogers*, 587 F.3d 816 (7th Cir. 2009), but that case expressly relies upon Rule 413, which concerns the admission of past sexual assault convictions in criminal cases, and Mr. Chatman has no past sexual assault convictions and this is not a criminal case. Indeed, the fact that evidence might be admissible under Rule 413 although forbidden by Rule 404(b) is expressly made in another case relied upon by Defendants, *United States v. Akram*, No. 97 CR 78, 1997 WL 392220, at *2 (N.D. Ill. July 8, 1997) ("This is exactly what Rule 404(b) prohibits, but as explained above, this issue is governed by Rule 413, not Rule 404(b)."). These cases and any of their reasoning is explicitly inapplicable here.

Turning to the one Rule 404(b) case Defendants cite, *United States v. Cunningham*, 103 F.3d 553 (7th Cir. 1996), there the defendant was one of only five nurses who had access to syringes filled with Demoral. *Id*. at 555. In order to demonstrate that Cunningham had a motive to tamper with the syringes that the other four nurses did not, the court admitted evidence of her addiction to Demoral, prior theft of Demoral, and falsification of test results to hide her addiction to Demoral. *Id*. at 557. Unlike *Cunningham*, there is no specific evidence of motive here; certainly no motive evidence that Mr. Chatman had a "taste" for lying in wait for 50 something women in their workplace to sexually assault them, for example.

---

month *after* he, as a person with schizophrenia, was falsely accused of rape and wrongly jailed by a woman. *Escobar* and the like do not permit evidence of past (or future) violence to demonstrate that a person has a propensity for violence.

7

Having scoured the Seventh Circuit and coming up empty, Defendants turn to New Mexico and the Tenth Circuit in hopes of finding fruit. Motion at 10-11. There, Defendants recast the same argument they made in regard to *Escobar* earlier in their Motion, that because Plaintiff's mental state is at issue, evidence of his mental state is admissible. Plaintiff's response is the same: the mental state at issue is Mr. Chatman's psychological vulnerability in the interrogation room. Any purported sexually violent ideation does not make Mr. Chatman more or less vulnerable to the Defendants' interrogation techniques.

### IV. Mr. Chatman is Not A Misogynist, But Even if He Was, Such Evidence is Inadmissible

Defendants' next argument is hard to fathom. As the argument goes, because Mr. Chatman supposedly hates women, he hid from Defendant Midona the fact that he had raped Riggio because Midona was a woman. Motion at 11-12. This Court's standing order setting page limits for motions *in limine* would ordinarily foreclose meritless arguments like this. The leap in logic that would permit the inference Defendants seek here is necessarily toppled by Rule 403, if not Rule 402. And Defendants' reliance on *Thomas v. Landrum*, No. 11 C 09275, 2014 WL 11370447, at *3 (N.D. Ill. Mar. 18, 2014), suffers from the same flaw as their arguments resting on *Escobar* and New Mexican district court opinions: the relevant state of mind is Mr. Chatman's state of mind during his interrogation, and his alleged status as a thinker of violent acts against women does not make him any more or less vulnerable to police interrogation.

### V. Mr. Chatman's Alcohol and Drug Use is Inadmissible

Buried at the bottom of their Motion, Defendants make the first new argument – that Plaintiff's history of drug and alcohol abuse is relevant to his damages. Defendants fail, however, to explain why they did not raise this argument in their initial motion. The argument is

forfeited. *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 610, 612 (7th Cir. 2017) (arguments made for the first time in a motion for reconsideration are forfeited).

Nevertheless, Plaintiff will not present evidence suggesting that Plaintiff's relationship with his family members was anything other than what it was: they loved each other, saw each other intermittently, Mr. Chatman did not live with his family members but stayed with them occasionally. Mr. Chatman will not suggest that he would have been closer or lived with his family but for his wrongful arrest and incarceration.

Defendants' reliance on *Wilson v. City of Chicago*, 758 F.3d 875 (7th Cir. 2014) and *Cobige v. City of Chicago*, 651 F.3d 780 (7th Cir. 2011) is misplaced. In both of those wrongful death cases, "loss of society," defined as "the loss of 'the mutual benefit that each family member receives from the other's continued existence, including love, affection, care, attention, companionship, comfort, guidance and protection.'" *Wilson*, 758 F.3d at 883; *Cobige*, 758 F.3d at 784-85; *accord Egebergh v. Village of Mount Prospect*, 2004 WL 856437, *1 (N.D. Ill. 2004) (also cited by Defendants at page 14 of their Motion). Mr. Chatman's family members cannot claim damages here, and thus these cases are inapposite on the facts of this case.

As to Defendants' citation to *Orlowski v. Eriksen*, No. 07 C 4015, 2009 WL 2366050, at *2 (N.D. Ill. July 31, 2009), and *Mowrey v. City of Fort Wayne*, No. 1:12-CV-121, 2013 WL 6512664, at *6 (N.D. Ind. Dec. 12, 2013), these courts admitted evidence alcoholism or drug abuse to bear on the question of damages, but here Mr. Chatman was sober for the eleven and a half years immediately following his arrest while he was incarcerated. Regardless, Rule 403 comes into play because the jury will already hear evidence that Mr. Chatman has a severe mental health disorder and was drinking gin before 8:30 a.m. on the day of his arrest. Additional

evidence of his alcohol use is of limited cumulative probative value but bears the danger of undue prejudice against Mr. Chatman.

Defendants' argument that because Dr. Russano references Mr. Chatman's alcoholism in her report, they should get to talk about it. The problem for Defendants is that in the context of Dr. Russano's report, Mr. Chatman's alcoholism made him more susceptible to police coercion. Thus, there is no discernable benefit that Defendants derive from examining Dr. Russano regarding Mr. Chatman's alcoholism, apart from making him look bad in front of the jury. Rule 403 bars this attempt.

Lastly, Defendants perfunctorily state that Mr. Chatman's prior criminal history, which is relatively sparse for a then-48 year-old homeless man with a significant mental health disorder, is relevant. But Defendants omit the how in stating that Mr. Chatman's prior criminal history is relevant, and thus the argument is forfeited. Regardless, the reason Defendants do not supply the how is because there is not one. There is no evidence, for example, that Mr. Chatman had been interrogated before, or had been to a detective area, or any other such experience that would relate to the facts presented in this case. There is no reason to reconsider here.

**Conclusion**

For the foregoing reasons, Defendants' ill-fated motion for reconsideration should be denied in its entirety.

Respectfully submitted,

/s/ Russell Ainsworth
Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Russell Ainsworth
Rachel Brady
LOEVY & LOEVY
311 N Aberdeen, 3rd Floor
Chicago, IL 60607

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
(720) 328-5642

## **CERTIFICATE OF SERVICE**

I, Russell Ainsworth, an attorney, certify that on November 11, 2018, I filed the foregoing Response using the Court's CM/ECF filing system, which effected service on all counsel of record.

/s/ Russell Ainsworth
One of Plaintiffs' Attorneys