```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3   CARL CHATMAN,                  )
                                    )
 4                  Plaintiff,      )
                                    )
 5           v.                     )
                                    )
 6   CITY OF CHICAGO; Chicago Police )
     Detectives JOHN ROBERTS, THOMAS )
 7   McGREAL, MARIA PENA, JACK BOOCK, )
     RITA MISCHKA, BARBARA MIDONA    )
 8   and KRISTON KATO; Chicago Police )
     Sergeants DENNIS WALSH and BRYAN )  Docket No. 14 C 2945
 9   HOLY; Chicago Police Officers   )
     MICHAEL KARCZEWSKI and RICHARD  )
10   GRIFFIN; Cook County Sheriff's  )
     Deputies MICHAEL COKELEY and    )   Chicago, Illinois
11   BURROUGH CARTRETTE; Sheriff's   )   November 14, 2018
     Deputy Sergeant MARIA MOKSTAD   )   3:00 o'clock p.m.
12   Assistant State's Attorney BRIAN )
     HOLMES; UNKNOWN CHICAGO POLICE  )
13   OFFICERS; UNKNOWN COOK COUNTY   )
     SHERIFF'S DEPUTIES; THE COUNTY  )
14   OF COOK; THOMAS DART, in his    )
     official capacity as Sheriff of )
15   Cook County; ANITA ALVAREZ, in  )
     her official capacity as Cook   )
16   County State's Attorney; SUSAN  )
     RIGGIO; KAREN WOJTCZAK, former  )
17   Office of Professional Standards )
     Investigator; MILLICENT WILLIS, )
18   former Acting Chief Administrator)
     of the Office of Professional   )
19   Standards; and LORI LIGHTFOOT   )
     and TISA MORRIS, former Chief   )
20   Administrators of the Office of )
     Professional Standards,         )
21                                   )
                    Defendants.      )
22
                          VOLUME TWO
23        TRANSCRIPT OF PROCEEDINGS - PRETRIAL CONFERENCE
                 BEFORE THE HONORABLE JOHN Z. LEE
24

25
```

```
 1   APPEARANCES:

 2   For the Plaintiff:          LOEVY & LOEVY, by
                                 MR. RUSSELL R. AINSWORTH
 3                               MS. RACHEL ELAINE BRADY
                                 311 North Aberdeen Street
 4                               3rd Floor
                                 Chicago, Illinois 60607
 5

 6   For the Individual Police   BORKAN & SCAHILL, LTD., by
     Officer Defendants:         MR. TIMOTHY P. SCAHILL
 7                               MS. KRISTA ELEANORE STALF
                                 MR. STEVEN BLAIR BORKAN
 8                               MS. CHRISTIANE MURRAY
                                 20 South Clark Street
 9                               Suite 1700
                                 Chicago, Illinois 60603
10
     For Defendant City of       REITER BURNS LLP, by
11   Chicago and Wojtczak:       MR. PAUL A. MICHALIK
                                 MR. TERRENCE MICHAEL BURNS
12                               311 South Wacker Drive
                                 Suite 5200
13                               Chicago, Illinois 60606

14   For Defendant Riggio:       BOLLINGER CONNOLLY KRAUSE LLC, by
                                 MR. JEREMIAH P. CONNOLLY
15                               500 West Madison Street
                                 Suite 2430
16                               Chicago, Illinois 60661

17   Court Reporter:             MR. JOSEPH RICKHOFF
                                 Official Court Reporter
18                               219 S. Dearborn St., Suite 1232
                                 Chicago, Illinois  60604
19                               (312) 435-5562

20
               * * * * * * * * * * * * * * * * *
21
                      PROCEEDINGS RECORDED BY
22                    MECHANICAL STENOGRAPHY
                   TRANSCRIPT PRODUCED BY COMPUTER
23

24

25
```

1    THE CLERK:  Case 14 CV 2945, Chatman vs. Roberts.

2  For pretrial conference.

3    THE COURT:  Would the attorneys please rise and

4  identify themselves for the record.

5    MR. AINSWORTH:  Good afternoon, your Honor, Russell

6  Ainsworth on behalf of the plaintiff.

7    MS. BRADY:  Good afternoon, your Honor, Rachel Brady

8  on behalf of plaintiff.

9    MR. SCAHILL:  Good afternoon, your Honor, Timothy

10  Scahill on behalf of the individual defendant police officers.

11    MS. STALF:  Good afternoon, Krista Stalf also on

12  behalf of the defendant officers.

13    MR. BORKAN:  Good afternoon, Judge Lee, Steve Borkan

14  on behalf of the individual officers.

15    And, Judge, you may recall last time we were in

16  court, my colleague Christiane Murray had passed the bar but

17  had not been sworn in.  Has now been sworn in, but even though

18  you were gracious enough to allow us to file a provisional

19  appearance, it appears that you cannot do that unless you have

20  an ARDC number, which Ms. Murray is told she will not get

21  until next week.  So, with your indulgence, we will file that

22  appearance next week?

23    THE COURT:  That's fine.

24    MR. BORKAN:  Thank you, Judge.

25    THE COURT:  Congratulations.

 1          MS. MURRAY:  Thank you, your Honor.

 2          Christiane Murray on behalf of the defendant

 3   officers.

 4          MR. MICHALIK:  Paul Michalik and Terry Burns on

 5   behalf of the City of Chicago.

 6          MR. BURNS:  Good afternoon, Judge.

 7          MR. CONNOLLY:  Jeremiah Connolly on behalf of Sue

 8   Riggio.

 9          THE COURT:  All right.  So, what's going on,

10   Mr. Ainsworth?

11          MR. AINSWORTH:  Your Honor, perhaps we could address

12   the issue with Mr. Connolly so we can resolve that.

13          I can report that we have reached an agreement in

14   principle with Mr. Connolly, on behalf of his client

15   Ms. Riggio, that will resolve all of plaintiff's claims

16   against that defendant.  We are comfortable, given the

17   agreement that we've reached -- we still have to reduce it to

18   writing, but that because we have an agreement in principle --

19   not having Ms. Riggio participate in this trial based on the

20   terms of that agreement that have been worked out between us.

21          THE COURT:  Okay.

22          So, are you dismissing her now?

23          MR. AINSWORTH:  So, we'd ask leave of Court to

24   dismiss Ms. Riggio without prejudice and allow us to have time

25   over the next week to get the settlement documents done.

1          THE COURT:  Okay.

2          So, you think you'll be able to get it done by

3    Wednesday of next week?

4          MR. AINSWORTH:  If I can just consult with --

5          THE COURT:  If it's not done, she's going to trial.

6    Okay?  We've spent too much time and I have -- at present

7    count, I have 54 people who are coming, potential jurors, who

8    have committed to the four weeks.  So, I'm not going to do

9    that again.  And if it's not resolved, if she's not dismissed

10   by Wednesday, she's going to trial.

11         MR. AINSWORTH:  Very good, your Honor.

12         THE COURT:  Do you want to take a moment?

13         MR. AINSWORTH:  No.  I think that answers the

14   question.

15         MR. CONNOLLY:  We'll get it done, Judge.  It's

16   paperwork.  We should be able to get it done.  I'm confident

17   we'll get it done.

18         MR. AINSWORTH:  And hopefully we'll get it done by

19   this Friday.

20         THE COURT:  That's fine.

21         MR. CONNOLLY:  Okay.  Thank you.

22         MR. BORKAN:  We'll try to get the entire thing done

23   by then, Judge.  We're still arm wrestling.

24         THE COURT:  That was my next question.

25         MR. BORKAN:  Right.  I anticipated that.

1        THE COURT:  And I understand.  And here's the deal.

2   First of all, I'm really looking forward to trying this case,

3   as are my clerks, actually.  We're all very much looking

4   forward to trying this case.  Much of it is just that -- I

5   don't have to tell you guys -- a lot of work has gone into

6   this case from everyone, and the issues are interesting; but,

7   if the parties are able to come to a resolution prior to

8   trial, all the better.  Okay?

9        The only caveat I have is that if you arrive at a

10  settlement and if you don't tell me by close of business on

11  Tuesday, I'm going to assess the costs of the jury equally to

12  both sides if it settles before we seat the jury.  Because it

13  costs a lot of money to have 54 people come in on Monday.  And

14  I don't want you to tell me on Sunday night or Monday morning

15  when we begin voir dire.  You can.  That's fine.  I'd gladly

16  accept a settlement and a stipulation of dismissal.  But if

17  you do, I just want you to know that I'm going to assess the

18  costs of having the jury come in equally to both sides.  Okay?

19       In the overall scheme of things, it's probably not

20  that much compared to whatever figures you guys are talking

21  about.  But I just need to do that because that's something

22  that the Court administratively likes to do, and so that we

23  can save the government some money.  Okay?  So, just keep that

24  in mind.

25       With regard to settlement itself, while I'm looking

1   forward to the trial, I strongly encourage you to settle this

2   case, as well.  So, keep on working at it.

3          MR. AINSWORTH:  We have sat down twice in person, and

4   it does not appear like, at this point, that it will settle.

5          THE COURT:  Okay.  There's still time.

6          MR. BORKAN:  There is.  I think Mr. Ainsworth is

7   being pessimistic.

8          THE COURT:  We'll see.  We'll see.  Okay?

9          In the meantime, we're going to proceed to trial

10  unless I hear differently from the parties.

11         MR. BORKAN:  My only other question, Judge, I don't

12  know if your Honor would consider, you know, attempting to

13  mediate a final deal.  We are in -- what I think is very, very

14  close, but that's always a matter of perception and

15  perspective.

16         But I didn't know if your Honor was -- you know, even

17  did that -- entertained that sort of thing.  I know other

18  district court judges do that regularly.  I'm not familiar

19  with your Honor.

20         MR. AINSWORTH:  We are not close.  And we have sat

21  down with Rocco Spagna of the Seventh Circuit Mediation, who

22  is a very skilled mediator.  We have sat down with him twice.

23  And I would have concerns about the Court being involved in

24  mediation at this stage in the proceedings.

25         THE COURT:  And, frankly, I just don't think I could

1    fit it in my schedule between now and the trial.

2              MR. BORKAN:  Understood.

3              The other --

4              THE COURT:  So, I have a full day on Monday, and I

5    have an evidentiary hearing in a criminal case on Tuesday.

6              MR. BORKAN:  The only other great concern I had,

7    Judge -- and I'm sure we're going to address this at some

8    point, but I'd be remiss if I didn't bring it up; and, that

9    is, with 135 witnesses, even at five a day, that's 27 trial

10   days, even if we were able to get five a day, which five a day

11   isn't realistic in these types of cases.  Mr. Ainsworth and I

12   have both tried these types of cases.  Doing five witnesses a

13   day just isn't realistic.  It's, quite frankly, near

14   impossible.  And that's still, at 135, if we are to really

15   call everybody on that list, is 27 trial days without anything

16   else done.

17             MR. AINSWORTH:  We have time limits.  And, so, we

18   will use that time judiciously to present the evidence that we

19   need to present.  And I think that answers the question.

20             THE COURT:  And when is the last time that -- I can't

21   remember any trial I presided over where the parties actually

22   called everyone on the witness list anyway.

23             So, talking about time limits, if Ms. Riggio and the

24   plaintiffs do agree to a settlement, the new time limits are

25   as follows --

```
 1              MR. AINSWORTH:  She willed her hours to me, your
 2   Honor.
 3              THE COURT:  As part of the settlement?
 4       (Laughter.)
 5              THE COURT:  It doesn't work that way.
 6              MR. BORKAN:  That's comforting.
 7              THE COURT:  So, I allotted her 12 hours.  Just to
 8   tell you my thinking, I reduced that by six; I added that to
 9   the overall pool; and, I split the pool half and half.
10              So, each side will get 33 hours of examination time.
11   Each side will get three peremptories now.
12              I gave you guys a draft jury questionnaire.  Are
13   there any objections or comments with regard to that jury
14   questionnaire?
15              MR. AINSWORTH:  Just a couple comments, your Honor.
16   And it's subject to room, being able to fit on the space the
17   Court has provided.  But we would ask that if there's a check
18   box could be added to see if they were the foreperson of the
19   jury, if they were a jury member previously.
20              THE COURT:  Any objection to that?
21              MR. SCAHILL:  No.
22              THE COURT:  So, I will say yes provisionally,
23   assuming I can fit it on a double-side page.  Okay?
24              MR. AINSWORTH:  The other is to ask about -- when you
25   ask about employment history and spouse's employment history,
```

 1    also to ask about ex-spouse history -- employment history.  I

 2    don't mind limiting it to a spouse where a marriage lasted

 3    for, you know, ten years or more, but it could be very

 4    pertinent information.

 5              THE COURT:  Any objection to that?

 6              MR. SCAHILL:  More information is better, I suppose.

 7    If it can be fit on there, I don't know that we have a problem

 8    with that.

 9              THE COURT:  All right.

10              So, I will revise 11 to say, "If you are married or

11    have been married, describe your spouse or ex-spouse's

12    occupation, employer," blah-blah.  Okay?

13              MR. AINSWORTH:  Very good.

14              THE COURT:  Anything else from plaintiff?

15              MR. AINSWORTH:  Not that I can recall, Judge.

16              THE COURT:  Anything from defendant?

17              MR. SCAHILL:  We didn't have anything, Judge.

18              THE COURT:  Okay.

19              All right.  So, let's go to the remaining motions in

20    limine.

21              So, the first one on my list is Document 725.  That's

22    Plaintiff's Motion in Limine No. 12.  That is to exclude

23    evidence from Assistant State's Attorneys Hovey and Papa about

24    the various re-investigations.

25              So, the officer defendants say that they want to

1   offer the procedural history and processes culminating in the

2   entry of a Certificate of Innocence/vacatur of the conviction

3   in order to show what it actually established and what it did

4   not.

5           So, tell me, what sort of evidence would that consist

6   of?

7           MR. SCAHILL:  So, this concept of putting in evidence

8   about the procedure and the arguments and the evidence that

9   are submitted in support of those particular procedural

10  dispositions, both the vacatur and the COI, is something that,

11  to my knowledge, is -- has been done in all of these cases

12  that have been tried involving COIs, including one that I

13  tried last year.  And Judge St. Eve addressed this in the

14  Harris case, as well.

15          So, what we want to do is essentially akin to that.

16  What we want to do is we want the jury to hear -- see the

17  arguments that have been made; be presented with the evidence,

18  perhaps, that was considered by the judge in granting the COI;

19  talk about the procedure, as far as whether there was a

20  hearing, whether there was witnesses put on, whether there was

21  cross-examination, who is entitled to participate in that

22  particular procedure and who is not, and things, you know,

23  along those lines.

24          I'm probably missing some procedural machinations

25  here and there, but that is the essence of what we seek to do.

1              And I guess what the argument is with respect to that

2   is pretty much exactly what your Honor had said in your

3   ruling, which is that it's evidence.  It's not binding.  But

4   like evidence, it can be -- the weight of it can be --

5   minimized.  It can be explained.  And that's the way to do it.

6   And that's the way that I've done it in the case that I tried

7   last year and, my understanding, is the way that was done in

8   the Harris case, as well.

9              So, essentially, that's what we would be doing.

10             THE COURT:  And, so, who would be putting that

11  evidence in?

12             MR. SCAHILL:  Primarily, it would be Mr. Papa.  To

13  some extent, I suppose the defendant officers, as well, as far

14  as their participation; and, that's more negative evidence

15  than positive evidence.  But Mr. Papa was the state's attorney

16  who was directly involved in that aspect of it from the

17  state's attorney's end.

18             And just so we're clear, nobody is going to put Jim

19  Papa on the stand, much less Anita Alvarez, and say, "Why did

20  you do this?" or, you know, Judge Biebel and say, "Why did you

21  do this?"  That's just -- that's not the way that it works.

22  It's to just put in the process.

23             So, it would primarily be Jim Papa.  There may be

24  some requests for judicial notice with respect to pleadings

25  and the like.  I, of course, wouldn't like to call

1    Mr. Ainsworth as a witness.  He was the attorney on the other

2    side on that.  But there still is pleadings that were filed on

3    behalf of Mr. Chatman with respect to those things.

4         So, that's primarily what it would be.  To a lesser

5    extent, Mr. Hovey, I suppose, but primarily Mr. Papa.

6         THE COURT:  What would Mr. Hovey, what would he have

7    to add to the procedures and processes before the court when

8    it comes to the vacatur and the COI?

9         MR. SCAHILL:  So, his was a much lesser role in the

10   sense that he was in charge of the first re-investigation.

11   And the significant aspect about that wasn't so much what was

12   done but what wasn't done.  In other words, there was an

13   investigation completed and there was no vacatur, and then

14   later on, of course, there was.  So, that's essentially what

15   the procedural aspect of what Mr. Hovey will testify about.

16        Now, the other aspect, of course, is these two

17   witnesses have spoken to other trial witnesses.  So, there's

18   another aspect to this with impeachment and admissions and the

19   like.  But as far as the procedures are concerned, that, in

20   essence, is what it would be from Mr. Hovey with respect to

21   the process.

22        THE COURT:  I guess with regard to Mr. Hovey, if

23   we're focused on the issuance of the COI and the order

24   granting the vacatur motion, it's hard to fathom what

25   relevance Mr. Hovey would have to those determinations.

1    Because I'm assuming that the judge didn't see -- didn't hear

2    from Mr. Hovey and Mr. Hovey didn't present the judge with any

3    particular information that -- and that the information that

4    the judge considered in both those instances was information

5    that was provided by Mr. Chatman's counsel and with the AUSA

6    who was in charge of those particular proceedings.

7              MR. SCAHILL:  Well, that's true.

8              I suppose the way that I'm looking at it is that

9    there -- for Mr. Hovey to get involved, I believe there was a

10   post-conviction petition of some sort filed and it was

11   investigated.  And the procedural aspect about it that's

12   significant to us is one of the parts that's significant

13   eventually with the COI and the vacatur, which is the state's

14   attorney not taking a position.

15             THE COURT:  But the state's attorney's decision to

16   take a position is exactly what you said you weren't going to

17   ask them, right?

18             And, so, are you going to ask Dick Devine to come in

19   and to explain why, during that first investigation, they

20   didn't pursue a vacatur motion?

21             MR. SCAHILL:  Well, so --

22             THE COURT:  I mean, I think if you -- I'm viewing

23   it -- it seems to me that the right perspective to view it is

24   to view it towards -- from the perspective of the judge that

25   granted the motion and granted the COI.

1    So, if the argument is -- hypothetically speaking,

2 let's say the judge received a one-page motion and just says,

3 Judge, you know, we just think it's the right thing to do, and

4 the judge granted the COI.  You know, I think that you would

5 have an argument that, look, you know, the jury should be

6 entitled to consider that because it helps them kind of weigh

7 what went into that -- what was presented to the judge that

8 led to the COI.  Right?

9    But for information that Mr. Hovey considered, I

10 mean, I don't see how that's at all relevant to what

11 information was or wasn't presented to the Court that led to

12 the issuance of a COI and the granting of a vacatur motion.

13    MR. SCAHILL:  So, I guess the response that I would

14 have to that is one of the -- what we believe is the

15 significant procedural aspects of the granting of the COI is

16 the fact that the State's Attorney's Office is the only party

17 by statute that's allowed to actually object to that, call for

18 a hearing, and so on, so forth.  And, so, while --

19    THE COURT:  And they didn't, right?

20    MR. SCAHILL:  That's true.

21    THE COURT:  And that's what the judge knows.

22    And, so, I still don't see what it is that Mr. Hovey

23 can provide related to the actual issuance of the COI and the

24 granting of the vacatur motion that would be relevant to this

25 case.  I mean, if we go down the path of, you know, what

1   administration -- and this is what I said before.  If one

2   administration did or did not, then we get into why they

3   didn't do it, why they did; and, it just, to me, gets into

4   this whole collateral sideshow that will just unnecessarily

5   delay the trial and just be really confusing to the jury.  So,

6   I don't know.

7           Mr. Ainsworth, let me hear from you.

8           MR. AINSWORTH:  I agree.

9           I mean, I guess in terms of trying to fashion an

10  appropriate order to govern plaintiff's motion in limine, we

11  would -- we think that for the reasons the Court has stated --

12  and I won't belabor them -- Mr. Hovey should not be allowed to

13  testify.

14          We could live with Mr. Papa testifying as to the

15  steps that he took that led to his seeking to vacate Mr.

16  Chatman's criminal conviction and not opposing Mr. Chatman's

17  Certificate of Innocence.

18          THE COURT:  And the things that he didn't consider?

19          MR. AINSWORTH:  And if there are things that he did

20  not consider in that investigation, then I -- you know, that

21  would be fair game.

22          MR. SCAHILL:  Well, and the -- your Honor already

23  spoke on this, but the issue is -- as your Honor said, is --

24  more from the perspective of the court.  Certainly for

25  Mr. Papa, I agree -- believe it or not -- agree with some of

1    what Mr. Ainsworth said with respect to that.  But also what

2    is submitted to the judge, what the judge considers and, you

3    know, what he doesn't, of course, is, I think, probative of

4    that, too.

5            And I don't think Mr. Ainsworth is arguing to the

6    contrary, but they're two separate and distinct steps.

7            THE COURT:  Right.

8            I mean, I think that we don't know exactly, I

9    suppose, what the judge actually considered, but I think you

10   can present what was or was not presented to the court, right?

11           MR. SCAHILL:  Right.

12           MR. AINSWORTH:  The only caveat, Judge, is that I

13   would not want Mr. Papa to be questioned about what steps he

14   took vis-a-vis Mr. Hovey's investigation.

15           THE COURT:  Right.

16           All right.  So, Plaintiff's Motion in Limine No. 12,

17   Document 725, is granted, in part, and denied, in part.

18           So, evidence pertaining to any re-investigation that

19   did not result in the vacatur of the conviction or the

20   issuance of a Certificate of Innocence -- that is, testimony

21   of Mr. Hovey -- I find to be irrelevant.  And to the extent it

22   is relevant, I think that under Rule 403 it's, number one,

23   likely to confuse the issues before the jury; and, number two,

24   would really prolong the trial unnecessarily.

25           However, as Mr. Ainsworth said, evidence pertaining

1    to the re-investigation, including what was or was not

2    presented to the judge, may be relevant to address the weight

3    of the Certificate of Innocence and the vacatur order.  And,

4    so, with regard to that evidence, I'm going to allow that

5    evidence in.

6              So, that's my ruling with regard to that.

7              MR. SCAHILL:  Judge, one clarification?

8              THE COURT:  Yes.

9              MR. SCAHILL:  The secondary aspect of that was to bar

10   them from testifying about communications with witnesses.  I

11   assume that's fair game, as anyone would be able to impeach

12   witnesses with prior statements and admissions and the like?

13             THE COURT:  Describe for me what you mean.  So,

14   what's the question?

15             MR. SCAHILL:  Mr. Papa, for example, interviews

16   Mr. Chatman, or somebody else, and they tell him A, B, C, and

17   D happened.  And, then, that person takes the stand and they

18   say A, B and C happened, but D didn't happen, and I never told

19   Mr. Papa that.  Mr. Papa gets to get on the stand and say, no,

20   they told me A, B, C, and D.

21             It's like any other witness.  And, of course, if it's

22   a party, it's an admission if it's the party opponent.

23             That was mentioned in the motion as potentially

24   something we shouldn't be able to do.  And, obviously, this

25   happens all the time, even when the sum total of

1    investigations aren't brought in, because it's simply a prior

2    statement.

3           MR. AINSWORTH:  We were seeking to bar hearsay, and

4    impeachment would not be considered hearsay under these

5    purposes.

6           What we're talking about barring is asking Mr. Papa

7    everything that Jeanette Neibauer told him and having him just

8    relate what another witness who will testify at trial has

9    said, with no impeaching quality to it.

10          THE COURT:  Is Mr. Papa going to be getting on the

11   stand after all of the officers?  Do we know at this point the

12   order?

13          MR. AINSWORTH:  Well, that's me.

14          That would be my expectation.

15          THE COURT:  Okay.

16          With regard to that, I'm going to have to take that

17   under advisement because I want to see how the evidence comes

18   in.  Right?  Because, you know, if the purpose of offering the

19   evidence is to show Mr. Papa's state of mind in going forward

20   with the Certificate or with a motion, then, arguably, it's

21   not hearsay because it goes to state of mind; but, there's

22   always Rule 403 that deals with prejudice, undue delay,

23   whether it's cumulative.  And, so, I'll have to see how the

24   evidence comes in.

25          MR. AINSWORTH:  But how is the state of mind

1   relevant, is my issue.

2          If the Court's inquiry is focused on what Judge

3   Biebel knew and had, what -- Mr. Papa's state of mind doesn't

4   enter into that.  What we're talking about is the steps that

5   he took.  So, that it was a fulsome investigation or it was

6   not a fulsome investigation, and then he took a position

7   before Judge Biebel.  But we're not getting into the why.

8          THE COURT:  Well, I assume that -- maybe I'm wrong,

9   but I assume the parties are going to ask him why he took

10  certain steps in the investigation and why he didn't take

11  other steps.

12         MR. SCAHILL:  Well, so, the why aspect, the State's

13  Attorney's Office -- there's a difficult answer to that

14  question.  And I think what the answer that Judge Valdez

15  landed on when we -- there was a protective order -- was that

16  you can ask Mr. Papa -- actually, I think it's Papa, is how he

17  prefers -- but that you can ask him about what he considered.

18  But as far as why didn't you object to this, why didn't you do

19  this, that was verboten; it was deliberative process.  So,

20  facts were okay; the thought process not.

21         However, this issue that Mr. Ainsworth raised with

22  respect to the state of mind of Mr. Papa, that -- what he

23  considered is a fact.  So, if it's Jeanette Neibauer or

24  somebody else said something to him and that was one of the

25  facts that he based it on, that was fair game.

1          We're dancing on the head of a pin a little bit, but

2     that's what Judge Valdez allowed the parties to do as far as

3     discovery and, I believe, what's been permitted on --

4          THE COURT:  I guess I'll have to see how the evidence

5     comes in and see how it comes out.  But my initial reaction --

6     my advisory reaction at this point is that if you invoke

7     deliberative privilege, then it's going to be out of bounds.

8     I'm not going to let one party invoke deliberative privilege

9     and then use the deliberative process to get around hearsay

10    objections.  Because then there's no way it could have pursued

11    that in discovery, right?

12          And, so, that's my preliminary thoughts.  But we'll

13    see.  We'll see.

14          So, with regard to, moving on, Plaintiff's Motion

15    748, which is the motion to vacate order barring Welner from

16    testifying about plaintiff's innocence, what is defendants'

17    position as to that?

18          MR. SCAHILL:  Well, first of all, I -- my first

19    question was I didn't know what they were talking about,

20    because there wasn't a citation to where Dr. Welner said the

21    plaintiff is innocent.  But even if that is in there somewhere

22    -- and I don't recall it being in there -- this was an issue

23    that was addressed with respect to Dr. Russano, as well.  I

24    mean, unless there's an argument that Dr. Welner is in that

25    room, he can't say whether he's innocent or not, nor is he

1  purporting to do that.

2      So, I don't think that's ever fair game, and I just

3  didn't see what they were talking about.  But even if it said

4  exactly what's written in the motion, I don't think that's an

5  appropriate testimony.

6      MR. AINSWORTH:  So, Ms. Riggio initially moved to bar

7  and I -- we characterized the statements as admitting

8  innocence.  But they -- you know, if you look at the

9  transcript, it comes pretty darn near it.  And that's what the

10  Court barred, was exactly that.  So, that's what we're seeking

11  to vacate.

12      Those statements are party admissions on behalf of

13  the defendant officers that were made by Mr. Welner in his

14  testimony.  And, so, that's the distinction between

15  Dr. Russano and Dr. Welner, is that they're not trying to --

16  we wouldn't be able to admit our own admissions, but we can

17  admit an opposing party's admissions.  And, so, that's why

18  we're seeking to admit Dr. Welner's statements.

19      And the case law is uniform that statements by their

20  expert are fair game to introduce at a trial regarding an

21  issue that's certainly relevant to the case.

22      And on top of that, we need to be able to

23  cross-examine Dr. Welner about his opinions, because he says

24  that Dr. -- Mr. Chatman was unable to regurgitate a false

25  confession because his mental illness would be so great that

1  he couldn't possibly comprehend all these facts; and, so, one

2  possible reason for why Mr. Chatman -- why it makes it more

3  likely that Mr. Chatman regurgitated confessions is because he

4  is, in fact, innocent, as Dr. Welner has essentially admitted

5  in his deposition.

6      And, so, it would be unfair for us not to be cross --

7  not to be able to cross-examine Dr. Welner on that exact

8  point.

9      THE COURT:  All right.  So --

10      MR. AINSWORTH:  And just to finish the point, they

11  haven't pointed to anything that says that Dr. Welner's

12  testimony is not a party admission.

13      THE COURT:  Hold on.  I'm not going to let Dr. Welner

14  testify as to his view of Mr. Chatman's innocence.

15      So, Ms. Riggio's motion to bar portions of

16  Dr. Welner's testimony was filed in May, 2018, prior to

17  plaintiff's own motion to bar Mr. Welner's testimony entirely.

18  It seems to me that plaintiff could have incorporated the

19  arguments he now makes into his motion to bar Dr. Welner's

20  testimony, or he could have filed a response to Ms. Riggio's

21  motion.  Given that he did neither, first of all, I deem the

22  arguments waived.  But in any event -- and for that, I cite to

23  Bonte v. U.S. Bank, 624 F.3d 461 at 466, Seventh Circuit,

24  2010.

25      But in any event, Dr. Welner will not be permitted to

1   testify as to whether the plaintiff is innocent.  The Court

2   imposed the same bar on plaintiff's expert, Dr. Russano; and,

3   I believe that allowing Dr. Welner to testify as to that issue

4   would really confuse the jury, given that that's something

5   that is up to the jury to consider.

6          So, on that basis, the motion is denied.

7          So, then turning to Officer Defendants' Motion in

8   Limine No. 2, which is 641, that's with regard -- dealing with

9   the motion to bar reference to 404(b) conduct of Officer Kato.

10  And the parties, at my request, filed some supplemental

11  memoranda to address this.

12         So, first of all, it's granted as to the CRs.  None

13  of the allegations in the CRs were sustained.  Unfounded or

14  unsustained allegations in CRs previously filed against a

15  police officer have limited probative value.  See example

16  Cazares v. Frugoli, 2017 Westlaw 4150719 at Page 10, Northern

17  District of Illinois, September 19, 2017; Holmes v. City of

18  Chicago, 2016 Westlaw 6442117 at Page 3, Northern District of

19  Illinois, November 1, 2016.

20         The limited probative value of the CRs is

21  substantially outweighed by the danger of unfair prejudice

22  that would result from their admission.  Therefore, I'm going

23  to bar them under Rule 403.

24         With regard to the witnesses that will testify as to

25  Officer Kato's purported prior incidents of physical violence

 1    against criminal defendants or people that are in custody,

 2    with regard -- there are three witnesses that are at issue.

 3    First, there's Frederick Seaton; second is Michael Wasilewski;

 4    and, third is Daniel Gasca.

 5            With regard to Mr. Seaton, defendants' motion in

 6    limine is denied.

 7            Mr. Seaton will testify that he was arrested, taken

 8    to Area 4, locked in an interrogation room, and handcuffed to

 9    the wall.  He will testify that defendant Kato subsequently

10    entered the room and asked him for information about a crime

11    that he did not commit.  He will testify that when he denied

12    knowledge of the crime, defendant Kato struck him in the head,

13    neck and groin.  Mr. Seaton will testify that in order to

14    avoid far more abuse, he confessed, at which point he was

15    provided with details about the crime.

16            Critically and significantly, defendant Kato is not

17    listed on the paperwork in Mr. Seaton's case as the detective

18    who obtained the confession; rather, two other officers' names

19    were listed.

20            Mr. Seaton's proposed testimony bears numerous

21    striking similarities to plaintiff's allegations here.

22    Mr. Chatman also alleges that he was arrested, taken to Area

23    4, locked in an interrogation room, and handcuffed to the

24    wall; and, that defendant Kato entered the room and asked for

25    information about a crime that Mr. Chatman says he did not

1    commit.

2         Additionally, Mr. Chatman alleges that, like Mr.

3    Seaton, defendant Kato struck him in the head.  He also claims

4    that he confessed to avoid further attacks, at which point

5    defendant Kato provided him with details about the crime.

6         And, as in Mr. Seaton's case, Officer Kato's name did

7    not appear in the police paperwork, which states that Officer

8    Roberts was one who obtained plaintiff's confession.

9         Contrary to defendants' arguments, I find that

10   Mr. Seaton's testimony is not barred by Rule 404(b) and United

11   States v. Gomez, 763 F.3d 845, Seventh Circuit, 2014, because

12   plaintiff has established in a way that does not rely on

13   propensity inference that this evidence is proof of modus

14   operandi and identity.

15        Other act evidence is permissible to prove a

16   defendant's identity through a distinctive manner of operation

17   or modus operandi.  That's Gomez at 853.

18        In this case, the identity of the officer who

19   allegedly beat plaintiff is at issue because defendant Officer

20   Kato denies ever interacting with Mr. Chatman while he was at

21   Area 4, thus other act evidence is permissible to prove the

22   officer's identity through modus operandi if it is

23   sufficiently similar and idiosyncratic.  Mr. Seaton's

24   testimony provides such evidence.

25        It describes another instance in which an Asian

1     police officer at Area 4 entered an interrogation room, struck

2     a suspect in the head and coerced a confession, all without

3     appearing as a named detective on the relevant paperwork.

4     This evidence is probative of identity without relying upon

5     propensity inference.

6           As to the other two witnesses, however, the motion is

7     granted.

8           In contrast to Mr. Seaton, Mr. Wasilewski and Mr.

9     Gasca's testimony is not sufficiently idiosyncratic to prove

10     identity through modus operandi.  Although Mr. Wasilewski and

11     Mr. Gasca both describe being locked in an interrogation room

12     at Area 4, handcuffed to the wall and physically abused by

13     Officer Kato, their interactions with Officer Kato were

14     documented in relevant police paperwork; and, thus, their

15     counts are too general to provide the idiosyncrasy that is

16     required.

17           Plaintiff's argument that the testimony may be used

18     to impeach Officer Kato, too, is unpersuasive.  Rule 608(b)

19     prohibits extrinsic evidence to prove specific instances of a

20     witness' conduct, except for criminal convictions admissible

21     under Rule 609.

22           Furthermore, even though Rule 608(b) states that such

23     acts may be inquired into on cross-examination, that applies

24     only to acts that are probative of a witness' character for

25     truthfulness or untruthfulness.  Allegations of violence do

1  not fit within this category.  See Varhol, V-a-r-h-o-l, vs.

2  National Railroad Passenger Corporation, 909 F.2d 1557 at

3  1567, Seventh Circuit, 1990.

4         So, therefore, plaintiff may not cross-examine

5  Officer Kato about those incidents unless, of course, for

6  whatever reason, Officer Kato opens the door.

7         So, that's my ruling with regard to that motion in

8  limine.

9         Turning to Defendants' Motion in Limine No. 743,

10  motion to amend prior ruling on 404(b) evidence on defendant

11  Riggio regarding the 1979 rape allegation civil suit.

12         That motion is denied.  Although Ms. Riggio's state

13  of mind is no longer relevant to any claims or defense in this

14  suit, plaintiff's innocence is still relevant to his malicious

15  prosecution claims against the officer defendants, his coerced

16  confession claims, his Brady claims, and his damages.  The

17  Court has already ruled on the admissibility of this evidence.

18         To the extent defendants present evidence that

19  Ms. Riggio was raped by Mr. Chatman, Mr. Chatman is entitled

20  to rebut that evidence with his own evidence of innocence,

21  including evidence that relates to his theory that the rape

22  was fabricated by Ms. Riggio.

23         Finally, Defendants' Motion in Limine No. 745, the

24  motion to amend provisional evidentiary rulings.  So, that

25  motion is denied, as well.

1    This is essentially a motion to reconsider my prior

2  ruling on Plaintiff's Motion in Limine No. 1.  But defendants

3  identified no new evidence or other reason reconsideration is

4  warranted.  The evidence defendants seek to introduce --

5  statements in plaintiff's medical records concerning violence,

6  sexual violence and misogyny -- is purely propensity evidence,

7  and defendants failed to meaningfully identify any other

8  purpose for which it can be used.

9    As to evidence of plaintiff's alcohol and drug use,

10  as I previously stated, that evidence is routinely excluded

11  under Rule 403 as unfairly prejudicial; and, it will be here,

12  as well.

13    Finally, as to plaintiff's criminal history,

14  defendants failed to explain how it's relevant to the claims

15  at issue in this case.  Additionally, as the Court noted in

16  ruling on Plaintiff's Motion in Limine No. 1, the probative

17  value of plaintiff's prior and subsequent arrests is

18  substantially outweighed by the danger of unfair prejudice

19  and, thus, excluded under Rule 403.

20    The only other ones are the ones filed by Ms. Riggio,

21  who is no longer participating in this trial, at least as of

22  yet.  If she does, then I'll issue my rulings on them, as

23  well.

24    So, that's my ruling with regard to the motions in

25  limine.

1          MR. SCAHILL:  Judge, can I ask you a question --

2          THE COURT:  Yes.

3          MR. SCAHILL:  -- just for clarification on the

4    history with the mental health records?

5          The motion, as I understood it, that was filed by the

6    plaintiff was limited to a number of specific topics.  There

7    was the violence towards women and alcohol abuse, obviously,

8    is sort of part of that, too.  But what I gleaned from the

9    response -- and Mr. Ainsworth will correct me if I'm wrong --

10   obviously, Mr. Chatman's mental state, prior mental health

11   treatment and things of that nature have been put front and

12   center by the plaintiff.

13         So, I just want to make sure we're not running afoul

14   of the Court's orders by just going into that past treatment

15   generally, as far as the nature of his mental illness -- that

16   seems to be directly at issue, and they've made it directly at

17   issue -- but not go into what your Honor discussed with

18   violence towards women and the like.

19         MR. AINSWORTH:  I'd like to know exactly what

20   Mr. Scahill is referring to.  But I agree, for example,

21   Mr. Chatman's diagnosis of schizophrenia is relevant and

22   something that the jury will be considering.

23         But if there's specific treatment or facts that the

24   defendants think is relevant, I'd like to hear what they are.

25         MR. SCAHILL:  Well, so, what we've dealt with here --

1    and this is in not only through discovery, but in the

2    complaint.  What they've said about Mr. Chatman is that he

3    was -- he's cognitively disabled; he's easily confused; he's

4    defenseless, guileless.  All of those things.  And that's the

5    picture that they're painting.  And even without getting into

6    the specifics of violence towards women, those aspects of his

7    mental illness.

8            And mental illness isn't this monolithic thing.  It

9    manifests itself in different ways in different people.  And

10   we don't believe that that is an accurate depiction of what

11   his mental illness was.

12           And, so, that's the way it's been presented.  And,

13   so, the nature of what his mental illness was and how it

14   manifested itself, as far as the qualities of that person,

15   is -- has directly been put at issue.

16           And, so, I'm very concerned about hearing a theory

17   that's, consistent with this complaint, painting him with this

18   brush of being sort of this, you know, cognitively disabled

19   person with mental retardation and things along those lines.

20   And that's not supported anywhere with his specific species of

21   mental illness.  And it's been at issue -- his specific

22   species of mental illness -- not only in this case, but during

23   the criminal trial and in the experts' reports and the like.

24           So, it seems to me all of that's fair game.  I was

25   just focused on you can't say that I've been raping women

1     around Chicago and, you know, the police haven't caught me.

2     But as far as what his mental illness is, that should be fair

3     game.  They've made it fair game.

4              THE COURT:  Well, it depends on what exactly it is

5     that you're trying to introduce in evidence.  It's hard for me

6     to sit here and try to do a 403 balancing when I don't know

7     what, in particular, you're going to ask a witness or not ask

8     a witness.

9              So, other than -- I agree that generally his prior

10    general medical history and his prior mental health history is

11    at issue.  Okay?  And you can go into it.

12             But with regard to any specific symptoms other than

13    what's related to direct examination or that's brought out on

14    direct examination or specific manifestations of it, I would

15    like you to, when you get to that point, let me know and we'll

16    talk about it at sidebar.  Okay?

17             MR. SCAHILL:  Okay.

18             THE COURT:  All right.  So, what I have next on my

19    agenda is the jury instructions.

20             And let me just go through them.  It's probably just

21    easier that way.  So, I'm going to start with the agreed

22    proposed instructions.

23             Joint Instruction No. 1, that will be granted.

24             Joint Instruction No. 2, that's granted.

25             Joint Instruction Nos. 3 through 11, that's granted,

1    as well.

2           Joint Instruction No. 12 is granted, if it's

3    necessary.

4           Joint Instruction No. 13, that's fine, if it's

5    necessary.

6           Joint Instruction No. 14, that's fine, if it's

7    necessary.

8           Joint Instruction No. 15, 16, 17, 18, 19, 20, 21, and

9    22, they're generally fine.  We may have to edit them a little

10   bit just to be consistent with who the defendants are or what

11   the evidence is, but generally speaking, they're fine.

12          Joint Instruction Nos. 23 to 25 are fine.

13          Joint Instruction No. 26, that regards Wojtczak.

14          Right?

15          MR. MICHALIK:  Wojtczak.

16          THE COURT:  So, obviously, we're not going to use

17   that.

18          And Joint Instruction No. 27 to 30 are fine.

19          So, with regard to the contested instructions,

20   starting with Plaintiff's Instruction No. 9, testimony of

21   witnesses -- everyone with me?

22          MR. BORKAN:  Sorry, Judge, I didn't hear plaintiff or

23   defendant.

24          THE COURT:  Plaintiff's.

25          MR. BORKAN:  I have it.  Thank you.  Sorry.

1          THE COURT:  I'm going to go ahead and grant

2     Plaintiff's No. 9, except that I'm going to delete the comment

3     about age.  The comments to Instruction 1.13 indicate that

4     language about age should be included only when a very elderly

5     or very young witness has testified.

6          Plaintiff indicates that a number of older witnesses,

7     including Chatman, who is 65 -- 63 -- will testify.  But I

8     don't -- maybe because of my age, I don't deem 65 as being

9     very elderly.

10         So, I'm going to take that out.  But otherwise, I'll

11     go ahead and adopt that.

12         All right.  So, Plaintiff's Instruction No. 16 and

13     Defendants' Instruction No. 27 with regard to the coerced

14     confession claim.

15         So, I have come up with my own proposed instructions,

16     and it's Court Instructions No. 1 and 2 somewhere.  Here's

17     some copies.  There should be enough for a couple -- at least

18     a couple copies -- for each table.

19         (Document tendered.)

20         THE COURT:  I'm sorry, could I have another No. 2,

21     please?

22         Thanks.  I gave you all my Court Instruction No. 2.

23         (Document tendered to the Court.)

24         THE COURT:  So, with regard to Plaintiff Instruction

25     No. 16, I find the instruction too long -- unduly long -- and

1  I don't believe it clearly sets out the elements of the claim.

2  Defendants' competing instruction, No. 27, is generally okay,

3  but excludes some extraneous language.  And, so, I've come up

4  with the Court's Instructions No. 1 and 2.

5      (Brief pause.)

6          MR. SCAHILL:  Can we comment on -- putting objections

7  on the record or not, with respect to that?

8              THE COURT:  Sure.  Yes.

9          MR. SCAHILL:  So, the voluntariness of the statement

10  looks very familiar to me.  It looks like a very similar one

11  that I had in the Patrick case last year, which I believe I

12  objected to at that time.  And the aspect that I objected to,

13  which I'd like to put on the record today, that the nature of

14  the type of tactics that police officers can use, obviously

15  the Supreme Court has sort of resolved some of those; and,

16  it's something, in my experience, that jurors sometimes have a

17  hard time understanding.

18          For example, that police officers can lie to criminal

19  suspects.  And it's distasteful to a jury, but the Supreme

20  Court says that that's A-okay.  And, so, when we put in

21  "deceptive interrogation tactics," it's something that causes

22  me concern because of that very reason, is that I don't think

23  jurors really fully understand that.  But the Supreme Court

24  has said that it's okay.

25          And that's why our "voluntariness" definition -- I

1   agree, is quite long.  But it's a very nuanced issue.

2           So, that's my concern with this instruction.  And I

3   just wanted to put that on the record.

4           MR. AINSWORTH:  May I respond, your Honor?

5           Plaintiffs do not -- or plaintiff does not object to

6   Court's Instructions 1 or 2.

7           But to address Mr. Scahill's point, the testimony in

8   this case is that there were no deceptive tactics used to get

9   Mr. Chatman to confess; to the contrary, that Mr. Chatman was

10  asked open-ended questions such as, "What did you do today?"

11  and then Mr. Chatman provided a full and complete confession,

12  with perhaps some clarifying questions, but no -- none of the

13  types of deceptive tactics that are delineated in Defendants'

14  Instruction No. 27 and 20- --

15          MR. SCAHILL:  And the one --

16          MR. AINSWORTH:  -- 28.

17          MR. SCAHILL:  I'm sorry.

18          The one other issue that is of concern to me -- I

19  don't think I completely agree with that.  That certainly is

20  from the perspective of the officers.  They said they didn't

21  deceive him.  But there's going to be two sides to this story,

22  of course.  And I don't know that that's a fair representation

23  of what Mr. Chatman is saying happened and something we're

24  going to have to deal with, the deception aspect.

25          But the issue of mental illness and delusion and that

1    being -- whether a confession is the product of that, it's

2    something that we addressed in our supplemental brief, but

3    it's something, I think, is important in this context, too;

4    which is:  That if somebody is delusionally, whether in whole

5    or in part, confessing to either the entirety of the offense

6    or just a part of it and it's not the product of improper

7    police coercion but rather something that is a product of

8    their own mind, that's not unconstitutional.  And I don't

9    think that this addresses that.  And it's something that's

10   important and may not be at issue in a lot of cases, but it's

11   at issue in this case.

12          And what I had said, Judge, in our proposed

13   instruction was -- I believe this is from -- and I don't know

14   if it was from the Supreme Court or the Seventh Circuit, but

15   moreover, psychological, you know, manifestations of somebody,

16   you know, being -- deciding to confess aren't -- that's not an

17   involuntary confession under the Constitution.

18          MR. AINSWORTH:  But the problem -- I'm sorry, Tim.

19          MR. SCAHILL:  No, I was done.

20          THE COURT:  So, let me cut this off.  I will have to

21   see what the evidence is at trial to figure out -- I mean,

22   this obviously is just a preliminary jury instruction

23   conference.  We'll have another one at the end of the trial,

24   once all the evidence comes in, because the evidence that

25   comes in is always different from what the parties anticipate

1    at the beginning of the trial.

2             So, to the extent that any of these need to be

3    modified, we'll address it then.  I just wanted to give the

4    parties some guidance now.  Okay?

5             MR. SCAHILL:  Thank you.

6             THE COURT:  So, now we're at Plaintiff's Proposed

7    Instruction No. 17.  I'm going to go ahead and grant that one.

8             I know that defendants have competing instruction No.

9    56, but I think that this is -- Plaintiff's Instruction No. 17

10   is -- a bit clearer because, for example, it uses the word

11   "detain" rather than "deprive of liberty," which I think

12   "detain" is easier for the jury to comprehend.

13            And, also, I do agree that I don't think it's

14   disputed that the defendants were acting under color of law.

15   And, so, therefore, I don't think that's necessary here.

16            Proceeding to Plaintiff's Proposed Instruction No. 18

17   and defendants', also, competing instruction No. 31 and 32.

18   So, here, too, I've come up with my own.

19        (Document tendered.)

20            THE COURT:  And mine basically follows the model jury

21   instruction 17.14.

22            Any objections to that, you can put on the record.

23            MR. SCAHILL:  Just a moment, Judge.

24            THE COURT:  Okay.

25        (Brief pause.)

1          MR. AINSWORTH:  If I may comment, your Honor?

2          THE COURT:  Yes.

3          MR. AINSWORTH:  So, starting at the bottom,

4    definition of "material," I think we need to account for

5    material fabricated evidence.  And it only talks about

6    material in terms of concealed evidence.  So, perhaps the

7    ending could be modified "would have been different if the

8    evidence had been disclosed or not fabricated"?  "Disclosed

9    or, in the case of fabricated evidence, not introduced at

10   trial."  Perhaps that language.

11         THE COURT:  Okay.

12         MR. SCAHILL:  Hang on.  I got lost there.  Are we

13   just talking about the "materiality" definition, or did we go

14   back up to the --

15         MR. AINSWORTH:  The definition of "materiality" is

16   what I was referring to, Judge.  And where it ends with "if

17   the evidence had been disclosed," I would then suggest adding

18   ", or in the case of fabricated evidence if the evidence had

19   not been introduced."

20         MR. SCAHILL:  So, Judge, I think that the language

21   that you used comes right out of the pattern.  And I think

22   that what it says is -- I think the "fabricated" versus "not

23   disclosed" evidence is lumped in and the disclosure is --

24   relates to the fabrication rather than the evidence itself.  I

25   think that's how they dealt with it in the instruction.

1          So -- but I agree it's perhaps a little bit unclear.

2               MR. AINSWORTH:  I'm open to suggestions.

3               MR. SCAHILL:  Yeah, I guess what I would probably

4     suggest -- and I don't have the model right in front of me,

5     but it would be:  "Evidence is material if there is a

6     reasonable likelihood that the result in the criminal

7     proceeding would have been different if the evidence had been

8     disclosed and/or not fabricated."

9          I think that's really the thrust of what we're

10    talking about.

11              MR. AINSWORTH:  That was -- yeah, that was my initial

12    one.

13              THE COURT:  Okay.

14              MR. AINSWORTH:  That's good for me.

15              THE COURT:  I'll go ahead and make that change.

16              MR. AINSWORTH:  Plaintiff would request that under

17    Element 1, that it be split into A and B, just for ease of

18    reading.  I think it's just hard for a juror to read through

19    -- because of all the clauses for reasonable diligence

20    regarding the Brady aspect of the due process violation -- to

21    then see the fabrication as a distinct path to liability.

22         And, so, we think it should be split into 1(A) and

23    1(B) and that -- and just make it a "and/or."

24              MR. SCAHILL:  So, if I understand this, 1 would

25    read --

1    THE COURT:  I think it would read, "The defendant you

2  are considering -- " and, then, it would be "(A) knowingly

3  concealed exculpatory evidence and/or impeachment evidence and

4  the evidence was not otherwise available to the plaintiff

5  through the exercise of reasonable diligence to make use of at

6  his criminal trial and/or (B) knowingly fabricated evidence

7  that was introduced against plaintiff in his criminal trial."

8    MR. AINSWORTH:  That is correct.

9    MR. SCAHILL:  That's fine.  I don't have a problem

10  with that.

11    MR. AINSWORTH:  And there's a typo just where it says

12  "introduce" against plaintiff, it should be "introduced."

13    THE COURT:  Yes.  Okay.

14    Anything else for this instruction?

15    MR. AINSWORTH:  No, Judge.

16    MR. SCAHILL:  I think that's all we have, as well.

17    THE COURT:  Moving right along, Plaintiff's Proposed

18  Instruction No. 21.  I'm going to go ahead and grant and adopt

19  that instruction.

20    With regard to Plaintiff's Proposed Instruction No.

21  22 -- so, I'm going to adopt that with the following edits:

22  In Paragraph 4, "this element has been established in this

23  case," I'm going to take that out.

24    And in the paragraph under Paragraph No. 5, I think

25  we need to add the following:  So, it should read, "If you

1    find that plaintiff has proved each of these things by a

2    preponderance of the evidence, then you must decide for

3    plaintiff for the defendant you are considering and go on to

4    consider the question of damages."

5          MR. AINSWORTH:  And, Judge, just because that

6    reminded me, I would like to lodge a request on Court's

7    Instruction No. 3 just to mirror the language that the Court

8    had used in Instruction No. 1 on the bottom language.  It says

9    where it ends "you will not consider the question of damages."

10   It should be "not consider the question of damages as to that

11   defendant on this claim."

12         THE COURT:  That makes sense.

13         Do you have any problem with that?

14         MR. SCAHILL:  No, I don't have a problem.

15         MR. AINSWORTH:  Thank you, Judge.

16         THE COURT:  All right.

17         So, now we go to Plaintiff's Proposed Instruction No.

18   25.  And I'm actually between Plaintiff's Instruction No. 25

19   and Defendants' Instruction No. 49.  I'm going to go with

20   Defendants' Instruction No. 49.  I just think that it's a bit

21   more concise and it's a bit clearer than the one that

22   plaintiff proposed.

23         Turning now to Plaintiff's Proposed Instruction No.

24   26 with regard to compensatory damages, this is another one

25   where I have my own.  And my own is really based upon a

1    straight -- more on model instruction No. 7.26, which --

2              MR. BORKAN:  7.26, Judge?

3              THE COURT:  7.26, yes.

4        (Document tendered.)

5              MR. AINSWORTH:  It seems to be the same as

6    Plaintiff's 26 with the exception of the formatting.

7              THE COURT:  I think that there's actually some

8    language in there that's a little different; but, generally, I

9    mean, it's pretty much the same.

10             So, there's --

11       (Brief pause.)

12             THE COURT:  So, for example, right, the first

13   provision is, "If you find in favor of the plaintiff on one or

14   more of his claims."  That's not in yours, which I think is

15   kind of important.

16             MR. AINSWORTH:  Yeah.  I don't think it's important,

17   but I do see the difference.

18             THE COURT:  And I think that defendants had some

19   language, too, that I didn't particularly like.  So, I'm just

20   going to use Court's Instruction No. 4.

21             Any objection to that?

22             MR. AINSWORTH:  No, your Honor.

23             MR. SCAHILL:  This is fine with us, Judge.

24             THE COURT:  Okay.

25             MR. AINSWORTH:  Although I guess the only objection

1    that plaintiff has is I don't like the "A."  You know, it just

2    suggests --

3            THE COURT:  Yes, I'm kind of thinking that -- as I

4    looked at it again, I think I'm going to take out the "A."

5    It's like why start a list when you only have one item.

6            MR. AINSWORTH:  And it suggests that plaintiff would

7    not be eligible for other potential damages that are unknown.

8    That's my concern.

9            MR. SCAHILL:  Yeah, that's fine.

10           THE COURT:  Okay.

11           Punitive damages.  That's Plaintiff's Proposed

12   Instruction No. 27.  The only difference is with regard to

13   defendants' financial condition.  I'm going to take that one

14   under advisement.

15           We talked about this before, about the prejudice

16   about defendants' reliance upon the financial information that

17   they produced as the case went on.  And in the end, I thought

18   that -- I concluded that plaintiff did not really have any

19   substantial prejudice as a result of those tardy disclosures.

20   But as to whether or not it's appropriate, we'll have to see

21   at trial.

22           So, for the time being, just preliminarily, I'm going

23   to go with Defendants' Instruction No. 52.  But, again, we'll

24   have to see how it comes out at trial.

25           All right.  With regard to Plaintiff's Instruction

1   No. 28 -- so, I have a separate instruction for communications

2   during deliberations, and I'm going to use the pattern

3   instructions with regard to what the jury needs to do when it

4   goes to the jury room, as well as the Silvern instruction

5   about if they can't come to an agreement, they have to

6   exercise their own judgment, et cetera, et cetera.  But I just

7   wanted to show you the communications one.

8        (Document tendered.)

9            THE COURT:  By the way, I'm going to tell something

10  like this to the jury at every break, every chance I get.

11           Is there any objection to this one?

12           MR. SCAHILL:  Not from the defense.

13           MR. AINSWORTH:  No, Judge.

14           I note that the Court doesn't include Snapchat and

15  Instagram in its list of --

16           MR. BORKAN:  Snapchat's history.  Instagram is pretty

17  popular.

18           THE COURT:  I also don't include MySpace, which was

19  included in a prior draft.  I'm trying to get hipper with the

20  times.  I'm not quite there yet.

21           All right.  Going to Plaintiff's Proposed Instruction

22  No. 29.  And this really deals with the definition of

23  "probable cause" and what it means to commence or continue a

24  criminal proceeding.

25           So, I have prepared my own versions of this, as well.

1      (Document tendered.)

2          THE COURT:  So, for probable cause, I basically used

3  the pattern -- the model instruction 7.08 but just included

4  the fact that -- I changed the last sentence to include the

5  Certificate of Innocence.

6          Any objection to the "probable cause" definition?

7          MR. SCAHILL:  Just a moment, Judge, please.

8          MR. AINSWORTH:  No objection, your Honor.

9          THE COURT:  For the record, this is Court's

10  Instruction No. 6.

11          MR. AINSWORTH:  Correct.

12     (Brief pause.)

13          MR. SCAHILL:  Judge, may I inquire, is this the sole

14  probable cause instruction that you're going to give, or are

15  you going to give a different one for -- that applies to the

16  malicious pros claim?  That might be --

17          THE COURT:  I believe this is the sole one.

18          MR. SCAHILL:  Okay.  I'm sorry.  Just a moment.  I

19  have to make sure that --

20          THE COURT:  Yes, this is the sole one.

21     (Brief pause.)

22          THE COURT:  So, defendants' competing instruction is

23  Defendants' Instruction No. 40.

24          MR. SCAHILL:  40.

25     (Brief pause.)

1          THE COURT:  By the way, as you're looking at that, as

2    far as documentary evidence goes, are the parties going to

3    have it on -- are they going to be PDF form or some sort of

4    electronic form, or will they be paper, or both?

5          MR. AINSWORTH:  Both.

6          MR. SCAHILL:  There will probably be a little bit of

7    everything.  We're going to have an AV person who is going to

8    be projecting mostly PDFs of some of the documents.  But

9    there's videos of depositions and the like, too.  But there

10   might be physical copies of some things, too.

11         THE COURT:  Can you make sure that if you're going to

12   use transcripts for cross-examination, that I get a copy of

13   them.  Just make sure you have an extra copy so when you pull

14   it out, you have one for me.

15         MR. SCAHILL:  Would you like a physical copy of them?

16         THE COURT:  Yes.

17         MR. SCAHILL:  Okay.

18         THE COURT:  Of the deposition transcripts.

19         As far as the actual exhibits go, if it's possible

20   for me to get them in PDF form --

21         MR. AINSWORTH:  We will, Judge.

22         THE COURT:  -- that would be great.

23         MR. AINSWORTH:  For transcripts, would you prefer a

24   mini or --

25         THE COURT:  A mini, please.

 1          MR. AINSWORTH:  And do you want one to a page or

 2   double-sided?

 3          THE COURT:  I prefer one to a page.

 4          MR. AINSWORTH:  You're saving trees with the four to

 5   a page, so --

 6          THE COURT:  So, when you're -- if you could provide

 7   them to me in a thumb drive, the actual exhibits in PDF form.

 8   Then what I'll do is I'll load them up on my computer, and

 9   I'll be able to easily access them.

10          MR. AINSWORTH:  In regard to Court's Instruction No.

11   6, it may be an error.  And I'm just raising it now, so if --

12   where you -- in the last paragraph, it says, "Neither the fact

13   that plaintiff was convicted nor the fact that he subsequently

14   received."  I don't know if the Court meant to say the fact

15   that plaintiff's conviction was vacated.

16          MR. SCAHILL:  All three of those things, I think.

17          MR. AINSWORTH:  Well, I'm just looking at the pattern

18   and trying to model it.

19      (Brief pause.)

20          MR. AINSWORTH:  I guess Mr. Scahill is right if we

21   just include all three.

22          THE COURT:  So, it would read, "Neither the fact that

23   plaintiff was convicted, nor the fact that his conviction was

24   subsequently vacated, nor the fact that he subsequently

25   received a Certificate of Innocence means by itself that

1    defendants had or lacked probable cause."

2              So, Mr. Scahill, any objections to No. 6?

3              MR. SCAHILL:  Yeah, I'm sorry, Judge, it took me a

4    while just to match these up.  This looks like it's coming

5    right out of the pattern.

6              THE COURT:  Yes.

7              MR. SCAHILL:  I guess the only objection that I just

8    want to put on the record with respect to what was just said,

9    I think that the pattern actually doesn't -- it mentions

10   the -- it mentions an acquittal or a vacation or a COI but not

11   the converse of it.  So, that -- and you include a conviction.

12   I do have to lodge an objection, just for the record, on that.

13   I don't think that the pattern goes that way.

14             THE COURT:  Okay.  That's fine.  But given the fact

15   that that's what's going to come in as evidence, I think

16   that's appropriate.

17             MR. SCAHILL:  Okay.  Thank you.

18             THE COURT:  So, what about Court's Instruction No. 7,

19   definition of "commencing or continuing"?  Any objection to

20   that?

21             And that would be Defendants' Proposed Instruction

22   No. 41.

23             MR. AINSWORTH:  No objection, your Honor, to Court's

24   Instruction No. 7.

25             MR. SCAHILL:  It says "has taken."  Does that mean to

1    induce a prosecutor to pursue criminal charges?

2              THE COURT:  I'm sorry, where are you reading?

3              MR. SCAHILL:  I'm reading the second sentence.  It

4    says, "The defendant plays a significant role in causing a

5    criminal prosecution when actions he or she has taken -- " oh,

6    and -- okay -- induce a prosecutor.  Got it.  Okay.  I was

7    just misreading.

8              THE COURT:  Right.

9              So, I will just put a comma between the "when" and

10   after the "taken":  "when actions he or she has taken, induce

11   a prosecutor."

12             MR. AINSWORTH:  Well, "actions" are plural.

13             MR. SCAHILL:  Right.  It's that "induce" term that

14   I'm --

15             MR. BORKAN:  Yeah, me, too.

16             MR. SCAHILL:  -- struggling with as to what that

17   means.

18             THE COURT:  How about "when his or her actions induce

19   a prosecutor"?  How is that?

20             MR. SCAHILL:  Right.  So, I guess the concern that I

21   have -- and we talked about this last time -- is the role of

22   Felony Review and their role in the investigation, as far as

23   deciding whether to pursue felony charges or not.  And, so,

24   I'm just -- I'm not comfortable with what "induce" means.

25             And could I indulge the Court just to allow us to

1    perhaps consider this for a couple of days and think this

2    through?  Because I think in this particular case, this is

3    sort of a more unusual issue than it is in some.

4           THE COURT:  That's fine.

5           MR. SCAHILL:  Okay.  Thank you.

6           THE COURT:  So, we'll go with this one, but

7    understanding that defendants want some time to think about it

8    and get back to us.

9           All right.  Turning to Plaintiff's Instruction No.

10   31, definition of "malice."  I have come up with my own.

11       (Document tendered.)

12       (Brief pause.)

13          THE COURT:  With regard to plaintiff's proposed

14   instruction, I think mine is a little clearer.  And with

15   regard to defendants' proposed instruction, I think

16   defendants' is just too long.  And I think trying to keep it

17   as concise and as simple as possible would inure to the

18   benefit of the jury.

19          Mr. Ainsworth, any objection to Court Instruction No.

20   8?

21          MR. AINSWORTH:  No, your Honor.

22          MR. SCAHILL:  I think that is fine with us, Judge.

23          THE COURT:  Okay.

24          All right.  So, Plaintiff's Proposed Instruction No.

25   31, I think I -- the objection defendants posed is based upon

1    the fact that they don't think the City should be named in the

2    jury instructions.  I've already addressed this in the motions

3    in limine.  And, so, therefore, I'm going to go ahead and

4    adopt Plaintiff's Instruction No. 31.

5            Turning to defendants' instructions --

6            MR. AINSWORTH:  For 31, we just have to redact

7    Wojtczak's name.

8            THE COURT:  Yes.  All of these we'll have to kind of

9    fine-tune at the end of the trial.

10           So, let's go through the defendants'.

11           So, Defendants' No. 12, I've already denied using

12   that and, instead, will use Plaintiff's Instruction No. 9.

13           Defendants' Instruction No. 14, I'm going to deny

14   that based upon the -- my motions in limine with regard to

15   that issue.

16           Defendants' No. 23, again, I'm going to deny that

17   based upon my motions in limine as to the City of Chicago.

18           Defendants' Proposed No. 24 -- so, with regard to 24,

19   the Committee report on the model instructions talk about

20   limiting the instruction -- to the extent that there's state

21   claims, limiting the instruction to clarify that's with regard

22   to the federal claims and, also, trying to deal with the

23   "failure to intervene" claim.  And what they suggest is

24   expressly note that it's to apply to the federal claims and

25   then, immediately after, go into the "failure to intervene"

1    elements by saying "however" and then going into the

2    "failure to intervene" claim elements.

3            I'm going to take a stab at doing that at this point.

4    So, I'm not going to use Defendants' Instruction No. 24, but

5    I'm going to try to come up with my own.  Okay?

6            MR. AINSWORTH:  The only other concern we have is the

7    conspiracy count, as well, which has the same concern for us

8    as the -- and the supervisory liability claim.  I mean --

9            THE COURT:  Right, but there has to be some way

10   that -- because I do think it's appropriate with regard to --

11   you know what defendants are getting at, right, with regard to

12   the direct individual claims.  And, so --

13           MR. AINSWORTH:  But each elements instruction

14   provides exactly that language that we have to prove by a

15   preponderance of the evidence as to that particular defendant

16   for each element; and, if we fail to provide -- prove those,

17   then no damages are to be awarded, in each elements

18   instruction.

19           THE COURT:  No, I understand.  But like I said, I'm

20   going to take a stab at it, and I'll let the parties know what

21   I come up with.

22           All right.  Defendants' Instruction No. 25, I am

23   denying that.

24           Defendants' Proposed Instruction No. 26, I just don't

25   think that that -- I just don't think applies.  I just think

1    that it's confusing with regard to the elements that are at

2    issue with regard to the claims in this case.  So, I'm not

3    going to adopt Defendants' Proposed Instruction No. 26.

4           Defendants' Proposed Instruction No. 27, I'm going to

5    deny that and use my Instruction No. 1.

6           Defendants' Instruction No. 28, I'm going to deny

7    that and use my Instruction No. 2.

8           Defendants' Proposed Instruction 31, I'm going to

9    deny that and use my Instruction No. 3.

10          With regard to Defendants' Proposed Instruction No.

11   32, I'm going to deny that and use my Instruction No. 3.

12          All right.  With regard to Defendants' Proposed

13   Instruction No. 33, I think it's duplicative of Instruction

14   No. -- of the Agreed Instruction No. 22, so we'll just use

15   that one.

16          Defendants' Instruction No. 34.  I think that

17   Instruction No. 22 sufficiently defines what a conspiracy is.

18   So, I'm going to deny that one.

19          The Defendants' Proposed Instruction No. 35, again, I

20   think this instruction is unnecessary because No. 22 makes

21   clear the defendant must knowingly join the agreement with the

22   intention to carry it out.  So, I'm not going to adopt that

23   one.

24          Defendants' Instruction No. 38.  I'm going to use my

25   edited version of Plaintiff's Instruction No. 22.

1          Defendants' Instruction No. 39, I'm going to deny

2     that and use my Proposed No. 8.

3          Defendants' Proposed Instruction No. 40, I'm going to

4     deny that and use my Proposed Instruction No. 6.

5          Defendants' Proposed Instruction No. 41, I'm going to

6     deny that and use my Proposed No. 7.

7          Defendants' Exhibit No. -- Proposed Instruction No.

8     45.  I'm going to go ahead and adopt Defendants' Instruction

9     No. 45.

10          Defendants' Instruction No. 46.

11          MR. AINSWORTH:  May I make our objection to 45?

12          THE COURT:  Yes, go ahead.

13          MR. AINSWORTH:  We object to it being given at all;

14     but, if the Court is inclined to give Defendants' Exhibit 45,

15     we think it's prejudicial to identify what the state court did

16     not decide.  Instructions are typically given to focus the

17     jury's attention on what happened, not what could have

18     happened but didn't.  And we see that in many instructions.

19     And I think it's confusing.

20          I think the most objectionable phrase in Defendants'

21     45 is saying that "the state court was not asked nor did it

22     decide the issue of whether plaintiff's confession was false,

23     fabricated or coerced," which, in plaintiff's view, is

24     slightly different than the sentence that immediately precedes

25     that, which talks about it did not decide whether plaintiff's

1    constitutional rights were violated or whether there was --

2    whether defendants engaged in any misconduct under state or

3    federal law.

4          I think the previous sentence is a little more

5    generic; but, then when you're focusing the attention, it's

6    arguable that the state court did rule upon whether

7    plaintiff's confession was false in vacating the conviction

8    and awarding a Certificate of Innocence. Because if the

9    confession was truthful, then the state -- then the court

10    would not be able to do that. And I think that that language

11    is really problematic from plaintiff's perspective.

12          MR. SCAHILL: Can I comment, Judge?

13          THE COURT: Yes.

14          MR. SCAHILL: So, this is, I believe, straight out of

15    the Harris case, which Judge St. Eve put together, and was

16    used, I think, not only in that case, but a case after that.

17          But with respect to what Mr. Ainsworth just said

18    about the evidence, that's -- this particular Certificate of

19    Innocence is -- and I've seen quite a few of them in the cases

20    that I've handled. I've never seen one where there's never

21    been any reference not only to the fact in a petition that the

22    confession was coerced, but that the guy even confessed in the

23    first place. That was never put before the court at all. It

24    was never an allegation made by Mr. Ainsworth or his firm in

25    seeking the Certificate of Innocence.

 1          So, this is actually uniquely appropriate in this

 2   case and under those -- the specific circumstances we have of

 3   this COI.

 4          MR. AINSWORTH:  Hang on.  Because the court, when

 5   ruling on the Certificate of Innocence, is required to look at

 6   the entire record.  That is what the case law says.  And it's

 7   -- a petition points out new evidence that is to be weighed

 8   against the record of the trial.

 9          So, I think this language -- you know, I think -- I

10   don't like any of it, but I particularly don't like the

11   language saying "the state court was not asked nor did it

12   decide the issue of whether plaintiff's confession was false,

13   fabricated or coerced."  With due respect to Judge St. Eve, I

14   think it's inflammatory and it is problematic from plaintiff's

15   perspective.

16          THE COURT:  Okay.

17          Well, I think that since the parties are going to

18   present evidence as to what was or was not presented to the

19   judge when the judge issued the Certificate of Innocence, I'm

20   going to adopt defendants' for now; and, if -- depending on

21   what the evidence says, Mr. Ainsworth, you can raise the

22   objection again later, at the final jury instruction

23   conference.

24          All right.  I'm going to deny Defendants' Proposed

25   Instruction No. 46.  Defendants' Proposed No. 47 is also

1    denied.  I think it's duplicative and unnecessary.

2           Defendants' Proposed Instruction No. 49, I'm going to

3    go ahead and adopt that instruction.

4           Defendants' Proposed Instruction No. 50, I'm going to

5    deny that and use my proposed instruction -- my Instruction

6    No. 4.

7           Defendants' Instruction No. 51.  I just don't think

8    that there's any evidence that I've seen that says that

9    plaintiff could have availed himself of any reasonable

10   opportunity to mitigate here.  Maybe it will come up at trial,

11   but I don't really -- I haven't seen it to date.  And, so,

12   based upon the current record, I'm going to deny Defendants'

13   Proposed Instruction No. 51.

14          With regard to Defendants' Instruction No. 52, I've

15   already ruled on that.  I'm going to go ahead and use that for

16   now.

17          With regard to Defendants' Proposed Instruction 56,

18   I've denied that.  I'm going to use Plaintiff's Instruction

19   No. 17.

20          And, then, Defendants' Instruction No. 57, for the

21   reasons stated previously, I'm going to deny that instruction,

22   as well.

23          With regard to the verdict form, we'll deal with the

24   verdict form at the final jury instruction conference.

25          All right.  So, a couple of updates.  As of today, we

1    have 54 individuals who bravely and generously said that they

2    would be available for trial in this case during the four

3    weeks between Thanksgiving and the Christmas holidays.  And,

4    frankly, I think that's a small miracle.  And we may have

5    more.  Still we don't have all of the responses yet, although

6    we have pretty much -- I think we have pretty much every one

7    that we're going to get.

8            But, basically, those are all the people that said,

9    yes, put me down, I'm in.  Okay?  And, so, we're going to go

10   forward, and I think we'll have enough people for the voir

11   dire.

12           As I noted, because of the issues in this case, I'm

13   going to do voir dire in the jury room individually.  And,

14   basically, I'm going to take it off of the questionnaire.  All

15   right?

16           That's all I had on my list of things to talk about

17   today.

18           Is there anything else that the parties would like to

19   talk about?

20           Mr. Ainsworth, anything at this point?

21           MR. AINSWORTH:  No, your Honor.

22           MR. SCAHILL:  There's one housekeeping matter.  Can I

23   consult with Ms. Stalf quickly?

24           THE COURT:  Yes.

25        (Brief pause.)

1          MR. SCAHILL:  Judge, the one housekeeping matter that

2     we have -- and we addressed this briefly last time, and your

3     Honor sort of punted on it, I guess.  But we had a motion to

4     amend the final pretrial order -- and it was because

5     Mr. Ainsworth said we probably could work this out.

6          But there was a motion to amend the final pretrial

7     order to include two additional exhibits.  One of them is moot

8     because it had to do with Mr. Wasilewski, who your Honor has

9     barred.  So, that is no longer an issue.

10          But there is -- the other one deals with Mr. Seaton,

11     who testified at a proceeding relating to his encounter with

12     Detective Kato last year, which we received through a

13     representation of Mr. Kato in another case but who --

14     Mr. Ainsworth's firm actually was prosecuting that proceeding.

15          So, we wanted to have leave to introduce that.

16     Frankly, I don't even know that it needs to be -- if it's for

17     impeachment, it needs to even be on there.  But it's sworn

18     testimony about his encounter with Kato, and so we wanted to

19     include it just in the interest of candor to the Court so

20     there's no surprise with that.

21          MR. AINSWORTH:  I meant to horse trade on that, but I

22     forgot.

23        (Laughter.)

24          MR. AINSWORTH:  So, I can't see that we have an

25     objection.

 1          THE COURT:  So, the horse has left the barn on that

 2    one?

 3       (Laughter.)

 4          MR. AINSWORTH:  Yes.

 5          THE COURT:  No, that's fine.

 6          MR. SCAHILL:  All right.  Thanks, Judge.

 7          THE COURT:  Motion is granted.

 8          MR. BORKAN:  I expect we might be hearing about that

 9    later.

10          THE COURT:  Anything else?

11       (No response.)

12          THE COURT:  All right.  So, again, at this point,

13    unless anything else comes up -- which I don't anticipate --

14    we'll be ready to go on Monday morning after Thanksgiving for

15    voir dire.

16          I will have some preliminary comments to the panel,

17    such as, you know, what the duties of the jury -- oh, I'm

18    sorry, there was one other thing, and I didn't include it on

19    my list.  Preliminary instructions.  I asked the parties to

20    kind of think about which of the instructions would be

21    appropriate for preliminary instructions.

22          MR. AINSWORTH:  And we exchanged -- we were a little

23    confused, I think.  We tried to draft our own.

24          THE COURT:  So, let me tell you what I'm thinking,

25    okay?  And, then, if there's any objections or concerns, why

 1    don't you give Ms. Acevedo a call by the end of the day

 2    tomorrow.

 3              But here, I just went through and picked out the ones

 4    that I thought would be helpful to give to the jury sooner

 5    rather than later, right?

 6              So, starting with Jury Instruction No. 21, the

 7    parties and the claims.

 8              Agreed Jury Instruction No. 22, the elements.  And

 9    these are the elements jury instructions.

10              Agreed Jury Instruction No. 23.

11              Agreed Jury Instruction No. 24.

12              Agreed Jury Instruction No. 25.

13              Agreed Jury Instruction No. 26.

14              Plaintiff's Proposed 17.

15              MR. AINSWORTH:  But not 26.

16              THE COURT:  I'm sorry?

17              MR. AINSWORTH:  I thought that Agreed Jury

18    Instruction 26 was the intentional infliction --

19              THE COURT:  Oh, yes, you're right.  Correct.  I'm

20    sorry.  Not 26, right.

21        (Brief pause.)

22              THE COURT:  So, Plaintiff's Proposed Instruction No.

23    17.

24              Let's make this short and cut to the chase.

25    Basically, all of the elements instructions where it says

1   Claim 1, Claim 2, Claim 3 and kind of what they are.

2              And I thought that what I'd like to do is I'd like to

3   give them a copy of it.  I'd like to take them through it.

4   And, then, I'd like them to hold onto it during the trial, so

5   that they have some framework to understand the facts as they

6   come in.  It's going to be a lengthy trial.  And, so, I think

7   that that would be helpful.  All right?

8              So, what we'll do is we'll put something together and

9   we'll e-mail it out to you guys.

10             MR. AINSWORTH:  I think we're generally in agreement

11  because when we exchanged preliminary instructions, the

12  elements instructions were what we were focused on.

13             THE COURT:  Right.

14             And, so, we'll put something together.  We'll shoot

15  it to you guys.  And if there's an issue, maybe you guys can

16  get back to me -- get back to us by Monday.  All right?  We'll

17  send it out today or tomorrow.  Okay?

18             MR. SCAHILL:  Judge, one more minor housekeeping

19  matter.

20             THE COURT:  Yes.

21             MR. SCAHILL:  Our Motion in Limine 745, which was

22  relating to the mental health and abuse stuff, I filed -- the

23  file copy had parts redacted out, but I never got leave to

24  file the unredacted.  So, can I get leave to file the

25  unredacted as part of the court file?

1           THE COURT:  Yes, please.  I was actually looking for

2    that.

3           MR. SCAHILL:  Okay.  Thank you.

4           THE COURT:  Go ahead.

5           One other final thing.  I'm going back to my legal

6    practitioner days.  "One more question, Judge," and wind up

7    asking five more.

8           The other thing that I found really helpful for a

9    jury in lengthy trials is if at the end of the trial, they get

10   a sheet with just names and pictures of faces, so that they

11   can remember, oh, this witness was -- who was this witness

12   again?  And if they have a picture of the witness, it will be,

13   oh, that's the witness.  Okay?

14          So, what I would like the parties to do is -- and I

15   don't care who does it or how it's organized, but I would like

16   the parties to take a picture of each witness before they come

17   in, if possible.  I mean, if it's one of the parties, you can

18   do it during lunch or what have you.  And, then, at the end of

19   the trial before deliberations, as part of the packet that

20   goes back to the jury would be just basically a page or two or

21   three or four of the witnesses with a picture and their names

22   alphabetically by last name.

23          I did that in a trial that lasted two-and-a-half

24   weeks, and the jury thought that that was just so helpful.

25   Because when they start talking about witnesses, oftentimes

174

1    they'll be like, "Who was that?"  And just having that picture

2    really helps them.

3            MR. AINSWORTH:  There's a judge in the Southern

4    District of Illinois who does that with every witness.  They

5    take a picture at the beginning of their testimony.  I can't

6    recall which judge it was.

7            THE COURT:  That's just too much responsibility for

8    us.

9        (Laughter.)

10           THE COURT:  And I don't want you guys taking

11   pictures.

12           So, just make sure you do that.  Okay?  So, before

13   they -- or whenever you're preparing them or what have you,

14   just take a picture.

15           MR. AINSWORTH:  What time would you like us to be

16   here on the Monday?

17           THE COURT:  They're going to check in at 9:00.  We

18   will endeavor to have the questionnaires filled out and copies

19   ready to go by 9:30, okay?  And, so, be here by 9:30.  And I

20   will give you some time to review them.  And I'm really hoping

21   that we start the voir dire process somewhere around 10:00 or

22   as close to 10:00 as possible.

23           My hope is to get through everyone by Monday, but

24   we'll see.

25           MR. BORKAN:  We will, Judge.

1          THE COURT:  That's the hope.

2          So, keep on talking settlement.  See if the parties

3    can come to some sort of resolution that everyone would be

4    mutually -- not happy with but mutually unhappy with.

5          MR. AINSWORTH:  We've proven success with two of the

6    three parties.  So, we're not -- we don't view ourselves as

7    being unreasonable in negotiations.

8          MR. BORKAN:  I do.

9          MR. AINSWORTH:  Some cases you have to try.

10         MR. BORKAN:  I know you don't.

11         THE COURT:  This is not the time nor the place, and

12   it's way too late in the day.

13         But keep on trying.  And if you can arrive at a

14   resolution, let us know; and, if not, we'll see you at trial.

15         Thank you.

16         MR. AINSWORTH:  Thank you.

17         MR. SCAHILL:  Thank you, Judge.

18                    *     *     *     *     *

19

20   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
21

22
     /s/ Joseph Rickhoff               November 16, 2018
23   Official Court Reporter

24

25